John J.E. Markham, II (CA Bar No. 69623)
Elizabeth L. Read (CA Bar No. 87618)
MARKHAM & READ
One Commercial Wharf West
Boston, Massachusetts 02110
Tel: (617) 523-6329
Fax: (617) 742-8604
Email: jmarkham@markhamread.com
        eread@markhamread.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| BRUCE CAHILL, an individual, GREG CULLEN, an individual, SHANE SCOTT, an individual, and RON FRANCO, an individual, <br><br> Plaintiffs, <br><br> -- vs. -- <br><br> PAUL PEJMAN EDALAT, an individual, OLIVIA KARPINSKI, an individual, SENTAR PHARMACEUTICALS, INC., a Nevada corporation, BLUE TORCH VENTURES, INC., a Wyoming Corporation, and LIWA, N.A., INC., a Wyoming Corporation, <br><br> Defendants. | CASE NO: <br><br> **COMPLAINT FOR DAMAGES FOR DEFENDANTS' VIOLATIONS OF FEDERAL RICO LAW, THE FEDERAL SECURITIES LAW, AND FOR FRAUD AND DECEIT AND FOR DECEIT BY CONCEALMENT UNDER CALIFORNIA STATE LAW** <br><br> **JURY TRIAL DEMANDED** |

COME NOW, Plaintiffs Bruce Cahill, Greg Cullen, Shane Scott, and Ron Franco (sometimes referred to herein collectively as "Plaintiffs") and file this Complaint for Damages against the defendants Paul Pejman Edalat, Olivia Karpinski, Sentar Pharmaceuticals, Inc., Blue

COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

1

Torch Ventures, Inc., and LIWA, N.A., Inc. because these defendants have combined with each other to defraud the plaintiffs and otherwise injure them in their business and property in violation of the Federal RICO and securities laws, and in violation of the fraud laws of the State of California. Plaintiffs allege as follows:

### NATURE OF THIS ACTION

1. The plaintiffs in this action bring fraud claims against the named defendants and these claims arise under the laws of the United States as is more particularly alleged in paragraphs 25 and 26 hereof under the "Jurisdictional Statement."

2. Plaintiffs are individuals who engage in business activities in and around Southern California, Nevada, and elsewhere. Among other activities, they seek to make investments in ventures that they deem worthwhile.

3. Defendant Paul Edalat is a fraud who has for many years engaged in various schemes and artifices to defraud others and to obtain their money by false and fraudulent pretenses. He uses the following conduct which is his method of operation:

    (a)    He makes fraudulent statements about ventures to induce others to invest in those ventures;

    (b)    He falsely states to prospective investors that he or the ventures involved have valuable assets when in fact there are no such assets;

    (c)    He conceals from investors and prospective investors many material facts about himself and his prior financial failures and misconduct in order to induce these individuals to invest or to make further investments;

    (d)    He misuses investment funds once he has fraudulently induced investors to invest their money;

COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

(e)    He fails to honor the promises he has made to investors once he has fraudulently induced them into investing their money;

(f)    He lulls his investors to invest more time and money in the ventures involved, and not to abandon the venture involved, by making further false statements to them once they suspect that he made false statements in order to obtain their initial investments; and

(g)    When investors discover his fraudulent conduct, Edalat threatens investors, and makes defamatory statements about them in order to intimidate them into keeping silent about such conduct.

4.   Defendant Edalat lives off other peoples' money that he has procured by fraud. Edalat purposefully maintains a highly-visible and extravagantly wealthy lifestyle by staying in luxury suites, wearing a diamond-studded gold Rolex watch which he brags that he purchased for $52,000.00, by organizing extravagantly fancy dinners and weekend retreats, and by driving fancy cars, including two Rolls Royces, three Lamborghinis, Land Rover, a BMW, a Ferrari, and a Hummer, among others. This lifestyle is used by him in order to create the illusion with potential investors that he has successfully managed profitable ventures so that potential investors will be duped into investing with him. He frequently has these fancy automobiles, along with other assets, such as a Las Vegas  penthouse, held in the names of other persons to disguise to the authorities that he is the true owner of these luxury assets and yet uses these assets as his own to lure investors.

5.   Once he obtains investment monies, Edalat then uses them to further his high-lifestyle and thus his ability to induce additional such investors into investing with him and into his ventures, by making fraudulent statements to them about the assets already held by those

COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

3

ventures, and by showing off his high lifestyle funded by other peoples' money. When it all catches up to him, he declares bankruptcy in an attempt to rid himself of debts so that he can continue with his ability to defraud still more investors.

6.   In bankruptcy, he knowingly files incomplete schedules of his assets, hiding them from the bankruptcy trustee and from his creditors. He then perjures himself under oath when asked about his assets in order to hide them. While thus acting in the bankruptcy court in this fraudulent manner, he continues to pretend to potential investors that he is very successful and thus fully capable of supporting his luxurious lifestyle by the earnings from his business success, and that he continues to add assets to justify that lifestyle. In falsifying his bankruptcy schedules and failing to disclose assets, he puts the assets in which his investors have an interest at risk, fraudulently.

7.   Edalat has used the above-described fraudulent methods to induce the plaintiffs in this action to invest in one of his ventures, a company named Pharma Pak, Inc. ("Pharma Pak") which was, Edalat assured plaintiffs, set up and well-positioned to market pharmaceuticals and other products. In total, plaintiffs have invested more than $2,000,000.00 in Pharma Pak. Pharma Pak has now failed because of the actions of Edalat, Karpinski, and the other defendants. Plaintiffs have therefore lost all their investment funds. Edalat, aided by the other defendants, took more than $1,100,000.00 of these investment monies for his own purposes having nothing to do with benefiting Pharma Pak.

