John J.E. Markham, II (CA Bar No. 69623)
Elizabeth Read (CA Bar No. 87618)
MARKHAM & READ
One Commercial Wharf West
Boston, Massachusetts 02110
Tel: (617) 523-6329
Fax: (617) 742-8604
Email: jmarkham@markhamread.com
            eread@markhamread.com

Attorneys for Plaintiffs
BRUCE CAHILL, GREG CULLEN,
SHANE SCOTT, RON FRANCO, and
PHARMA PAK, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| BRUCE CAHILL, an individual, GREG CULLEN, an individual, SHANE SCOTT, an individual,  RON FRANCO, an individual, and PHARMA PAK, INC. a California Corporation,<br><br>    Plaintiffs,<br><br>                 -- vs. --<br><br>PAUL PEJMAN EDALAT, an individual, OLIVIA KARPINSKI, an individual, FARAH BARGHI, an individual, SENTAR PHARMACEUTICALS, INC., a Nevada corporation, BLUE TORCH VENTURES, INC., a Wyoming Corporation, LIWA, N.A., INC., a Wyoming Corporation, SENTUS LAND MANAGEMENT, LLC, a Wyoming Limited Liability Company,<br><br>    Defendants. | CASE NO:  8:16-cv-00686-AG-DFM<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES FOR DEFENDANTS' VIOLATIONS OF THE FEDERAL RICO LAW AND THE FEDERAL SECURITIES LAW; FOR FRAUD AND DECEIT, AND FOR DECEIT BY CONCEALMENT UNDER CALIFORNIA STATE LAW; FOR THE IMPOSITION OF A CONSTRUCTIVE TRUST ON REAL PROPERTY PROCURED BY FRAUD UNDER CALIFORNIA STATE LAW; AND FOR A DECLARATORY JUDGMENT UNDER STATE LAW AND UNDER THE FEDERAL DECLARATORY RELIEF LAW**<br><br>**JURY TRIAL IS DEMANDED ON ALL ISSUES SO TRIABLE** |

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

1

1

2  COME NOW Plaintiffs Bruce Cahill, Greg Cullen, Shane Scott, Ron Franco, and Pharma

3  Pak, Inc. (sometimes referred to herein collectively as "Plaintiffs") and file this First Amended

4  Complaint for Damages, Establishment of a Constructive Trust, and Declaratory Relief against

5  defendants Paul Pejman Edalat, Olivia Karpinski, Farah Barghi, Sentar Pharmaceuticals, Inc.,

6  Blue Torch Ventures, Inc., LIWA, N.A., Inc., and Sentus Land Management, LLC. This First

7  Amended Complaint is filed under the authority of Rule 15(a)(1)(B) of the Federal Rules of Civil

8  Procedure, which allows such an Amended Complaint as a matter of course, without leave of

9  Court.

10

11

12  **NATURE OF THIS ACTION**

13  1.   The plaintiffs in this action bring their claims against the named defendants under the

14  laws of the United States within the meaning of 28 U.S.C. § 1331, as is more particularly alleged

15  in paragraphs 27 and 28 hereof under the "Jurisdictional Statement." They also bring California

16  state claims under this Court's supplemental jurisdiction conferred by 28 U.S.C. § 1367, as more

17  fully alleged in paragraphs 27 and 28.

18

19  2.   Plaintiffs are individuals who engage in business activities in and around Southern

20  California, Nevada, and elsewhere. Among other activities, they seek to make investments in

21  ventures that they deem worthwhile.

22

23  3.   Defendant Paul Edalat ("Edalat") is a fraud who has for many years engaged in

24  various schemes and artifices to defraud others and to obtain their money by false and fraudulent

25  pretenses. He uses the following conduct as his method of operation and combines with other

26

27

28

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

people who participate with him in his fraudulent conduct, including in this case the other named defendants:

    (a)    He makes fraudulent statements about ventures to induce others to invest in those ventures;

    (b)    He falsely states to prospective investors that he or the ventures involved have valuable assets when in fact there are no such assets;

    (c)    He conceals from investors and prospective investors many material facts about himself and his prior financial failures and misconduct in order to induce these individuals to invest or to make further investments;

    (d)    He misuses investment funds once he has fraudulently induced investors to invest their money;

    (e)    He fails to honor the promises he has made to investors once he has fraudulently induced them into investing their money;

    (f)    He lulls his investors to invest more time and money in the ventures involved, and not to abandon the venture involved, by making further false statements to them once they suspect that he made false statements in order to obtain their initial investments; and,

    (g)    When investors discover his fraudulent conduct, Edalat threatens investors and makes defamatory statements about them in order to intimidate them into keeping silent about such conduct.

    4.   Defendant Edalat lives off other peoples' money that he has procured by fraud. Edalat purposefully maintains a highly-visible and extravagantly wealthy lifestyle by staying in

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

luxury suites, wearing a diamond-studded gold Rolex watch which he brags that he purchased for more than $50,000.00, by organizing extravagantly fancy dinners and weekend retreats, and by driving fancy cars, including two Rolls Royces, three Lamborghinis, a Land Rover, a BMW, a Ferrari, and a Hummer, among others. This lifestyle is used by him in order to create the illusion with potential investors that he has successfully managed profitable ventures so that potential investors will be duped into investing with him. He frequently has these fancy automobiles, along with other assets, such as a Las Vegas penthouse, held in the names of other persons to disguise from the authorities that he is the true owner of these luxury assets and yet uses these assets as his own to lure investors.

5.   Once he obtains investment monies, Edalat then uses them to further his high lifestyle and thus his ability to induce additional such investors into investing with him and into his ventures, by making fraudulent statements to them about the assets already held by those ventures, and by showing off his high lifestyle funded by other peoples' money. When it all catches up to him, he declares bankruptcy in an attempt to rid himself of debts so that he can continue with his ability to defraud still more investors.

6.   In bankruptcy, he knowingly files incomplete schedules of his assets, hiding them from the bankruptcy trustee and thus from his creditors. He then perjures himself under oath when asked about his assets in order to hide them. While thus acting in the bankruptcy court in this fraudulent manner, he continues to pretend to potential investors that he is very successful and thus fully capable of supporting his luxurious lifestyle by the earnings from his business success. In falsifying his bankruptcy schedules and failing to disclose assets, he puts the assets in

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

which his investors have an interest at risk, and fraudulently fails to disclose to investors that he has done so.

7.    Edalat has used the above-described fraudulent methods to induce the plaintiffs in this action to invest in various of his ventures, including a company named Pharma Pak, Inc. ("Pharma Pak") which was, Edalat assured plaintiffs, set up and well-positioned to market pharmaceuticals and other products. In total, plaintiffs have invested more than $2,000,000.00 in Pharma Pak.

8.    Edalat commenced his scheme to obtain investment monies from Plaintiffs for the Pharma Pak venture in the middle of 2014. Since in or around June, 2015, Edalat has been aided and abetted in the fraudulent activities aimed at the plaintiffs by defendant Olivia Karpinski ("Karpinski"), defendant Farah Barghi ("Barghi"), and the other defendants, who have combined with Edalat to further his fraudulent conduct against Plaintiffs by acting in concert with Edalat in the manner described below.

