THE DURST FIRM
Lee H. Durst, Esq. [SBN 69704]
23 Corporate Plaza, Suite 150
Newport Beach, California 92660
949-478-8388 − Fax 714-242-2096
lee.durst@gmail.com

LARRY ROTHMAN & ASSOCIATES, A P.L.C.
Larry Rothman, Esq. [SBN 72451]
160 Old Springs Road, Suite 170
Anaheim Hills, California 92808
714-363-0220 − Fax 714-363-0229
tocollect@aol.com

Attorneys for Cross-Complainant PAUL EDALAT

U.S. DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| BRUCE CAHILL, an individual, GREGORY CULLEN, an individual, SHANE SCOTT, an individual and Pharma Pak, Inc. a California Corporation<br><br>    Plaintiffs,<br><br>  vs.<br><br>PAUL PEJMAN EDALAT, an individual, OLIVIA KARPINSKI, an individual, FARAH BARGHI, an individual, SENTAR PHARMACEUTICALS, INC., a Nevada Corporation, BLUE TORCH VENTURES, INC., a Wyoming Corporation, LIWA, N. A., a Wyoming Corporation, SENTUS LAND | **Case No.: 16-cv-00686 AG**<br><br>SECOND AMENDED COUNTER-CLAIM AND CROSS-COMPLAINT FOR DAMAGES BY PAUL EDALAT FOR:<br> 1. VIOLATION OF FEDERAL RICO LAW, 28 USC 1961, 1962, 1963, & 1964,<br> 2. BREACH OF FIDUCIARY DUTIES<br> 3. AN ACCOUNTING<br> 4. INJUNCTIVE RELIEF and<br> 5. FRAUD |

MANAGEMENT, LLC, a Wyoming
Limited Liability Company,
                    Defendants

PAUL EDALAT
                    Cross-Complainant
Vs.

BRUCE EDWARD CAHILL, an
individual, GREGORY DAVID
CULLEN, an individual, SHANE RYAN
SCOTT, an individual, RONALD
VENTURA FRANCO, an individual,
PHARMA PAK, INC., a California
Corporation, BRENT CAHILL, LESLIE
HAROLD WOOD, LUDWIG JAN
WEIMANN, MARK JOHN ERFURT,
ERTON AYDINOL, KIRA LINDSAY
CAHILL, KAREN JANE GROBBA-
CAHILL, LIFE TECH GLOBAL LLC, a
Delaware Corporation, KIRA
INVESTMENTS LLC, a California
Corporation, CAHILL FAMILY
TRUST, a California Trust, CAHILL
BRUCE E. TRUST, a California Trust,
and Does 1 to 100
                    Cross-Defendants

DEMAND FOR JURY TRIAL

ALL ALLEGATIONS CONTAINED HEREIN ARE DIRECTLY RELATED TO
THE VIOLATION OF 28 USC 1961, 1963 AND 1964. THE ADDITIONAL
CLAIMS FOR RELIEF ARE BASED UPON THE FACTS THAT CROSS-
DEFENDANTS WERE ACTING WITHIN THEIR SCOPE OF A CONSPIRACY
AND DOING ALL THINGS NECESSARY TO COMMIT A CRIMINAL ACT.
THEREFORE, ALL CLAIMS WHICH ARE NOT DIRECTLY FEDERAL
CLAIMS ARE BASED UPON FCP RULES, 13, 14, 19 AND 20 BECAUSE OF
THE FACT THAT ALL CLAIMS ARE RELATED TO THE RICO CLAIMS.

ADDITIONALLY, ALL REFERENCES TO ANY EXHIBITS IN THIS CROSS-COMPLAINT REFER TO EXHIBITS WHICH WERE ATTACHED TO THE ORIGINAL CROSS-COMPLAINT AND WILL BE INCORPORATED HEREIN BY THIS REFERENCE IN LIEU OF ATTACHING THE COPIES THERETO AGAIN.

CROSS-COMPLAINANTS, alleges as follows:

### GENERAL ALLEGATIONS

1. CROSS-COMPLAINANT is and, at all times relevant herein, a Citizen of California.

2. Edalat is a shareholder in Pharma Pak, Inc. He presently owns 36.5% of the shares presently. Additionally, Edalat had gave 20% of his personal shares to Cahill with the agreement that Cahill would run the Pharma Pak, Inc. Edalat should own a total of 56.5% of the shares of the stock, but was defrauded out of the 20% of the shares by Cahill.

3. Edalat and Pharma Pak, Inc. jointly hold patents for the creation of certain transdermal patches. Additionally, Edalat has patents for sublingual delivery technology. Based upon information and belief, Edalat is informed that Cross-Defendants are making sublingual tablets and patches in direct violation of these patents.

4. Brent Cahill, is and, at all times relevant herein, a Citizen of the State of California. Cahill created projections relied upon by investors and shareholders, created and maintained the website for Pharma Pak, Inc., earned illegitimate wages, and was directly involved in the conspiracy to defraud Pharma Pak, Inc. and investors.

5. Leslie Harold Wood, is and, at all times relevant herein, a Citizen of the State of California. Wood created projections relied upon by investors, created and

maintained the accounting records for Pharma Pak, Inc., signed all checks, approved all reimbursements, and was, according to the Statement of Information filed with the State of California, Pharma Pak, Inc.'s Chief Financial Officer. Furthermore, Wood earned illegitimate wages, and was directly involved in the conspiracy to defraud Pharma Pak, Inc. and investors. Wood was also an Officer of Pharma Pak and owed a fiduciary duty to the shareholders.

6. Ludwig Jan Weimann, is and, at all times relevant herein, a Citizen of the State of California. Weimann brought onto Pharma Pak, Inc. property illegal Schedule 1 drugs, authorized and actively participated in the production of illegal medical devices, earned illegitimate wages, and was directly involved in the conspiracy to defraud Pharma Pak, Inc. and investors. Weimann was also an Officer of Pharma Pak and owed a fiduciary duty to the shareholders.

7. Mark John Erfurt is and, at all times relevant herein, a Citizen of the State of California. Erfurt illegally attempted to access non Pharma Pak, Inc. servers and computers in order to obtain trade secrets, stole non Pharma Pak, Inc. computers and servers, destroyed evidence including digital files of the Pharma Pak, Inc. website, electronic mail, and other such electronic documents.

8. Ertan Aydinol is, based upon information and belief, a Citizen of the State of Colorado. Aydinol conspired to defraud Pharma Pak, Inc. and its investors, and further embezzled cash from the Company. Aydinol earned illegitimate wages, and further conspired to defraud Pharma Pak, Inc. and its investors. Aydinol was also an Officer of Pharma Pak and owed a fiduciary duty to the shareholders.

9. Karen Jane Grobba-Cahill is and, at all times relevant herein, a Citizen of the State of California. Grobba-Cahill is a Trustee of the Cahill Family Trust and Cahill Bruce E. Trust. Cahill is a beneficiary of monies received from Pharma

Pak, Inc.

10. Kira Lindsay Cahill is and, at all times relevant herein, a Citizen of the State of California. Cahill is a beneficiary of the Cahill Family Trust and Cahill Bruce E. Trust. Cahill is the controlling shareholder of Kira Investments, LLC. Cahill is a beneficiary of monies received by Kira Investments, LLC from Pharma Pak, Inc.

11. Cahill Family Trust is and, at all times relevant herein, a Trust formed in the State of California and a beneficiary of monies received by Kira Investments, LLC from Pharma Pak, Inc.

12. Cahill Bruce E. Trust is and, at all times relevant herein, a Trust formed in the State of California and a beneficiary of monies received by Kira Investments, LLC from Pharma Pak, Inc.

13. Kira Investments is and, at all times relevant herein a corporation formed in the State of California. It is directly involved in the forgery of documents and recipient of illicit gains via fraudulent rent payments.

14. Life Tech Global, LLC is and, at all times relevant herein, formed in the State of Delaware, and operating in the State of California. Life Tech Global, LLC is the corporation where all or most of all of Pharma Pak, Inc.'s assets, cash, and intellectual property, and is the vehicle through which Cross-Defendants are hiding their illicit activities.

