Case 8:16-cv-00686-AG-DFM   Document 95-7   Filed 10/19/16   Page 1 of 5   Page ID #:2178

Olivia Karpinski                                              Cahill, et al. vs. Edalat, et al.

```
 1           IN THE UNITED STATES DISTRICT COURT

 2          FOR THE CENTRAL DISTRICT OF CALIFORNIA

 3                     SOUTHERN DIVISION

 4

 5   BRUCE CAHILL, an individual, et
     al.,
 6
                 Plaintiffs,
 7        vs.
                                         Case. No. 8:16-cv-
 8                                           00686-AG-DFM
     PAUL PEJMAN EDALAT, an individual,
 9   et al.,

10               Defendants.
     _____
11
     AND RELATED CROSS-CLAIMS/
12   COUNTERCLAIMS.
     _____
13

14

15      VIDEOTAPED DEPOSITION OF OLIVIA KARPINSKI

16             Newport Beach, California

17                  October 14, 2016

18

19

20

21

22

23   Reported by:
     Debby M. Gladish
24   RPR, CCRR, CLR, CSR No. 9803
     NCRA Realtime Systems Administrator
25   Job No. 10027932
```

Case 8:16-cv-00686-AG-DFM Document 95-7 Filed 10/19/16 Page 2 of 5 Page ID #:2179

Olivia Karpinski                                    Cahill, et al. vs. Edalat, et al.

1   around his assistant and his daughter walked up on
2   him.  So he was implying these things.  And it made
3   me feel uncomfortable.  I don't look at myself, you
4   know, as that, but being a female in the company it
5   made me feel really uncomfortable.  And I felt like
6   he was really advancing on me and I didn't know what
7   to do.
8       Q.   So did he say anything else?
9       A.   Not that I recall, just those statements.
10      Q.   Did he touch you?
11      A.   Not that I recall.
12      Q.   Did he ever at any time touch you in or
13  around your breast area to try to make sexual
14  contact with you?
15      A.   More my shoulder.
16      Q.   Breast?  "Yes" or "no."
17      A.   No.
18      Q.   How about the genital areas?
19      A.   No.
20      Q.   How about the buttock areas?
21      A.   No.
22      Q.   Okay.  And he tried to kiss you on one
23  occasion?
24      A.   Yes.  He pulled me in and tried to kiss me.
25      Q.   Okay.  And at that lunch he never tried to

Case 8:16-cv-00686-AG-DFM   Document 95-7   Filed 10/19/16   Page 3 of 5   Page ID #:2180

Olivia Karpinski                                    Cahill, et al. vs. Edalat, et al.

```
 1   kiss you?
 2       A.   No.  But it was still very, very
 3   uncomfortable and awkward.
 4       Q.   But I'm asking a specific question and my
 5   client has an entitlement to a right to that answer.
 6            He never, at that lunch, tried to kiss you;
 7   right?
 8       A.   No.
 9       Q.   Okay.  And no other inappropriate touching
10   at that lunch?
11       A.   No.
12       Q.   Okay.  And no other inappropriate touching
13   of the breast, genital or buttocks areas any other
14   time?
15       A.   On my shoulder very closely, but, no.
16       Q.   Okay.  And when you went to the police for
17   the first time, it was about specifically what, the
18   attempted kiss?
19       A.   I told them the entire story.  I told them
20   I didn't feel safe and I told them the entire story.
21       Q.   And when you went in, did you get the name
22   of the officer?
23       A.   I didn't go in.  They came to me and I did
24   not get the name of the officer.
25       Q.   You didn't ask them for their cards?
```

Olivia Karpinski                                     Cahill, et al. vs. Edalat, et al.

```
 1       A.   The company I work for --
 2       Q.   And what's --
 3       A.   -- my phone number and my e-mail.
 4       Q.   And what's the company that you work for?
 5       A.   Well, I work for myself.  It's AOK
 6   Consulting.
 7       Q.   Is that what the card says?
 8       A.   No, but I work with the company, Sentar, I
 9   have a business card for that company.
10       Q.   And what does that company say your title
11   is?
12       A.   EVP of sales.
13       Q.   Okay.  All right.  Can you take a look at
14   page 23 of Exhibit 21.
15       A.   Yes.
16       Q.   You are describing here, starting at the
17   top of page 23, quote, "Edalat left the conference
18   room and moved to shake Cahill's hand as well.  At
19   this time Cahill pulled Karpinski in for a hug and
20   kissed Karpinski against her will."
21            That is the same event that you were
22   talking about before earlier in the complaint?
23       A.   Yes.
24       Q.   So he's attempted to kiss you, according to
25   you, one time?
```

Olivia Karpinski                                    Cahill, et al. vs. Edalat, et al.

```
 1       A.   Yes.  He did kiss me.  It landed on my
 2  face, just not on my lips.
 3       Q.   I didn't say otherwise.  I just said that
 4  was the one time that he attempted to kiss you.  And
 5  you say he attempted to kiss you on the lips?
 6       A.   Yes.
 7       Q.   All right.  But you deflected it?
 8       A.   Yes.
 9       Q.   Okay.  Now, go down to the bottom of
10  page 23 of the same document, Exhibit 21, last
11  sentence it says, "A maliciously false statement
12  Cahill instigated Weimann to terminate his
13  employment with Pharma Pak, Inc. that same day, as
14  well as demand Karpinski's termination."
15            What maliciously false statement are you
16  referring to there?
17       A.   Bruce told Dr. Weimann that I said that
18  Dr. Weimann was stealing patch material.  We had
19  already had a conversation about the patches and how
20  the cutting produced about a 40 percent waste, so
21  that had something that had already been cleared up.
22  Mr. Cahill stated to Dr. Weimann that I -- me -- I
23  thought that he was stealing patch material.
24            Dr. Weimann then got very upset, threatened
25  to quit.  Bruce actually came in my office, slammed
```