8.   Edalat commenced his scheme to obtain investment monies from plaintiffs for Pharma Pak in the middle of 2014. Since in or around June, 2015, Edalat has been aided and abetted in the fraudulent activities aimed at plaintiffs by co-defendant Olivia Karpinski who has combined with Edalat to further his fraudulent conduct against plaintiffs by acting in concert

with Edalat to make false statements to plaintiffs in order to induce them into further ventures with defendant Edalat, by misusing Pharma Pak funds, and by later making statements to plaintiffs in order to lull plaintiffs into believing that these false statements were true. Karpinski has substantially assisted Edalat in his fraudulent schemes.  As Edalat has said, "give me a Rolls Royce and Olivia [Karpinski], and I can get anyone to invest." Karpinski accompanies Edalat on his meetings and weekend retreats with potential investors in other ventures not related to Pharma Pak and she aids him in his misrepresentations to those investors, using large sums of money that plaintiffs invested in Pharma Pak in this unauthorized and fraudulent manner, while falsely telling one or more of the plaintiffs that she and Edalat are using these funds to secure sales orders for Pharma Pak, which she knows to be false.

9.    The conduct described in this Complaint gives rise to claims under federal law. Edalat, Karpinski, and the other defendants have engaged in a scheme to defraud and to obtain money and property of plaintiffs by false pretenses, representations, and promises, and to further their scheme to defraud plaintiffs by using and causing to be used interstate and foreign wire communications, in violation of Title 18 U.S.C.A §1343, the federal wire fraud statute. Edalat commenced this scheme in early 2014 and Karpinski joined the scheme and began acting in concert with Edalat to further defraud plaintiffs commencing in June, 2015, She acted to further the scheme in the ways stated herein. The other defendants herein, Sentar Pharmaceuticals, Inc., Blue Torch Ventures, Inc., and LIWA, N.A., Inc., are controlled by Edalat who has been aided and abetted in that control by Karpinski since in or around June, 2015, and each of these corporate defendants, through the actions of Edalat and Karpinski which legally bind these corporate defendants, have combined with Edalat and Karpinski and with each other to injure plaintiffs in their business and property, all as described further below.

COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

10.   Defendant Edalat also possessed and distributed at least two Schedule I controlled substances, THC and marijuana, in violation of Title 21 U.S.C. § 841, and Karpinski aided him in his effort to use and distribute those controlled substances in an attempt to frame the chief scientist of Pharma Pak and Pharma Pak CEO Bruce Cahill by planting these controlled substances in the chief scientist's Pharma Pak  offices and then calling the police to falsely state that these controlled substances were possessed for manufacture and sale by the chief scientist and Cahill.

11.   Defendants have committed these federal crimes, all of which qualify as predicate acts under the Racketeer Influenced and Corrupt Organization Act ("RICO"), as defined in Title 18 U.S.C. §1962. These defendants, as shown below, have joined, become a part of, and are engaging in an enterprise within the meaning of the RICO statute. The actions of this illegal enterprise have injured the business and property of the plaintiffs in that they caused the loss of over $2,000,000.00 in investment monies of plaintiffs and other injury to their business and property. This injury gives rise to a claim for relief including damages under 18 U.S.C. § 1964.

12.   Defendants also, through much of the same fraudulent conduct described in this Complaint, all committed in interstate commerce, have violated the federal securities laws, namely, the Private Securities Litigation Reform Act, 15 U.S.C. § 78 U-4 and Rule 10b–5, promulgated by the Securities and Exchange Commission pursuant to section 10(b) of the 1934 Securities Exchange Act, which makes it unlawful for any person to use "manipulative or deceptive device[s]" in connection with the purchase or sale of securities. 15 U.S.C. § 78j(b). Specifically, defendants did combine to and did "(a) ... employ . . . any device, scheme, or artifice to defraud; (b) ... make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under

COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

which they were made, not misleading; or (c) ... engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5. Defendant Edalat and Karpinski sold and attempted to sell securities to plaintiffs in violation of these laws and plaintiffs seek damages and an award of attorneys' fees as a result of the injury they have suffered by this securities fraud.

13.   The same fraudulent conduct giving rise to claims arising under federal law also constitutes fraud and deceit and fraudulent concealment under the law of the State of California for which relief in the form of damages is also sought in this action.

## THE PARTIES TO THIS ACTION

14.   Plaintiff Bruce Cahill ("Cahill") is a citizen of the state of California domiciled in Orange County.

15.   Plaintiff Greg Cullen ("Cullen") is a citizen of the state of California domiciled in Los Angeles County.

16.   Plaintiff Shane Scott ("Scott") is a citizen of the state of Utah domiciled in St. George.

17.   Plaintiff Ron Franco ("Franco") is a citizen of the state of California domiciled in Los Angeles County.

18.   Defendant Paul Pejman Edalat, is a citizen of the state of California, last known to be domiciled in Orange County.

19.   Defendant Olivia Karpinski is a citizen of the state of California and is last known to be domiciled in either Orange County or Los Angeles County.

COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

20.   Defendant Blue Torch Ventures, Inc. ("Blue Torch") is a Wyoming limited liability company formed under the laws of Wyoming. It was formed there in September, 2014 despite the fact that neither Edalat nor anyone else involved has any ties with that state, but only because that state does not require entities organized under its laws to be identified publicly. Blue Torch is owned by EFT Holdings, which is the Edalat Family Trust, which is controlled by Edalat who is also its sole trustee.