9.    Edalat, Karpinski, Barghi, Sentar Pharmaceuticals, Inc., Blue Torch Ventures, Inc., LIWA, N.A., Inc., and Sentus Land Management, LLC, along with others, have engaged in a scheme to defraud and to obtain money and property of the plaintiffs by false pretenses, representations, and promises, and to further their scheme to defraud the plaintiffs by using and causing to be used interstate and foreign wire communications, in violation of Title 18 U.S.C. §1343, the federal wire fraud statute. Edalat commenced this scheme in early 2014 and the other defendants, acting in concert with him, joined the scheme with Edalat to further defraud the plaintiffs commencing in June, 2015. Defendants Sentar Pharmaceuticals, Inc., Blue Torch Ventures, Inc., LIWA, N.A., Inc., and Sentus Land Management, LLC. are controlled by Edalat,

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

who has been aided and abetted in that control by Karpinski and Barghi since in or around June, 2015, and by each of the above-named corporate defendants, through the actions of Edalat, Karpinski and Barghi that legally bind these entity defendants, have combined with Edalat, Karpinski and Barghi and with each other to injure the plaintiffs in their business and property, all as described further below.

10.   Defendant Edalat also possessed and distributed at least two Schedule I controlled substances, THC and marijuana, in violation of Title 21 U.S.C. § 841, and Karpinski aided him in his effort to use and distribute those controlled substances in an attempt to frame the chief scientist of Pharma Pak, along with Pharma Pak CEO Bruce Cahill ("Cahill"), by planting these controlled substances in Pharma Pak's chief scientist's offices and then calling the police to falsely state that these controlled substances were possessed for manufacture and sale by the chief scientist and Cahill. Defendants Edalat and Karpinski have also obstructed or attempted to obstruct justice in violation of 18 U.S.C. § 1503 by endeavoring corruptly to stop the prosecution of this lawsuit by stating that they had "dirt" on the plaintiffs, would reveal that dirt, would show what they purported to believe were compromising photographs of plaintiff Cahill, and would commit other acts to try to frighten plaintiffs into not pursuing this lawsuit.

11.   Defendants have committed these federal crimes, all of which qualify as predicate acts under the Racketeer Influenced and Corrupt Organization Act ("RICO"), as defined in Title 18 U.S.C. §1962. These defendants, as shown below, have joined, become a part of, and are engaging in an enterprise within the meaning of the RICO statute. The actions of this illegal enterprise have injured the business and property of the plaintiffs in that they caused the loss of

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

over $2,000,000.00 in investment monies of plaintiffs and other injury to their business and property. This injury gives rise to a claim for damages under 18 U.S.C. § 1964.

12.   Through much of the same fraudulent conduct described in this Amended Complaint, all committed in interstate commerce, Defendants Edalat and the entity defendants have also violated the federal securities laws, namely, the Private Securities Litigation Reform Act, 15 U.S.C. § 78 U-4 and Rule 10b–5, promulgated by the Securities and Exchange Commission pursuant to section 10(b) of the 1934 Securities Exchange Act, which makes it unlawful for any person to use "manipulative or deceptive device[s]" in connection with the purchase or sale of securities. 15 U.S.C. § 78j(b). Specifically, defendants did combine to and did "(a) ... employ . . . any device, scheme, or artifice to defraud; (b) ... make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) ... engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5. Defendant Edalat and the entity defendants sold and attempted to sell securities to plaintiffs in violation of these laws and plaintiffs seek damages and an award of attorneys' fees as a result of the injury they have suffered by this securities fraud.

**THE PARTIES AND HOW THEY INTERACT IN THE CHARGED FRAUD**

13.   Plaintiff Bruce Cahill ("Cahill") is a citizen of the state of California, domiciled in Orange County, California.

14.   Plaintiff Greg Cullen ("Cullen") is a citizen of the state of California, domiciled in Los Angeles County, California.

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

7

15. Plaintiff Shane Scott ("Scott") is a citizen of the state of Utah, domiciled in, Utah.

16. Plaintiff Ron Franco ("Franco") is a citizen of the state of California, domiciled in Los Angeles County, California.

17. Plaintiff  Pharma Pak, Inc. ("Pharma Pak") is a California corporation; plaintiff Cahill is the CEO of Pharma Pak; and Pharma Pak is the primary entity that Edalat used in order to induce the other plaintiffs to pay money to Edalat under the false pretenses and fraudulent scheme described in this First Amended Complaint.

18. Defendant Paul Pejman Edalat is a citizen of the state of California, last known to be domiciled in Orange County, California.

19. Defendant Olivia Karpinski is a citizen of the state of California and is last known to be domiciled in either Orange County or Los Angeles County, California. As Edalat has said, "[G]ive me a Rolls Royce and Olivia [Karpinski], and I can get anyone to invest." Karpinski accompanies Edalat on his meetings and weekend retreats with potential investors in other ventures not related to Pharma Pak, and she aids him in his misrepresentations to those investors, using large sums of money that Plaintiffs invested in Pharma Pak in this unauthorized and fraudulent manner, while falsely telling one or more of the plaintiffs that she and Edalat are using these funds to secure sales orders for Pharma Pak, which she knows to be false.

20. Defendant Farah Barghi ("Barghi") is a citizen of Nevada, domiciled in Las Vegas, Nevada. Edalat has been aided and abetted in the fraudulent activities described in this Amended Complaint by co-defendant Farah Barghi who acts as Edalat's front and agent in relation to the activities of defendants Blue Torch Ventures, Inc., Sentar Pharmaceuticals, Inc., and Sentus Land Management, LLC, in the manner described below that is fraudulent and has damaged Plaintiffs.

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

21.   Defendant Blue Torch Ventures, Inc. ("Blue Torch") is a Wyoming Limited Liability Company formed under the laws of Wyoming. It was formed there in September, 2014, despite the fact that neither Edalat nor anyone else involved has any ties with that state, only because that state does not require entities organized under its laws to be identified publicly.  Defendant Barghi formed Blue Torch at the direction of Edalat and Barghi is listed as the sole shareholder. However, the company is in fact controlled by Edalat through EFT Holdings, the Edalat Family Trust, which is controlled by Edalat, who is also its sole trustee. Barghi knowingly acts as a front for Edalat with Blue Torch and does his bidding in the use of this entity to further Edalat's fraudulent activities, for which she is paid.

22.   Defendant Sentar Pharmaceuticals, Inc. ("Sentar") is a Nevada corporation with its principal place of business in Las Vegas, Nevada. Sentar is 91% owned by Blue Torch and run by Barghi on behalf of Edalat, who controls Barghi and who represented to Plaintiffs that he owned all of the stock in Sentar. Both Blue Torch and Sentar are controlled by Edalat, who uses Barghi, a co-conspirator and as part of the enterprise, as a front to do Edalat's bidding with Blue Torch and Sentar. Barghi is actively involved in giving Sentar presentations to prospective investors, providing the company overview, and providing Sentar's private placement memorandum to many potential investors, a memorandum containing material false statements, as described below. Plaintiffs have received and relied upon this private placement memorandum in making investments in Pharma Pak. Barghi created and maintains the website for Sentar, controls its content, orders the company supplies, and handles accounts and expenses. Sentar is used by Edalat, Barghi, and Karpinski to raise and to attempt to raise money under false and fraudulent pretenses, specifically, that Sentar holds a valuable patent right to a sublingual process

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

to deliver certain drugs, supplements, and nutraceuticals more effectively than any competing product, all as further alleged in paragraph 36 of this First Amended Complaint. This representation is false, as Edalat, Barghi, and Karpinski well know, but they use it to raise and attempt to raise investment money, as shown in more detail below in paragraph 36.