15. Cross-defendant Cahill and others have named entities wholly unrelated to the Pharma Pak, Inc. venture in an attempt to disadvantage and otherwise economically harm those entities, and in an attempt to spin the facts of their own gross negligence and unlawful and fraudulent activities. Cross-Defendants' naming of these entities is a deliberate attempt to confuse the record.

16. That Cahill and Cross-defendant's claim Edalat did not disclose his 2014 Bankruptcy is deliberately misleading based on the following facts:

a. Cross-Defendants' claim to be savvy investors, and thus a perfunctory Internet search would disclose Edalat's bankruptcy, even if, as they claim, he had not.

b. Cross-defendant Cahill was well aware of Edalat's bankruptcy, going so far as to offer to fund any bankruptcy related litigation, and introducing Edalat to the partners of prestigious Southern California law firm Hueston Hennigan LLP, whom Edalat would go on to retain. Evidence of Cahill's knowledge is attached hereto as Exhibit D, Exhibit E, and Exhibit F.

c. Edalat disclosed his bankruptcy to Cross-defendant Scott, as they discussed other joint business ventures outside of Pharma Pak, Inc., and Scott had himself been through the bankruptcy process twice before in Utah (case numbers 2:11-bk-20079 and 2:11-bk-23640).

d. Cross-defendant Cullen and Cross-defendant Franco were brought in to Pharma Pak by Cahill, and not Edalat, well after Cahill's knowledge of Edalat's bankruptcy. Edalat disclosed his pending bankruptcy litigation to both Cross-Defendants in conversations leading up to their investments.

17. Cross-Defendants' repeated characterization of Edalat as a 'fraud' maybe construed as not only a deliberate and malicious attempt to interfere in Edalat's business and personal life, but is also indicative of attempting to use the judicial system as a way to protect themselves from charges of slander and libel. Cahill had been previously warned on two separate occasions by counsel from Manatt, Phelps, and Phillips to cease and desist from his libelous statements to third parties, and chose instead to continue his baseless personal attacks on Edalat by contacting personal friends and business acquaintances of Edalat in an attempt to cause Edalat to react.

When Cross-Defendants' realized Edalat and non-cross-defendant shareholders would not back away quietly, they instead chose to file suit. True and correct copies of communications from counsel Thomas Poletti of Manatt, Phelps, and Phillips are attached as Exhibit G.

18. At the time of the Company's formation in January of 2015, Cross-defendant Cahill, and non-cross-defendant shareholder John Crowther, were both well aware of Edalat's personal financial situation.

    a. As of approximately October of 2014, Edalat was in negotiations with interested third parties for further development of the 17809 Gillette manufacturing facility in Irvine, California. The facility held a valid Pharmaceutical Manufacturing license, a copy of which is attached as Exhibit N, and was ripe for a myriad of business activities. In fact, Cahill attended many meetings in Texas regarding such potential joint venture partners, including some of the largest pharmaceutical compounding operations in the United States. It was on Cahill's advice that Edalat did not partner with these third parties.

    Cahill, among other lulling statements made to Edalat, stated that since he (Cahill) was retired, he was looking for a secondary project to keep him (Cahill) occupied.

    Cahill, seeing the potential value of pharmaceutical compounding operations, induced Edalat to partner with Cahill himself in order to enter the pharmaceutical compounding space.

    b. At this point in the Cahill and Edalat relationship, they had known each other socially for many years, through a trusted mutual friend. Cahill used his clout as a Board of Trustee member for various entities, his philanthropic endeavors, and references to his $38,900,000 "house on the

hill" in Laguna Beach, the Cahill titled 'Villa de Sogni' mansion, as proof of his success and established business prowess.

19. In February of 2015, Cahill and Crowther urged Edalat to sell Edalat's personal shares in the newly formed Pharma Pak, Inc. venture in order to raise needed personal funds for ongoing bankruptcy litigation. Cahill brought to the table multiple potential investors for Pharma Pak, Inc., including Cross-Defendants Cullen and Franco.

20. In September of 2015, Cahill was actively soliciting further investors for the Pharma Pak, Inc. venture. In a text message dated September 24, 2015, Cahill stated to Edalat, "*Paul At lunch with investors about to make you rich*". Cahill goes on to say, "*There are a couple of doctors here in San Diego that are wealthy and just cashed out $100 meg* [sic] *on an IPO. Have taken a couple of companies through IPO. Bring money and expertise.* Furthermore, that Cross-Defendants' accuse Edalat and co-defendant Karpinski of working on both Pharma Pak, Inc. and Sentar related matters is laughable. Cahill's own text message from September 24, 2015 further states, "*Simple first. PharmaPak. Then discuss Sentar. Trying my best to solve our problems.*" A copy of this text message is attached herein as Exhibit H.

21. Cahill repeatedly stated to Edalat that Cahill himself did not have the liquidity needed to fund the venture, and that outside investors would need to be sought. However, as will be illustrated further, this was a falsehood designed to fraudulently induce Edalat into diluting himself out of Pharma Pak, Inc., and to reduce Edalat's shareholder status in the Company.

    a. Attached as Exhibit I is a true and correct copy of an email from Cross-defendant Cahill to Cross-defendant Cullen, also mistakenly sent to Edalat, on January 29, 2016, wherein Cahill clearly lays out how he

planned to dilute Edalat from the Company in order to give himself a majority Shareholder position.

22. Cahill introduced cross-defendant Gregory David Cullen to Defendant Edalat for investment into Pharma Pak, Inc.

a. Cross-defendant Cullen received due diligence documents on Pharma Pak, Inc., including projections, from Pharma Pak, Inc. "Chief Financial Officer" Leslie Harold Wood on or about August 24, 2015. Attached as Exhibit J, is a true and correct copy of the communication between Wood and Cullen regarding Pharma Pak, Inc.

b. In a September 14, 2015 text message from Cahill to Edalat, Cahill states, in part, "*Glad you and Greg could work it out. He will be a great partner.*" Furthermore, in a follow up September 17, 2015 text message from Cahill to Edalat, Cahill states, "*Call Greg He's in but just wants to make sure all the documents are in order. Greg will be like John Crowther, provide funding without second guessing all of our decisions.*" In essence, Cahill was actively seeking to fill the investor roster with those he knew would not interfere with daily operations or Cahill's mismanagement of Pharma Pak, Inc. A copy of these text messages is attached herein as Exhibit K and Exhibit L, respectively.

c. In an October 10, 2015 text message from Cross-defendant Cahill to Edalat, Cahill stated, in part, "*just finished with Greg He is still back east. Returning tomorrow I think he can come up with $250k next week,*" and "*Hope you can Close* [sic] *the deal Paul*". This message is attached herein as Exhibit M.

d. Cross-defendant Cullen, through his non-profit foundation, purchased a quantity of Edalat's personal shares, and a quantity of Company held shares for a total of 2.5 percent of Pharma Pak, Inc. shares on or around

October 2015.  Cross-defendant Cullen paid to Edalat $100,000 for Edalat's shares, and paid to Cross-defendant Cahill a further $150,000 for the remaining shares. Cross-Defendants' allegation that Cullen gave to Edalat personally $250,000 is false.

23. Cahill introduced cross-defendant Ronald Ventura Franco to Edalat and Pharma Pak, Inc. Franco purchased his shares directly from the corporation on or around October 2015. Edalat is informed based on belief that Cross-defendant Franco paid to Cross-defendant Cahill directly monies for his certain percentage in Pharma Pak, Inc.

24. Cross-defendant Scott, Scott's business partner Chris Campbell, and Scott's trust EL-1 Trust purchased a quantity of Edalat's personal shares on or around November 2015. True and correct copies of the communication regarding this purchase is attached as Exhibit N.

25. At the time of Shareholders' collective initial investments, Cahill was said to have secured certain patent rights from Weimann, the Chief Technical Officer of the Company. As part of his employment, Weimann was to develop certain patents for Pharma Pak, Inc. It was the promise of these certain Pharma Pak, Inc. patents that caused Edalat and other investors to continue funding Pharma Pak, Inc. operations.

   a. Edalat has now learned that Cahill and Cullen have colluded to transfer these patents, as well as other assets, to Life Tech Global, LLC., a Cullen controlled entity.