21.   Defendant Sentar Pharmaceuticals, Inc. ("Sentar") is a Nevada corporation with its principal place of business in Las Vegas, Nevada. Sentar is 90% owned by Blue Torch. Both Blue Torch and Sentar are thus controlled by Edalat, who uses his sister, Farah Baghi, an as yet unnamed co-conspirator and part of the enterprise, as a front to do Edalat's bidding with Blue Torch and Sentar. Sentar is used by Edalat and Karpinski to raise and to attempt to raise money under false and fraudulent pretenses, specifically that Sentar holds a valuable patent right to a sublingual process to deliver certain drugs, supplements, and nutraceuticals more effectively than any competing product. This is false, as Edalat and Karpinski well know, but they use this falsehood to raise and attempt to raise investment money, as shown in more detail below.

22.   Sentar was formed by Edalat in early 2016 to take over operations from a prior Edalat-owned entity, Scilabs Nutraceuticals, Inc. ("Scilabs") was shut down by a federal court order obtained by the United States Food and Drug Administration (the "FDA"). The Scilabs shutdown was ordered by the court because of Scilabs' and Edalat's repeated, serious violations of the health and safety standards required by United States law, which Edalat and Scilabs repeatedly ignored despite warnings made to them by the FDA commencing in at least as early as 2012, during an inspection by the FDA, and then later in 2013 when the FDA sent a follow-up written warning letter to Edalat because the FDA's oral warnings had not been heeded by Edalat.

COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

23.   Edalat and Karpinski use Sentar as a shill to fraudulently procure new investment monies by falsely representing its value to be $60,000,000.00 when in truth and as they well know, it has no value anywhere near that amount.

24.   LIWA, N.A., Inc. ("LIWA") is a Wyoming limited liability company formed under the laws of Wyoming. It was formed in September, 2014 despite the fact that neither Edalat nor anyone else involved has any ties with that state, but only because that state does not require entities organized under its laws to be identified publicly. LIWA has a bank account used in part by Edalat to pass fraudulently-obtained investor monies, including that of plaintiffs, from the United States to foreign countries by using wires sent in foreign commerce to further the scheme to defraud within the meaning of the wire-fraud statute, 18 U.S.C. § 1343.

## JURISDICTION AND VENUE

25.   This Court has jurisdiction under 28 U.S.C. § 1331 over Count I of this Complaint because the claim in Count I arises under the laws of the United States, namely a claim by plaintiffs that the defendants have engaged in and continue to engage in a scheme to defraud and to obtain money and property from plaintiffs by false pretenses, representations, and promises, in violation of Title 18 U.S.C. § 1341 (mail fraud) and Title 18 U.S.C. § 1343 (wire fraud), doing so in what has been and continues to be an illegal enterprise which has injured plaintiffs by and through a pattern of criminal activity in violation of 18 U.S.C. § 1962, and thus gives rise to this claim for relief under 18 U.S.C. § 1964. This Court has jurisdiction over Count II in this action under 28 U.S.C. § 1331 because the claim in Count II arises under the laws of the United States, namely, §27 of the Exchange Act (15 U.S.C. §78aa) and under  Section 10(b) of the Exchange Act (15 U.S.C. §78j(b)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10). This Court has supplemental jurisdiction over Count III (fraud and deceit under California law) and Count

COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

IV (fraudulent concealment) under 28 U.S.C. § 1367 because these state claims and the federal claims arise from a common nucleus of facts and the state claims are so related to the federal RICO claim and federal securities claim stated herein that the state claims form part of the same case and controversy.

26.   Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims stated herein occurred within this District, and a substantial part of the property that is the subject of this action is situated here.

27.   Alternatively, venue is proper in this District pursuant to §27 of the Exchange  Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b) because the acts, conduct, and other wrongs alleged in this Complaint occurred in this District. In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, interstate telephone and wire communications.

## GENERAL ALLEGATIONS

### Background

28.   Plaintiffs engage in business activities in and around Southern California, Nevada, and elsewhere. Among other business activities, they seek to make investments in ventures that they deem worthwhile. Each plaintiff has made prior investments independent of the other three for many years. In the matter that gives rise to this action, all four plaintiffs have invested collectively over $2,000,000.00 in the Pharma Pak venture, most of this money being taken by Edalat rather than being invested in Pharma Pak, which is a corporation in which they were induced to initially invest, or pay Edalat to secure a stock interest in, and they were induced to thereafter further invest both time and money, by the many false representations of Edalat, and

COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

by the false statements of co-defendant Karpinski made later in order to induce the plaintiffs to continue to invest and to lull them into not filing suit or otherwise seeking to bring defendant Edalat, defendant Karpinski, or the other defendants to justice for the wrongdoing they have engaged in, including the fraud that induced their initial investments into Pharma Pak.

29.   Paul Edalat is a fraud. He has lived on other peoples' money for many years, inducing them to make investments with him by fraudulent statements about his net worth, and about the viability of the investments involved. While pretending to be wealthy and a successful business person, he is a failure, a failure that he fraudulently conceals from those he induces to invest with him.

30.   While pretending to be a successful business person with lavish wealth that he ostentatiously displays in the manner described in paragraph 4, above, Edalat is not a success. He filed bankruptcy in 2005 and was discharged when the bankruptcy trustee certified that he had no assets. He filed bankruptcy again in July, 2014 and, in that bankruptcy proceeding, while he listed many debts he sought to have discharged, he knowingly failed to list on his bankruptcy schedules many assets in which he had an interest, and did not disclose assets that he had transferred to third parties, fraudulently, in contemplation of bankruptcy.