23.   Sentar was formed by Barghi on behalf of Edalat in early 2016 to take over operations from a prior Edalat-owned entity, Scilabs Nutraceuticals, Inc. ("Scilabs"), which was shut down by a federal court order obtained by the United States Food and Drug Administration (the "FDA"). The Scilabs shutdown was ordered by the court based upon a showing of Scilabs' and Edalat's repeated, serious violations of the health and safety standards required by United States law. Prior to the entry of that order, Edalat and Scilabs repeatedly ignored warnings issued to them by the FDA commencing at least as early as 2012, during an inspection by the FDA, and then in 2013, when the FDA sent a follow-up written warning letter to Edalat because the FDA's oral warnings had not been heeded by Edalat.

24.   Edalat, Barghi, and Karpinski use Sentar as a shill to fraudulently procure new investment monies by falsely representing its value to be over $600,000,000.00, based upon its supposedly valuable  patent that the individual defendants claimed to have great value, but which in truth, as they well know, has no value anywhere near that amount.

25.   LIWA, N.A., Inc. ("LIWA") is a Wyoming limited liability company formed under the laws of the state of Wyoming. It was formed in September, 2014 despite the fact that neither Edalat nor anyone else involved has any ties with that state, only because that state does not require entities organized under its laws to be identified publicly. LIWA has a bank account used in part by Edalat to pass fraudulently-obtained investor monies, including that of the individual

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

plaintiffs, from the United States to foreign countries by using wires sent in foreign commerce to further the scheme to defraud, within the meaning of the wire-fraud statute, 18 U.S.C. § 1343. LIWA is controlled by Edalat and his actions are the actions of LIWA, his actions taken on behalf of LIWA bind LIWA because it is his *alter ego* in that it does not maintain a separate identity, is undercapitalized, and is under the total control of Edalat, in fact.

26.  Sentus Land Management, LLC is a Wyoming Limited Liability Company formed under the laws of Wyoming. It was formed there in August, 2015 to hold property purchased in substantial part by monies that Edalat fraudulently induced plaintiff Cahill to spend on said purchase, as more particularly alleged in paragraph 36 of this First Amended Complaint.  Sentus is controlled by Edalat, who is the agent of Sentus and, accordingly, the actions of Edalat in relation to the matters alleged in this First Amended Complaint, specifically in paragraph 36 (n), (o), (p), and (q), as well as those alleged in the Fifth Claim for Relief hereof, are the actions of Sentus because Edalat took those actions on behalf of and with the intent to benefit Sentus and he was acting within the course and scope of his agency on behalf of Sentus.

### JURISDICTION AND VENUE

27.  This Court has jurisdiction under 28 U.S.C. § 1331 over the First Claim for Relief of this First Amended Complaint because the First Claim for Relief arises under the laws of the United States, namely a claim by plaintiffs that the defendants have engaged in and continue to engage in a scheme to defraud and to obtain money and property from plaintiffs by false pretenses, representations, and promises, in violation of Title 18 U.S.C. § 1343 (wire fraud), doing so in what has been and continues to be an illegal enterprise that has injured the plaintiffs by and through a pattern of criminal activity in violation of 18 U.S.C. § 1962, and thus gives rise

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

to this First Claim for Relief under 18 U.S.C. § 1964. Defendants have also engaged in obstruction of justice, another predicate act and crime under the RICO statute, in violation of 18 U.S.C. §1503, by making threats in order to attempt to frighten Plaintiffs away from pursuing this lawsuit. This Court has jurisdiction over the Second Claim For Relief in this action under 28 U.S.C. § 1331 because the Second Claim for Relief arises under the laws of the United States, namely, Section 27 of the Exchange Act (15 U.S.C. §78aa) and under  Section 10(b) of the Exchange Act (15 U.S.C. §78j(b)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10). This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the Third Claim for Relief (fraud and deceit under California law), the Fourth Claim for Relief (fraudulent concealment under California law), the Fifth Claim for Relief (seeking to impose a constructive trust under California law), and the Sixth Claim for Relief, seeking a declaratory judgment under California law by invoking the Declaratory Judgment procedure specified in 28 U.S.C. § 2201, because these four state claims and the federal claims alleged in the First and Second Claims for Relief all arise from a common nucleus of facts and the state claims are so related to the federal RICO claim and federal securities claim stated herein that the state claims form part of the same case and controversy.

28.   Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims stated herein occurred within this District, and a substantial part of the property that is the subject of this action is situated here.

29.   Alternatively, venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §1391(b) because the acts, conduct, and other wrongs alleged in this Amended Complaint occurred in this District. In connection with the acts, conduct

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

and other wrongs alleged in this Amended Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, interstate telephone and wire communications.

## GENERAL ALLEGATIONS

### Background

30.   Plaintiffs Cahill, Cullen, Scott, and Franco (the "individual plaintiffs") engage in business activities in and around Southern California, Nevada, and elsewhere. Among other business activities, they seek to make investments in ventures that they deem worthwhile. Each individual plaintiff has made investments independent of the other three for many years. In the matter that gives rise to this action, however, all four individual plaintiffs collectively invested over $2,000,000.00 in the Pharma Pak venture. Most of this money was taken by Edalat rather than being invested in Pharma Pak. Thereafter, the individual plaintiffs were induced to further invest both time and money by the many false representations of Edalat, and by the false statements of co-defendant Karpinski made later in order to induce the plaintiffs to continue to invest and to lull them into not filing suit or otherwise seeking to bring defendant Edalat, defendant Karpinski, or the other defendants to justice for the wrongdoing they have engaged in, including the fraud that induced Plaintiffs' initial investments into Pharma Pak.

31.   Paul Edalat is a fraud. He has lived on other peoples' money for many years, inducing them to make investments with him by fraudulent statements about his net worth and about the viability of the investments he promoted. While pretending to be wealthy and a successful business person, he is a failure, a failure that he fraudulently conceals from those he induces to invest with him.

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

13

32.   While pretending to be a successful business person with lavish wealth that he ostentatiously displays in the manner described in paragraph 4, above, Edalat is not a success. He filed bankruptcy in 2005 and was discharged when the bankruptcy trustee certified that he had no assets. He filed bankruptcy again in July, 2014 and, in that bankruptcy proceeding, while he listed many debts he sought to have discharged, he knowingly failed to list on his bankruptcy schedules many assets in which he had an interest, and did not disclose assets that he had transferred to third parties, fraudulently, in contemplation of bankruptcy.

33.   Doing so was not just a fraud on the bankruptcy court, but was also damaging to his investors, including the individual plaintiffs, since his false statements put further at risk assets that they believed were not encumbered and would support the ventures of Edalat in which they had invested.

34.   When Edalat was questioned under oath about his assets by counsel for the bankruptcy trustee, he made false statements about those assets in order to conceal those assets. Thereafter, when he was questioned again after certain of his assets were discovered, he refused to answer, asserting that if he answered the questions being asked him about these assets, it might incriminate him. This again put the individual plaintiffs' investments in Pharma Pak further at risk.

35.   Throughout, Edalat has combined with his sister, defendant Barghi, to assist him in hiding assets and defrauding others to benefit themselves. Barghi holds Edalat's assets in her name or in in one or more companies she runs for Edalat. She thus controls and received assets through fraudulent conveyances when Edalat filed bankruptcy, including a vitamin company called APS Scientific. She continually participates in his fraudulent schemes by handling his

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

14

bookkeeping, company business, assisting him with his fraudulent bankruptcy filings and by

making and assisting Edalat in making false statements to lenders and investors, including to

some of the plaintiffs as more particularly described below.