26. Cross-defendant Cahill had induced Edalat to allow him to become CEO and President of Pharma Pak, Inc., by promising to leverage his various contacts acquired over the decades.

    a.  Cahill was, at this time, the duly elected sole director of Pharma Pak, Inc. As both an officer and director of Pharma Pak, Inc. Cahill owed a fiduciary duty to the Company and all shareholders.

    b.  Cahill stated that Dr. Elizabeth M. Hagerman, a former fellow Trustee of Rose-Hulman Institute of Technology with Cahill and a former Baxter Healthcare executive, would be interested in joining the Board for Pharma Pak, Inc.

    c.  Cahill sought to bring in Associate Professor of Pharmaceutical Sciences at the University of California at Irvine Mahtab Jafari. Attached as Exhibit O is a copy of Cahill's October 11, 2015 text message.

    d.  Cahill stated in various meetings for Pharma Pak, Inc., that his contacts spanned the Pharmaceutical and Technology industries, and that he would fill the Board of Directors with notable names. However, to date Cahill failed to bring any of these individuals on for Pharma Pak, Inc.'s benefit.

27. Cross-Defendants fraudulently and maliciously claim that Sentar Pharmaceuticals is a successor corporation to Scilabs Nutraceuticals, which is not only a blatant falsehood, but intended to interrupt and otherwise materially disadvantage future business of Sentar Pharmaceuticals.

    a.  Cross-defendant Cahill is well aware that Scilabs Nutraceuticals, Inc. had no relationship to Sentar Pharmaceuticals nor any other Edalat entity. Furthermore, Cahill was entirely aware of the developing FDA concerns, and of its resolution. As an example of proof of such knowledge, attached as Exhibit P, is a true and correct copy of an email from Edalat to Cahill regarding the matter.

    b.  Cross-defendant Cahill had been involved with multiple conversations concerning the Scilabs Nutraceuticals, Inc. and Scilabs Pharmaceuticals

(a DBA of EFT Global Holdings) distinction, including conversations with Food and Drug Administration counsel Stephen Cook at Brown Rudnick, LLP. Attached as Exhibit Q is just one such example.

In fact, Cahill urged Edalat *on multiple occasions* to change the original name of Scilabs Pharmaceuticals to avoid the very confusion Cross-Defendants attempt to capitalize on.

c. Cross-defendant Cahill was fully aware that EFT Global Holdings dba Sentar Pharmaceuticals sought to formalize the Sentar Pharmaceuticals name in preparation for potential future business endeavors including investment, potential IPO, and finalization of the Sentar patents.

    i. As Cross-Defendants' have made apparent, their lack of due diligence, and desire to confuse the record, is profound. While Sentar Pharmaceuticals, Inc. is registered in Nevada, no operations have moved to Nevada, no business takes place in Nevada, and furthermore the registration was nothing more than reservation of the Sentar Pharmaceuticals name.

d. Cross-defendant Cahill, used his long standing corporate experience, and leveraged his existing Board of Trustees positions with the University of California at Irvine, Rose-Hulman Institute of Technology, the Oceana Institute, and other institutions, to induce Edalat into allowing Cahill to become an 'advisor' to Edalat.

e. At the time Cahill stepped in to advise Edalat on Sentar related matters, Sentar was in the preliminary stages of potential Initial Public Offering conversations. Cahill attended many of these meetings in the guise of advisor to Edalat.

f. Cross-defendant Cahill gave instrumental input to Defendant Barghi in regards to EFT Global Holdings dba Sentar Pharmaceuticals related

marketing materials from on or around February 2015 through approximately November 2015. These marketing materials included the Sentar Pharmaceuticals Website Cross-Defendants' quote in the First Amended Complaint.

28. Cross-Defendants fraudulently and maliciously claim that the Sentar Pharmaceuticals patents are illegitimate, and that work on patent related matters for Sentar Pharmaceuticals had ceased. They know this to be untrue. In fact, the patent has been granted in Australia, and has moved to advanced final stages of inspection by those countries IP protection has been applied for. Furthermore, Cahill was updated on the patent process, and in communication with Sentar patent attorney Peter Gluck, formerly of Brown Rudnick LLP, at least through December 2015. Attached as Exhibit R is one such example of Cahill's communication with Sentar attorney Gluck. Cross-Defendants have made this claim in an attempt to disadvantage and otherwise thwart Sentar's current business.

29. Cross-Defendants are well aware that a valid pharmaceutical processing license existed for the 17809 Gillette facility, a copy of which is attached herein as Exhibit S. A copy of this license was, until at least January 2016, physically present on the wall at the 17809 Gillette facility.

30. Cross-Defendants are well aware that it was Cahill's complete and utter refusal to obtain necessary licensure on the 17809 Gillette Avenue facility that led to the lack of finalized purchase orders. Cahill induced Edalat to otherwise believe that Cahill was handling the necessary applications,

   a. Pharma Pak employees were, as early as February of 2015, actively seeking information on, and gathering documentation for, appropriate licensing for the 17809 Gillette facility. At the time of Karpinski's hire in June of 2015, repeated requests for Cahill's input and signature had

already been made. A multitude of supporting documents in this regard have been submitted for the Court's review under Defendant Karpinski's Answer to the First Amended Complaint, Docket Number 29 in this case. In the interests of conserving the Court's time, Defendant Edalat does not reincorporate those Exhibits in Edalat's Answer.

31. Cross-Defendants are well aware that it was Cahill's own personal counsel, Timothy Balog of Balog & Rasch LLP, that incorporated the Pharma Pak name on or around February 10, 2015, and further that Balog's office controls the Books and Records of the entity.

    a. Attached as Exhibit T is a true and correct copy of the Articles of Incorporation of General Stock Corporation filing with the California Secretary of State. Furthermore, attached as Exhibit U are true and correct copies of the founding Articles of Incorporation of Pharma Pak, Inc. listing Edalat as Secretary of the Corporation.

    b. Without Shareholder approval, and unbeknownst to Edalat and the other Shareholders, Cahill and Leslie Harold Wood filed a Statement of Information with the California Secretary of State on April 1, 2015, removing Edalat as Secretary, and placing Wood as both Secretary of Pharma Pak, Inc., and Chief Financial Officer. A true and correct copy of this document is attached as Exhibit V.

    c. Unbeknownst to Edalat, Cahill utilized this document to remove Edalat's name from the corporate bank account. Given Cahill's long standing relationship with First Foundation Bank in Newport Beach, California, as both a retail banking customer, and a Trustee at the University of California, Irvine, Cahill was able to use this relationship to improperly remove Edalat's name from the Pharma Pak, Inc. corporate bank

accounts without notice to, or approval of, the Pharma Pak Board of Directors or Edalat himself.

d.  Balog and Cahill failed to conduct appropriate and timely Shareholder meetings, failed to keep updated and complete copies of records, failed to circulate copies of relevant documents altered by Cahill, and neglected to keep shareholders informed of their rights pertaining to inspection of such records.

In fact, Cross-defendant Cullen noted the sloppy recordkeeping practices of Cahill and Counsel in an email dated September 18, 2015 to both Cahill and Edalat regarding his investment and involvement in Pharma Pak, Inc. Attached is a true and correct copy of this email as Exhibit W.

32. Cross-Defendants repeatedly accuse Edalat of illicit visits to Las Vegas, when in fact they were well aware of Edalat's presence at meetings in Las Vegas to further Pharma Pak, Inc. business. Attached as an example of Cross-Defendants' knowledge as Exhibit X is a copy of Cahill's October 19, 2015 text message to Edalat stating, in part, "*Paul Stay in Vegas and keep everything moving there.*"

33. Cross-Defendants repeatedly accuse Edalat and Karpinski of misusing Company funds for personal enrichment, despite being aware of the following facts:

a.  Neither Edalat nor Karpinski had access to the Corporate bank accounts, all reimbursements to both parties were approved by Cahill and further signed for by Pharma Pak, Inc., "Chief Financial Officer" Leslie Harold Wood.

b.  The venue of Las Vegas, Nevada was a convenient middle point between Scott's location in St. George, Utah, and the Pharma Pak, Inc. offices in Irvine, California. Due to frequent travel to the city, and with the

intention of overseeing operations at the new Sentus facility at 1850 Whitney Mesa in Henderson, Nevada, Edalat personally rented an apartment on the Las Vegas Strip.

c.  Cahill, and his son Brent used the cover of Company funded meetings in Las Vegas as Pharma Pak, Inc. funded vacations.