31.   Doing so was not just a fraud on the bankruptcy court, but was also damaging to his investors, including plaintiffs,  since his false statements put further at risk assets that they believed were part of or would support the ventures of Edalat in which they had invested.

32.   When Edalat was questioned under oath about his assets by counsel for the bankruptcy trustee, he made false statements about those assets in order to conceal those assets. Thereafter, when he was questioned again after certain of his assets were discovered, he refused

COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

11

to answer, asserting that if he answered the questions being asked him about these assets, this might incriminate him criminally. This again put plaintiffs investment further at risk.

### The Specifics of the Pharma Pak Fraud

33.   Commencing in late 2014 and continuing through the present time, Edalat has obtained more than $2,000,000.00 from plaintiffs by the following actions:

(a)    Statements by Edalat to plaintiff Cahill, made commencing in December 2014, and to plaintiffs Cullen, Scott, and Franco made starting in approximately September, 2015 and continuing through December, 2015, that he (Edalat), through Scilabs and Sentar, controlled a valuable patent on a process, called an "All Natural Non-Toxic Sublingual Drug Delivery System" (hereinafter referred to as the "patent") that would allow the most effective delivery of drugs and nutraceuticals sublingually; that this patent was already viable in many countries, that an application for it was filed and being professionally pursued in the United States by a top-flight patent law firm; that it was available for use already and that its final approval was expected by August, 2015. Edalat also showed plaintiffs a letter from those patent lawyers dated August 26, 2014 making positive statements about the pursuit of this patent without telling them that all the lawyers' work had stopped because Edalat had not paid the legal fees needed to have the work completed;

(b)    In truth, as Edalat then well knew, this "patent" would not be approved by August, 2015 because, among other reasons he well knew, Edalat had not paid the patent attorneys for their ongoing work, they were owed in excess of

COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

$200,000.00 dollars for past work, and would not continue working on the patent until they were paid, which Edalat refused to do;

(c)     Edalat also made lulling statements to all plaintiffs, made by Edalat to plaintiff Cahill to be passed along to all plaintiffs, that the patent lawyers had not stopped working on the patent and had written off the $200,000.00 legal bill because it was "fraudulent," when Edalat knew well that the lawyers had not done so and were not working on the patent;

(d)     Edalat's false statements about his "patent" were material since plaintiffs wanted to invest in the manufacture and distribution of certain drug and pharmaceutical products and having such a patent would enhance their operations significantly by giving the plaintiffs a competitive edge against those competitors offering competing but inferior sublingual products;

(e)     Edalat's false statements about his "patent" were further material because, as shown in more detail below, Edalat induced plaintiffs to invest in Pharma Pak by promising that if they did, he would allow them to invest in Sentar, which had access to the patent, or that the patent rights would become available to Pharma Pak, and Edalat, along with Karpinski, stated to them that this patent would generate many hundreds of millions of dollars because it would allow Sentar or Pharma Pak to out-compete other sublingual drug delivery process;

(f)     Edalat told plaintiff Cahill in November and December, 2014 and in January and February, 2015, that Edalat had obtained for Pharma Pak a valid drug manufacturing license from the state of California that would allow a building he owned (at 17809 Gillette Ave, in Irvine, California) to serve as a state-

COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

13

authorized site to manufacture or process certain pharmaceuticals and other regulated items. In truth and in fact, that license was not valid for use at the Gillette address and would not allow such manufacturing. Moreover, Edalat presented a brochure stating that the Gillette facility was a federally licensed manufacturing facility when he well knew it was not. These false representations were material because, if there had been such valid licenses, it would allow the investing plaintiff at that time, Cahill, and later the other plaintiffs when they invested, to more quickly commence the sales of their intended products;

(g)   In furtherance of his false representation that Pharma Pak had a valid manufacturing license, Edalat showed the plaintiffs such a license in the name of "Pharma Pak" and represented it to be the license of the company in which plaintiffs were investing, the newly-formed Pharma Pak.  However, that manufacturing license was in fact, as Edalat well knew, not issued to Pharma Pak, but rather had been issued to another company, Scilabs, which had a d/b/a name "Pharma Pak." Edalat had obtained the manufacturing license under Scilab's d/b/a name, Pharma Pak, rather than under the name Scilabs, but the license was in fact the property of and only licensed to Scilabs. Therefore, as Edalat well knew, that license would not operate to allow the newly-formed Pharma Pak to use that license to manufacture or in any way deal with any pharmaceuticals or related products. This information was discovered by Cahill in or around October or November, 2015 and not before Cahill had already invested substantial sums of money, in part based on Edalat's representations

COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

14

about the manufacturing license. This supposed manufacturing license and its

supposed availability to the newly formed Pharma Pak was material because,

had that license actually authorized the newly-formed Pharma Pak to process

and sell products, it would have allowed Pharma Pak, and the plaintiffs to

commence business much more quickly and that would have resulted in

generating sales and thus profits more quickly. Moreover, because the

manufacturing license had been cancelled, as Edalat well knew, obtaining a new

manufacturing license, which was required, became much more difficult

because of the name association involving the new Pharma Pak and the d/b/a

Pharma Pak that had been used by Edalat in the by now shut down Scilabs;