### The Specifics of the Pharma Pak Fraud

36.   Commencing in late 2014 and continuing through the present time, Edalat has

obtained more than $2,000,000.00 from the individual plaintiffs by the following fraudulent

actions:

(a)    Statements by Edalat to plaintiff Cahill, commencing in December 2014, and to

plaintiffs Cullen, Scott, and Franco starting in approximately September, 2015

and continuing through December, 2015, that he (Edalat), through Scilabs and

Sentar, controlled a valuable patent on a process, called an "All Natural Non-

Toxic Sublingual Drug Delivery System" (hereinafter referred to as the

"patent") that would allow the most effective delivery of drugs and

nutraceuticals sublingually; that this patent was already viable in many

countries; that an application for it was filed and being professionally pursued in

the United States by a top-flight patent law firm; and that it was available for

use already and that its final approval was expected by August, 2015. Edalat

also showed the plaintiffs a letter from those patent lawyers dated August 26,

2014, making positive statements about the pursuit of this patent, without telling

the plaintiffs that all the lawyers' work had stopped because Edalat had not paid

the legal fees needed to have the work completed;

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

(b)     In truth, as Edalat then well knew, this "patent" would not be approved by August, 2015 because, among other reasons he well knew, Edalat had not paid the patent attorneys for their ongoing work. They were owed in excess of $200,000.00 dollars for past work, and would not continue working on the patent until they were paid, which Edalat refused to do;

(c)     Edalat also made lulling statements to all the individual plaintiffs, by way of statements by Edalat to plaintiff Cahill to be passed along to the other individual plaintiffs, that the patent lawyers had not stopped working on the patent and had written off the $200,000.00 legal bill because it was "fraudulent," when Edalat knew well that the lawyers had not done so and were not working on the patent;

(d)     Edalat's false statements about his "patent" were material because the individual plaintiffs wanted to invest in the manufacture and distribution of certain drug and pharmaceutical products, and having such a patent would enhance their operations significantly by giving the individual plaintiffs a competitive edge against those competitors offering competing but inferior sublingual products;

(e)     Edalat's false statements about his "patent" were further material because, as shown in more detail below, Edalat induced plaintiffs Cahill, Cullen, Scott and Franco to invest in Pharma Pak by promising that if they did, he would allow them to invest in Sentar, which had access to the patent, or that the patent rights would become available to Pharma Pak, and Edalat, along with Karpinski, stated to them that this patent would generate many hundreds of millions of

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

16

dollars because it would allow Sentar or Pharma Pak to out-compete other sublingual drug delivery processes;

(f)     Edalat told plaintiff Cahill in November and December, 2014 and in January and February, 2015, that Edalat had obtained for Pharma Pak a valid drug manufacturing license from the State of California that would allow a building Edalat had led Cahill to believe that he (Edalat) owned (at 17809 Gillette Avenue, in Irvine, California) to serve as a state-authorized site to manufacture or process certain pharmaceuticals and other regulated items. In truth and in fact, that license was not valid for use at the Gillette Avenue address and would not allow such manufacturing. Moreover, Edalat presented a brochure stating that the Gillette facility was a federally licensed manufacturing facility when he well knew it was not. These false representations were material because, if there had been such valid licenses, it would allow the investing plaintiff at that time, Cahill, and later the other individual plaintiffs when they invested, to more quickly commence the sales of their intended products;

(g)     In furtherance of his false representation that Pharma Pak had a valid manufacturing license, Edalat showed the individual plaintiffs such a license in the name of "Pharma Pak" and represented it to be the license of the company in which plaintiffs were investing, the newly-formed Pharma Pak.  However, that manufacturing license was in fact, as Edalat well knew, not issued to Pharma Pak, but rather had been issued to another company, Scilabs, which had a d/b/a name "Pharma Pak." Edalat had obtained the manufacturing license under

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

17

Scilab's d/b/a name, Pharma Pak, rather than under the name Scilabs, but the license was in fact the property of, and only licensed to, Scilabs. Therefore, as Edalat well knew, that license would not operate to allow the newly-formed Pharma Pak to use that license to manufacture or in any way deal with any pharmaceuticals or related products. This information was discovered by Cahill in or around October or November, 2015, but not before Cahill had already invested substantial sums of money in the Pharma Pak venture, in part based on Edalat's representations about the manufacturing license. This supposed manufacturing license and its supposed availability to the newly formed Pharma Pak was material because, had that license actually authorized the newly-formed Pharma Pak to process and sell products, it would have allowed Pharma Pak and the individual plaintiffs to commence business much more quickly and that would have resulted in generation of sales and thus profits more quickly. Moreover, because the manufacturing license had been cancelled, as Edalat well knew, obtaining a new manufacturing license, which was required, became much more difficult because of the name association involving the new Pharma Pak and the d/b/a Pharma Pak that had been used by Edalat in the by-now shut down Scilabs;

(h)     Edalat posted on the internet and stated to Cahill and others through that posting that one of his companies, Scilabs, had an "unblemished history of safe, compliant production," and had "a long track record of producing only the safest and highest quality nutritional supplements . . . [and a] strong and

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

18

consistent focus on quality and safety." This was knowingly false because, as of the time he made these statements, Edalat and Scilabs had been repeatedly warned by the FDA that his nutraceutical operation was in violation of the safety standards required by federal law. This misstatement was material to the investor plaintiffs because they believed that his alleged long history of unblemished success would enhance their Pharma Pak investments;

(i)    Edalat stated that he owned Sentar, which he and defendant Karpinski claimed owned the purportedly valuable patent referred to above, that Sentar was valued at $600,000,000.00, that it had near limitless growth opportunities in various countries because of Edalat's longstanding relationships with government and business leaders in various countries, including Abu Dhabi, Dubai, and Iran, that would allow Edalat, Karpinski, and Sentar to circumvent the importation laws in these countries, into which he assured plaintiffs that he could import for sale tens of millions of dollars of Sentar products on orders he already had lined up. Edalat along with Karpinski, posted on the internet in interstate commerce a statement about Sentar as follows:

> Sentar has established relationships in countries across the globe with partners well-known in their respective markets. While these associates bring the local infrastructure needed for manufacturing and distribution, Sentars' team brings United States Food and Drug Administration standards, along with business development experience to emerging markets in desperate need of access to safer drug supplies. [. . . ] This is where Sentars' team of experts and innovators can close the gap between emerging and established pharmaceutical manufacturing markets.