On or about June 1, 2016, at a Pharma Pak, Inc., meeting in Las Vegas, Cahill brought with him a Dr. Stefanie Bernritter Kleine or, "Dr. K", whom Cahill stated held three PhD's from the University of California, Los Angeles, the University of Chicago, and Pepperdine University. Attached as Exhibit Y is a screen shot of Bernritter-Kleine's public Facebook.com profile. Exhibit Z is a true and correct copy of Cahill's email to Edalat dated February 18, 2016 wherein Cahill states that "Dr. K" was a neurological expert, and actively working with the National Football League conducting concussion research, and further that "Dr. K" was a well respected researcher for children's brain issues. (It would later be discovered that Kleine holds no such credentials.) Attached as Exhibit AA is a a copy of Kleine's LinkedIn.com account, and as Exhibit BB a copy of Kleine's Curriculum Vitae as posted to her website workingmindscoaching.com

Despite Cahill's statements, and insinuations that Kleine would be acting in an advisory capacity to Pharma Pak, Inc., at no time was "Dr." Kleine involved in furthering Pharma Pak, Inc. business opportunities despite her presence at these meetings.

In fact, Cahill referred to Kleine as his "assistant" in the presence of potential Company partners, allowed her to attend confidential meetings, discussed with her confidential Company information, and further had Kleine accompany him on a trip to the Crazy Horse III, a famous Las

Vegas adult entertainment establishment. Cahill, in an unauthorized use of Company funds, paid for her travel and meals, and allowed Kleine to charge spa services to Company funded suite at the Wynn Encore Hotel in Las Vegas, Nevada. Attached as Exhibit CC is a screen shot of Kleine's own social media page, placing her at the Encore the same weekend as Cahill, with a picture of the suite Edalat provided for Cahill's use.

d. Defendant Scott was also present at many Pharma Pak, Inc. related meetings in Las Vegas. Scott, usually accompanied by females he passed off as his assistants.

   i. One such assistant, by the name of Ramon Sekhon, accompanied Scott on at least two visits to Las Vegas. Sekhon's own social media put her in the same hotel as Scott the same weekends as Company related meetings. Attached as Exhibit DD are Sekhon's own photographs with locations placing Sekhon at the Wynn Encore Hotel in Las Vegas Nevada the same weekend as a Company meeting with Cross-defendant Scott.

e. Both Cross-defendant Cahill and Cross-defendant Scott were known to drink excessively, with Scott frequently becoming inebriated and running up large tabs during Company dinners.

f. In fact, thousands of dollars of reimbursements remain outstanding to Edalat, who not only paid for many of these business related dinners, but used his own personal 'comps' in Las Vegas to obtain suites for Cross-defendant Cahill, Cross-defendant Scott, and their various guests.

34. Cross-Defendants fraudulently state that Edalat, and co-defendant Barghi, created and maintain Sentus Land Management, the operating company holding title to the property at 1850 Whitney Mesa Drive in Henderson Nevada. Cahill

himself was heavily involved in the negotiations for purchase of the 1850 Whitney Mesa property, but also the development of potential business opportunities in the building.

Proof that Cross-Defendants are fully aware of the true owners and incorporators of Sentus is attached as Exhibit EE. Furthermore, Cross-Defendants have had ample access and opportunity to inspect the 1850 Whitney Mesa Drive property, and are fully aware that it is, and always has been, unoccupied. In fact, Defendant Edalat and Defendant Barghi have performed thousands of dollars of uncompensated renovation work within the building.

35. Cross-Defendants' are aware that Defendant Cahill had, for personal gain, otherwise abused his position as CEO at Pharma Pak, Inc., and his fiduciary duty to shareholders, to pay for personal expenses, including a fraudulent forged lease, fraudulent salary to himself, conspiracy with Wood to defraud the lessor of the manufacturing facility and utility companies, and unauthorized removal of funds from the Corporate bank account. These items were discovered in or about January 2016 by non-cross-defendant shareholder Amir Asvadi. It was also around this time that Edalat discovered Cross-Defendants Cahill, Cullen, Scott, and Franco, were actively conspiring to remove Edalat from Pharma Pak, Inc.

   a. Cross-defendant Cahill forged Defendant Edalat's signature on a lease between a "Scilabs Pharma, Inc." and Kira Investments LLC – a Cahill family entity-  for office space at Kira Investments owned property 17802 Sky Park Circle in Irvine, California.  A true and correct copy of this forged lease is attached as Exhibit FF. Kira Investments is a defunct entity in the State of California: attached as Exhibit GG, is a copy of the California Secretary of State's website illustrating this fact.

i.  Edalat only became aware of the existence of this lease in or around January of 2016 during a Shareholder meeting. Cross-defendant Cullen sent a copy of this lease to non-cross-defendant shareholder Amir Asvadi on February 20, 2016. A copy of Cullen's email is attached as Exhibit HH.

ii.  According to public tax records, Cahill and the Cahill Family Trust along with Cahill Bruce E. Family Trust used this lease document in or about March 2015 as part of a loan application with First Foundation Bank for $5,000,000 against the property located at 1330 Moorea Way in Laguna Beach, California, APN 641-491-03 and 641-491-02.

iii.  On February 17, 2016 Cross-defendant Cullen emailed a copy of a Microsoft Excel spreadsheet to all Pharma Pak, Inc., shareholders. A copy of this email is attached as Exhibit II.

   1.  The subject forged lease is dated January 1, 2015.

   2.  Kira Investments did not begin taking payments from Pharma Pak, Inc. until approximately August of 2015.

   3.  Kira Investments took payments until February of 2016.

   4.  In total Kira Investments took over $31,000 in 7 rent payments from Pharma Pak, Inc. in addition to over $35,000 in security deposits and payments that are unaccounted for. A screenshot detail of the document provided on February 17, 2016 by Cross-defendant Cullen is attached as Exhibit JJ, and illustrates the payments made by Pharma Pak, Inc. to Kira Investments, LLC for the supposed lease. No accounting exists for those monies removed by Cahill directly from the Pharma Pak, Inc. bank account.

   iv.   Defendant Edalat, knowing that he did not sign said lease with Kira Investments, obtained a handwriting analysis from a former law enforcement expert. This analysis, erroneously dated 2015, is attached as Exhibit KK.

   v.   Edalat is informed based on belief that Kira Investments is the vehicle through which Cross-defendant Cahill funnels monies to his daughter, Kira Cahill, who frequently called Cross-defendant Cahill asking for money. Kira Investments was a convenient way to surreptitiously provide funding for Kira Cahill's lifestyle.

b.   Cahill paid to himself, without Shareholder approval, or notice to other shareholders, a salary of $20,000 per month.

c.   Cahill paid personal expenses through the Pharma Pak, Inc. bank account, including but no limited to personal credit card payments, and reimbursements.

d.   Cahill, without notice to shareholders, conducted multiple cash withdrawls from the Pharma Pak, Inc. corporate bank accounts.

e.   Cahill deliberately conspired with Wood to defraud Olen Corporation, the lessor of the 17809 Gillette Avenue manufacturing facility by failing to pay rent and without notifying Olen of lease termination, or notifying the other shareholders, including Edalat, the personal guarantor.

f.   Cahill deliberately conspired with Wood and failed to pay invoices due to vendors, utilities, and contractors in an attempt to saddle Edalat with the impending debt on the 17809 Gillette property.