(h)     Edalat posted on the internet and stated to Cahill and others through that posting

that his company, Scilabs, had an "unblemished history of safe, compliant

nutraceutical production, and had a long track record of producing only the

safest and highest quality nutritional supplements, with a strong and consistent

focus on quality and safety." This was knowingly false because Edalat and

Scilabs had been repeatedly warned as of the time he made these statements by

the FDA that his nutraceutical operation was in violation of the safety standards

required by federal law. This misstatement was material to the investor

plaintiffs because they believed that his alleged long history of unblemished

success would enhance their Pharma Pak investments;

(i)     Edalat stated that he owned Sentar which he and Karpinski claimed to own the

valuable patent referred to above, that Sentar was valued at $60,000,000.00, that

it had near limitless growth opportunities in various countries because of

COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

Edalat's longstanding relationships with government and business leaders in various countries, including Abu Dhabi, Dubai, and Iran, which would allow Edalat, Karpinski, and Sentar to circumvent the importation laws in these countries, into which he assured plaintiffs that he could import for sale tens of millions of dollars of Sentar products on orders he already had lined up. Edalat along with Karpinski posted on the internet in interstate commerce a statement about Sentar as follows:

> Sentar has established relationships in countries across the globe with partners well-known in their respective markets. While these associates bring the local infrastructure needed for manufacturing and distribution, Sentars' team brings United States Food and Drug Administration standards, along with business development experience to emerging markets in desperate need of access to safer drug supplies. This is where Sentars' team of experts and innovators can close the gap between emerging and established pharmaceutical manufacturing markets.

All of these representations were false because Edalat had no such easy access to these countries, had no FDA approval and indeed had been shut down by the FDA in the recent Scilabs venture, and did not have large importation orders of Sentar products lined up. These were material statements because investments in Pharma Pak were made by plaintiffs in part on the basis of the promise by Edalat to plaintiffs of a later opportunity to invest in Sentar which, based on Edalat and Karpinski's representations described above, they believed to be more valuable because of the ease with which Edalat said that imports of large sales orders of Sentar products could be made in those countries.  Edalat specifically promised plaintiff Cahill that he would ultimately receive a 10% share ownership in Sentar and promised plaintiffs Scott and Cullen a substantial

COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

share as well, and these promises were part of the inducement to these three plaintiffs to invest in Pharma Pak.

(j)  Commencing in June, 2015, Edalat and Karpinski represented to Pharma Pak investors including plaintiffs that if Karpinski was hired at a high salary to work as the Executive Sales Manager for Pharma Pak she would bring in many sales orders for its product, which was a skin patch allowing delivery through the skin of a certain cannabinoid oil which assisted with stopping tremors, reducing pain, and enhancing appetite in those being treated with  chemotherapy. This was material because, had she been able to make those high sales, this would have allowed Pharma Pak to prosper.

(k)  While she was paid this high salary by Pharma Pak, she made no such sales and did not attempt to do so for most of the time she was being paid. Instead, using Pharma Pak money and time, she repeatedly traveled to Las Vegas from the Orange County offices of Pharma Pak with Edalat so that they could spend extravagantly, staying and putting guests in suites and hosting lavish dinners to attempt to induce those guests to invest in Sentar which was not what she was being paid by Pharma Pak to do. On these trips Edalat and Karpinski ran up restaurant and bar bills in the thousands of dollars each night. These bills reflect paying for bottles of wine, Champagne, and other types of alcohol costing $400.00 and $500.00 each bottle, $10.00 bottles of water, multiple thousands of dollars for dinners and extravagant tips. These expenses were incurred month in and month out from July 2015 through January 2016 and were submitted by Edalat and Karpinski to Pharma Pak along with the false representation that this

COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

entertainment was in furtherance of making sales of Pharma Pak's product. This representation was false because what Edalat and Karpinski were in fact doing was attempting to secure investors for Sentar, a company in which Pharma Pak had no interest. These expense reimbursements were paid in reliance on the false representation that Pharma Pak business was being accomplished when in fact it was not even being attempted. In her entire time with Pharma Pak, being paid by it, Karpinski made not one sale and spent virtually all of her time attempting to secure investments for Sentar, working in combination with Edalat. Karpinski commenced spending almost all of her time with Edalat in Las Vegas and elsewhere attempting to raise money for Sentar rather than working for Pharma Pak, so that Cahill, the CEO of Pharma Pak, could frequently not locate her, much less was she working on the business of Pharma Pak. Karpinski and Edalat also, to further induce Cahill and the other investors not to object to these extravagant trips to Las Vegas, stated that they had secured orders for Pharma Pak from Chad Bennett through his company. This was false in that those orders never were placed;

(l)     Because these and other expenses were being incurred by Pharma Pak, plaintiff Cahill, in addition to his investment in Pharma Pak as a shareholder (discussed in more detail below), paid to Pharma Pak approximately $240,000.00 for operating expenses because, not only were Edalat and Karpinski running up many multi-thousand dollar bills many times each month under the false representation that they were attempting to make sales of Pharma Pak product in

COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

18

the manner described above, no sales were being made by Karpinski and thus Pharma Pak had no source of revenue.