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

These representations were designed by defendant Barghi and were false, as Barghi, Edalat and Karpinski well knew, because neither Edalat nor Sentar had any such easy access to those countries, had no FDA approval and indeed had been shut down by the FDA, and did not have large importation orders of Sentar products lined up as they had falsely claimed. These were material statements because investments in Pharma Pak were made by the individual plaintiffs in part on the basis of the promise by Edalat to them of a later opportunity to invest in Sentar which, based on Edalat's, Karpinski's, and Barghi's representations described above, they believed to be more valuable because of the ease with which Edalat said that imports of large sales orders of Sentar products could be made in those countries.  Edalat specifically promised plaintiff Cahill that Cahill would ultimately receive a 10% share ownership in Sentar; and also promised plaintiffs Scott and Cullen a substantial share of Sentar ownership as well, and these promises were part of the inducement to these three plaintiffs to invest in Pharma Pak;

(j) For over a year, Edalat represented to the individual plaintiffs and convinced them to believe that seven employees were necessary to work for Pharma Pak at the Gillette Avenue facility, even though there was no ongoing manufacturing at that time. Plaintiffs later discovered that these employees, paid by Pharma Pak, were performing work for Edalat's sister Barghi's company, APS Scientific, and that she well knew of this misrepresentation and benefited from it by the free labor received;

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

20

(k)     Commencing in June, 2015, Edalat and Karpinski represented to Pharma Pak investors, including the individual plaintiffs, that if Karpinski was hired at a high salary paid by Pharma Pak to work as the Executive Sales Manager for Pharma Pak, she would bring in many sales orders for its products, including pain patch and toxicology kits and a skin patch that allowed delivery through the skin of a certain cannabinoid oil that assisted with stopping tremors, reducing pain, and enhancing appetite in those being treated with chemotherapy. This was material because, had she been able to make those high sales, it would have allowed Pharma Pak to prosper;

(l)     While Karpinski was paid this high salary by Pharma Pak, she made no such sales and did not attempt to do so for most of the time she was being paid. Instead, using Pharma Pak money and time, Karpinski repeatedly traveled to Las Vegas from the Orange County offices of Pharma Pak with Edalat so that they could spend extravagantly, staying and putting guests in suites and hosting lavish dinners in an attempt to induce those guests to invest in Sentar, which was not what she was being paid by Pharma Pak to do. On these trips Edalat and Karpinski ran up restaurant and bar bills in the thousands of dollars each night. These bills reflect paying for bottles of wine, Champagne, and other types of alcohol costing $400.00 and $500.00 each bottle, for $10.00 bottles of water, and for multiple thousands of dollars for dinners and extravagant tips. These expenses were incurred month in and month out from July 2015 through January 2016 and were submitted by Edalat and Karpinski to Pharma Pak along

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

with the false representation that this entertainment was in furtherance of making sales of Pharma Pak's product. These representations were false because what Edalat and Karpinski were in fact doing was attempting to secure investors for Sentar, a company in which Pharma Pak had no interest. These expense reimbursements were paid in reliance on the false representation that Pharma Pak business was being accomplished when in fact it was not even being attempted. In her entire time with Pharma Pak, being paid by it, Karpinski made not one sale and spent virtually all of her time attempting to secure investments for Sentar, working in combination with Edalat. Karpinski commenced spending almost all of her time with Edalat in Las Vegas and elsewhere attempting to raise money for Sentar, rather than working for Pharma Pak. Karpinski and Edalat also, to further induce Cahill and the other investors not to object to these extravagant trips to Las Vegas, stated that they had secured orders for Pharma Pak from a man named Chad Barrett through his company, Rx Pro Pharmacy and Compounding, Inc. ("Rx Pro"). This was knowingly false and those orders were never placed;

(m) Because these and other expenses were being incurred by Pharma Pak, plaintiff Cahill, in addition to his investment in Pharma Pak as a shareholder (discussed in more detail below), paid to Pharma Pak approximately $240,000.00 for operating expenses because not only were Edalat and Karpinski running up many multi-thousand dollar bills many times each month under the false representation that they were attempting to make sales of Pharma Pak product in

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

22

the manner described above, no sales were being made by Karpinski and thus Pharma Pak had no source of revenue to pay those expenses being run up by Edalat and Karpinski;

(n)    In or around August of 2015, Edalat stated to plaintiff Cahill that Edalat had located a ready-to-use production facility in Henderson, Nevada, located at 1850 Whitney Mesa Drive, Unit 180 (APN 161-32-714-017)  (the "Whitney Mesa property") which, if purchased, could serve as a state-of-the-art production facility in which to process Pharma Pak products. Edalat further stated that the Whitney Mesa property was large enough to serve simultaneously to process multi-million dollar orders of pharmaceutical products that would be made by Chad Barrett through his company Rx Pro, which Edalat represented to be a successful and prosperous company, and that such Rx Pro processing would add significantly to the profitability of the ownership of the Whitney Mesa property. Edalat further stated that the Whitney Mesa property could be purchased for approximately $1,190,000.00, that Edalat would form a company, Sentus Land Management, LLC ("Sentus"), and that company would hold title to the Whitney Mesa production facility. Edalat also represented that Rx Pro (Chad Barrett) would pay 50% of the money to buy the property and would own 50% of Sentus, and that Cahill, another investor, and Edalat would pay the other 50% if Cahill and Edalat could arrange the other 50% of the purchase money. Another investor was found who invested $139,000.00 of the buy-in for the 50% of Sentus to be owned by Edalat, Cahill, and that other investor. That left

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

an additional $404,600.00 to be paid in by Edalat and Cahill. Edalat induced Cahill to "temporarily" fund Edalat's portion of the remaining purchase monies of $404,600.00 (Edalat's share being $202,300.00) by promising that if Cahill advanced the entire $404,600.00 by the closing date, Edalat would repay to Cahill that $202,300.00 in one week;

(o)    As a result of the representations stated above, on or about August 18 and 19, 2015, by use of two separate interstate wire communications which had been induced by Edalat's representations described above, Cahill sent $404,600.00 from his bank in California to an escrow company named Nevada Title & Company Trust, in Las Vegas, Nevada, using interstate wire communications to do so; and,

(p)    The representations made by Edalat in order to induce these wires transfers were false in that Edalat did not pay $202,300.00 or any other sum to Cahill as Edalat had promised, and RX Pro and Chad Barrett did not use Whitney Mesa property to process any orders on behalf or Pharma Pak. Instead, Rx Pro is now in bankruptcy and many of its assets and those of Chad Barrett have been seized by agents of the federal government because they are part of a scheme to defraud the United States. Moreover, without any notice to or agreement with Cahill, Edalat and Karpinski allowed Sentar to move in to the Whitney Mesa property and operate from it under the supervision of Barghi. Moreover, Cahill and his other investor did not receive 50% of Sentus as Edalat had promised, but

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

24

instead received only a 45% interest, leaving a 55% interest to Rx Pro, now in bankruptcy.

(q)    Because Edalat fraudulently induced Cahill to advance $404,600.00 for the purpose of purchasing a property to be held by Sentus with the understanding that Cahill would control 50% of Sentus, and because Edalat further fraudulently promised Cahill that Edalat would repay to Cahill the $202,300.00 Cahill had advanced for Edalat's share of the Whitney Mesa property, and because Edalat in fact controls Sentus and was acting as its agent and for its benefit at the time these fraudulent inducement were made which caused Cahill to invest $404,600.00 into the Whitney Mesa property that is now held by Sentus, Sentus holds the Whitney Mesa property in constructive trust for Cahill, at least to the extent of the purchase price of that property paid by Cahill, $404,600.00, under the fraudulent pretenses described above; and therefore Cahill has a trust interest in, and an equitable lien on, the Whitney Mesa property in that amount unless and until the monies he advanced for its purchase are returned, with interest thereon.

37.  In addition to the affirmative misstatements referred to above, defendant Edalat fraudulently omitted disclosing the following matters until plaintiff Cahill discovered them:

(a)    that Scilabs had been shut down by the FDA and the federal court because of its failure to comply with federal food and drug safety standards; and,

(b)    that Edalat was in bankruptcy.