36. Scott, made lulling statements to Edalat that he "sided" with Edalat in the ongoing dispute with Cahill, going so far as to call Cahill "bipolar", a "narcissist", "seriously manipulative", and questioning if Cahill was using the illicit Tetrahydrocannabinol "THC" patches made by Dr. Ludwig Weimann,

during a phone call with Edalat and others. Scott repeatedly stated that he would assist Edalat in regaining control of Pharma Pak, Inc., and that his existing companies were the perfect model of distribution for Pharma Pak, Inc. products.

    a.  A series of text messages between Scott and Edalat in early February 2016 illustrate Scott's attempts to earn Edalat's trust, and thus retrieve sensitive and confidential data from Edalat.

        i.  Scott's February 1, 2016 text message read, in parts "*I am really grateful for the opportunity to work with you,*" "*your* [sic] *loaded with gifts bro,*" "*You have made a lot of money because its* [sic] *a direct result of who you are. I could throw you in a pile of shit and you would come out smelling like a rose. I may not be good at the tables in vegas* [sic] *but I am good with people. My money is on your* [sic] *bro.*". A copy of this message is attached herein as Exhibit LL.

       ii.  In a February 4, 2016 text message to Edalat, Scott states to Edalat that Matthew Starley, Scott's counsel, advised that Edalat should revoke his signatures on documents recently signed by Edalat for Pharma Pak, Inc. Attached herein as Exhibit MM is a copy of this text message.

      iii.  A further message from Scott in the same chain goes on to say that "*People like Bruce think everything is real so they take everything personal and constantly feel threatened,*" and "*...by allowing Bruce to feel like he is winning the game when in fact he is playing the game exactly the way the conscious person is dictating.*" Scott further went on to state that "*Paul from day one I could tell that you knew that life is a game. That's what make* [sic] *you*

*powerful.*" A copy of this message is herein attached as Exhibit NN.

    b.  Scott manipulated Edalat into allowing Scott access to Edalat's counsel, Lisa Salisbury, and all legal strategy, and further shared this information with his fellow Cross-Defendants. Scott never intended to engage Edalat's counsel, and only made false statements to Edalat in an attempt to glean information in a long planned conspiracy with co-Cross-Defendants. As of June 2016, Scott is actively participating in the Life Tech Global LLC venture with Cahill and Cross-Defendants.

37. Cross-defendant Cullen repeatedly stated to Edalat and other shareholders that Cullen would step in as interim "Chief Financial Officer" in order to sort out not only the financial affairs of Pharma Pak, but assist in placing a proper valuation on the Company. Cullen took the lead in collecting missing corporate documents in a February 2, 2016 email to Pharma Pak, Inc. counsel Timothy Balog. Furthermore, Cullen agreed with shareholder Amir Asvadi that the Company and fellow shareholders would not be held liable for, nor be liable for defense against, any misdeeds by Cahill. A true and correct copy of Asvadi's email dated February 11, 2016 is attached herein as Exhibit OO. A true and correct copy of Cullen's email stating "*No shareholder should have to defend a CEO for wrong doing. I agree*" dated February 11, 2016 is attached as Exhibit PP.

38. In or about February 2016, Karpinski and other employees discovered Cahill, Cullen, Scott, and Franco had conspired with Dr. Weimann and Ertan Aydinol, to produce, among other things, illegal Tetrahydrocannabinol "THC", a Schedule 1 drug, at the Gillette Avenue facility, despite the lack of appropriate licensing. After learning of this, Karpinski notified Edalat, who upon consultation with the FDA, FDA counsel, and FDA consultants among others,

informed the Irvine Police Department. There is currently an open investigation with the Irvine Police Department, Case number 16-3257, assigned to Detective Scott Grange. Attached as Exhibit QQ is a true and correct copy of the Irvine Police Department business card with the pending investigation case number.

39. That same week, Dr. Weimann informed Cross-Defendants, that the Irvine Police Department had removed the THC from the 17809 Gillette facility building, upon discovering this fact, Cahill fired *some*, but not all, of the employees in retaliation against Edalat.

40. On March 3, 2016, Cahill, Wood, and private investigator Cameron Jackson told Defendant Karpinski that a "majority shareholder's vote" had dissolved the corporation. No such vote had taken place. In fact, Edalat's counsel, Thomas Poletti of Manatt, Phelps, and Phillips, warned Cahill in a letter dated March 4, 2016 not to proceed with this course of action. Attorney Poletti's letter further requested access to applicable Books and Records for the Company, which were never provided. Attached as Exhibit RR is a copy of the letter addressed to Cahill from Manatt, Phelps, Phillips.

41. Cahill, Wood, and Jackson told the manufacturing employees that "[Edalat's] actions" had caused them to be fired, and that Pharma Pak was being shut down. Employees harassed and threatened with legal action include: Olivia Karpinski, Luis Navarro, Jesse Suarez, Luz Navarro, Alonso Navarro, Alex Rosales, and Martin Garcia. These employees were specifically targeted due to their cooperation with Edalat. In addition, these employees were wrongfully terminated in direct retaliation for reporting the illegal activities of Cahill, and Weimann, and their further cooperation with the Irvine Police department.

42. Cahill damaged the Company materially by hiring employees, and contractors, with questionable backgrounds, without performing necessary due diligence or full disclosure to Shareholders:

a. Dr. Ludwig Jan Weimann, Chief Technology Officer hired on or about June 2015. A self-proclaimed expert in transdermal patch delivery systems, Weimann had formerly worked at an unlicensed transdermal patch research and manufacturing facility in San Diego, California, illegally producing Tetrahydrocannabinol "THC", Cannabidol "CBD", and other medical marijuana related patches and unregistered, unapproved, medical devices. Weimann possessed a California medical marijuana card, and obtained samples of THC among other illicit substances through his pre-existing relationships in the marijuana industry; attached as Exhibit SS are examples of Weimann's use of cannabinoid, "CBD", and history of contacts within the marijuana industry.

    i. Weimann was to produce for Pharma Pak, Inc. a series of patents for among other things, transdermal patches. Weimann, in a move calculated to secure his employment contract and full benefits, stated that he owned these patents, however, this was a fraudulent statement.

    ii. Weimann and Cahill are currently conspiring, as of June 2016, to reassign patents otherwise belonging to Pharma Pak, Inc.

    iii. It was the promise of these certain Pharma Pak, Inc. patents that caused Edalat and other investors to continue funding Pharma Pak, Inc. operations.

b. Mark John Erfurt, Information Technology Consultant engaged at the formation of the Company in February 2015. Erfurt has a criminal history for hacking, and unauthorized access into computer systems of a Cahill competitor in 2003. Furthermore, Erfurt had been convicted of obstructing an FBI investigation in order to protect Cahill and his

company, Centaur Corporation, and sentenced to five months' imprisonment as well as five months' house arrest and three years' probation. A true and correct copy of the Department of Justice press release dated August 31, 2004, and an article concerning the incident dated December 1, 2004 are attached as Exhibit TT. This had not been disclosed to Edalat or the other shareholders and employees of the Company. Erfurt was given full access to employee computers, employee passwords, confidential Company information, given false reimbursements, and exaggerated compensation. As of February 2016, Erfurt was paid in excess of $26,000 through his company Tec-in-a-Sec, which holds no business license in Irvine, California, for management of a pre-existing computer network encompassing fewer than 7 full time users.

*Furthermore, Erfurt has destroyed vital company records, including electronic mail belonging to Defendants', and stolen non-Pharma Pak, Inc. servers and computer systems from the 17809 Gillette Facility. Erfurt has also removed and potentially destroyed the pre-existing video surveillance system present in the 17809 Gillette Avenue facility.*

c. Ertan Aydinol, Vice President of Manufacturing hired on or about December 2015. Aydinol formerly worked with Weimann at the unlicensed patch facility in San Diego, and at the time of his hire was spending a majority of his time travelling between the United States and Turkey, where his father purportedly owns a manufacturing facility. Unbeknownst to Edalat, Karpinski and the other shareholders and employees, but known to Cahill, Aydinol had previously been investigated by the FBI for suspected bomb making activities.