(m)  In or around August of 2015, Edalat stated to plaintiff Cahill that Edalat had located a ready-to-use production facility in Henderson Nevada, located at 1850 Whitney Mesa, APN 161-32-714-017 (the "Whitman Mesa property") which, if purchased, could serve as a state-of-the-art production facility in which to process Pharma Pak products. He further stated that the Whitman Mesa property was large enough to serve simultaneously to process multi-million dollar orders of pharmaceutical products that would be made by Chad Bennett through his company Rx Pro Pharmacy and Compounding, Inc. ("Rx Pro") and that this Rx Pro processing would add significantly to the profitability of the ownership of the Whitman Mesa property. Edalat further stated that the Whitman Mesa property could be purchased for approximately $1,190,000.00 and that Edalat would form a company, Sentus Land Management, LLC ("Sentus"), and that company would hold the Whitman Mesa production facility. Rx Pro (Chad Barrett) would pay 50% of the money to buy the property and would own 50% of Sentus, and Cahill, any other investor, and Edalat would pay the other 50% if Cahill and Edalat could arrange the other 50% of the purchase money. Another investor was found who invested $180,000.00 of the buy-in for the 50% of Sentus to be owned by Edalat, Cahill, and that other investor. That left an additional $404,600.00 to be paid in by Edalat and Cahill. Edalat induced Cahill to "temporarily" fund Edalat's portion of the remaining purchase monies of $404,600.00 (Edalat's share being $202,300.00) by promising that if  Cahill

COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

advanced the entire $404,600.00 by the closing date, Edalat would repay to Cahill that $202,300.00 in one week.

(n)    As a result of the representations stated above, on or about August 18 and 19, 2015, by use of two separate interstate wire communications which had been induced by Edalat's representations described above, Cahill sent $404,600.00 from his bank in California to an escrow company named Nevada Title & Company Trust, in Las Vegas, Nevada, using interstate wire communications to do so.

(o)    The representations made by Edalat in order to induce these wires transfers were false in that Edalat did not pay $202,300 or any other sum to Cahill as Edalat had promised, and RX Pro and Chad Barrett did not use Whitman Mesa property to process any orders on behalf or Pharma Pak, and instead Rx Pro is a company now in bankruptcy. Moreover, without any notice to or agreement with Cahill, Edalat and Karpinski allowed Sentar to move in to the Whitman Mesa property and operate from it. Finally, Cahill and his other investor did not receive 50% of Sentus as Edalat had been promised, but instead received only a 45% interest, leaving a 55% interest to Rx Pro, now in bankruptcy.

34.   In addition to the affirmative misstatements referred to above, defendant Edalat fraudulently omitted disclosing the following matters until plaintiff Cahill discovered them:

(a)    that Scilabs had been shut down by the FDA and the federal court because of its failure to comply with federal food safety standards;

(b)    that Edalat was in bankruptcy;

COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

20

35.   As a result of all or some of the forgoing misstatements and omissions, each of the plaintiffs invested in the newly-formed Pharma Pak by purchasing the following percentage of shares for the following amounts:

- Plaintiff Cahill, between November 2014 and March, 2015 paid $500,000.00 to Edalat and committed himself to work fulltime as the CEO of Pharma Pak; and received 40% of the Pharma Pak shares in exchange;

- Plaintiff Cullen, in or around October, 2015 paid $250,000.00 to Edalat, and committed to work at Pharma Pak, and received 5% of the Pharma Pak shares.

- Plaintiff Scott paid $500,000.00 to Edalat in two installments in or around October and December, 2015, and received 5% of Pharma Pak shares. As a further inducement to Scott to obtain this investment, Edalat falsely told Scott that the offer of these Pharma Pak shares was a "once in a lifetime deal" that Edalat was offering to nobody else, when in truth and in fact, as Edalat then well knew, he had already sold shares of Pharma Pak stock to other persons, and this statement was material because Scott did not want to invest and thus share control with persons he had not met and did not know;

- Plaintiff Franco  paid $750,000.00 to Pharma Pak in or around commencing in October, 2015 and received 7.5% of Pharma Pak shares.

36.   By in or around February, 2016, the misrepresentations made by Edalat and Karpinski had become known to plaintiffs. In order to prevent Cahill, the Pharma Pak CEO, from disclosing all of the fraud of Edalat and Karpinski, and from taking actions against them for all of the fraud described in this Complaint, Edalat and who he claimed to be a retired Newport police officer named Chuck Freeman, met with plaintiff Scott and told him that they planned to "get rid

COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

of Cahill"  and "get him" and "embarrass him." There were also such threats against other plaintiffs by Edalat.

37.   Edalat and Karpinski then planted illegal controlled substances, namely THC and marijuana, in the office of the Pharma Pak Chief Scientist and then telephoned the Irvine, California police department and informed them of the illegal drugs in the office of the Chief Scientist and also stated, falsely that that scientist and Cahill were manufacturing and distributing illegal drugs. This was in an attempt to intimidate Cahill and prevent him from taking actions against Edalat and Karpinski.

38.   Pharma Pak is now insolvent. All of the investment monies have been lost. None of these monies would have been invested by plaintiffs had they known the truth and but for the false representations, concealments and later lulling statements stated in this Complaint, plaintiffs would not have invested.