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

38.   As a result of all or some of the forgoing misstatements and omissions, each of the individual plaintiffs invested in the newly-formed Pharma Pak by purchasing the following percentage of shares for the amounts of money stated below:

39.   Plaintiff Cahill, between November, 2014 and March, 2015, paid $500,000.00 to Edalat and committed himself to work as the CEO of Pharma Pak when formed and received 40% of the Pharma Pak shares in exchange. He was also to receive 10% of Sentar stock for acting as President of Sentar at the same time.

40.   Plaintiff Cullen, in or around October, 2015 paid $250,000.00 to Edalat, and committed to work at Pharma Pak, and received 5% of the Pharma Pak shares, and was promised future stock in Sentar.

41.   Plaintiff Scott paid $500,000.00 to Edalat in two installments in or around October and December, 2015, received 5% of Pharma Pak shares, and was offered future stock in Sentar. As a further inducement to Scott to obtain this investment, Edalat falsely told Scott that the offer of these Pharma Pak shares was a "once in a lifetime deal" that Edalat was offering to nobody else, when in truth and in fact, as Edalat then well knew, he had already sold shares of Pharma Pak stock to other persons, and this statement was material because Scott did not want to invest and thus share control with persons he had not met and did not know.

42.   Plaintiff Franco paid $750,000.00 to Pharma Pak commencing in or around October, 2015 and received 7.5% of Pharma Pak shares.

43.   By in or around February, 2016, the misrepresentations made by Edalat and Karpinski had become known to the individual plaintiffs. In order to prevent Cahill, the Pharma Pak CEO, from disclosing all of the fraud of Edalat and Karpinski, and from taking actions

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

against them for all of the fraud described in this First Amended Complaint, Edalat and a person whom he claimed to be a retired Newport Beach police officer named Chuck Freeman, met with plaintiff Scott and told him that they planned to "get rid of Cahill" and "get him" and "embarrass him." There were also such threats against other plaintiffs by Edalat.

44.   Edalat and Karpinski also planted illegal controlled substances, namely THC and marijuana, in the office of the Pharma Pak Chief Scientist and thereafter telephoned the Irvine, California Police Department, informed them of the presence of illegal drugs in the office of the Chief Scientist, and also stated, falsely, that that scientist and Cahill were manufacturing and distributing illegal drugs. This was in an attempt to intimidate Cahill and prevent him from taking actions against Edalat and Karpinski.

45.   Pharma Pak is now insolvent. All of the investment monies have been lost. None of these monies would have been invested by the individual plaintiffs had they known the truth; but for the false representations, concealments and later lulling statements stated in this First Amended Complaint, the individual plaintiffs would not have invested $2,000,000.00 in Edalat's venture.

**FIRST CLAIM FOR RELIEF**

**By All Plaintiffs against All Defendants for Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968**

46.   Plaintiffs reallege each and every allegation stated in Paragraphs 1 through 45 of this First Amended Complaint as if separately repleaded in full herein.

47.   Defendants Edalat, Karpinski, and Barghi, along with others acting with them, including Sentar, Blue Torch, LIWA, and Sentus, formed an enterprise and, using it and acting through it, began a scheme to defraud and to obtain investment money and property by false

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

pretenses, representations, and promises by using and causing to be used interstate and foreign wire communications, in violation of Title 18 U.S.C. § 1343 (wire fraud), doing so in what has been and continues to be a pattern of criminal activity. In furtherance of the fraudulent scheme described in paragraph 36 (a) through (q) of this First Amended Complaint, defendants used or caused to be used interstate and foreign wire communications as described below in paragraphs 48 through 58, among many others, each of which is a separate predicate act within the meaning of RICO, in violation of 18 U.S.C. § 1962, and thereby proximately causing injury to the business and property of the plaintiffs within the meaning of 18 U.S.C. § 1964.

48.   At least ten such interstate wire communications were made to send monies to Edalat for deposit in the Bank of Manhattan and other banks between December, 2014 through December 2015, all to pay the investment monies used by the individual plaintiffs to invest in Pharma Pak, as alleged in paragraphs 38 through 42 of this First Amended Complaint.

49.   At least two such interstate wire communications were made respectively on or around August 18 and 19, 2015 by plaintiff Cahill from Cahill's bank in California and sent to the Nevada Title Company in Nevada, which wire communications took the form of two separate wire transfers in the amount of $202,300.00 each to assist in the purchase of the Whitney Mesa property, in the manner described in paragraphs 36 (n), (o), (p) and (q) of this First Amended Complaint.

50.   One such interstate wire communication was made on August 21, 2015 from Nevada to California showing assignment of the Whitney Mesa property to Sentus Land Management, LLC.

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

51.   One such interstate wire communication was made on August 21, 2015 from Nevada to California showing the escrow statement made by the Nevada Title Company on the sale to Sentus of the Whitney Mesa property to Sentus, such sale being referred to in paragraphs 36 (n), (o), (p), and (q) of this First Amended Complaint.

52.   At least eight such interstate wire communications were made between July 2015 and January 2016 to make payments from Pharma Pak and its bank to Karpinski through her bank for her fraudulently-earned salary payments as referred to in paragraphs 36 (k), (l), and (m) of this First Amended Complaint.

53.   At least six such interstate wire communications were made between July 2015 and January 2016 to make payments from Pharma Pak and its bank to Karpinski through her bank for her fraudulently-claimed expense reimbursements she said were due from Pharma Pak and which she falsely stated to have been incurred while supposedly trying to make sales in her capacity as the sales person for Pharma Pak, as referred to in paragraphs 36 (k), (l), and (m) of this First Amended Complaint.

54.   At least six interstate wire communications between July 2015 and January 2016 were made to make payments from Pharma Pak and its bank to Edalat through his bank for Edalat's fraudulently claimed expenses that he and Karpinski falsely stated to be due from Pharma Pak and which they falsely stated to have been incurred while supposedly trying to assist Karpinski in making sales for Pharma Pak, as referred to in paragraphs 36 (k), (l), and (m) of this First Amended Complaint.

55.   A standing interstate wire communication has been posted by Edalat in interstate commerce on the internet, which has been posted from at least as early as December 12, 2014 and

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

continues through the filing of this First Amended Complaint in May, 2016, stating that Edalat's company Scilabs had an "unblemished history of safe, compliant production", and had "a long track record of producing only the safest and highest quality nutritional supplements, . . . [with a] strong and consistent focus on quality and safety," as referred to in paragraph 36 (h) of this First Amended Complaint.

56.   A standing interstate wire communication has been posted in interstate commerce on the internet comprising a fraudulent statement by Edalat, Karpinski, and Barghi fraudulently describing Sentar and Sentar's patent and promoting the Sentar opportunity in the false manner referred to in paragraph 36 (i) of this First Amended Complaint;

57.   A standing interstate wire communication has been posted in interstate commerce on the internet comprising a fraudulent "Sentar presentation"  posted by Edalat, Karpinski, and Barghi which was knowingly false when made, describing Sentar and Sentar's patent and promoting investment in Sentar, calling it "the Sentar opportunity," in the manner referred to in paragraph 36 (i) of this First Amended Complaint; and

58.   Numerous emails from Karpinski, Edalat, and Barghi were made between June, 2015 and May, 2016 in furtherance of the scheme to defraud described in this First Amended Complaint.