Aydinol, despite not having performed any work for the Company, was awarded a base salary of $165,600 annually, plus full benefits and full commission. A true and correct copy of Aydinol's unsigned employment agreement is attached as Exhibit UU. Aydinol had stated to Cahill that he had been making "over $10,000 a month" at his former employer; however, Cahill never did his due diligence, and it came to light that Aydinol's actual previous salary was a fraction thereof, and Aydinol's statements were purposefully fraudulent and misleading.

Most recently, Aydinol has been arrested for DUI and possession related charges for amphetamines in Boulder, Colorado, where it is believed he currently resides. A true and correct copy of Aydinol's arrest record and accompanying toxicology report is attached as Exhibit VV

As of February 2016, Aydinol was paid bonuses and advances for manufacturing in excess of $38,000, not including cash removed from the Pharma Pak, Inc. bank account under the guise of manufacturing payment.

d. Leslie Harold Wood, controller, hire date unknown. Wood is a long time employee of Cahill's, and by his own admission controls the accounting for many of Cahill's entities, including Kira Investments (aka Kira Invest), the Cahill Family Trust, Centaur Corporation, Centaur Sales, the Bruce E. Cahill Family Trust, and other as to yet unknown entities thought to total approximately 9 entities, as according to Wood himself. Wood was given an initial $1,800 per month salary by Pharma Pak, Inc., that was then, without approval or proof of an employment contract, raised to an annual salary of

$90,000. Wood controls and maintains the books and records, including accounting, for Cahill's various operations and shell corporations, signs all checks, orders supplies for these operations, and oversees the movement of money between Cahill's various bank accounts.

43. Cahill repeatedly and deliberately sabotaged Pharma Pak, Inc. and conspired with fellow Cross-Defendants Cullen, Scott, and Franco to defraud Edalat and other investors in the Company, for their own gain, and to remove assets of Pharma Pak Inc., including investor monies, thereby breaching their fiduciary duties to Pharma Pak Inc., and fellow shareholders. Examples of these acts include but are not limited to:

    a. Unauthorized cash withdrawals from the Pharma Pak, Inc. bank account.

    b. Failure to obtain necessary licensure on the 17809 Gillette Avenue manufacturing facility in Irvine, California.

    c. Deliberate delay in engagement of necessary consultants and contractors to obtain the aforementioned licensure.

    d. Deliberate circumvention of State and Federal law to produce illicit medical marijuana patches, including those containing Tetrahydrocannabinol "THC" and Cannabidol "CBD".

    e. Deliberate circumvention of State and Federal law to produce unlicensed medical devices in the form of transdermal patches, and other items.

    f. Further, while Edalat was overseas, in a self-styled "clandestine" operation at Weimann and Aydinol's former employer in San Diego, Cahill ordered the production of illicit THC and CBD containing patches. In order to preserve the Court's time, the entirety of these conversations have not been reproduced, but may be found in Defendant Karpinski's

Answer to the First Amended Complaint, Docket 29 of this case, as *Exhibit U*.

    i.  Cahill paid to Aydinol a sum in excess of $19,000 for this illicit production, in cash withdrawn from the Pharma Pak bank account on or around December 7, 2015. A photograph of which Aydinol messaged to Karpinski on December 11, 2015 at 4:52 PM under the heading *"This is how I do business with Bruce...:) LOL"*. This photograph depicts the interior of Cahill's late model Jaguar, with Cahill holding stacks of $100 dollar bills in his hands, and stacks of $100 dollar bills placed on the center console. A true and correct copy of this photograph, along with the accompanying text message, are attached hereto as Exhibit WW

    ii.  On around February 22, 2016, Cahill attempted to induce Karpinski into selling these patches by accepting cash in exchange for delivery of illegal products. Believing this to be a set up, and a criminal act, Karpinski refused to participate in the transaction and notified Cahill, Edalat, and the other shareholders of her concern. In order to preserve the Court's time, the entirety of these conversations have not been reproduced, but may be found in Defendant Karpinski's Answer to the First Amended Complaint, Docket 29 of this case, as *Exhibit Z* and *Exhibit AA*.

g.  Cahill and Cross-Defendants conspired to grossly mismanage and remove funds from the corporate bank accounts and to defraud fellow shareholders: These acts include, but are not limited to:

i.   Grossly exaggerated compensation to Ertan Aydinol, Mark Erfurt, and Leslie Wood.

ii.  Cash payments to Aydinol for illicit medical device manufacturing at the San Diego facility of his former employer.

iii. Overseas wire transfers to Aydinol for production of alleged machinery in excess of $60,000. Delivery of these machines were then accepted by the Pharma Pak, Inc. successor company LifeTech Global, LLC.

iv.  Wire transfers to KNB Mfg. & Automation LLC in excess of $80,000 for machinery that was then removed by Pharma Pak, Inc. successor company LifeTech Global.

v.   Other payments with as yet to be calculated sums for equipment and supplies removed by Pharma Pak, Inc. successor company LifeTech Global LLC.

vi.  Payment of an illicit salary to cross-defendant Cahill, to the tune of $20,000 per month, for an unknown amount of time, without an employment contract or Board approval.

vii. Payment to Kira Investments (Kira Invest), a Cahill family owned and controlled Company, based on a fraudulent, forged, lease in excess of $30,000.

viii. Payment of Company funded travel to Las Vegas and Colorado for non-company related activities, including a visit by Dr. Weimann to Las Vegas, on or around September 29, 2015, for a visit to the 1850 Whitney Mesa property, under the guise of attendance at an industry conference.

In order to preserve the Court's time, a photograph of Weimann and Cahill inside the building has not been reproduced, but may

be found in Defendant Karpinski's Answer to the First Amended Complaint, Docket 29 of this case, as *Exhibit CC*.

ix. Conspiring with Leslie Wood for payment of other non Pharma Pak, Inc., payments through the Company bank account without approval.

44. Cahill and Cross-Defendants, including Wood and Brent Cahill, also conspired to defraud Edalat, and fraudulently induce Edalat's further investment into the Company with the presentation of falsified accounting, along with falsified business projections.

a. In or about May of 2015, Cross-Defendants Cahill hired his then 17-year-old son Brent Cahill, as a "financial analyst", despite Cahill's lack of experience or expertise in the area. Cross-defendant Cahill conspired with Cahill to produce falsified projections based on potential business for the Company, that led to Edalat's further investment in Pharma Pak, Inc. Attached as Exhibit XX is a screen shot of Brent Cahill's Facebook.com social media profile stating that he was employed by Pharma Pak, Inc. in this capacity. As of October 18, 2016, Brent Cahill's Facebook.com social media profile states that he is employed by Life Tech Global, LLC as a "financial analyst." The same is reflected on his Linkedin account.

b. Cahill's projections were also used as a basis for the valuation of Pharma Pak, Inc. by Cross-defendant Cullen, who stated in a meeting in or about January 2016 that he felt Pharma Pak, Inc. was slated to be worth at least $300,000,000 in the next two years. Attached as Exhibit YY is an email from Pharma Pak, Inc. shareholder John Crowther to Edalat on January 20, 2016, reiterating Cullen's statement. This email followed the Pharma

Pak, Inc., shareholder's meeting wherein Cahill's duplicity was discovered by Shareholder Amir Asvadi.

   c. Wood presented to Edalat and shareholders falsified accounting records. When asked for the complete records, it took Wood over 2 weeks from the date of request on or about February 1, 2016 to provide a Microsoft Excel spread sheet work book of expenses, despite the fact that on June 3, 2015 the Company paid over $2,000 for QuickBooks Enterprise edition. Cross-defendant Cullen finally provided the requested accounting records on or about February 17, 2016.

45. Pharma Pak, Inc.'s successor company is Life Tech Global, LLC. Cross-Defendants' are holding Defendant Edalat's shares in Constructive Trust.

   *a.* Cross-Defendants' have moved Pharma Pak's patents, cash, and other assets to this new entity by fraudulent means and without shareholder approval.