## CAUSES OF ACTION

### COUNT I

### (Against All Defendants for Violation of RICO Under 18 U.S.C. §§ 1961-1968)

39.   Plaintiffs reallege each and every allegation stated above as if separately repleaded in full herein.

40.   Defendants Edalat and Karpinski, along with others acting with them, including Sentar, Blue Torch, and LIWA, formed an enterprise and, using it and acting through it, began a scheme to defraud and to obtain investment money and property by false pretenses, representations, and promises by using and causing to be used interstate and foreign wire communications, in violation of Title 18 U.S.C. § 1343 (wire fraud), doing so in what has been and continues to be a pattern of criminal activity. In furtherance of the fraudulent scheme

COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

described in paragraph 33 (a) through (o) of this Complaint, defendants used or caused to be used interstate and foreign wire communications as follows, among many others, each of which is a separate predicate act within the meaning of RICO, in violation of 18 U.S.C. § 1962, and thereby proximately causing injury to the business and property of the plaintiffs within the meaning of 18 U.S.C. § 1964:

- at least ten interstate wire communications made to collect monies paid to Edalat and deposited in the Bank of Manhattan and other Banks between December, 2014 through December 2015, all to collect the investment monies paid by plaintiffs to invest in Pharma Pak as alleged in paragraph 35 of this Complaint;

- two interstate wire communications made respectively on or around August 18 and 19, 2015 by plaintiff Cahill from Cahill's bank in California and sent to the Nevada Title Company in Nevada which wire communications took the form of two separate wire transfers in the amount of $202,300.00 each to assist in the purchase of the Whitman Mesa property in the manner described in paragraphs 33(m), (n), and (o) of this Complaint;

- a wire communication sent on August 21, 2015 from Nevada to California showing assignment of the Whitman Mesa property to Sentus Land Management, LLC;

- a wire communication sent on August 21, 2015 from Nevada to California showing the escrow statement made by the Nevada Title Company on the sale to Sentus of  the Whitman Mesa property to Sentus Land Management, LLC, such sale being referred to in paragraphs 33(m), (n), and (o) of this Complaint;

- at least eight interstate wire communications between July 2015 and January 2016 used to make payments from Pharma Pak and its bank to Karpinski through her bank for her

COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

fraudulently-earned salary payments as referred to in paragraphs 33(j), (k), and (l) of this Complaint;

- at least six interstate wire communications between July 2015 and January 2016 used to make payments from Pharma Pak and its bank to Karpinski through her bank for her fraudulently-claimed expense reimbursements she said were due from Pharma Pak and which she falsely stated to have been incurred while supposedly trying to make sales in her capacity as the sales person for Pharma Pak, as referred to in paragraphs 33(j), (k), and (l) of this Complaint;

- at least six interstate wire communications between July 2015 and January 2016 used to make payments from Pharma Pak and its bank to Edalat through his bank for Edalat's fraudulently claimed expenses he said were due from Pharma Pak and which he falsely stated to have been incurred  while supposedly trying to assist Karpinski in making sales for Pharma Pak, as referred to in paragraphs 33(j), (k), and (l) of this Complaint;

-  a standing interstate wire communication posted in interstate commerce on the internet containing and which has been posted from at least as early as December 12, 2014 and continuing until the filing of this Complaint in April, 2016,  Edalat's statement that his company Scilabs had an "unblemished history of safe, compliant nutraceutical production, and had a long track record of producing only the safest and highest quality nutritional supplements, with a strong and consistent focus on quality and safety," as referred to in paragraphs 33(h) of this Complaint;

-  a standing interstate wire communication posted in interstate commerce on the internet comprising a fraudulent statement by Edalat describing Sentus and Sentus's patent and

promoting the Sentus opportunity in the manner referred to in paragraphs 33(i) of this Complaint;

- a standing interstate wire communication posted in interstate commerce on the internet comprising a fraudulent "Sentar presentation" posted by Edalat and Karpinski describing Sentar and Sentar's patent and promoting investment in Sentar, calling it "the Sentus opportunity," in the manner referred to in paragraph 33(i) of this Complaint; and

- numerous emails from Karpinski and Edalat made in furtherance of the scheme to defraud described in this complaint.

41. Defendants evidenced specific intent to defraud plaintiffs because the practical effect of the scheme was that plaintiffs invested money in defendants which they misused for personal, unapproved purposes.

42. Each of the defendants associated themselves with the above-described RICO enterprise by working together and making the fraudulent representations to plaintiffs, alleged at paragraphs 28 through 37 of this Complaint, with the intent to induce and in fact inducing plaintiffs to invest in the Pharma Pak venture because plaintiffs relied on defendants' false representations. Defendants agreed to and did conduct and participated in the enterprise's affairs in order to fraudulently obtain investment money which they misused for unapproved purposes including to their personal benefit and to fund a luxurious lifestyle.

43. The defendants associated with each other by communicating and by coordinating their efforts to make false statements in an attempt to defraud the plaintiffs of investment money through a pattern of interstate and foreign wirings extending from late 2014 to the present time. This pattern establishes the RICO enterprise by showing the association of these defendants to

COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

knowingly make misrepresentations to deceive plaintiffs and obtain investments through illegal use of interstate wire communications in violation of the federal wire fraud statute.

44. This pattern poses the threat of continuing. The first predicate act of this scheme, for example, dates back to 2014 and continues to the present time and is ongoing.

45. Defendants' alleged wrongful conduct is in violation of 18 U.S.C. § 1962(c) because defendants participated directly in the conduct of an enterprise through a pattern of racketeering activity including wire fraud alleged above. Defendants schemed to do so in a manner proscribed by 18 U.S.C. § 1343 and aided and abetted each other in that scheme, in violation of 18 U.S.C. §1962(c).

46. Defendants' conduct is also in violation of 18 U.S.C. § 1962(d) because defendants conspired to violate the provisions of subsection (c) of 18 U.S.C. § 1962, by intentionally combining and agreeing with each other to directly and indirectly participate knowingly in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

47. As a direct and proximate result of the defendants' racketeering activities and violations of 18 U.S.C. § 1962(c) and (d), plaintiffs have been injured in their business and property within the meaning of 18 U.S.C. § 1964 by loss of investment funds of at least $2,000,000.00 and by lost income and other damages, all in an amount to be proved at trial. Plaintiffs are also entitled to recover treble damages and reasonable attorneys' fees.