59.   Defendants evidenced specific intent to defraud the individual plaintiffs because the practical effect of the scheme was that Plaintiffs Cahill, Cullen, Scott and Franco invested money through defendant Edalat that he misused for personal and unapproved purposes, which money was obtained by reason of the knowingly false representations of defendants.

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

60.   Each of the defendants associated themselves with Edalat and with the above-described RICO enterprise by working together and making the fraudulent representations to plaintiffs, alleged in this First Amended Complaint, with the intent to induce and in fact inducing plaintiffs to invest in the Pharma Pak venture and the Whitney Mesa property now held by Sentus because the plaintiffs relied on the defendants' false representations and omissions.

61.   The defendants associated with each other by communicating and by coordinating their efforts to make false statements in an attempt to defraud, and they did defraud, the individual plaintiffs of investment money through a pattern of interstate and foreign wirings extending from late 2014 to the present time.  This pattern establishes the RICO enterprise by showing the association of these defendants to knowingly make misrepresentations to deceive the individual plaintiffs and obtain investments through illegal use of interstate wire communications in violation of the federal wire fraud statute.

62.   This pattern poses the threat of continuing. The first predicate act of this scheme, for example, dates back to 2014 and it, along with others alleged herein, continues to the date of this First Amended Complaint, and are ongoing, indeed still posted on the internet.

63.   Defendants' alleged wrongful conduct is in violation of 18 U.S.C. § 1962(c) because defendants participated directly in the conduct of an enterprise through a pattern of racketeering activity including wire fraud, alleged above. Defendants schemed to do so in a manner proscribed by 18 U.S.C. § 1343 and aided and abetted each other in that scheme, in violation of 18 U.S.C. §1962(c) and § 2.

64.   Defendants' conduct is also in violation of 18 U.S.C. § 1962(d) because defendants conspired to violate the provisions of subsection (c) of 18 U.S.C. § 1962 and § 371, by

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

intentionally combining and agreeing with each other to directly and indirectly participate knowingly in the conduct of the enterprise through a pattern of racketeering activity.

65.   As a direct and proximate result of the defendants' racketeering activities and violations of 18 U.S.C. § 1962(c) and (d), Plaintiffs have been injured in their business and property within the meaning of 18 U.S.C. § 1964 by loss of investment funds of at least $2,000,000.00 and by lost income and other damages, all in an amount to be proved at trial.

## SECOND CLAIM FOR RELIEF

**By All Plaintiffs against Defendants Edalat and Karpinski for Violation Of Section 10(b) of the Exchange Act, And Rule 10b-5 Promulgated Thereunder**

66.   Plaintiffs reallege each and every allegation of Paragraphs 1 through 65 as if separately repleaded in full herein.

67.   This Count is asserted against defendants Edalat and Karpinski and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule l0b-5 promulgated thereunder by the United States Securities and Exchange Commission.

68.   As stated in the allegations above, these defendants engaged in a plan, scheme, conspiracy, and course of conduct pursuant to which they knowingly or recklessly engaged in acts, transactions, practices, and courses of business which operated as a fraud and deceit upon the plaintiffs; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading; and employed devices, schemes, and artifices to defraud in connection with the purchase and sale of shares. Such scheme was intended to, and throughout the time of the scheme, did: (i) deceive the investing public, namely the individual plaintiffs, as alleged herein; (ii) misrepresented the value and assets of the Pharma Pak venture; (iii) misrepresented

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

how investment funds were to be used for the benefit of the venture; and, (iv) caused the individual plaintiffs to rely on these material misrepresentations and omissions and purchase stock in plaintiff Pharma Pak.  In furtherance of this unlawful scheme, plan, and course of conduct, defendants, each of them, took the actions set forth herein.

69.   Pursuant to the above scheme, conspiracy and course of conduct, each of these defendants participated directly or indirectly in making the misrepresentations to the individual plaintiffs, alleged above at paragraphs 30 through 38 of this Amended Complaint, designed to induce and did induce the individual plaintiffs to purchase stock based on those materially false and misleading statements in that they misrepresented the truth about the Pharma Pak product, patents, and manufacturing license and failed to disclose material, adverse information, all as alleged above.

70.   Both defendants Edalat and Karpinski had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive the individual plaintiffs, or in the alternative, these defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to the defendants. Said acts, misstatements, and omissions of these defendants were committed willfully or with reckless disregard for the truth. In addition, each of these defendants knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

71.   Information showing that these defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. These individual

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

defendants had knowledge of the details of the Pharma Pak venture and well knew the falsity of all of the misrepresentations alleged in this First Amended Complaint.

72.   Plaintiffs Cahill, Cullen, Scott, and Franco, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, purchased shares in Pharma Pak at prices artificially inflated by these defendants' wrongful conduct. Had the individual plaintiffs known the truth, they would not have purchased said shares, or would not have purchased them at the inflated prices that were paid, or in the quantity purchased, or at all.

73.   By reason of the conduct alleged herein, defendants Edalat and Karpinski knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

74.   As a direct and proximate result of defendants' wrongful conduct, the individual plaintiffs suffered damages to be proved at trial in connection with their respective purchases of Pharma Pak shares of at least $2,000,000.00 (two million dollars), and plaintiff Cahill suffered additional damages in excess of $404,000.00 (four hundred four thousand dollars) for the investment he was fraudulently induced to make in the Whitney Mesa property referred to above.

**THIRD CLAIM FOR RELIEF**

**By All Plaintiffs against Defendants Edalat, Karpinski, and Barghi
for Fraud and Deceit under California Civil Code sections 1709 and 1572**

75.   Plaintiffs reallege each and every allegation stated in paragraphs 1 through 74 above as if separately repleaded in full herein.

76.   Defendants Edalat, Karpinski and Barghi repeated intentionally false statements to the individual plaintiffs, in the manner alleged above at paragraphs 30 to 38 of this First

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

Amended Complaint, including affirmative false statements as therein described, all of which were either knowingly false when made by defendants Edalat, Karpinski, and Barghi, or those defendants had no reasonable ground for believing these statements were true, or were promises made without any intention of performing them.

77.   Defendants intended that the individual plaintiffs rely on the false statements. Plaintiffs Cahill, Cullen, Scott and Franco justifiably relied on the false statements about Pharma Pak and the other false statements described above in deciding to buy shares of Pharma Pak.

78.   Defendants' intentional false statements violate California Civil Code sections 1709 and 1572 and have caused Plaintiffs damages, including lost revenues, income, and investment monies in an amount to be proved at trial. Through their actions, Defendants intended to cause Plaintiffs injury and carried on their actions with willful and conscious disregard of the rights of the plaintiffs.

79.   As a direct and proximate result of the defendants' wrongful conduct,  the individual plaintiffs suffered damages to be proved at trial in connection with their respective purchases of Pharma Pak shares, in an amount totaling at least $2,000,000.00 (two million dollars).

**FOURTH CLAIM FOR RELIEF**

**By All Plaintiffs against Defendants Edalat, Karpinski, and Barghi**
**For Fraud by Concealment under California Civil Code sections 1710 and 1573**

80.   Plaintiffs reallege each and every allegation stated in paragraphs 1 through 79 as if separately repleaded in full herein.

81.   Defendants Edalat, Karpinski, and Barghi repeatedly and intentionally concealed and/or suppressed material facts, as alleged in paragraphs 30 through 38 of this First Amended

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

Complaint, which defendants had a duty to disclose to the individual plaintiffs when offering sale of stock in Pharma Pak.