   *b. Cross-Defendants conspired to form this entity even before the firing of Pharma Pak, Inc. Employees on March 3, 2016.*

   c. Cross-Defendants have, and are currently, conspiring to defraud non-cross-defendant Shareholders by reassigning certain patents and trademarks as belonging to Pharma Pak, Inc.

   d. Cross-Defendants' formed Life Tech Global, LLC on March 9, 2016 in the State of Delaware, despite the fact that Cross-Defendants' nor anyone else involved has any ties with that State, only because that State does not require entities organized under its laws to be identified publically. A true and correct copy of Life Tech Global, LLC's Entity Details from the State of Delaware's Division of Corporation's website is attached hereto as Exhibit ZZ. Edalat is informed based on belief that Cross-Defendants'

utilized a third party registered agent Incorp Services, Inc., to perform this transaction and to evade detection.

e. Cross-Defendants registered the domain name of LifeTechGlobal.net on March 10, 2016. Attached as Exhibit AAA is a copy of the WHOIS report from ICANN.org.

f. Attached as Exhibit BBB are screenshots of Life Tech Global's website at www.lifetechglobal.net/about.html. Cross-Defendants' have committed RICO with their statements.

   i. On the Life Tech Global website, Cross-Defendants' state *"Life Tech Global a 24,000 square foot manufacturing facility in Irvine, CA, delivering products that positively influence the standard of care for our providers and their patients, while enhancing outcomes for our partners and stakeholders. **Pharma Pak** [sic] can ship most products to all 50 states."*

   ii. Incorporated within Exhibit CCC is proof that Cross-Defendants' utilized stock photography in an attempt to defraud potential clients and investors.

g. Attached as Exhibit DDD is a screenshot of Life Tech Global's website at www.lifetechglobal.net/index.html, stating that *"Medical devices and pharmaceutical* [sic] *are produced in a GMP and CFR compliant, FDA licensed manufacturing facility."* This statement is fraudulent. No licensing exists under the Life Tech Global name, not even a business license as illustrated by Exhibit EEE.

# FIRST CLAIM FOR RICO BY ALL CROSS-COMPLAINANTS AGAINST ALL CROSS-DEFENDANTS
## *VIOLATION OF 18 USC 1961, 1962, 1963, AND 1964*

46.  CROSS-COMPLAINANTS re-alleges each and every allegation contained in ¶¶ 1 – 45.

47. Cross-Complainants are informed and based upon believed allege that these Cross-Defendants have committed the following illegal and criminal actions:

CONDUCT:

a.  Unauthorized removal of over $900,000 cash and over $1,000,000 worth of equipment and intellectual property from Pharma Pak, Inc., thereby defrauding Pharma Pak Inc. shareholders and risking shareholders' investments,

b.  Theft of trade secrets from Pharma Pak, Inc., thereby defrauding Pharma Pak, Inc. shareholders,

c.  Unlicensed production of illegal medical devices containing Schedule 1 Drugs on the Controlled Substance Act thereby risking Pharma Pak, Inc., shareholders' investments,

d.  Unlicensed production utilizing Pharma Pak, Inc. equipment and assets, thereby defrauding Pharma Pak, Inc. shareholders,

e.  Transportation and distribution of said illegally produced devices across state lines and international borders,

f.  Assault and battery of a female employee,

g.  Sexual harassment of female employee,

h.  Forgery of documents for the purpose of removing unauthorized monies from the Pharma Pak, Inc. corporate bank account,

i.  Removal of other unauthorized monies from the Pharma Pak, Inc. bank account,

j.  Wire of monies from the Pharma Pak, Inc. bank account to recipients in the Republic of Turkey,

k.  Wire of monies from the Pharma Pak, Inc. bank account from California to other States in the United States, including Colorado,

l.  Cross-Defendants are actively conspiring to move Pharma Pak, Inc. equipment and assets across State lines without Pharma Pak, Inc. permission, thereby defrauding Pharma Pak, Inc. shareholders.

ENTERPRISE:

48. CROSS-DEFENDANTS have all entered into an agreement to take over the company founded by majority shareholder Paul Edalat.  Cross-Defendants conspired to remove the equipment and assets of Pharma Pak, Inc., without shareholder approval, in order to defraud Edalat and other Shareholders, and deprive these individuals of their rights.

A PATTERN OF RACKETEERING ACTIVITY (KNOWN AS 'PREDICATE ACTS'):

49. CROSS-COMPLAINANT is informed and believes and based upon that information and belief alleges that Cross-Defendants entered in a pattern of conduct for the creation and sales and distribution of Schedule 1 Drug products, which are illegal under 18 USC 1961 et. etc. Cross-Defendants have manufactured unregistered medical devices containing Schedule 1 Drugs in an unlicensed facility, and transported these devices across State lines.

50. CROSS-DEFENDANTS have conspired to move unauthorized monies across State lines and International borders.

51. CROSS-DEFENDANTS attempted to have Karpinski join their conspiracy to sell illegal medical devices containing Schedule 1 Drugs.

## INJURY TO THE CROSS-COMPLAINANT:

52. CROSS-COMPLAINANT did not know at the time he entered into investments into Pharma Pak, Inc., that CROSS-DEFENDANTS were engaging in a conspiracy to violate United States laws dealing with the illegal manufacturing of scheduled drugs and unregistered medical devices, and selling these across both State and International borders.

53. CROSS-DEFENDANTS have conspired to steal the Pharma Pak, Inc. business started by Edalat. Cross-Defendants have stolen intellectual property, assets, and cash in order to manufacture illegal Schedule 1 Drugs and unregistered medical devices in violation of the Controlled Substance Act and 21 Code of Federal Regulations Part 820 Subchapter H.

54. Cross-Complainant notified law enforcement of Cross-Defendants' illegal activities. Law enforcement found a significant amount of Schedule 1 Drugs stored in the 17809 Gillette building by Cross-Defendants.

55. Immediately upon finding out that law enforcement had been engaged, and subsequently removed evidence of Schedule 1 Drugs, Cross-Defendants immediately moved Pharma Pak, Inc. assets to two new locations: 2929 Oceanside Blvd in Oceanside, California, AND, 17802 Sky Park Circle in Irvine, California.

56. At these locations Cross-Defendants are producing, with Pharma Pak, Inc. owned equipment and intellectual property, illegal Schedule 1 drugs, and unregistered medical devices.

57. Additionally, these Cross-Defendants have used national and international wire services and the United States Postal Service to commit bank, wire, and postal fraud in their criminal actions and activities. Cross-Defendants have also

embezzled in excess of $2,000,000 in cash and assets from Pharma Pak, Inc. and deprived Pharma Pak, Inc.'s rightful shareholders of their rights.

58. As a direct result of this conspiracy and illegal acts, the Cross-Defendants have damaged Cross-Complainant shareholder in an undetermined amount, but at least over $20,000,000. Pursuant to the RICO statutes Edalat, Amir Asvadi, and the other shareholders who are not part of this conspiracy would be entitled to damages of three times that amount plus the actual amount of the damages, bringing these damages to a total of $60,000,000 or more according to proof at time of trial against these Cross-Defendants.

## SECOND CLAIM FOR BREACH OF FIDUCIARY DUTIES AGAINST CROSS-DEFENDANTS CAHILL & WOOD BY CROSS-COMPLAINANT EDALAT

59. CROSS-COMPLAINANT EDALAT, re-alleges each and every allegation contained in ¶¶ 1 – 58.

60. Cahill, Wood, Weimann, and Aydinol were Officers of, and CAHILL was a Director of, Pharma Pak, Inc.

61. As an officer and Director Cahill had a fiduciary duty to ALL OF THE SHAREHOLDERS, including EDALAT. This would also include shareholder Amir Asvadi, who will be filing his own counter claim against the Cross-Defendants, and John Crowther, who is not a party to this case and has decided to stay neutral.

  a. Edalat owns 35.6 percent of the Company. Asvadi owns 5 percent of the Company, and Crowther owns 11 percent of the Company. Together they own more than the majority of the shares in the Pharma Pak, Inc.  As the

majority shareholders of Pharma Pak, Inc. they have not approved of any of the actions by these CROSS-DEFENDANTS.

b. Crowther testified in his October 3, 2016 deposition that there was no meeting of shareholders called by Cahill or Wood; that they [Cahill and Cross-Defendants] did not tell Crowther that they were moving the equipment to Oceanside nor did they [Cahill and Cross-Defendants] seek approvals concerning the salaries and other expenses paid out of the Pharma Pak, Inc. accounts. [Cahill and Cross-Defendants] have not provided any financial information since moving Pharma Pak, Inc. assets to Oceanside and further have not explained the unauthorized movement of these assets. Cahill did not tell Crowther about the forged lease for Cahill owned 17802 Sky Park Circle and the fact that the payments were going to Cahill and his own corporation from Pharma Pak, Inc.