## COUNT II

### (Against Defendants Edalat and Karpinski for Violation Of Section 10(b) And Rule 10b-5 Promulgated Thereunder)

48. Plaintiffs reallege each and every allegation stated above as if separately repleaded in full herein.

COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

49.   This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule l0b-5 promulgated thereunder by the SEC.

50.   As shown in the allegations above, defendants engaged in a plan, scheme, conspiracy, and course of conduct pursuant to which they knowingly or recklessly engaged in acts, transactions, practices, and courses of business which operated as a fraud and deceit upon plaintiffs; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading; and employed devices, schemes, and artifices to defraud in connection with the purchase and sale of shares. Such scheme was intended to, and throughout the time of the scheme, did: (i) deceive the investing public, namely plaintiffs, as alleged herein; (ii) misrepresented the value and assets of the Pharma Pak venture; (iii) misrepresented how investment funds were to be used to the benefit of the venture; (iv) and caused plaintiffs to rely on these material misrepresentations and omissions and purchase stock in Pharma Pak.  In furtherance of this unlawful scheme, plan, and course of conduct, defendants, each of them, took the actions set forth herein.

51.   Pursuant to the above scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in making the misrepresentations to plaintiffs, alleged above at paragraphs 28 through 37 of this Complaint designed to induce and did induce plaintiffs to purchase stock based on those materially false and misleading statements in that they misrepresented the truth about the Pharma Pak product, patents, and manufacturing license and failed to disclose material, adverse information all as alleged above.

52.   Both defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive plaintiffs, or in

COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

the alternative, the defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts, misstatements, and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

53.   Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. The individual defendants had knowledge of the details of the Pharma Pak venture and well knew the falsity of all of the misrepresentations alleged in this Complaint.

54.   Plaintiffs, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, purchased shares in Pharma Pak at prices artificially inflated by defendants' wrongful conduct. Had plaintiffs known the truth, they would not have purchased said shares, or would not have purchased them at the inflated prices that were paid, or in the quantity purchased, or at all.

55.   By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

56.   As a direct and proximate result of defendants' wrongful conduct, plaintiffs suffered damages to be proved at trial in connection with their respective purchases of Pharma Pak shares, including at least $2,000,000.00.

## COUNT III

### (Against Defendants Edalat and Karpinski for Fraud and Deceit Under California State Law)

COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

57.   Plaintiffs reallege each and every allegation stated above as if separately repleaded in full herein.

58.   Defendants repeated, intentionally false statements to plaintiffs, in the manner alleged above at paragraphs 28 to 37 of this Complaint and these include affirmative false statements as therein described, all of which were either knowingly false when made by defendants Edalat and Karpinski, or those defendants had no reasonable ground for believing these statements were true, or were promises made without any intention of performing them.

59.   Defendants intended that plaintiffs rely on the false statements. Plaintiffs justifiably relied on the false statements about the Pharma Pak and the other in deciding to buy shares of Pharma Pak.

60.   Defendants intentional false statements have caused plaintiffs damages, including lost revenues, income, and investment monies in an amount to be proved at trial. Through their actions, defendants intended to cause plaintiffs injury and carried on their actions with willful and conscious disregard of the rights of plaintiffs.

61.   As a direct and proximate result of defendants' wrongful conduct, plaintiffs suffered damages to be proved at trial in connection with their respective purchases of Pharma Pak shares, including at least $2,000,000.00.

## COUNT IV

### (Against Defendants Edalat and Karpinski for Fraud by Concealment Under California State Law)

62.   Plaintiffs reallege each and every allegation stated above as if separately repleaded in full herein.

COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

63. Defendants repeatedly and intentionally concealed and/or suppressed material facts, as alleged in paragraphs 25 through 37 of this Complaint, which defendants had a duty to disclose to plaintiffs when offering sale of stock in Pharma Pak.

64. Defendants intentionally concealed and/or suppressed the facts alleged herein with the intent to defraud plaintiffs by inducing the plaintiffs to rely on the materially misleading information provided.

65. Plaintiffs were unaware of the omissions and concealed facts at the time of their Pharma Pak stock purchases and investments and plaintiffs would not have purchased stock in Pharma Pak and joined defendants' venture if they had known of the concealed and/or suppressed facts alleged herein.

66. As of result of defendants' concealment, plaintiffs suffered damages, including lost revenues, income, and investment monies in an amount to be proved at trial.

67. As a direct and proximate result of defendants' wrongful conduct, plaintiffs suffered damages to be proved at trial in connection with their respective purchases of Pharma Pak shares, including at least $2,000,000.00.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff demands relief as follows:

A. For an award of damages to each plaintiff in the amount each plaintiff proves at trial;

B. For treble damages to each plaintiff on the damage amounts under Count I, the RICO claim;

C. For the reasonable attorneys' fees incurred by plaintiffs to file and prosecute RICO action;

D. For all taxable costs allowable; and

COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

E. For such other and further relief as to this Court seems just.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiffs hereby demand a trial by jury on all issues so triable.

Dated:   April 12, 2016                          Respectfully submitted,

                                                 MARKHAM & READ

                                                 By: /s/ John J.E. Markham, II
                                                     John J.E. Markham, II
                                                     Attorney for Plaintiffs

COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.