82.   Defendants intentionally concealed and/or suppressed the facts alleged herein with the intent to defraud the individual plaintiffs by inducing them to rely on the materially misleading information provided.

83.   Plaintiffs Cahill, Cullen, Scott, and Franco were unaware of the omissions and concealed facts at the time of their Pharma Pak stock purchases and investments and they would not have purchased stock in Pharma Pak and joined defendants' venture if they had known of the concealed and/or suppressed facts alleged herein.

84.   By their concealment, Defendants have violated California Civil Code sections 1710 and 1573 and, as a result, the plaintiffs have suffered damages, including lost revenues, income, and investment monies in an amount to be proved at trial.

85.   As a direct and proximate result of defendants' wrongful conduct, the plaintiffs suffered damages in an amount to be proved at trial in connection with their respective purchases of Pharma Pak shares, totaling at least $2,000,000.00 (two million dollars).

### FIFTH CLAIM FOR RELIEF

**By Cahill Against Defendants Edalat and Sentus for the Imposition of a Constructive Trust Under Cal. Civil Code §§ 2223 and 2224**

86.   Plaintiffs adopt by reference each and every allegation stated in paragraphs 1 through 85 as if separately repleaded in full herein.

87.   As more specifically alleged in paragraphs 36 (n), (o), (p), and (q) of this First Amended Complaint, Sentus, acting through its agent Edalat, fraudulently induced Cahill to pay

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

$404,600.00 to purchase the Whitney Mesa property and then fraudulently or by trick induced Cahill to allow that property to be owned by Sentus.

88.   It is therefore unjust and inequitable for Sentus to own that property.

89.   To prevent that injustice, the law imposes a constructive trust on that property in favor of Cahill, at least to the extent of $404,600.00, the amount he invested, until that amount, with interest thereon, is returned to Cahill, or, alternatively, Sentus should be ordered to transfer its interest in said property to Cahill.

### SIXTH CLAIM FOR RELIEF

**By All Plaintiffs against Edalat for Declaratory**
**Relief under 28 U.S.C. § 2201**

90.   Plaintiffs adopt by reference each and every allegation stated in paragraphs 1 through 89 as if separately repleaded in full herein.

91.   Because of all of the fraud and other misconduct stated in this First Amended Complaint, Pharma Pak is now insolvent and it has ceased operations. It has been for many months now unable to pay its employees, and thus has terminated them from their employment; it has lost the services of its scientist by reason of threats and other misconduct of Edalat and Karpinski who, among other misconduct, attempted to frame him for the crime of the illegal possession with the intent to manufacture and distribute controlled substances, by planting such controlled substances (THC and marijuana) in his office and then telling local police that the scientist was using those drugs to manufacture and to distribute controlled substances.

92.   The insolvency of Pharma Pak was caused directly by the fraud and misconduct of Edalat, who, in addition to the above stated fraud and misconduct,

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

(a)     falsely told plaintiff Cahill, who was acting as the CEO of Pharma Pak, that Edalat had obtained for Pharma Pak a valid drug manufacturing license from the State of California that would allow a building Edalat led Cahill to believe that he (Edalat) owned (at 17809 Gillette Avenue, in Irvine, California) to serve as a state-authorized site to manufacture or process certain pharmaceuticals and other regulated items, when in truth he had not;

(b)     falsely told the individual plaintiffs that Pharma Pak had access to patent rights of a patent that Edalat was prosecuting and that was valued at $600,000,000.00, when in truth that was false;

(c)     falsely stated to Cahill and other individual plaintiffs that Edalat had access to lucrative overseas markets for Pharma Pak products, when that was false;

(d)     falsely stated that defendant Karpinski would create profits for Pharma Pak if Cahill, on behalf of Pharma Pak, hired her and paid her salary, and paid for Edalat's and Karpinski's extravagant and expensive travel and entertainment costs, in exchange for which she would bring in many profitable orders for Pharma Pak products, when in truth and in fact, as Edalat well knew, Karpinski was not attempting to secure sales for Pharma Pak but was pursuing other ventures with Edalat from which Pharma Pak would not benefit;

(e)     falsely telling plaintiff Cahill that Pharma Pak would benefit greatly by using the Whitney Mesa facility for manufacturing when in fact that was false; and

(f)     falsely promising to Cahill, as the CEO of Pharma Pak, that Edalat would pay into Pharma Pak certain amounts due and owing by Edalat for capital calls to help

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

Pharma Pak stay solvent when in truth Edalat never intended to and did not pay to Pharma Pak any such sums.

93.   All of these false statements and misconduct have caused the insolvency of Pharma Pak, have caused the total loss of all the investment monies advanced by the individual plaintiffs for the stock they purchased in Pharma Pak, and have caused a loss of all the work the individual plaintiffs have undertaken to help make Pharma Pak a profitable business venture.

94.   Despite all his misconduct and the ruination of Pharma Pak that has caused the resulting loss of investments of the individual plaintiffs, Edalat now claims that the plaintiffs owe Edalat a fiduciary duty to account and pay over to Edalat certain sums of money and certain assets he claims the individual plaintiffs have taken from Pharma Pak, and that they owe him other fiduciary duties.

95.   Plaintiffs contend that they owe Edalat nothing, both because they hold nothing to which Edalat has or had any right, title, or interest, and because any rights Edalat had in any such assets by reason of any obligation or fiduciary duty Plaintiffs or any of them would have owed Edalat were lost and subject to the rescission herein sought because Edalat fraudulently induced the individual plaintiffs to undertake any such fiduciary or other obligations or duties.

96.   Therefore, an actual case and controversy exists between Edalat, who claims to be owed fiduciary and other duties from the individual plaintiffs, and to be owed assets, and the Plaintiffs, who claim that they owe no such duties to Edalat because of his fraud and misconduct.

97.   Plaintiffs therefore seek a declaration from this Court of their rights and duties to defendant Edalat in these circumstances and seek a declaration that they owe him no rights or

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

duties in relation to Pharma Pak by reason of Edalat's fraud and misconduct, and owe him no assets or money.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, and each of them, demand relief as follows:

A.      For an award of damages from each individual defendant jointly and severally to each plaintiff in the amount each plaintiff proves at trial under the First, Second, Third and Fourth Claims for Relief;

B.      For treble damages from each defendant to each plaintiff jointly and severally on the damage amounts under the First Claim for Relief, the RICO claim;

C.      For reasonable attorneys' fees incurred by the individual plaintiffs to file and prosecute this RICO action (First Claim for Relief), and for the federal securities claim (Second Claim for Relief) from each defendant, jointly and severally;

D.      For the imposition of a constructive trust on the Whitney Mesa property in favor of and for the benefit of plaintiff Cahill, as prayed for in the Fifth Claim for Relief;

E.      For a declaratory judgment (as sought by the Sixth Claim for Relief) that none of the plaintiffs owe any fiduciary or other duty to defendant Edalat by reason of his fraud and misconduct and that they owe him no assets or money;

F.      For an award of all taxable costs allowable; and,

G.      For such other and further relief as this Court deems just and proper.

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues so triable.

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

1
2
3        Dated:   May 16, 2016                    Respectfully submitted,

4                                                  MARKHAM & READ

5
6                                                  By: /s/ John J.E. Markham, II
7                                                     John J. E. Markham, II
                                                     Attorney for Plaintiffs
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.