62. CROSS-DEFENDANTS all conspired to steal monies and assets from Pharma Pak, Inc., and by extension Cross-Complainant Edalat and Shareholder Asvadi. These actions constitute a breach of Fiduciary Duties by Cahill, Wood, Weimann, and Aydinol directly, and lead to unauthorized benefits to other Cross-Defendants.

a. This illegal transfer of monies was spent on exorbitant unapproved salaries and unapproved expenses for Bruce Cahill, Leslie Wood, Ludwig Weimann, Ertan Aydinol, Brent Cahill, Mark Erfurt, Cahill Family Trust, Cahill Bruce E. Trust, Kira Investments, LLC, and by extension the other members of this conspiracy, in excess of $750,000.

b. These monies were paid out at a time when Pharma Pak, Inc. was not actively profitable and had a small number of employees. Cahill, Wood, Weimann, and Aydinol placed their interest above those of Pharma Pak, Inc. shareholders.

63. Cross-Defendants have together conspired to move equipment and assets from Pharma Pak, Inc.'s 17809 Gillette location to two secondary locations in Oceanside, California and Irvine, California.

64. Cross-Defendants are now actively conspiring to move equipment and assets across State lines to Oregon, in order to defraud Edalat and Pharma Pak, Inc. shareholders. Members of this Conspiracy include Life Tech Global, LLC, Ludwig Weimann, Ertan Aydinol, Gregory Cullen, Bruce Cahill, Brent Cahill, and Leslie Wood. This decision to move the equipment may have been caused by the fact that Edalat and Asvadi have requested a shareholder's meeting for the purpose of demanding the return of the equipment and other assets of Pharma Pak, Inc. back to 17809 Gillette facility. To date, Cahill has failed to set the date of the meeting of the shareholders.

65. Cross-Defendants are actively utilizing patents belonging to Edalat and Pharma Pak, Inc., transacting business utilizing these patents, and selling these items to third parties brought to Pharma Pak, Inc. by Karpinski and Edalat. Pharma Pak, Inc.'s Shareholders should be receiving the profits and royalties from these sales.

66. All of these actions by Cahill, Wood, Weimann, and Aydinol are a breach of their fiduciary duties to Pharma Pak, Inc., and its Shareholders.

67. Cross-Complainant Edalat, along with Shareholder Amir Asvadi, and non-party Shareholder John Crowther, have been damaged by the actions of these Cross-Defendants in an amount to be proven at time of trial.


THIRD CLAIM FOR AN ACCOUNTING BY CROSS-COMPLAINANT EDALAT AGAINST CROSS-DEFENDANTS CAHILL AND WOOD


68. CROSS-COMPLAINANT, EDALAT, re-alleges each and every allegation contained in ¶¶ 1 – 67.

69. Cahill and Wood owe a Fiduciary Duty to all shareholders, including Edalat and Asvadi.  Cahill and Wood have breached their Fiduciary duties by failing to provide an accounting of all expenses and income from Pharma Pak, Inc. assets utilized by Cross-Defendants' new corporation Life Tech Global, LLC.

70. Edalat is entitled like every other shareholder of Pharma Pak, Inc. to a proper and audited accounting of all monies from the inception of Pharma Pak, Inc.

71. Edalat, along with Shareholder Asvadi, have previously demanded shareholder meetings.  Cahill has thus far refused to hold these meetings in accordance with Corporate bylaws, as he will be forced to provide an accounting of his illegal actions.

## FOURTH CLAIM FOR INJUNCTIVE RELIEF BY CROSS-COMPLAINANT EDALAT AGAINST CROSS-DEFENDANTS

72. CROSS-COMPLAINANT re-alleges each and every allegation contained in ¶¶ 1 – 71.

73. Cross-Complainant is owed a Fiduciary Duty by Cross-Defendants, including Cross-Defendants Cahill and Wood.

74. These Cross-Defendants breached their duties by conspiring to remove Pharma Pak, Inc. assets and monies to two new locations, without Pharma Pak, Inc. Shareholder approval.

75. Paul Edalat, and Shareholder Amir Asvadi, has been damaged by the actions of these Cross-Defendants, in an amount to be proven at time of trial.  However, since there is simply no remedy at law, Paul Edalat hereby requests that the Court order the return of all Pharma Pak, Inc. assets and monies to the 17809 Gillette Avenue property and restore all assets and monies, including intellectual property.

## FIFTH CLAIM FOR FRAUD BY CROSS-COMPLAINANT EDALAT
## AGAINST CROSS-DEFENDANT CAHILL

76. CROSS-COMPLAINANT PAUL EDALAT re-alleges each and every allegation contained in ¶¶ 1 –75.

77. CROSS-COMPLAINANT entered into a group of oral agreements/contracts with these Cross-Defendant CAHILL which the Cross-Defendant CAHILL broke because he never intended to comply with the terms and conditions of the contract.

78. Cross-Defendant Cahill fraudulently induced CROSS-COMPLAINANT Edalat into these contracts so that he could gain control of Edalat's company, his patents and his contacts so that they could steal the company.

79. Cahill was to bring money to the company, which he did. He was to manage the company and was to receive 20% of Edalat's personal stock for that management. However, Cahill breached the agreement by moving all of the assets to Oceanside, not paying the rent on the Gillette property, the insurance on the property, medical insurance for employees, car payments for the employees pursuant to their agreements with the company, taking Edalat's personal patents and the company's assets and selling it to a company he and his partners who were part of Pharma Pak have now moved to Life Tech Global, LLC.

80. CROSS-COMPLAINANT has been damaged as a direct result of the actions of CROSS-DEFENDANT Cahill's actions in an amount of damage to be proven at time of trial, but no less than $100,000,000.

81. Cross-Complainant will also seek to impose a Constructive Trust on all properties where the stolen monies and assets have been taken and hidden by these Cross-Defendants; including their homes, office buildings and bank accounts.

### DEMAND FOR JURY TRIAL

Demand is hereby made by the CROSS-COMPLAINANTS for a trial by Jury.

WHEREFORE, Cross-complainant prays for judgment as follows:

1.    General Damages according to Proof.

2.    Special Damages according to Proof.

3.    Punitive Damages according to Proof.

4.    RICO Damages according to Proof.

5.    A Preliminary Injunction for the return of all PHARMA PAK, Inc. assets, including all equipment, intellectual property, and monies.

6.    Such other relief as the court deems proper.

DATED:    October 19, 2016        THE JUSTICE LAW CENTER



BY _____

        Lee H. Durst

    Attorney for Plaintiffs

# PROOF OF SERVICE

## State of California, County of Orange

I am employed in the county and state aforesaid. I am over the age of 18 and not a party to the within action. My business address is 23 Corporate Plaza, Suite 150, Newport Beach, CA 92660.

On October 19, 2016, I served the foregoing document described as:

<u>SECOND AMENDED CROSS-COMPLAINT / COUNTER - CLAIM</u>

on the parties listed below in this action by placing a true copy thereof or the originals via electronic mail through the ECF system of the United States District Court to the following

JMarkham@markhamread.com,  BZerner@markhamread.com,  &
ERead@markhamread.com
Attorneys for Plaintiffs  & Cross-Defendants

TOCOLLECT@aol.com
Attorney for Defendants and Cross-Complainants

[X]          BY ELECTRONIC MAIL.   I caused the above document to be electronically  mailed  through  the  ECF system of the United States District Court. Executed on October 19, 2016, at Newport Beach, California.

[X]          FEDERAL.  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare under penalty of perjury under the laws of United States and the State of California that the above is true and correct.

/S/ Lee H. Durst

_____

Lee H. Durst