1  John J.E. Markham, II (CA Bar No. 69623)
   jmarkham@markhamread.com
2  Elizabeth Read (CA Bar No. 87618)
   eread@markhamread.com
3  MARKHAM & READ
   One Commercial Wharf West
4  Boston, Massachusetts 02110
   Tel: (617) 523-6329
5  Fax: (617) 742-8604
6
7  Attorneys for Plaintiffs
   BRUCE CAHILL, GREG CULLEN,
8  SHANE SCOTT, RON FRANCO, and
   PHARMA PAK, INC.
9

10              IN THE UNITED STATES DISTRICT COURT

11            FOR THE CENTRAL DISTRICT OF CALIFORNIA

12                      SOUTHERN DIVISION

13  BRUCE CAHILL, GREG CULLEN, SHANE )   CASE NO:  8:16-cv-00686-AG-DFM
14  SCOTT,  RON FRANCO, and PHARMA    )
    PAK, INC. a California  Corporation,   )   **PLAINTIFFS' SECOND AMENDED**
15                                     )   **COMPLAINT FOR DAMAGES FOR**
                                       )   **DEFENDANTS' VIOLATIONS OF THE**
16    Plaintiffs,                      )   **FEDERAL SECURITIES AND RICO**
                                       )   **LAWS; AND FOR DAMAGES UNDER**
17           -- vs. --                 )   **STATE LAW FOR FRAUD, DECEIT,**
                                       )   **AND LIBEL; AND FOR A**
18  PAUL PEJMAN EDALAT, an individual, )   **DECLARATORY JUDGMENT**
19  OLIVIA KARPINSKI, an individual,   )
    FARAH BARGHI, an individual, SENTAR )
20  PHARMACEUTICALS, INC., a Nevada    )   **PLAINFIFFS DEMAND A JURY TRIAL**
    corporation, EFT GLOBAL HOLDINGS,  )   **ON ALL ISSUES SO TRIABLE**
21  INC., BLUE TORCH VENTURES, INC., a )
    Wyoming Corporation, and LIWA, N.A., )
22  INC., a Wyoming Corporation.       )
                                       )
23                                     )
     Defendants.                       )
24                                     )
                                       )
25                                     )
    _____  )
26                                     )
    AND RELATED COUNTERCLAIMS          )
27  _____  )

28

         SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

                                    1

1

2

   COME NOW Plaintiffs Bruce Cahill, Greg Cullen, Shane Scott, Ron Franco, and Pharma

Pak, Inc. (sometimes referred to herein collectively as "Plaintiffs"), and for their Second

Amended Complaint against Defendants Paul Pejman Edalat, Olivia Karpinski, Farah Barghi,

Sentar Pharmaceuticals, Inc., EFT Global Holdings, Inc., Blue Torch Ventures, Inc., and LIWA,

N.A., Inc., allege as follows.

## JURISDICTION AND VENUE

   1.   This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over Counts I

through VI of this Second Amended Complaint because:

      (i)  Counts I through V are securities fraud claims arising under the laws of the

United States, namely, section 27 of the Exchange Act (15 U.S.C. §78aa), section 10(b) of

the Exchange Act (15 U.S.C. §78j(b)); Rule 10b-5 promulgated thereunder (17 C.F.R.

§240.10b-5); and Section 12(a)(2) of the 1933 Securities Act [15 U.S.C. § 77l(a)(2)]; and

      (ii) Count VI is a claim brought under the Racketeer Influenced and Corrupt

Organization Act, 18 U.S.C. § 1961, *et seq.* (hereinafter "RICO"). Count VI alleges that

the Defendants have violated and conspired to violate RICO by committing and

conspiring to commit  (i) a pattern of scheming to defraud and to obtain money and

property from Plaintiffs by false pretenses, representations, and promises, and have used

interstate and foreign wire communications to further their fraud, in violation of Title 18

U.S.C. § 1343 (wire fraud), (ii) illegal narcotics distribution in violation of 21 U.S.C. §

841 and California state drug laws, (iii) obstruction of justice, all as part of a pattern of

racketeering activity and through an enterprise, in violation of 18 U.S.C. §1503, all in

violation of  18 U.S.C. § 1962(c), thus injuring Plaintiffs' business or property.

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

2.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Counts VII and VIII (violation of California state securities statutes, §§ 25401, 25501, 25504, and 25504.1); over Count IX  (fraud and deceit, Cal. Civil Code §§ 1709 and 1572), over Count X (fraudulent concealment under Cal. Civil Code §§ 1709 and 1572), over Count XI seeking a declaratory judgment under California law by invoking the Declaratory Judgment procedure specified in 28 U.S.C. § 2201, and Counts XII, XIII, and XIV (libel)  because all these state claims and the federal claims alleged in Counts I through VI arise from a common nucleus of facts and the state claims are so related to the federal claims stated herein that the state claims form part of the same case and controversy.

3.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims stated herein occurred within this District.

## INTRODUCTION

4.   Defendant Paul Edalat ("Edalat") is a fraud who has for many years engaged in various schemes and artifices to defraud others and to obtain their money by false and fraudulent pretenses. He uses the following conduct as his method of operation and combines with other people who participate with him in his fraudulent conduct, including, in this case, the other named defendants:

    (a)     He makes fraudulent statements about prospective business ventures to induce others to invest in those ventures;

    (b)     He falsely and grossly overstates the value of assets already committed to the ventures;

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

(c)     He conceals from investors and prospective investors many material facts about himself and his prior financial failures and misconduct in order to induce these individuals to invest;

(d)     He misuses investment funds and assets once he has fraudulently induced investors to invest their money;

(e)     After Edalat secures investment monies from the investors, he lulls them by more false statements and thereby attempts to and does induce them to make further payments, and to induce them not to bring claims against him for his fraud; and,

(f)     When investors discover his fraudulent conduct, Edalat obstructs justice by threatening investors and making defamatory statements about them in order to intimidate them into keeping silent about his fraud and to induce them not to bring claims against him for his fraud, or, as in this case, to endeavor to make them abandon their claims once they have filed them in federal court.

5.   Defendant Edalat lives off other peoples' money that he has procured by fraud. Edalat purposefully maintains a highly-visible and extravagantly wealthy lifestyle by staying in luxury suites, wearing a diamond-studded gold Rolex watch that he brags he purchased for more than $50,000.00, by organizing extravagantly fancy dinners and weekend retreats, and by driving fancy cars, including two Rolls Royces, three Lamborghinis, a Land Rover, a BMW, a Ferrari, and a Hummer, among others. This lifestyle is used by him in order to create the illusion with potential investors that he has successfully managed profitable ventures so that potential investors will be duped into investing with him. He frequently has these fancy automobiles,

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

4

along with other assets, such as a Las Vegas penthouse, held in the names of other persons to disguise from the authorities that he is the true owner of these luxury assets and yet uses these assets as his own to lure investors. While parading his lavish lifestyle, he conceals from his investors that he is a commercial failure who has filed for personal bankruptcy three times in the last 20 years.

6.    In bankruptcy, Edalat knowingly has filed incomplete schedules of his assets, hiding them from the bankruptcy trustee and thus from his creditors. He then perjures himself under oath when asked about his assets in order to hide them from creditors. While thus acting in the bankruptcy court in this fraudulent manner by failing to disclose assets that he claims outside of bankruptcy that he does have, he continues to pretend to potential investors that he is very successful and thus fully capable of supporting his luxurious lifestyle by the earnings from his business successes. In falsifying his bankruptcy schedules and failing to disclose assets, he puts the assets in which his investors have an interest at risk, and fraudulently fails to disclose to investors that he has done so.

7.    Edalat, along with the other Defendants named herein, has used the above-described fraudulent methods to defraud the Plaintiffs in this case in the manner described in this Second Amended Complaint.

## THE PARTIES

8.    Plaintiff Bruce Cahill ("Cahill") is a citizen of the state of California, domiciled in Orange County, California.

9.    Plaintiff Greg Cullen ("Cullen") is a citizen of the state of California, domiciled in Los Angeles County, California.

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

10.   Plaintiff Shane Scott ("Scott") is a citizen of the state of Utah, domiciled in Utah.

11.   Plaintiff Ron Franco ("Franco") is a citizen of the state of California, domiciled in Los Angeles County, California.

12.   Plaintiff Pharma Pak, Inc. ("Pharma Pak") is a California corporation; Plaintiff Cahill is the CEO of Pharma Pak.

13.   Defendant Paul Pejman Edalat ("Edalat") is a citizen of the state of California, last known to be domiciled in Orange County, California.

14.   Defendant Olivia Karpinski ("Karpinski") is a citizen of the state of California and is domiciled in either Orange County or Los Angeles County, California. She works with Edalat to induce investors to lend money to Edalat, or to invest in his companies. As Edalat has said, "[G]ive me a Rolls Royce and Olivia [Karpinski], and I can get anyone to invest." Karpinski made false statements to one or more of the plaintiffs in order to secure their investments into Pharma Pak.

15.   Defendant Farah Barghi ("Barghi") is a citizen of the state of California, residing in Newport Beach, Orange County, California. She has participated in many of the fraudulent activities described in this Second Amended Complaint, all of which have damaged Plaintiffs. She acts as Edalat's front and agent in relation to the activities of Defendants EFT Global Holdings, Inc., Sentar Pharmaceuticals, Inc., and Blue Torch Ventures, Inc., in the manner described below, which is fraudulent and has damaged Plaintiffs.

16.   Defendant Blue Torch Ventures, Inc. ("Blue Torch") is a Wyoming corporation formed in September, 2014 under the laws of Wyoming.  Defendant Barghi formed Blue Torch at the direction of Edalat and Barghi is listed as the sole shareholder. However, the company is in

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

fact controlled by Edalat. Blue Torch has no separate existence apart from Edalat, and it acts as Edalat tells it to act and exists and acts solely as Edalat's *alter ego*, doing only what he commands, either directly or through Farah Barghi, to further Edalat's fraudulent activities. It is a mere shell and does not observe any of the corporate formalities. Blue Torch is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality, agency, conduit, or adjunct of Edalat and it is legally therefore one and the same with Paul Edalat and its actions are the actions of Edalat and Edalat's actions are its actions. It is liable for all the actions done by Edalat because it is his *alter ego*. Edalat is also its agent and the actions alleged in this Second Amended Complaint undertaken by Edalat bind Blue Torch under the principal and agent and *respondeat superior* doctrines as well as under the *alter ego* doctrine.

17.    Defendant EFT Global Holdings, Inc. ("Global Holdings") is a Nevada corporation formed on July 2, 2013 and has its principal place of business in Las Vegas, Nevada. It has operated since its inception through two fictitious names, at separate times. Since early 2015, Global Holdings has used the fictitious d/b/a "Sentar Pharmaceuticals." Before Sentar Pharmaceuticals became the d/b/a for Global Holdings, Global Holdings' d/b/a was "Scilabs Pharmaceuticals." Edalat and Barghi changed the d/b/a from Scilabs Pharmaceuticals to Sentar Pharmaceuticals because another Edalat owned-owned entity, Scilabs Nutraceuticals, Inc., was shut down in late November, 2014  by a federal court order obtained by the United States Food and Drug Administration (the "FDA"). The Court shut down Scilabs Nutraceuticals, Inc. upon a showing by the FDA that Scilabs Nutraceuticals, Inc. and Edalat had repeatedly violated the health and safety standards required by United States law in connection with Edalat's manufacturing of nutraceutical products under the name Scilabs Nutraceuticals, Inc. Because of

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

the bad publicity associated with the court-ordered shutdown of Scilabs Nutraceuticals, Inc., and the close name similarity between the shut-down Scilabs Nutraceuticals, Inc. and the d/b/a Scilabs Pharmaceuticals which Global Holdings was using, Edalat and Barghi changed Global Holdings d/b/a Scilabs Pharmaceuticals to Global Holdings d/b/a Sentar Pharmaceuticals so that prospective investors in the Edalat and Barghi ventures would not be deterred from investing with Edalat because of the shutdown of Scilabs Nutraceuticals, Inc. This d/b/a name change was done knowingly by Barghi and Edalat in order to conceal from investors that Edalat's other company, Scilabs Nutraceuticals, Inc., was sued and enjoined by the FDA and the federal court.

18.   Moreover, Global Holdings d/b/a Sentar Pharmaceuticals is controlled by Edalat and by Barghi who acts with and for Global Holdings d/b/a Sentar Pharmaceuticals under the control and direction of Edalat.  Global Holdings d/b/a Sentar Pharmaceuticals has no separate existence apart from Edalat, and instead it acts as Edalat tells it to act and exists and acts solely as Edalat's *alter ego*, doing only what he commands, either directly or through Farah Barghi, to further Edalat's fraudulent activities. It is a mere shell and does not observe any of the corporate formalities. Global Holdings d/b/a Sentar Pharmaceuticals is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality, agency, conduit, or adjunct of Edalat; it is legally therefore one and the same with Paul Edalat; and its actions are the actions of Edalat and Edalat's actions are its actions. It is liable for all the actions done by Edalat because it is his *alter ego*. Edalat is also its agent and the actions alleged in this Second Amended Complaint undertaken by Edalat bind Global Holdings d/b/a Sentar Pharmaceuticals under the principal and agent and *respondeat superior* doctrines as well as under the *alter ego* doctrine.

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

8

19.   Defendant Sentar Pharmaceuticals, Inc. ("Sentar") is a Nevada corporation formed by Defendant Farah Barghi in January, 2016. In the corporate filings, Barghi is listed as the sole director and shareholder. Defendants Edalat and Barghi have used the names of the corporation Sentar Pharmaceuticals, Inc. and of Global Holdings d/b/a Sentar Pharmaceuticals interchangeably since Sentar Pharmaceuticals, Inc. was formed. They also use the two names interchangeably to confuse investors about the actual identity of the entity liable for the false and fraudulent representations that have been made to investors by Edalat, Barghi, and Karpinski. Because of this, Sentar Pharmaceuticals, Inc. is liable for the representations made on behalf of Global Holdings, d/b/a Sentar Pharmaceuticals, and *vice versa*.

20.   Moreover, Sentar Pharmaceuticals, Inc. is controlled by Edalat and by Barghi who acts with and for Sentar Pharmaceuticals, Inc. under the control and direction of Edalat.  Sentar Pharmaceuticals, Inc. has no separate existence apart from Edalat, and instead it acts as Edalat tells it to act and exists and acts solely as Edalat's *alter ego*, doing only what he commands either directly or through Farah Barghi to further Edalat's fraudulent activities. It is a mere shell and does not observe any of the corporate formalities. Sentar Pharmaceuticals, Inc. is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality, agency, conduit, or adjunct of Edalat; it is legally therefore one and the same with Paul Edalat; and its actions are the actions of Edalat and Edalat's actions are its actions. It is liable for all the actions done by Edalat because it is his *alter ego*. Edalat is also its agent and the actions alleged in this Second Amended Complaint undertaken by Edalat bind Sentar Pharmaceuticals, Inc. under the principal and agent and *respondeat superior* doctrines as well as under the *alter ego* doctrine.

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

21.   Defendant LIWA, N.A., Inc. ("LIWA") is a Wyoming limited liability company formed under the laws of the state of Wyoming. LIWA has a bank account used by Edalat to pass fraudulently-obtained investor monies, and monies obtained by other illegal conduct including that referred to in Count VI of this Second Amended Complaint, from the United States to foreign countries by using wires sent in foreign commerce to further the scheme to defraud in the sale of securities.  Edalat also caused persons who paid him money for stock and other matters to make their checks and deposits payable to LIWA, doing so in 2015 when he was in bankruptcy and doing so as a means of hiding from the bankruptcy court and Trustee that he owned stock in Pharma Pak, causing such payments and deposits to go into LIWA's account instead of his own bank account. Edalat did so at a time when he was being questioned under oath in the bankruptcy proceeding about what stock he owned in what companies and he did not disclose that he owned any stock in Pharma Pak when he now claims in this lawsuit that he does own such stock.  LIWA was used to hide this crime of bankruptcy fraud and is part of the RICO claim made below.

22.   Moreover, LIWA is controlled by Edalat and by Barghi who acts with and for LIWA under the control and direction of Edalat.  LIWA has no separate existence apart from Edalat, and instead it acts as Edalat tells it to act and exists and acts solely as Edalat's *alter ego*, doing only what he commands either directly or through Farah Barghi to further Edalat's fraudulent activities. It is a mere shell and does not observe any of the corporate formalities. LIWA is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality, agency, conduit, or adjunct of Edalat; it is legally therefore one and the same with Paul Edalat; and its actions are the actions of Edalat and Edalat's actions are its actions. It is

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

liable for all the actions done by Edalat because it is his *alter ego*. Edalat is also its agent and the actions alleged in this Second Amended Complaint undertaken by Edalat bind LIWA under the principal and agent and *respondeat superior* doctrines as well as under the *alter ego* doctrine.

## COUNT I

**By Plaintiff Cahill against Defendants Edalat, Barghi, and Global Holdings d/b/a Sentar Pharmaceuticals for Fraud in Connection with the Purchase and Sale of Securities in Violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]**

23.   Plaintiffs reallege each and every allegation stated in Paragraphs 1 through 22 of this Second Amended Complaint as if separately repleaded in full herein.

24.   This Count is asserted by Cahill against Defendants Edalat, Barghi, and Global Holdings d/b/a Sentar Pharmaceuticals and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule l0b-5 promulgated thereunder by the United States Securities and Exchange Commission.

25.   Plaintiffs Cahill, Cullen, Scott, and Franco engage in business activities in and around Southern California, Nevada, and elsewhere. Among other business activities, they seek to make investments in ventures that they deem worthwhile. Each individual Plaintiff has made investments independent of the other three for many years. In the matter that gives rise to this action, however, each of these four individual plaintiffs purchased Pharma Pak stock. Cahill purchased the stock first and the others purchased their shares later, as described below.

26.   In mid-2014, Edalat, acting for himself and Global Holdings d/b/a Scilabs Pharmaceuticals approached Cahill and told Cahill, who was at that time looking for a new business opportunity, that Edalat had a valuable patent, had know-how in the pharmaceutical industry, had a valuable and licensed facility where he could manufacture pharmaceutical

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

products, and extensive contacts in the Middle East, Asia and Eastern Europe where those products could be sold. Edalat first induced Cahill to join his already-established pharmaceutical company Global Holdings, which was then doing business under the d/b/a Scilabs Pharmaceuticals as more fully described in paragraph 17 of this Second Amended Complaint, and to take over the role of CEO of that corporation in an effort to raise funds and run its operations. In exchange for working as the CEO, Edalat offered Cahill ten per cent (10%) of the stock of what was then known as Global Holdings d/b/a Scilabs Pharmaceuticals, an additional five per cent (5%) once he became the CEO and another five per cent (5%) later, under certain conditions.  Cahill became CEO in or around the fall of 2014.

27.   In early 2015, Cahill, Edalat, and John Crowther, another investor who is not a party to this case, decided to form a new company to assemble various types of medical kits and also to manufacture and distribute skin patches used for transdermal ingestion of various types of pharmaceutical products and other products. The decision to form this company was made after Edalat represented he would contribute his expertise, commercial contacts that he represented to be valuable, a medical manufacturing license, and a building he said he owned, all to launch this new company, if Bruce Cahill would run the new company and pay Edalat for stock in the new company.  Ultimately, the new company was formed and called Pharma Pak, Inc., one of the Plaintiffs herein. Plaintiff Cahill was induced to purchase forty per cent (40%) of the stock of Pharma Pak for the sum of $500,000.00 by reason of the fraudulent, deceptive and manipulative statements and actions of Defendants Edalat, Barghi, and Sentar Pharmaceuticals, as described in the paragraphs next below. Approximately $150,000.00 went to Pharma Pak for operating expenses and approximately $350,000.00 was paid to Edalat.  John Crowther received eleven per

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

cent (11%)of the stock (8% directly and 3% through a trust) for a payment of $250,000.00, all of which went to Edalat. Edalat retained at that time the remaining forty-nine (49%) of the Pharma Pak stock.

28.   Cahill paid the $500,000.00 referred to above for his Pharma Pak stock based on fraudulent misrepresentations made by Edalat and Barghi that were made for themselves and on behalf of Global Holdings d/b/a Sentar Pharmaceuticals.

29.   The false and fraudulent misstatements included the following:

(a)   Edalat told plaintiff Cahill, commencing in summer 2014, and told Plaintiffs Cullen, Scott and Franco starting in approximately September, 2015 and continuing until early January, 2016, that he (Edalat) controlled a valuable patent on a process called an "All Natural Non-Toxic Sublingual Drug Delivery System" (hereinafter referred to as the "patent") that would allow the most effective delivery of drugs and nutraceuticals sublingually (under the tongue), which would allow both a faster and more effective delivery of the drug involved than if it had to be swallowed and then processed through the digestive system, or rather than, in the case of some drugs, smoked, thus creating harm to the respiratory system;

(b)   Edalat stated that his sublingual patent was already viable in many countries; that an application for it was filed and being professionally pursued in the United States by a top-flight patent law firm; that the process covered by it was available for use already in the United States and in many countries; and that its final approval was expected by the end of 2015.

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

13

(c)     Edalat also fraudulently showed Plaintiffs a letter from the patent lawyers dated August 26, 2014, making positive statements about the pursuit of this patent, without telling Plaintiffs that the law firm handling the patent work had stopped work because, as Edalat well knew, Edalat had not paid the legal fees needed to have the legal work on the patent completed. The patent involved is still not approved in the United States.

(d)     Edalat further explained that this patent was his and was being held in the name Global Holdings d/b/a Scilabs Pharmaceuticals, which Edalat later changed to the d/b/a Sentar Pharmaceuticals as more fully described in paragraph 17 of this Second Amended Complaint, and Edalat told Cahill in the fall of 2014 that if Cahill purchased Pharma Pak stock, Edalat would allow Pharma Pak access to and use of this highly-valuable patented technology. Edalat also told Cahill, Scott and Cullen that he would allow them to have an interest in the company that owned the patent if they purchased Pharma Pak stock.

(e)     The representations in subparagraphs (a) through (d) were material to Plaintiffs because the commercial promise of this patent would make any stock purchase more valuable if Pharma Pak could use that patent in its operations and also because Edalat had promised Plaintiffs Cahill, Cullen, and Scott an interest in the company owning the patent, itself a valuable compensation for investing in Pharma Pak, because access to the patent by any company would enhance their operations significantly by giving the individual plaintiffs a competitive edge

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

14

against those competitors offering competing but inferior sublingual drug delivery systems;

(f)    Edalat's false statements about his "patent" were further material to the stock purchases of Pharma Pak stock because, as shown in more detail below, Edalat induced plaintiffs Cahill, Cullen, Scott and Franco to invest in Pharma Pak by promising that if they did, he would allow them to invest in whatever company would hold this patent he said he controlled, or that the patent rights would become available to Pharma Pak, and Edalat stated to them that this patent would generate many hundreds of millions of dollars in sales because it would allow any company having access to it to out-compete other sublingual drug delivery processes, thus making any investments Plaintiffs made in Pharma Pak more attractive;

(g)    In truth, as Edalat then well knew, this "patent" referred to above would not be approved by August, 2015 as Edalat had falsely stated because, among other reasons he well knew, Edalat had not paid the patent attorneys for their ongoing work. They were owed in excess of $200,000.00 dollars for past work, and would not continue working on the patent until they were paid, which Edalat refused to do;

(h)    Barghi also participated with Edalat in inducing Cahill to invest in Pharma Pak by herself adding to the false statements relating to the patent referred to above and related to Edalat's supposed company holding this patent right, which company at the time was Global Holdings d/b/a Scilabs Pharmaceuticals, said

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

by Barghi to be "an EFT Global Holdings Company."  Barghi, at all times referred to in this paragraph 29, made the false and fraudulent statements referred to herein on her own behalf and on behalf of Global Holdings d/b/a Scilabs Pharmaceuticals which later became Global Holdings d/b/a Sentar Pharmaceuticals and made them with the intent to benefit her as well as that company. To further their fraudulent inducement of Cahill and the other defendants to invest in Pharma Pak they were told that, if they did, they would obtain an interest in Global Holdings d/b/a Scilabs Pharmaceuticals, later d/b/a Sentar Pharmaceuticals, and at Edalat's request, Barghi drafted and published in the late summer or early fall of 2014, a document entitled "Scilabs Pharmaceuticals Private Placement Memorandum" (hereinafter the "2014 PPM") which contained many false statements. This publication was posted on the internet, and was thus sent in interstate wire communication, and was sent to Plaintiff Cahill (and later to Plaintiffs Scott, Cullen and Franco) via email, also in interstate commerce by interstate wire communication. Barghi's 2014 PPM contained the following statements, among others, all known by Barghi and Edalat (who approved the statements before the PPM was finalized and sent in interstate commerce) to have been false when made, namely, that (i) the company had "key personnel" and key "favorable" relationships with its customers, with subcontract manufacturers and with suppliers (2014 PPM at p. 20), when in truth there were none of these; (ii) Scilabs had "over three decades in the pharmaceutical and nutraceutical sectors," (*Id.* at p. 26) when there had

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

16

1    been no such experience, (iii) "Scilabs . . . has the clearance to manufacture

2    over 500 pharmaceutical preparations  . . . and is "licensed and registered with

3    the United States Food and Drug administration to manufacture, repackage,

4    wholesale and distribute branded pharmaceutical drugs," (*Id.* at p. 26) when

5    there were no such clearance or licenses;  (iv) "current markets served by

6    Scilabs Pharmaceuticals operations include sports nutrition, weight management

7    . . . and generic pharmaceutical sectors;"  (*Id.* at p. 26) when Scilabs served no

8    such markets or any markets; and (vi) Scilabs Pharmaceuticals had a "state-of-

9    the-art FDA licensed pharmaceutical manufacturing and research and

10   development facility." (*Id.* at p. 26) when in truth there was no such facility. All

11   these statements were contrived by Edalat and Barghi, and then placed in the

12   2014 PPM, and were known to be false by Barghi and Edalat when that PPM

13   was distributed in interstate commerce.

14   (i)    These false statements made in subparagraphs (h) just above were material

15          because each of these created a favorable impression as to how far along Global

16          Holdings d/b/a Scilabs Pharmaceuticals was in its operations and thus how

17          much more rapidly it would be able to become profitable. This promised

18          profitability was a substantial inducement for Plaintiffs to invest in Pharma Pak,

19          as Edalat was requesting, because Plaintiffs were also told that if they did so,

20          they would also partake in the profits derived from this sublingual technology in

21          Global Holdings d/b/a Scilabs Pharmaceuticals and that Pharma Pak could itself

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

17

use these benefits described above in its operations, thereby increasing substantially the profitability of Plaintiffs' investments in Pharma Pak.

(j)    The 2014 PPM also contained the following false statements, known to be false when placed into the PPM by Barghi and Edalat, namely that Global Holdings d/b/a Scilabs Pharmaceuticals had Federal and State manufacturing licenses and had established "high-level" relationships and distribution agreements with Dubai, Abu Dhabi, Africa, Eastern Europe and Asia (China and Japan) (*id.* at p. 40), when in truth there were no such relationships.   These false statements were material because each of these created a favorable impression as to how far along Scilabs Pharmaceuticals was in its operations and thus how much more rapidly it would be able to become profitable, which would then be used to the benefit of Pharma Pak.

(k)    In November 11, 2014, as was well known to Edalat and Barghi, an Edalat-owned company called Scilabs Nutraceuticals, Inc. (which was a separate corporation from defendant Global Holdings d/b/a Scilabs Pharmaceuticals but which was controlled by Edalat) was ordered by a federal court injunction issued in this District to shut down, cease all of its operations, and destroy all of its existing products because it had failed to comply with FDA good manufacturing practices in its manufacturing of those products and had ignored repeated specific warnings sent to it and to Edalat by the FDA over the past year.  This injunction was material to anyone investing in any venture in which Edalat was to participate because it would put potential investors on notice that

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

18

1    Edalat had been unable just recently to comply with FDA regulations despite

2    being warned about them repeatedly by the FDA, and because both the Pharma

3    Pak investment and the value of the sublingual patent technology he was

4    promoting would have less value in light of the FDA injunction. Despite its

5    materiality, neither Edalat nor Barghi told any of the plaintiffs this injunction

6    had issued.

8    (l)    After the above-described federal court injunction against Scilabs

9           Nutraceuticals, Inc. was sought by the FDA in 2014, Edalat and Barghi,

10          sometime in early 2015, created a Private Placement Memorandum very similar

11          to the 2014 PPM described above in subparagraphs (h) and (j). This 2015 PPM

12          contained the same false fraudulent statements as stated in the 2014 PPM and

13          recited in subparagraph (h), and these misstatements are adopted herein by

14          reference along with the allegations about their materiality as explained in

15          subparagraphs (h) and (j). Because of the injunction against Scilabs

16          Nutraceuticals, Inc., and in order to fraudulently conceal that injunction and the

17          problems it created for working with and investing with Edalat or with any

18          company with which Edalat was involved, Barghi and Edalat changed the title

19          of the PPM from "Scilabs Pharmaceuticals Private Placement Memorandum" to

20          "Sentar Pharmaceuticals 2015 Private Placement Memorandum" (hereinafter

21          the "2015 PPM"), thereby concealing any link between Edalat and Scilabs

22          Nutraceuticals, Inc. or its problems with the FDA. At or around the same time,

23          they also changed the name of Global Holdings d/b/a Scilabs Pharmaceuticals to

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

19

1        Global Holdings d/b/a Sentar Pharmaceuticals, also to conceal from potential

2        investors the FDA injunction case described above.

3    (m)    This 2015 PPM contained the same false statements as did the 2014 PPM

4        described above in subparagraphs (h) and (j), which were material to Plaintiffs

5        for the same reasons described above in subparagraph (h) and (j). They were

6        knowingly false when made by Edalat and Barghi. The misrepresentations in

7        subparagraphs (h), (j) and (l) about Global Holdings d/b/a Scilabs

8        Pharmaceuticals (later d/b/a Sentar Pharmaceuticals) were material to the

9        decision of Cahill to purchase Pharma Pak stock because Edalat told Cahill that

10       the resources, marketing avenues, government contacts in the Middle East,

11       patents, and other assets of that company  would be made available to Pharma

12       Pak as it grew.  In addition, because Cahill believed the descriptions given by

13       Edalat and Barghi concerning the success of Global Holdings d/b/a Scilabs

14       Pharmaceuticals (later d/b/a Sentar Pharmaceuticals), Cahill believed that Edalat

15       knew how to run a successful business and would bring that knowledge and

16       experience to Pharma Pak. These were major considerations and reasons why

17       Cahill purchased Pharma Pak stock. Indeed, in numerous of the discussions

18       about the commencement of Pharma Pak and in seeking to have Cahill purchase

19       its stock, Edalat repeatedly referred to the success of Global Holdings d/b/a

20       Scilabs Pharmaceuticals (later d/b/a Sentar Pharmaceuticals) and how its assets

21       would be shared with Pharma Pak.

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(n)     Edalat also told plaintiff Cahill, in December, 2014, that Edalat had obtained a valid, high value drug manufacturing license from the State of California that would allow a building Edalat was using (at 17809 Gillette Avenue, in Irvine, California) to serve as a state-authorized site to manufacture or process certain pharmaceuticals and other regulated items. Based on this representation, Cahill and Crowther, along with Edalat, formed the new corporation Pharma Pak, Inc. to utilize the building and license. In truth and in fact, that license was not valid for use at the Gillette Avenue address and would not allow such manufacturing. Moreover, Edalat presented a brochure stating that the Gillette facility was a federally licensed manufacturing facility when he well knew it was not. These false representations were material because, if there had been such valid licenses, it would have allowed the investing plaintiff at that time, Cahill, and later the other individual plaintiffs when they invested, to more quickly commence the sales of their intended products;

(o)     In furtherance of his false representation that Pharma Pak had a valid manufacturing license, Edalat showed Cahill a license in the name of "Pharma Pak" and represented it to be the license of the company in which Plaintiffs were investing, the newly-formed Pharma Pak, Inc.  However, that manufacturing license was in fact, as Edalat well knew, not issued to Pharma Pak, Inc., which is the Pharma Pak for which Edalat was seeking to sell stock, but rather had been issued to another company, Scilabs Nutraceuticals, Inc., the company shut down by the FDA in the manner described above. Scilabs

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

21

Nutraceuticals, Inc. had a d/b/a name "Pharma Pak." Edalat had earlier obtained the manufacturing license under that d/b/a name, Pharma Pak, rather than under the name Scilabs Nutraceuticals, Inc. However that license was in fact the property of, and only licensed to, Scilabs Nutraceuticals, Inc, the legal entity having the d/b/a name Pharma Pak. Therefore, as Edalat well knew, the manufacturing license he showed Cahill would not operate to allow the newly-formed Pharma Pak, Inc. to manufacture or in any way deal with any pharmaceuticals or related products. This license's supposed but falsely stated usability by the newly-formed Pharma Pak, Inc. was material because, had that license actually authorized the newly-formed Pharma Pak, Inc. to process and sell products, it would have allowed Pharma Pak, Inc. and the individual Plaintiffs investing in it to commence producing and selling products much more quickly than if a new license had to be obtained and that would have resulted in generation of sales and thus profits to Pharma Pak, Inc. more quickly.

(p)   Edalat and Barghi, during the fall of 2014 through the summer of 2015, posted on the internet and therefore in interstate commerce by interstate wire communication, and stated to Cahill and others through that interstate communication, that Edalat's company, Scilabs Nutraceuticals, Inc., had an "unblemished history of safe, compliant production," and had "a long track record of producing only the safest and highest quality nutritional supplements . . . [and a] strong and consistent focus on quality and safety." This was

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

knowingly false because, as of the time Edalat and Barghi posted those statements and made them to Cahill, Edalat and Scilabs Nutraceuticals, Inc. had been repeatedly warned by the FDA that their nutraceutical operation was in violation of the safety standards required by federal law. This misstatement was material to Cahill because they believed that Edalat's alleged long history of unblemished success would enhance their Pharma Pak investments because the operation of Pharma Pak would be in capable and seasoned hands;

(q)  Edalat told Cahill that Edalat owned Global Holdings d/b/a Scilabs Pharmaceuticals (which became Global Holdings d/b/a Sentar Pharmaceuticals) and Edalat claimed that this was the company which now owned the purportedly valuable sublingual patent referred to above. Edalat would give Cahill a 10% ownership interest in Global Holdings d/b/a Scilabs Pharmaceuticals (later d/b/a Sentar Pharmaceuticals) with 5% being given immediately to Cahill once Cahill assumed the position of CEO in that company in order to lend his (Cahill's) good name and management expertise to it, and with 5% being given at later times on certain conditions. Edalat also told Cahill that this company was valued at $660,000,000.00, that it had near limitless growth opportunities in various countries in the Middle East because of Edalat's longstanding relationships with government and business leaders including in Abu Dhabi, Dubai, and Iran, which would allow Edalat and Global Holdings d/b/a Sentar Pharmaceuticals to bypass the importation laws in these countries, into which Edalat assured Cahill that he could import for sale tens of millions of

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

dollars of that company's products on orders he already had lined up. To further induce Cahill to believe in the financial viability of Global Holdings d/b/a Scilabs Pharmaceuticals (later d/b/a Sentar Pharmaceuticals) as an inducement for Cahill to purchase Pharma Pak stock, Edalat, along with Barghi, in early 2015, posted on the internet in interstate commerce a statement about Global Holdings d/b/a Sentar Pharmaceuticals as follows:

> Sentar has established relationships in countries across the globe with partners well-known in their respective markets. While these associates bring the local infrastructure needed for manufacturing and distribution, Sentar's team brings United States Food and Drug Administration standards, along with business development experience to emerging markets in desperate need of access to safer drug supplies. [. . . ] This is where Sentar's team of experts and innovators can close the gap between emerging and established pharmaceutical manufacturing markets.

These representations were posted on the internet by defendant Barghi and were therefore wire communications in interstate commerce, as were the 2014 PPM and the 2015 PPM described above, and they were false, as Barghi and Edalat well knew, because neither Edalat nor Global Holdings d/b/a Sentar Pharmaceuticals had any such easy access to those countries, had no FDA approval, and Edalat's company had been shut down by the FDA, and they did not have large importation orders of products lined up. Moreover, Edalat did not own Global Holdings d/b/a Sentar Pharmaceuticals as he represented. Rather, as Edalat well knew, it had 39 separate shareholders. These were material statements because the purchase of Pharma Pak stock was made by Cahill based in substantial part on the promise by Edalat of a later opportunity to own part of

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

Global Holdings d/b/a Sentar Pharmaceuticals which, based on Edalat's and Barghi's representations described above, Cahill believed to be both controlled by Edalat, and thus he could convey its shares to Cahill and the other Plaintiffs, and that the company was more valuable because of the ease with which Edalat said that imports of large sales orders of its products could be made into the countries.

30.  In addition to the affirmative misstatements and omissions referred to above, defendant Edalat fraudulently omitted disclosing to Cahill that Edalat had filed for personal bankruptcy and had been discharged in bankruptcy twice, in 1997 and in 2005. Further, Edalat failed to disclose to Cahill that he was, in 2014 and in 2015, at the very time he was inducing these Plaintiffs to work with him and to invest in Pharma Pak in part by showing off his extravagant lifestyle,  Edalat had filed yet another personal bankruptcy proceeding seeking a Chapter 7 discharge for yet a third time. In this bankruptcy, Edalat filed Schedules stating, under penalties of perjury, that he had assets not exceeding $51,000.00, he had debts not less than $1,800,000.00 and lived on a monthly income not more than $450.00. At some time in 2014 after Cahill had learned about an Edalat bankruptcy, Edalat falsely told Cahill that the bankruptcy was not a personal bankruptcy but merely a proceeding involving a company. This was false in that the bankruptcy was a Chapter bankruptcy seeking a personal discharge of over $1.5 million in debts owed by Edalat.

31.  Edalalt's failures to disclose these bankruptcies (in 1997, 2005, and 2014), and his debts as he had stated them in the bankruptcy proceeding in 2014 and 2015, at the very times he was seeking to sell Pharma Pak stock to Cahill and later to Plaintiffs Scott, Cullen and Franco,

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

25

were material omissions made even more so because, at the time Edalat was soliciting stock sales to Cahill, Edalat maintained a highly-visible, extravagantly-wealthy lifestyle by staying in luxury suites, wearing a diamond-studded gold Rolex watch which he bragged that he purchased for more than $50,000.00, by organizing extravagantly fancy dinners and weekend retreats, showing a photograph of himself in front of a private jet, at the side of a large yacht, and by driving fancy cars, including two Rolls Royce vehicles, three Lamborghinis, a Land Rover, a BMW, a Ferrari, and a Hummer, among others. This lifestyle was used by him in order to create the illusion with Plaintiffs that he has successfully managed profitable ventures so that Plaintiffs would be deceived into investing with him.

32.   At one point, Plaintiff Cahill heard about Edalat's current bankruptcy that had commenced in 2014 and asked him about it. Edalat falsely responded that the bankruptcy involved a company with which he was affiliated and did not involve him personally. This was a material false statement because a personal bankruptcy is a much more significant indication that Edalat was a financial failure than is the bankruptcy of a single company. This statement was also knowingly false because Edalat well-knew that he had filed a personal bankruptcy.

33.   As a result of the all the forgoing misstatements and omissions referred to in paragraphs 29 through 32, and in reliance thereon, Plaintiff Cahill, between November, 2014 and March, 2015, paid $500,000.00 to purchase 40% of Pharma Pak stock. Approximately $150,000.00 of that money was paid into Pharma Pak and $350,000.00 was paid to Edalat by payments made to his various entities.

34.   Through the allegations referred to in the preceding paragraphs, Defendants Edalat, Barghi, and Global Holdings d/b/a/ Sentar Pharmaceuticals, whichwas acting by and through

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

Edalat and Barghi, engaged in a plan, scheme, conspiracy, and course of conduct pursuant to which they knowingly or recklessly engaged in acts, transactions, practices, and courses of business which operated as a fraud and deceit upon Cahill; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading; and employed devices, schemes, and artifices to defraud in connection with the purchase and sale of shares. Such scheme was intended to, and throughout the time of the scheme, did: (i) deceive the investing public, namely the individual plaintiffs, including Cahill, as alleged above; (ii) misrepresented the value and assets of the Pharma Pak venture; (iii) misrepresented the value of the Sentar Pharmaceutical venture which was an inducement to Cahill to purchase Pharma Pak stock; and, (iv) caused Cahill to rely on these material misrepresentations and omissions and purchase stock in plaintiff Pharma Pak.  In furtherance of this unlawful scheme, plan, and course of conduct, defendants Edalat, Barghi, and Global Holdings d/b/a Sentar Pharmaceuticals, and each of them, took the actions set forth herein.

35.   Pursuant to the above scheme Edalat, Barghi, and Global Holdings d/b/a Sentar Pharmaceuticals participated directly or indirectly in making the above misrepresentations, designed to induce and which did induce Cahill to purchase stock based on those materially false and misleading statements and omissions in that they misrepresented the truth about the Pharma Pak product, patents, and manufacturing license and failed to disclose material, adverse information, all as alleged above.

36.   Defendants Edalat, Barghi, and Global Holdings d/b/a Sentar Pharmaceuticals had actual knowledge of the materially false and misleading statements and material omissions

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

27

alleged herein and intended thereby to deceive the individual plaintiffs, or in the alternative, these defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to the defendants. Said acts, misstatements, and omissions of these defendants were committed willfully or with deliberate recklessness. In addition, each of these defendants knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

37.   Plaintiff Cahill, relying on the materially false and misleading statements described herein, purchased shares in Pharma Pak at prices artificially inflated by these defendants' wrongful conduct. Had Cahill known the truth, he would not have purchased said shares, or would not have purchased them at the inflated prices that were paid, or in the quantity purchased, or at all.

38.   By reason of the conduct alleged herein, all of which was done in or affected interstate commerce, defendants Edalat, Barghi, and Global Holdings d/b/a Sentar Pharmaceuticals knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

39.   As a direct and proximate result of defendants' wrongful conduct, Cahill suffered damages to be proved at trial in connection with his purchases of Pharma Pak shares of at least $500,000.00.

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

28

1

2

## COUNT II

3

4

**By Plaintiff Cullen against Defendants Edalat, Barghi, Global Holdings d/b/a Sentar Pharmaceuticals, and Karpinski for Fraud in Connection with the Purchase and Sale of Securities in Violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]**

5

6

40.   Plaintiffs reallege each and every allegation stated in Paragraphs 1 through 39 of this

7

Second Amended Complaint as if separately repleaded in full herein.

8

9

41.   After Cahill had purchased his 40% share of Pharma Pak stock in the manner

10

described in Count I, above, he commenced running Pharma Pak as its CEO. For reasons that

11

will be explained below in Count VI, the RICO Count, Pharma Pak had by the fall of 2015

12

exhausted its initial investment money and other monies loaned to it, and Edalat sought to find

13

new buyers of Pharma Pak stock. Among those he found were Plaintiffs Cullen, Scott, and

14

Franco.

15

16

42.   Edalat, Barghi (to the extent of Barghi's role in contributing to written materials

17

relied on by Cullen), and Global Holdings d/b/a Sentar Pharmaceuticals, acting by and through

18

Edalat and Barghi, induced Cullen to pay $250,100.00 to purchase 5% of the outstanding stock

19

in Pharma Pak by making knowingly false and fraudulent statements to Cullen, during the

20

months of October and November, 2015 in conversations taking place in the Los Angeles area,

21

through text messages that were interstate wire communications, and continuing to post in

22

interstate commerce the same materials described in paragraph 29 (h), (j) and (l) above, and by

23

causing Cullen to see and review the 2015 PPM referred to above.

24

43.   In addition, these defendants all falsely and fraudulently:

25

26

     (a)     told Cullen about the supposedly valuable sublingual patent in the manner

27

               described in subparagraph (a)-(d) of paragraph 29;

28

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

(b)     caused Cullen to see and review the false statements contained in the 2015 PPM referred to in subparagraph (l) of paragraph 29, which had the same false statements as set forth in the 2014 PPM as described in subparagraphs (h) and (j) of paragraph 29;

(c)      told Cullen about the supposed existence of the manufacturing license referred to in subparagraph (n) of paragraph 29;

(d)     told Cullen of the high value of Global Holdings d/b/a Sentar Pharmaceuticals and Edalat promised to make options to purchase its shares available to Cullen if he bought stock in Pharma Pak;

(e)     failed to disclose to Cullen any of Edalat's three bankruptcies at the same time that Edalat displayed to Cullen the same lavish lifestyle described above, a display which included statements and text messages from Edalat to Cullen, in and around September 2015, that Edalat was connected to royal family members from the United Arab Emirates who may purchase certain real property  Cullen had for sale, as further inducement for Cullen to enter into business with Edalat, who was presenting himself as a successful businessman with ties to wealthy billionaires around the world; and,

(f)     in repeated conversations held in and around the Los Angeles area, Karpinski fraudulently told Cullen that she had valuable sales orders for Pharma Pak which would result in substantial profits by the end of its first year of operation and this was material because this promised profitability made the purchase of Pharma Pak stock more attractive to Cullen.

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

44.   These statements were the same as certain of those described in Count I, were fraudulent, manipulative and deceptive for the same reasons described above in Count I, and were material for the same reasons explained in Count I.

45.   As a result of the foregoing fraudulent statements made to him by Edalat, Barghi, Karpinski and Global Holdings d/b/a Sentar Pharmaceuticals, and in reliance thereon, Plaintiff Cullen, in or around October, 2015, paid $250,000.00 to Edalat, and committed to provide financial services to Pharma Pak in a role similar to that of a chief financial officer.

46.   Cullen specifically adopts by reference as if fully pleaded herein the description set forth in paragraphs 34 through 38 of this Second Amended Complaint which describe how the above described false and fraudulent statements and omissions violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

47.   As a direct and proximate result of defendants' wrongful conduct, Cullen suffered damages to be proved at trial in connection with his purchases of Pharma Pak shares of at least $250,100.00 as will be shown at trial.

**COUNT III**

**By Plaintiff Scott against Defendants Edalat, Barghi, and Global Holdings d/b/a Sentar Pharmaceuticals for Fraud in Connection with the Purchase and Sale of Securities In Violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]**

48.   Plaintiffs repeat and realleged each and every allegation pleaded in paragraphs 1 through 47 of this Second Amended Complaint as if separately repleaded in full herein.

49.   Edalat, Barghi (to the extent of Barghi's role in contributing to written materials relied on by Scott), and Global Holdings d/b/a Sentar Pharmaceuticals by and through Edalat and Barghi, acting and making statements on its behalf, induced Scott to pay $500,000.00 to

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

purchase 5% of the outstanding stock in Pharma Pak by making statements to Scott, during the months of October through December, 2015 in conversations taking place in Las Vegas, by text and emails sent between California and Nevada and Utah, and by continuing to post in interstate commerce many of the same materials described in paragraph 29, above. Specifically, these Defendants knowingly and fraudulently:

(a)   told Scott about the supposedly valuable sublingual patent in the manner described in subparagraph (a)-(d) of paragraph 29;

(b)   caused Scott to see and review the false statements contained in the 2015 PPM referred to in subparagraph (l) of paragraph 29 which had the same false statements as set forth in the 2014 PPM as described in subparagraph (h) and (j) of paragraph 29;

(c)   told Scott about the supposed existence of the manufacturing license referred to in subparagraph (n) of paragraph 29;

(d)   told Scott of the high value of the Global Holdings d/b/a Sentar Pharmaceuticals and Edalat promised to make shares available to Scott if he bought stock in Pharma Pak, as referred to in subparagraph (q) of paragraph 29, above;

(e)   in a series of text messages sent from Edalat in California to Scott in Utah and thus in interstate commerce, Edalat fraudulently told Scott the following, to induce Scott to buy Pharma Pak stock, and these statements were material because they each made investing with Edalat appear more safe and promising to Scott:

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

-- On October 29, 2015 Edalat texted Scott that "I am closing deals that have been on for over a year. These are all multi-billion dollar companies."  This was false in that there were no such deals and at the very time Edalat was falsely saying so, he was in Chapter 7 bankruptcy;

-- On November 10, 2015, Edalat texted Scott that "Yesterday, I signed on John Neubauer as my CFO." John Neubauer was the highly respected former head of the highly successful Herbal Life Company and he had never agreed to become CFO of Pharma Pak;

-- -- On December 8, 2015, Edalat texted Scott that "We are locking down a $1 Billion contract with the Middle East as we speak." This was false in that no such "deal" was ever made nor was there anything remotely close to such a deal;

(f)     failed to disclose to Scott any of Edalat's three bankruptcies yet he displayed to Scott the same lavish lifestyle described above; and, when an associate of Scott informed Scott about an Edalat-related bankruptcy and Scott asked Edalat about that bankruptcy, Edalat falsely told Scott that it was not a personal bankruptcy but only related to a company with which Edalat was affiliated;

(g)      Edalat also told Scott, in the summer of 2015, that Edalat had made $750,000.00 in gambling winnings in Vegas that year in order to further promote his false image of financial success.

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

50.   These statements described above were fraudulent, manipulative and deceptive for the same reasons described above in Count I and they were material for the same reasons described in Count I above.

51.   Edalat also told Scott in a meeting in Las Vegas in or around November, 2015, that Edalat was making him a special offering of Pharma Pak stock not being made to anyone else, thus failing to disclose the existence of the other Pharma Pak stockholders;  this statement about Pharma Pak was false in that by this time Edalat had sold Pharma Pak stock to Cahill and other persons and was soliciting still other buyers of said stock.

52.   Edalat also told Scott in a meeting in Las Vegas in or around November, 2015, to whom he had already described the alleged high value and profitability of Global Holdings d/b/a Sentar Pharmaceuticals, that Edalat owned all stock of the Global Holdings d/b/a Sentar Pharmaceuticals and that Edalat wanted to partner that company with Scott;  this statement was false because as of that time there were fully 39 owners of such stock; and it was, along with the statements referred to in paragraph 51 hereof,  material because the fewer investors there are involved in a corporation, the more control each of the investors can have, the more opportunity they can have to acquire additional stock if they later wish to do so, and because the fewer the shareholders the less likely disputes will develop between shareholders.

53.   As a result of the foregoing fraudulent statements made to him by Edalat, Barghi, and Global Holdings d/b/a Sentar Pharmaceuticals, and in reliance thereon, Plaintiff Scott, between October and December, 2015, paid $500,000.00 to Edalat, and received 5% of the Pharma Pak shares. The payment was made by Scott in the following manner: he forgave a prior debt owed to

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

him by Edalat in the amount of $200,000.00 and paid Edalat new funds in the amount of $300,000.00.

54.   Scott specifically adopts by reference as if fully pleaded herein the description set forth in paragraphs 34 through 38 of this Second Amended Complaint which describe how the above-described false and fraudulent statements and omissions violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

55.   As a direct and proximate result of the wrongful conduct of Edalat, Barghi, and Global Holdings d/b/a Sentar Pharmaceuticals, Scott suffered damages in connection with his purchases of Pharma Pak shares of at least $500,000.00, as will be shown at trial.

**COUNT IV**

**By Plaintiff Franco against Defendants Edalat, Barghi, Karpinski and Global Holdings d/b/a Sentar Pharmaceuticals for Fraud in Connection with the Purchase and Sale of Securities In Violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]**

56.   Plaintiffs repeat and reallege each and every allegation pleaded in paragraphs 1 through 55 of this Second Amended Complaint as if separately repleaded in full herein.

57.   Plaintiff Franco paid $750,000.00 to Pharma Pak and received 7.5% of Pharma Pak shares. His payments were made to Pharma Pak on October 31, 2015 ($250,000.00), on November 13, 2015 ($200,000.00), in early January, 2016 ($200,000.00).

58.   Edalat, Karpinski, Barghi (to the extent of Barghi's role in contributing to written materials relied on by Franco) and Global Holdings d/b/a Sentar Pharmaceuticals, by and through Edalat and Barghi making statements and acting on its behalf, induced Franco to pay $750,000.00 to purchase 7.5% of the outstanding stock in Pharma Pak by making knowingly false and fraudulent  statements to Franco, beginning in and around October, 2015 and

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

continuing through January, 2016, in conversations taking place in Los Angeles and Orange County and by text and emails sent in interstate commerce, and by continuing to post in interstate commerce many of the same materials described in paragraph 28, above. Specifically, these defendants during this time:

(a)        told Franco about the supposedly valuable sublingual patent in the manner described in subparagraph (a)-(d) of paragraph 29;

(b)        caused Franco to see and review the false statements contained in the 2015 PPM referred to in subparagraph (l) of paragraph 29 which had the same false statements as set forth in the 2014 PPM as described in subparagraph (h) and (j) of paragraph 29;

(c)        told Franco that Edalat had a high-value drug manufacturing license, referred to in subparagraph (n) of paragraph 29, and also told Franco that Karpinski and Edalat had a "joint venture partner" with a large business who was willing to purchase high volumes of Pharma Pak products at very high profit margins manufactured under the valuable license;

(d)        Edalat and Karpinski further told Franco that this joint venture partner wanted to use Pharma Pak as a manufacturing facility because the license Edalat had was difficult to obtain, took years to obtain and cost hundreds of thousands of dollars to obtain, and thus it was better for the partner to use Pharma Pak, which already had such a license, rather than attempt to obtain one for himself. The supposed orders from this joint venture partner were knowingly false; they never arrived and the partner was shortly thereafter the subject of a federal fraud investigation and millions of dollars of his assets were seized by the FBI and the DEA. These statements in subparagraphs (c) and (d) were material because they led Franco to believe that Pharma Pak already had the promise of revenue coming in, making any investment more

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

36

financially promising, and had a valuable license allowing Pharma Pak to obtain the business of others who did not have such a license but who wanted to make and distribute the products that Pharma Pak's license allowed Pharma Pak to distribute;

(e)     told Franco of the high value of the products of Global Holdings d/b/a Sentar Pharmaceuticals and led Franco to believe these products were part of the Pharma Pak family of products (while only after investing did Franco discover that Pharma Pak did not have an interest in these Global Holdings d/b/a/ Sentar Pharmaceutical products). This was material in that these products had high value according to the other representations made about them by Edalat and Barghi;

(f)     failed to disclose to Franco any of Edalat's three bankruptcies yet he displayed to Franco the same lavish lifestyle described above;

(g)     Edalat and Karpinski told Franco that Pharma Pak had many buyers lined up to purchase all types of medical kits, including pain kits, DNA kits, specimen kits, and medical patches, among other products, just waiting for Pharma Pak to be able to manufacture them. They also told Franco that these kits could be sold for roughly 8 to 15 times the cost to Pharma Pak to manufacture them. These statements were false because no such sales ever materialized and these statements were material because anyone, such as Franco, considering the purchase of Pharma Pak stock would be more likely to do so if its product sales were already lined up, thus increasing the chances of early success;

(h)     Edalat and Karpinski told Franco that Pharma Pak, Inc. had a 24,000 square foot manufacturing facility in Irvine, California that was licensed by the federal government when in truth and in fact there was no then current and valid license to produce the proposed products;

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

37

1

(i)        Edalat and Barghi, through the 2015 PPM, told Franco that Pharma Pak, Inc.

2

had actual patents (not only applications for patents) when this was false because no patents had

3

yet been approved for Pharma Pak, Inc., and indeed that remains the case as of the filing of this

4

Second Amended Complaint;

5

(j)        Karpinski and Edalat told Franco that they had arranged for clinical studies of

6

the products involved to be done by several doctors; when in truth no such studies had been

7

arranged, as they well knew. This was material because such studies are a requirement and a

8

substantial step toward obtaining FDA approval, which in turn allows much more lucrative sales;

9

and,

10

(k)        showed Franco Edalat's Rolls Royce and told Franco of Edalat's many high-

11

level and wealthy contacts and of all his successes but failed to disclose Edalat's three personal

12

bankruptcies.

13

59.   The statements and omission described above were all material for the same reasons

14

stated in Count I above.

15

60.   The statements described above and the omission about Edalat's three bankruptcies,

16

were fraudulent, manipulative, and deceptive for the same reasons described above in Count I

17

and they were material for the same reasons described in Count I, above, as well as those reasons

18

advanced herein.

19

61.   As a result of the foregoing fraudulent statements made to him by Edalat, Barghi, and

20

Global Holdings d/b/a Sentar Pharmaceuticals, and in reliance thereon, Plaintiff Franco, from

21

October, 2015 to January, 2016, paid $750,000.00 for shares of Pharma Pak stock, and received

22

7.5% of the Pharma Pak shares.

23

24

25

26

27

28

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

62.   Franco specifically adopts by reference as if fully pleaded herein the description set forth in paragraphs 34 through 38 of this Second Amended Complaint which describe how the above-described false and fraudulent statements and omissions violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

63.   As a direct and proximate result of the wrongful conduct of Edalat, Barghi, Karpinski and Global Holdings d/b/a Sentar Pharmaceuticals, Franco suffered damages to be proved at trial in connection with his purchases of Pharma Pak shares of at least $750,000.00 as will be shown at trial.

## COUNT V

**By Plaintiffs Cahill, Cullen, Scott, and Franco against Defendants Edalat, Barghi, Karpinski and Global Holdings d/b/a Sentar Pharmaceuticals For the Offer and Sale of Securities By Means of Prospectus or Oral Communication Containing Misstatements or Misleading Omissions under §12(a)(2) of the 1933 Securities Act [15 U.S.C. § 77l(a)(2)]**

64.   Plaintiffs reallege each and every allegation stated in Paragraphs 1 through 63 of this Second Amended Complaint as if separately repleaded in full herein.

65.   In violation of Section 12(a)(2) of the 1933 Securities Act, defendants Edalat, Barghi, Karpinski, and Global Holdings d/b/a Sentar Pharmaceuticals all solicited the purchase of the Pharma Pak stock by plaintiffs Cahill, Cullen, Scott, and Franco, as detailed above, by misrepresenting the value and assets of the Pharma Pak venture and by misrepresenting the value of the Global Holdings d/b/a Sentar Pharmaceuticals venture which was an inducement to Plaintiffs to purchase Pharma Pak stock.

66.   In order to solicit the purchase of Pharma Pak stock, the Defendants:

(a)      told said plaintiffs about the supposedly valuable sublingual patent in the manner described in subparagraph (a)-(d) of paragraph 28;

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(b)        caused said plaintiffs to see and review the false statements contained in the 2015 PPM referred to in subparagraph (l) of paragraph 28 which had the same false statements as set forth in the 2014 PPM as described in subparagraph (h) and (j) of paragraph 29;

(c)        told said Plaintiffs about the supposed existence of the manufacturing license referred to in subparagraph (n) of paragraph 29;

(d)        told said Plaintiffs of the high value of the Global Holdings d/b/a Sentar Pharmaceuticals company and Edalat promised to make shares available to plaintiffs Cahill, Cullen, and Scott if each bought stock in Pharma Pak, as referred to in subparagraph (q), of paragraph 29, above;

(e)        failed to disclose to said plaintiffs any of Edalat's three bankruptcies while Edalat repeatedly displayed to the Plaintiffs  the same lavish lifestyle described above;

(f)        told said plaintiffs of the high value of the products of Global Holdings d/b/a Sentar Pharmaceuticals and led Plaintiffs to believe these products were part of the Pharma Pak family of products, when in truth they were not;

(g)        and made the additional misrepresentations and/or omissions specifically described in Counts I to IV above.

67.   Relying on the materially false and misleading statements described above, plaintiffs Cahill, Cullen, Scott, and Franco purchased shares in Pharma Pak at prices artificially inflated by these defendants' wrongful conduct. Had said plaintiffs known the truth, they would not have purchased said shares, or would not have purchased them at the inflated prices that were paid, or in the quantity purchased, or at all.

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

68.   Defendants Edalat, Barghi, Karpinski and Global Holdings d/b/a Sentar Pharmaceuticals' solicitation of the individual plaintiffs was motivated by the desire to serve their own financial interests in that Edalat received funds directly from some of the Plaintiffs and these funds benefited Barghi, Karpinski, and Global Holdings d/b/a Sentar Pharmaceuticals, who alsobenefited from Cahill's work as CEO of Global Holdings d/b/a Sentar Pharmaceuticals, and all benefitted from the use of Pharma Pak investment funds which were siphoned off to pay for their expenses.

69.   As a direct and proximate result of defendants' wrongful conduct, Cahill suffered damages to be proved at trial in connection with his purchases of Pharma Pak shares of at least $500,000.00.

70.   As a direct and proximate result of defendants' wrongful conduct, Cullen suffered damages to be proved at trial in connection with his purchases of Pharma Pak shares of at least $250,000.00.

71.   As a direct and proximate result of defendants' wrongful conduct, Scott suffered damages to be proved at trial in connection with his purchases of Pharma Pak shares of at least $500,000.00. .

72.   As a direct and proximate result of Defendants' wrongful conduct, Franco suffered damages to be proved at trial in connection with his purchases of Pharma Pak shares of at least $750,000.00.

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

# COUNT VI

## By All Plaintiffs against All Defendants for Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968

73.   Plaintiffs reallege each and every allegation stated in Paragraphs 1 through 72 of this Second Amended Complaint as if separately repleaded in full herein.

### Introduction to the RICO Claim

74.   Defendants Edalat, Karpinski, Barghi, Global Holdings d/b/a Sentar Pharmaceuticals, Sentar Pharmaceuticals, Inc., LIWA, and Blue Torch (hereinafter sometimes called the "Enterprise"), while acting in and affecting interstate commerce, conspired to form and did form an illegal Enterprise within the meaning of 18 U.S.C.§1961(4). Thereafter, through a pattern of racketeering activity within the meaning of 18 U.S.C. 1961(1), that Enterprise injured Plaintiffs in their business and property within the meaning of  18 U.S.C. 1964, all as described in this Count VI.

75.   The pattern of racketeering activity by this Enterprise began in or around February 2015 just after Pharma Pak had been formed, had obtained its initial investment monies, and began its operations; and this pattern of racketeering activity continues as of the date of the filing of this Second Amended Complaint. The pattern of racketeering activity was aimed at defrauding Pharma Pak and misappropriating its assets, and then, when this fraud was discovered, by attempting to destroy it by framing its key employees with false allegations of drug dealing and embezzlement made by fraudulent statements made by wire communications made in interstate commerce, and later, when Pharma Pak and some of its stockholders sought to recover monies that Edalat, Karpinski, and Barghi had fraudulently obtained from them, by the prosecution of this lawsuit,  these Defendants obstructed justice by endeavoring to intimidate these Plaintiffs.

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

1   This racketeering activity was perpetrated by Defendants through repeated wire fraud in

2   violation of 18 U.S.C. §1343, distribution of a controlled substance in violation of 21 U.S.C.

3   841, money laundering in violation of 18 U.S.C. §1957 in furtherance of bankruptcy fraud in

4   violation of 18 U.S.C. §152,  and obstruction of justice in violation of 18 U.S.C. §1503, all of

5   which are racketeering activities within the meaning of 18 U.S.C. §1961(1) and all of which, as

6

7   they were committed by these Defendants,form, and are, a pattern of racketeering activity within

8   the meaning of 18 U.S.C. §1961(4). That pattern is ongoing as of the date of this Second

9   Amended Complaint and is detailed next below.

10

11                          **Defendants' Wire Fraud Scheme -- Generally**

12          76.     After having fraudulently sold the Pharma Pak stock to the individual Plaintiffs in

13   the manner described in Counts I through V,  Defendants defrauded Pharma Pak and Cahill by

14   and through a scheme to obtain money and property by the following false and fraudulent

15   pretenses:

16

17          (i) Edalat and Barghi fraudulently inducing Pharma Pak, from in or around March, 2015

18   through February of 2016, to hire and waste substantial sums of money paying salaries for

19   employees that Defendants told Pharma Pak personnel would be working for Pharma Pak when,

20   in truth, they were working for another company, although being paid by Pharma Pak;

21

22          (ii) Edalat and Karpinski fraudulently inducing Pharma Pak to hire and waste substantial

23   sums of money on salary for an  unqualified executive-level employee (Defendant Karpinski)

24   who Defendants then well knew to be unqualified and who, after she was hired, continued to

25   work for another company (Defendant Global Holdings d/b/a/ Sentar Pharmaceuticals) while

26

27

28

                    SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

failing  to honor her work commitments as promised to Pharma Pak, and while falsely stating that she was honoring those commitments to Pharma Pak, while being paid by Pharma Pak;

(iii) Edalat and Karpinski obtaining money from Pharma Pak through the false pretense that they were entitled to substantial reimbursement for costs that Defendants Edalat and Karpinski falsely claimed were incurred for Pharma Pak's benefit;

(iv) Edalat and Karpinski making false representations that certain patents belonged to Edalat, instead of to Pharma Pak, and by fraudulently causing those patents to be registered in the name of Edalat as inventor or owner, or both, when in fact he was not either the inventor or the owner, as Defendants well knew, because Pharma Pak and one it its employees was the inventor of the patent rights which belonged to Pharma Pak;

(v) fraudulently inducing Plaintiff Cahill to advance an additional sums of approximately $800,000.00 to or on behalf of Pharma Pak (to cover the purchase of an interest in a building in Nevada, loans to Pharma Pak made by Cahill, and loans to Edalat so that he could loan money to Pharma Pak) made on the false promises of Edalat and Karpinski that they had secured or were about to secure lucrative contracts for the manufacture and sale of Pharma Pak products which would be very profitable for Pharma Pak, and by the false assurances that certain new investment money was coming in when in truth it was not, as Edalat and Karpinski then well knew; and,

(vi)  more specifically, despite the representations of Edalat referred to in Counts I through IV above that he was going to give an interest in Global Holdings d/b/a Sentar Pharmaceuticals to the individual plaintiffs, Edalat never intended to convey such an interest to any of the plaintiffs, but was simply making false promises that he would do so, in order to induce the plaintiffs to purchase the stock of Pharma Pak. In fact, none of the plaintiffs received their

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

44

promised interest in Global Holdings d/b/a Sentar Pharmaceuticals, which Defendants never intended to convey to them. As shown below, not only did Defendants fail to give Plaintiffs the interest in Global Holdings d/b/a Sentar Pharmaceuticals that Defendants had promised to give, Defendants schemed to use the assets of Pharma Pak to further the interests of Global Holdings d/b/a Sentar Pharmaceuticals which defendants planned to keep to themselves.

**The Scheme to Defraud Pharma Pak of Salary and Reimbursement Payments**

77.    After Pharma Pak commenced its operations by using the money paid by some of the individuals who purchased its stock or loaned it money, Edalat, Karpinksi and Barghi, acting for herself and together with Edalat acting for Global Holdings d/b/a Sentar Pharmaceuticals, fraudulently schemed to and did misappropriate Pharma Pak's assets to assist in their attempt to develop Global Holdings d/b/a Sentar Pharmaceuticals and to secure investments from other individuals into Global Holdings d/b/a Sentar Pharmaceuticals.

78.   In furtherance of the forgoing misappropriation scheme, Edalat persuaded Plaintiff Bruce Cahill, who became the CEO of Pharma Pak, to place people on the Pharma Pak payroll by telling Cahill that those people would be doing the work needed for Pharma Pak when in fact, as Edalat well knew, those people would be working and did in fact work to advance Global Holdings d/b/a Sentar Pharmaceuticals rather than Pharma Pak.

79.    Specifically, Edalat, by his false representations referred to above, caused Cahill to place Luis Navarro, Luz Navarro, Rosales Alejandro, Alonso Navarro, and Martin Garcia onto the payroll of Pharma Pak by fraudulently telling Cahill that these people would be working to advance Pharma Pak activities when in truth and in fact, as Edalat well knew, they never did. They instead did work for Edalat, Barghi, Global Holdings d/b/a Sentar Pharmaceuticals, and,

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

45

later, after she joined the racketeering conspiracy in June of 2015, Olivia Karpinski. Specifically, these employees were hired by and received their salaries from Pharma Pak and worked from the Pharma Pak office located at 17809 Gillette Avenue, Irvine, California, which was a location remote from the office location where Cahill worked, which was 17802 Sky Park Circle, Irvine, California. However, these employees did not work on Pharma Pak matters, but rather worked for the benefit of Edalat, Barghi and Global Holdings d/b/a Sentar Pharmaceuticals. Pharma Pak was thus defrauded by the amount of their salaries which totaled in excess of approximately $200,000.00.

80.   In furtherance of this employee scheme to defraud Pharma Pak and for the purpose of executing such scheme to defraud, commencing in or around March, 2015 and continuing through at least February 15, 2016, Edalat and Global Holdings d/b/a Sentar Pharmaceuticals, on whose behalf he was acting,  in order to secure the services of Luis Navarro for Global Holdings d/b/a/ Sentar Pharmaceuticals rather than for Pharma Pak, which was paying for his services, caused to have sent by interstate wire communications used by the Federal Reserve's interbank electronic deposit and collection process, the following salary payments from First Foundation Bank in Irvine, California to the bank used by employee Luis Navarro:

| Payment Date | Payment Amount | Wire Communication |
| --- | --- | --- |
| 6/4/15 | $1,345.44 | Interbank wire collection |
| 6/18/15 | $1,345.44 | Interbank wire collection |
| 7/1/15 | $1,345.44 | Interbank wire collection |
| 7/20/15 | $1,345.44 | Interbank wire collection |
| 7/31/15 | $1,345.44 | Interbank wire collection |

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

| | | |
|---|---|---|
| 8/5/15 | $1,000.00 | Interbank wire collection |
| 8/13/15 | $1,345.44 | Interbank wire collection |
| 8/28/15 | $1,345.44 | Interbank wire collection |
| 9/10/15 | $1,345.44 | Interbank wire collection |
| 9/28/15 | $1,345.44 | Interbank wire collection |
| 10/12/15 | $1,345.44 | Interbank wire collection |
| 10/23/15 | $1,345.44 | Interbank wire collection |
| 10/27/15 | $909.10 | Interbank wire collection |
| 11/6/15 | $1,345.44 | Interbank wire collection |
| 11/20/15 | $1,345.44 | Interbank wire collection |
| 12/4/15 | $1,345.44 | Interbank wire collection |
| 12/18/15 | $1,345.44 | Interbank wire collection |
| 12/31/15 | $1,345.44 | Interbank wire collection |
| 1/15/16 | $1,345.44 | Interbank wire collection |
| 1/29/16 | $1,345.44 | Interbank wire collection |
| 2/12/16 | $1,345.44 | Interbank wire collection |
| 2/26/16 | $1,345.44 | Interbank wire collection |

In addition, and in connection to the fraudulently-induced salary payments to employees working for Global Holdings d/b/a Sentar Pharmaceuticals, there were many similar such wire communications made to the bank accounts of Luz Navarro, Rosales Alejandro, Alonso Navarro, and Martin Garcia, all in furtherance of and for the purpose of executing the above-described scheme to defraud Pharma Pak.

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

47

81.   In addition to the above-described misappropriation of Pharma Pak assets, Defendants Edalat and Karpinski, as part of their scheme to defraud Pharma Pak, made fraudulent statements about Defendant Karpinski in order to induce salary payments to her. Commencing in early February, 2015 and continuing until Karpinski was hired by CEO Plaintiff Cahill to work for Pharma Pak in June, 2015, Edalat, and then later, before she was hired, in a series of meetings in Orange County and in telephone conversations commencing in May, 2015, Karpinski falsely told Cahill, who was then the CEO of Pharma Pak, that Karpinski was a very experienced executive sales person in the marketing area of pharmaceutical products; that she had worked with great success in the pharmaceutical sector of the economy for several years; that she was highly regarded as an executive sales person; that she had "spent years developing strong and successful relationships in the pharmaceutical industry," that she had extensive knowledge about the pharmaceutical industry, including newly emerging pharmaceutical products and FDA requirements related to their successful marketing; and that she knew many of the people prominent in the pharmaceutical industry. Edalat told Cahill that Karpinski was a "mover and a shaker," and repeatedly, on the basis of these statements extolling her skills and promise, urged Cahill, acting as Pharma Pak's CEO, to have Pharma Pak hire her.

82.   The above-described allegations about the skill and knowledge of Karpinski were knowingly false when made. As she and Edalat then well knew, Karpinski had no experience as an executive and no experience in the marketing of pharmaceuticals and likewise had no knowledge of the FDA requirements related to the development and distribution of pharmaceuticals.  However, because Plaintiff Cahill believed the misrepresentations about Karpinski that she and Edalat had made, Cahill hired Karpinski as of June, 2015, and she

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

thereafter was paid a salary by Pharma Pak, an annual salary of $72,000.00 which was quickly elevated retroactively to $120,000.00, along with a monthly fuel and car maintenance allowance of $500.00, and health insurance.   As a result, and because she never made any sales of product because of her lack of experience, her salary and other payments made to her were a loss which amounted to in excess of $80,000.00. The cost to Pharma Pak was greater than this monetary loss because it paid Karpinksi to make sales and to secure customers, foregoing the opportunity to have hired a qualified person who could have closed sales, thus providing revenue for Pharma Pak rather than being a financial drain, as was Karpinski because of her salary, which she did not earn.

83.   In additional to fraudulently stating her experience in order to perpetrate a fraud on Pharma Pak, Karpinski and Edalat also fraudulently stated what she was doing after she was hired.  In furtherance of the scheme to defraud Pharma Pak, Karpinski was placed on the payroll of Pharma Pak in June, 2015, and until Pharma Pak was forced to cease operations in early March, 2016 because it had no money with which to operate, Karpinski spent most of her time not working on Pharma Pak matters, but rather working with Edalat to further develop Global Holdings d/b/a Sentar Pharmaceuticals by seeking investors for it. Edalat and Karpinski promoted Global Holdings d/b/a Sentar Pharmaceuticals by traveling to Las Vegas, Nevada and Beverly Hills on frequent occasions and, using Pharma Pak funds, lavishly entertained prospective customers and investors for Global Holdings d/b/a Sentar Pharmaceuticals, while falsely stating to Bruce Cahill and others at Pharma Pak that they were engaging in this promotional activity in order to further Pharma Pak by obtaining sales contracts for Pharma Pak.

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

84.   For example, on November 25, 2015 Karpinski texted Cahill using an interstate wire communication from Las Vegas, Nevada to Irvine, California:

> I just finished a dinner meeting with a guy who has been in health care for 9 years, his brother for 25 years. He was introduced to me for just having a doctor network, but he also owns a hospice center and does a ton of business in the medical field. He loves the patch and wants to meet with his brother next week and thinking to put 1 to 1,500,000 behind the marketing of the patch to his network. These guys are pretty liquid and want to know more about the CBD products and have a large network of doctors and patients. I will get all the data next week and plot out how we can work together to present to you and the P Pak board.

Glowing and promising reports such as the one just quoted were made by Karpinski directly, and by Edalat about Karpinski's work, throughout the period of this scheme to defraud in order to induce Cahill to continue to use Pharma Pak money to pay Karpinski's salary.

85.   In addition, Edalat made false and promising statements about impending sales and investments which were knowingly false, using interstate wire communications via text message to do so. Edalat texted Cahill and others on September 27, 2015 that "We are days away from sales."  This was knowingly false because there were no sales likely at this time, as Edalat well knew, and he was using this assertion to help secure more loans from Cahill into Pharma Pak and to lull Cahill to keep Karpinski on the Pharma Pak payroll, even though she is not making any sales for Pharma Pak.

86.   Commencing in or around June 15, 2015 and continuing through at least February 15, 2016, and in order to further the scheme to defraud described above by which Karpinski, Edalat, and Global Holdings d/b/a Sentar Pharmaceuticals fraudulently obtained Karpinski's salary from Pharma Pak, Karpinski and Edalat, and Global Holdings d/b/a Sentar Pharmaceuticals on whose behalf they were acting in order to secure her services for it rather than for Pharma Pak, which

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

1  was paying for her services, caused to have Karpinski's salary paid by Pharma Pak, which they

2  caused to have sent by interstate wire communication using the Federal Reserve's interbank

3  electronic check collection process, by the following payments from First Foundation Bank in

4  Irvine, California to the JP Morgan Chase Bank, NA, doing business as Chase Bank, in one of its

5  bank branches in Los Angeles or Orange County, all of which were payments made by Pharma

6  Pak to Karpinski:

7

8

| Payment Date | Payment Amount | Wire Communication |
|---|---|---|
| 5/27/15 | $2,000.00 | Interbank wire collection |
| 6/4/15 | $1,861.37 | Interbank wire collection |
| 6/18/15 | $1,861.37 | Interbank wire collection |
| 7/1/15 | $1,861.37 | Interbank wire collection |
| 7/20/15 | $1,861.37 | Interbank wire collection |
| 7/27/15 | $800.00 | Interbank wire collection |
| 7/27/15 | $473.56 | Interbank wire collection |
| 7/31/15 | $1,861.37 | Interbank wire collection |
| 8/13/15 | $1,861.37 | Interbank wire collection |
| 8/13/15 | $518.57 | Interbank wire collection |
| 8/28/15 | $1,861.37 | Interbank wire collection |
| 9/10/15 | $1,861.37 | Interbank wire collection |
| 9/28/15 | $1,861.37 | Interbank wire collection |
| 10/5/15 | $2,532.34 | Interbank wire collection |
| 10/12/15 | $1,861.37 | Interbank wire collection |

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

| | | |
|---|---|---|
| 10/23/15 | $1,861.37 | Interbank wire collection |
| 11/6/15 | $1,861.37 | Interbank wire collection |
| 11/9/15 | $1,665.07 | Interbank wire collection |
| 11/20/15 | $1,861.37 | Interbank wire collection |
| 12/4/15 | $1,861.37 | Interbank wire collection |
| 12/4/15 | $1,803.69 | Interbank wire collection |
| 12/18/15 | $1,861.37 | Interbank wire collection |
| 12/31/15 | $1,861.37 | Interbank wire collection |
| 1/15/16 | $1,861.37 | Interbank wire collection |
| 1/20/16 | $1,237.39 | Interbank wire collection |
| 1/29/16 | $1,861.37 | Interbank wire collection |
| 2/12/16 | $1,861.37 | Interbank wire collection |
| 2/26/16 | $1,861.37 | Interbank wire collection |

87.   Not only did Karpinski not devote the time for which Pharma Pak was paying her salary in order to advance Pharma Pak sales and investment prospects, despite her false representations that this is what she and Edalat were doing, she and Edalat secured tens of thousands of dollars in "reimbursement" payments for the lavish entertainment and travel costs they incurred while promoting Global Holdings d/b/a Sentar Pharmaceuticals' interests while representing to Pharma Pak that they were in fact promoting Pharma Pak. In truth, as they then well knew, they were promoting Global Holdings d/b/a Sentar Pharmaceuticals. Specifically, Edalat and Karpinski submitted the following false and fraudulent expense reimbursement statements at the Pharma Pak offices:

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

| Date of Statement | Amount of Reimbursement |
| --- | --- |
| 8/6/15 | $3,718.08 |
| 10/23/15 | $16,192.98 |
| 11/4/15 | $2,152.33 |
| 11/9/15 | $1,665.07 |
| 12/15/15 | $5,618.19 |

88.   Each of these false statements seeking reimbursement was presented to the Pharma Pak offices at 17802 Sky Park Circle, Suite 200, Irvine, California by either Edalat or Karpinski, each acting for the other, and on behalf of Global Holdings d/b/a Sentar Pharmaceuticals, and each was submitted for payment to Pharma Pak to be paid by Pharma Pak. Each of these statements was false because each stated or was presented with the representation by Edalat or Karpinski that the expenses involved were incurred by Edalat and Karpinski in furtherance of entertainment of prospective Pharma Pak customers or prospective investors, which was knowingly false because the entertainment involved was to secure customers or investors for Global Holdings d/b/a Sentar Pharmaceuticals. A check collection wire communication was caused by these defendants in connection with a check payable in each of the above amounts by interstate wire communication using the Federal Reserve's interbank electronic check collection process from Karpinski's bank or Edalat's bank to First Foundation Bank in Irvine, California, with the wire communications being on or about the dates indicated above in paragraph 87.

89.   As a result of the fraudulent misstatements referred to above, Bruce Cahill was induced to make additional loans to Pharma Pak totaling $253,271.00 and made additional advances from his personal accounts to pay Pharma Pak expenses in the approximate amount of

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

$120,000.00, because he believed that good progress was being made by Karpinski and Edalat towards obtaining contracts and thus receiving revenue or receiving additional investments.

90.   In furtherance of their scheme to defraud Pharma Pak and Cahill, Karpinski and Edalat, acting for themselves and for Global Holdings d/b/a Sentar Pharmaceuticals, further defrauded Cahill by making fraudulent statements to induce Cahill to make a purchase of property which was said by these defendants to be available for use as a supplemental manufacturing plant for Pharma Pak products and that if purchased in the manner described next below, it would also promote millions of dollars of business income for Pharma Pak.

91.   In or around August of 2015, Edalat stated to plaintiff Cahill that Edalat and Karpinski had located a ready-to-use production facility in Henderson, Nevada, located at 1850 Whitney Mesa Drive, Unit 180 (APN 161-32-714-017)  (the "Whitney Mesa property") which, if purchased, could serve as a state-of-the-art production facility in which to process Pharma Pak products. Edalat further stated that the Whitney Mesa property was large enough to serve simultaneously to process multi-million dollar orders of pharmaceutical products that would be made by Chad Barrett through his company Rx Pro, which Edalat and Karpinski repeatedly represented to be a successful and prosperous company, and that such Rx Pro processing would add significantly to the profitability of the ownership of the Whitney Mesa property and thus to Pharma Pak. Edalat stated that if Cahill would front the money needed to purchase a share of the property to be co-owned by Pharma Pak shareholders and Chad Barret and is company RX Pro, both purported to be very successful, as Edalat and Karpnski stated to Cahill many times, such a purchase would enhance Pharma Pak financially because it would come with a promise by RX Pro and Chad Barrett that they would refer many of their pharmaceutical orders, of

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

54

which Karpinski and Edalat said to be in the millions of dollars each year, to that facility for manufacture.

92.   Edalat further stated to Cahill in or around the middle of August 2015 that the Whitney Mesa property could be purchased for approximately $1,190,000.00, and that Edalat would form a company, Sentus Land Management, LLC ("Sentus") to hold title to the Whitney Mesa production facility. Edalat also represented that Rx Pro (Chad Barrett) would pay 50% of the money to buy the property and would own 50% of Sentus, and that Cahill, another investor named John Crowther who was also a Pharma Pak shareholder, and Edalat would pay the other 50% if Cahill and Edalat could arrange the first 50% of the purchase money. Another investor was found who invested $139,000.00 of the buy-in for the 50% of Sentus to be owned by Edalat, Cahill, and that other investor. That left an additional $404,600.00 to be paid in by Edalat and Cahill. Edalat induced Cahill to "temporarily" fund Edalat's portion of the remaining purchase monies of $404,600.00 (Edalat's share being $202,300.00) by promising that if  Cahill advanced the entire $404,600.00 by the closing date, Edalat would repay to Cahill that $202,300.00 in one week.

93.   As a result of the representations stated above, on or about August 18 and 19, 2015, by use of two separate interstate wire communications which had been induced by Edalat's representations described above, Cahill sent $404,600.00 from his bank in California to an escrow company named Nevada Title & Company Trust, in Las Vegas, Nevada, using interstate wire communications to do so.

94.   The representations made by Edalat in order to induce these wires transfers were false in that Edalat did not pay $202,300.00 or any other sum to Cahill as Edalat had promised,

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

and RX Pro and Chad Barrett did not use Whitney Mesa property to process any orders on behalf or Pharma Pak. Instead, Rx Pro is now in bankruptcy and many of its assets and those of Chad Barrett have been seized by agents of the federal government because they are part of a scheme to defraud the United States.

95.   Because Edalat fraudulently induced Cahill to advance $404,600.00 for the purpose of purchasing a property to be held by Sentus with the understanding that Cahill would receive a repayment from Edalat of the $203,200.00 that Cahill had advanced based on  Edalat's fraudulent promise to Cahill that Edalat would repay to Cahill the $202,300.00 Cahill had advanced for Edalat's share of the Whitney Mesa property, and Cahill would not have advanced the monies had he not relied upon that promised repayment, Edalat defrauded Cahill of $404,600.00, and the property now is controlled by Chad Barret and Rx Pro and, because of their problems with the federal government, the property is not being used, nor can it be sold.

96.   In furtherance of this scheme to defraud monies to pay for the above-described property, at least two such interstate wire communications were made respectively on or around August 18 and 19, 2015 by plaintiff Cahill from Cahill's bank in California, the Foundation Bank and sent to the Nevada Title Company in Nevada, which wire communications took the form of two separate wire transfers in the amount of $202,300.00 each to assist in the purchase of the Whitney Mesa property, in the manner described above.

97.   In early to mid-2016, after Plaintiff Cahill discovered the fraud described above, and in order to attempt to further injure Pharma Pak, Defendant Edalat attempted to have Pharma Pak fire Cahill by falsely accusing him of "embezzlement of Pharma Pak funds", by wire

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

communications in interstate commerce made by Edalat in various emails sent in or around February, 2016.

## Money Laundering

98.   When Edalat fraudulently induced Cahill and Scott to pay him money for Pharma Pak stock during the early part of 2015, in the case of Cahill, and in November or early December, 2015, in the case of Scott, even though this money was to pay for stock that he owned, Edalat directed that the checks written for that stock by Cahill and Edalat be made payable to other entities, in the case of Cahill, and to defendant LIWA, in the case of Scott.

99.   The payments to those entities was an attempt to conceal the fact that Edalat owned that stock. This concealment was part of Edalat's attempt to conceal these assets from the bankruptcy trustee in Edalat's bankruptcy. At or near the time of these payments, Edalat was being questioned by the counsel for the bankruptcy trustee about what stock he owned and Edalat falsely stated that he owned stock in just one company. He did not admit that he owned stock in either Pharma Pak or Global Holdings d/b/a Sentar Pharmaceuticals. His failure to state that he owned stock in these entities was bankruptcy fraud in violation of 18 U.S.C. 152 in that he did own stock in each and had repeatedly so stated to Cahill, Scott, Franco, and Cullen, among others. Edalat's directing that payments for Pharma Pak stock and for the promise of stock in Global Holdings d/b/a Sentar Pharmaceuticals be made to various entities rather than being paid to him was money laundering, in violation of 18 U.S.C. § 1956 and 1957, which is in turn a predicate act within the meaning of 18 U.S.C. § 1961(1).

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

57

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Drug Traffciking**

100. In early to mid-2016, after Plaintiffs discovered the fraud described above, and in order to attempt to further injure Pharma Pak and Defendant Cahill, Defendants Edalat and Karpinski, who have been trafficking in illegal controlled substances in violation of 21 U.S.C. 841 and California state law, planted, in or around February 15, 2016, THC and marijuana, both illegal controlled substances, in the offices of the chief scientist of Pharma Pak and then called the local Irvine Police Department in order to  cause his arrest, and the arrest of Plaintiff Cahill, who was then the CEO of Pharma Pak, all to further injure Pharma Pak.

**Obstruction of Justice**

101. After Plaintiffs commenced this lawsuit, Defendants Edalat and Karpinski corruptly endeavored to obstruct justice, in violation of 18 U.S.C. § 1503, by endeavoring to corruptly influence, obstruct or impede the due administration of justice by threatening communications by Edalat and Karpinski on behalf of all defendants that, unless Plaintiffs stopped pursuing the prosecution of this lawsuit, these defendants would publicly disclose "dirt" on the plaintiffs, and thereafter Edalat and Karpinski did in fact publicly disclose knowingly-false, highly-damaging statements about Plaintiffs.

102. Specifically, Edalat threatened the Plaintiffs as follows in order to endeavor to induce them not to further pursue this lawsuit, and these threats were made commencing in or around October and November, 2016:

Keep pressing my buttons
U have no idea who u r fucking with! Trust me

and

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

Did you really think u r going to get away with all of this? Stealing
my company suing my family and putting all of that bs out there
against me? Calling me a fraud? Fuck u thieves and the real frauds.
Wait till u see everything . . .

and

This is just the start. Got some on u too old pal
It's on.

and

And Franco [Defendant Ron Franco] u scum u sued me for what?  I don't even
know u and u never even gave me a penny.  Watch how I will  expose u and your
life for what u did.  *U think it's not obvious what u do in Thailand? Think these
guys are going to protect u when they have to protect themselves from the
litigation* ?  Hahaha. . .

Have a nice weekend u bastards. Now let's see who is laughing.

Happy Father's Day to all of u! Try to enjoy with your wives and kids before they
are all served with the copy of this lawsuit *and the rest.*

103. In furtherance of the above-stated threats, and to further attempt to obstruct justice,

Edalat and Karpinski, on behalf of all Defendants, have made and published the false and

damaging statements referred to in paragraphs, 156, 162, 163, and 168 below, which are

adopted herein as if specifically repleaded in their entirety. By those statements,  Edalat and

Karpinski have posted public statements that Cahill sexually assaulted Karpinski and sexually

harassed her, that he embezzled money, manufactured and distributed illegal drugs, and

wrongfully fired employees because they had notified the police about his drug trafficking.  All

of these statements are known by defendants to be false. Edalat and Karpinski, on behalf of all

Defendants, have published statements about Plaintiff Scott calling him a tax evader. These

statements are known by defendants to be false and they have threatened to make future

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

damaging public statements. Each of these threats and statements described in this Count is an endeavor by Defendants, acting in concert with each other, to obstruct and impede the due administration in this case by threatening and attempting to intimidate plaintiffs.

### Predicate Acts and Pattern of Racketeering

104. Defendants have committed the above-described federal crimes of wire fraud, attempted theft of Pharma Pak assets, distribution of controlled substances, money laundering, and the obstruction of justice,  and all of these crimes qualify as predicate acts under the Racketeer Influenced and Corrupt Organization Act ("RICO"), as defined in Title 18 U.S.C. §1962. Each separate wire communication is a separate wire fraud crime, and each public posting of a false statement about Plaintiffs is a separate endeavor to obstruct and impede the due administration of justice in that these are corrupt attempts to cause Plaintiffs to dismiss this lawsuit for fear of public damage to their reputations. Moreover because these public posts of false accusations of criminal conduct remain posted, despite Plaintiffs demand to the Defendants that these posting be removed from the public posting cites involved, they are an ongoing attempt to obstruct justice.

### The Enterprise

105. All of the illegal activities and predicate acts therefore are and form a part of a pattern of racketeering. They were also undertaken by the Defendants each of which formed part of the Enterprise. Each of the Defendants joined and participated in the Enterprise. Edalat was its leader and directed the other Defendants. He also committed the fraud and misappropriation of Pharma Pak assets, threatened Defendants and thereby committed obstruction of justice as described above, committed bankruptcy fraud by concealing from the bankruptcy trustee

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

monies paid to him for stock that he had denied under oath that he owned, and distributed controlled substances as alleged above in order to defraud and injure Pharma Pak, its chief scientist and Cahill, in the manner alleged above. Barghi assisted in the fraud, formed Global Holdings d/b/a Sentar Pharmaceuticals, Sentar Pharmaceuticals, Inc., Blue Torch and LIWA, of which were used to further the fraud herein; LIWA was used to conceal payments and stock ownership from the bankruptcy trustee; Blue Torch held a substantial amount of the stock of Global Holdings d/b/a Sentar Pharmaceuticals in order to hide the fact that Edalat was the real owner of that stock, as he told Plaintiffs, doing so to conceal that ownership from the bankruptcy trustee; and Sentar Pharmaceuticals, Inc. was formed as a sham to confuse creditors including Plaintiffs about the real holder of the assets of Global Holdings d/b/a Sentar Pharmaceuticals. Karpinski's role in the Enterprise was that she defrauded Pharma Pak of her salary and reimbursement payments in the manner stated herein, and participated in the obstruction of justice by attempting to intimidate Plaintiffs in the manner described in this Second Amended Complaint, among other actions described herein.

106. Defendants, as shown above, have joined, become a part of, and are engaging in an Enterprise within the meaning of the RICO statute. The purpose of the Enterprise is to defraud other people and companies. The Enterprise has been in existence and was formed at least as early as 2014 by Edalat and Barghi. They formed Blue Torch Ventures, Global Holdings d/b/a Sentar Pharmaceuticals, and LIWA which joined the Enterprise on their formation and indeed the activities of the Enterprise is why these entities were formed by Barghi and Edalat.

107. Blue Torch, although an *alter ego* of Edalat, holds 90% of the stock of Global Holdings d/b/a Sentar Pharmaceuticals and does so to insulate against creditors of Edalat, of

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

61

which there are many, to preclude them from seeking that stock to satisfy judgments against

him, and so that he could hide that company from the bankruptcy trustee in his recent

bankruptcy.  While Edalat in fact controls Global Holdings d/b/a Sentar Pharmaceuticals, he

swore under oath at his bankruptcy proceedings as to which companies he had any interest in

and he did not state Global Holdings d/b/a Sentar Pharmaceuticals, even though he has a

substantial interest in it. Blue Torch has no other function and no other activity. It is thus a sham

formed to assist Edalat in protecting his assets and is a sham company and also aids and abets in

the wire fraud crimes described above by attempting to defraud those who have been cheated by

Edalat, Barghi, Karpinski  and Global Holdings d/b/a Sentar Pharmaceuticals, by seeming to

own most of the stock of Global Holdings d/b/a Sentar Pharmaceuticals and thus fraudulently

discouraging creditors from seeking that stock as repayment of monies lost to the fraud of the

Enterprise.

108. Global Holdings d/b/a Sentar Pharmaceuticals joined the Enterprise in 2014 when it

started to be used by Edalat and Barghi, and later by Karpinski, to defraud Pharma Pak of

monies in the manner described above including the fraudulent taking of Pharma Pak monies to

pay employees working for Global Holdings d/b/a Sentar Pharmaceuticals, and fraudulently

obtaining reimbursement for expenses incurred by Edalat and Karpinksi for seeking investors

and paying expenses on its account, by fraudulently using Pharma Pak money procured as

described above.

109. LIWA joined the Enterprise in 2015 when it opened a bank account into which

Edalat deposited money he has procured by fraud from Pharma Pak so that it can be transferred

overseas and thus be insulated from the reach of Pharma Pak.

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

62

110. Karpinski joined the Enterprise in May, 2015 when she commenced her fraudulent statements to Cahill in order to obtain a salary and expense reimbursements from Pharma Pak so that she could work to advance the interests of Global Holdings d/b/a Sentar Pharmaceuticals while being paid by Pharma Pak, and while falsely stating that she was working for Pharma Pak in the manner described above, and by obstructing justice in the manner described above.

111. Barghi joined the Enterprise in at least as early as 2014 when she commenced running Global Holdings d/b/a Sentar Pharmaceuticals in the manner that Edalat dictated and has furthered Edalat's frauds through her operation of Global Holdings d/b/a Sentar Pharmaceuticals.   Moreover, she formed all the entities described above, which act in the Enterprise, and she operates them in their Enterprise activities described above, following the instructions of Edalat. Her operation of Global Holdings d/b/a Sentar Pharmaceuticals has assisted Edalat in inducing Cahill by fraud to loan Pharma Pak additional sums of at least $250,000.00 in 2015 and 2016, and to make the advances of $406,000.00 to the Sentus building venture described above, on the false promise that it would obtain orders for Pharma Pak product.

112. Edalat runs the Enterprise and gives orders to Barghi about what she should do to help operate the venture. He induced Karpinski to perpetrate a fraud on Pharma Pak and made many false statements to further the fraud against Pharma Pak in the manner described above in this Court. Global Holdings d/b/a Sentar Pharmaceuticals profits from the fraud committed above.

113. Each of the defendants associated themselves with Edalat and with the above-described RICO enterprise by working together and making the fraudulent representations to

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

plaintiffs, alleged in this Count VI of Second Amended Complaint, and participating in drug distribution and the obstruction of justice described in this Count, in order to bring about the damages described in this Count.

114. The defendants associated with each other by communicating and by coordinating their efforts to make false statements in an attempt to defraud, through a pattern of interstate wirings extending from late March 2015 to the present time, and by obstruction of justice by use of interstate wire communications by which the false allegations of criminal conduct and threats were posted publicly.  This pattern establishes the RICO Enterprise by showing the association of these defendants to commit the pattern of racketeering described in this Count VI.

115. Defendants' alleged wrongful conduct is in violation of 18 U.S.C. § 1962(c) because the defendants participated directly in the conduct of an enterprise through a pattern of racketeering activity including wire fraud, drug distribution and obstruction of justice described above.

116. Defendants' conduct is also in violation of 18 U.S.C. § 1962(d) because defendants conspired to violate the provisions of subsection (c) of 18 U.S.C. § 1962 and § 371, by intentionally combining and agreeing with each other to directly and indirectly participate knowingly in the conduct of the enterprise through a pattern of racketeering activity.

117. As a direct and proximate result of the defendants' racketeering activities and violations of 18 U.S.C. § 1962(c) and (d), Plaintiffs have been injured in their business and property within the meaning of 18 U.S.C. § 1964 by Cahill's loss of loan money and the money for the Sentar property purchase in the amount of at least $650,000.00 and Pharma Pak has been injured in the amount of at least $300,000.00.

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

# COUNT VII

**By All Plaintiffs against Defendant Edalat, Barghi, Karpinski and Global Holdings d/b/a Sentar Pharmaceuticals For Sale of Securities By Means of a False Statement or Omission of Material Fact In Violation of Cal. Corp. Code §§ 25401, 25501, 25504**

118. Plaintiffs adopt by reference each and every allegation stated in paragraphs 1 through 117 as if separately repleaded in full herein.

119. Edalat made knowingly false material statements and knowingly false material omissions, as described above in Counts I to V, to induce purchases of stock in Pharma Pak by Plaintiffs. Plaintiffs Cahill, Cullen, Scott, and Franco were unaware of the omissions and concealed facts at the time of their Pharma Pak stock purchases and investments and they would not have purchased stock in Pharma Pak and joined defendants' venture if they had known of the concealed and/or suppressed facts alleged herein.

120. Edalat's sale of securities by means of his false statements and omissions of material facts was in violation of California Corporations Code § 25401.

121. As a direct and proximate result of Edalat's wrongful conduct, Cahill suffered damages to be proved at trial in connection with his purchases of Pharma Pak shares of at least $500,000.00, as will be shown at trial.

122. As a direct and proximate result of Edalat's wrongful conduct, Cullen suffered damages to be proved at trial in connection with his purchases of Pharma Pak shares of at least $250,100.00.

123. As a direct and proximate result of Edalat's wrongful conduct, Scott suffered damages to be proved at trial in connection with his purchases of Pharma Pak shares of at least $500,000.00.

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

65

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

124. As a direct and proximate result of Edalat's wrongful conduct, Franco suffered damages to be proved at trial in connection with his purchases of Pharma Pak shares of at least $750,000.00.

**COUNT VIII**

**By All Plaintiffs against Defendants Barghi and Global Holdings d/b/a Sentar Pharmaceuticals for Material Assistance in Violations of Section 25401 with Intent to Deceive or Defraud In Violation of Cal. Corp. Code § 25504.1**

125. Plaintiffs adopt by reference each and every allegation stated in paragraphs 1 through 124 as if separately repleaded in full herein.

126. Defendants Barghi and Global Holdings d/b/a Sentar Pharmaceuticals materially assisted Edalat in the fraudulent sale of stock as described in Counts I to V, above, and Count VII which included participating in writing and distributing false statements on the value of Global Holdings d/b/a Sentar Pharmaceuticals to induce Plaintiffs to purchase stock in Pharma Pak.

127. Defendants Barghi and Global Holdings d/b/a/ Sentar Pharmaceuticals acted with the intent to deceive and defraud Plaintiffs by inducing them to purchase stock by relying on knowingly false statements and material omissions in violation of section 25401.

128. As a direct and proximate result of these defendants' wrongful conduct, Cahill suffered damages to be proved at trial in connection with his purchases of Pharma Pak shares of at least $500,000.00.

129. As a direct and proximate result of these defendants' wrongful conduct, Cullen suffered damages to be proved at trial in connection with his purchases of Pharma Pak shares of at least $250,100.00.

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

130. As a direct and proximate result of these defendants' wrongful conduct, Scott suffered damages to be proved at trial in connection with his purchases of Pharma Pak shares of at least $500,000.00.

131. As a direct and proximate result of these defendants' wrongful conduct, Franco suffered damages to be proved at trial in connection with his purchases of Pharma Pak shares of at least $750,000.00.

**COUNT IX**

**By All Plaintiffs against Defendants Edalat, Karpinski, Barghi, and Global Holdings d/b/a Sentar Pharmaceuticals for Fraud and Deceit under California Civ. Code §§1709 and 1572**

132. Plaintiffs repeat and reallege each and every allegation pleaded in paragraphs 1 through 131 of this Second Amended Complaint as if separately repleaded in full herein.

133. Defendants Edalat, Karpinski,  Barghi and Global Holdings d/b/a Sentar Pharmaceuticals, for whom the three individual defendants were acting and for which they were speaking, repeatedly made intentionally false statements to the individual plaintiffs, in the manner alleged above at paragraphs 29 through 38 of this Second Amended Complaint, including affirmative false statements as therein described, all of which were either knowingly false when made by defendants Edalat, Karpinski, and Barghi, or those defendants had no reasonable ground for believing these statements were true, or were promises made without any intention of performing them.

134. Edalat, Karpinski, and Barghi intended that the individual plaintiffs rely on the false statements. Plaintiffs Cahill, Cullen, Scott and Franco justifiably relied on the false statements

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

67

about Pharma Pak and the other false statements described above in deciding to buy shares of Pharma Pak.

135. Defendants' intentional false statements violate California Civil Code sections 1709 and 1572 and have caused Plaintiffs damages, including lost revenues, income, and investment monies in an amount to be proved at trial. Through their actions, Defendants intended to cause Plaintiffs injury and carried on their actions with willful and conscious disregard of the rights of the plaintiffs.

136. As a direct and proximate result of the defendants' wrongful conduct, the individual plaintiffs suffered damages to be proved at trial in connection with their respective purchases of Pharma Pak shares, in an amount totaling at least $2,000,000.00 (two million dollars).

137. The statements were made by Edalat, Karpinski, and Barghi with oppression, fraud and malice and with the intent to injure Plaintiffs and thus these Defendants should pay punitive or exemplary damages to Plaintiffs in an amount to be determined at trial.

## COUNT X

**By All Plaintiffs against Defendants Edalat, Karpinski, Barghi and Global Holdings d/b/a Sentar Pharmaceuticals for Fraud by Concealment under California Civ. Code §§1710 and 1573**

138. Plaintiffs reallege each and every allegation stated in paragraphs 1 through 137 as if separately repleaded in full herein.

139. Defendants Edalat, Karpinski, and Barghi repeatedly and intentionally concealed and/or suppressed material facts, as alleged in paragraphs 29 through 38 of this Second Amended Complaint, which Defendants had a duty to disclose to the individual plaintiffs when offering sale of stock in Pharma Pak.

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

140. Defendants intentionally concealed and/or suppressed the facts alleged herein with the intent to defraud the individual plaintiffs by inducing them to rely on the materially misleading information provided.

141. Plaintiffs Cahill, Cullen, Scott, and Franco were unaware of the omissions and concealed facts at the time of their Pharma Pak stock purchases and investments and they would not have purchased stock in Pharma Pak and joined defendants' venture if they had known of the concealed and/or suppressed facts alleged herein.

142. By their concealment, Defendants have violated California Civil Code sections 1710 and 1573 and, as a result, the plaintiffs have suffered damages, including lost revenues, income, and investment monies in an amount to be proved at trial.

143. As a direct and proximate result of defendants' wrongful conduct, the plaintiffs suffered damages in an amount to be proved at trial in connection with their respective purchases of Pharma Pak shares, totaling at least $2,000,000.00 (two million dollars).

144. The omissions described above were concealed by Edalat, Karpinski, and Barghi with oppression, fraud and malice and with the intent to injure Plaintiffs and thus these Defendants should pay to Plaintiffs punitive or exemplary damages in an amount to be determined at trial.

**COUNT XI**

**By All Plaintiffs against Edalat for Declaratory
Relief under 28 U.S.C. § 2201**

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

145. Plaintiffs adopt by reference each and every allegation stated in paragraphs 1 through 144 as if separately repleaded in full herein.

146. Because of all of the fraud and other misconduct stated in this Second Amended Complaint, Pharma Pak is now insolvent and it has ceased operations. It has been for many months now unable to pay its employees, and thus has terminated them from their employment; it has lost the services of its scientist by reason of threats and other misconduct of Edalat and Karpinski who, among other misconduct, attempted to frame the chief scientist for the crime of the illegal possession with the intent to manufacture and distribute controlled substances, by planting such controlled substances (THC and marijuana) in that scientist's office and then telling local police that the scientist was using those drugs to manufacture and to distribute controlled substances.

147. The insolvency of Pharma Pak was caused directly by the fraud and misconduct of Edalat, among others.

148. All of these false statements and misconduct have caused the insolvency of Pharma Pak, have caused the total loss of all the investment monies advanced by the individual plaintiffs for the stock they purchased in Pharma Pak, and have caused a loss of all the work the individual Plaintiffs have undertaken to help make Pharma Pak a profitable business venture.

149. Despite all his misconduct and the ruination of Pharma Pak that has caused the resulting loss of investments of the individual Plaintiffs, Edalat now contends that the Plaintiffs owe Edalat a fiduciary duty to account and pay over to Edalat certain sums of money and certain assets he claims the individual plaintiffs have taken from Pharma Pak, and that they owe him other fiduciary duties, and he claims that Defendants breached these fiduciary duties.

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

70

150. Plaintiffs contend that they owe Edalat nothing, both because they hold nothing to which Edalat has or had any right, title, or interest, and because any rights Edalat had in any such assets by reason of any obligation or fiduciary duty Plaintiffs or any of them would have owed Edalat were lost and subject to the rescission herein sought because Edalat fraudulently induced the individual plaintiffs to undertake any such fiduciary or other obligations or duties.

151. Moreover, Plaintiffs further contend that in the winding up of Pharma Pak and attempting to pay its debts, all Plaintiffs acted in a proper manner which satisfied any duty they owned to any shareholder, including Edalat.

152. Therefore, an actual case and controversy exists between Edalat, who claims to be owed fiduciary and other duties from the individual Plaintiffs, and that Plaintiffs breached their duties owed to him, and the Plaintiffs, who claim that they owed no such duties to Edalat because of his fraud and misconduct and that even if they did owe him any fiduciary duties, they duly performed all such duties.

153. Plaintiffs therefore seek a declaration from this Court of their rights and duties to defendant Edalat in these circumstances and seek a declaration that they owe him no rights or duties in relation to Pharma Pak by reason of Edalat's fraud and misconduct, and owe him no assets or money, and that if they did owe any duty to Edalat or any other shareholder, those duties have been fully met and honored.

## COUNT XII

### By Plaintiff Cahill against Defendant Edalat for Defamation by Libel
### Under Cal. Civ. Code §§ 43, 44(a), and 45

154. Plaintiffs adopt by reference each and every allegation stated in paragraphs 1 through 153 as if separately repleaded in full herein.

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

155. In retaliation for bringing claims against Edalat and the other Defendants in this action, Edalat has pursued a campaign of defamation publicized on social media against plaintiff Cahill (and the other plaintiffs as shown below), by repeatedly posting knowingly false statements about Cahill which expose him to contempt, ridicule, or obloquy, or which cause him to be shunned or avoided, or which has a tendency to injure him in his occupation.

156. Specifically, Edalat has made and published the following false written statements about Cahill and Scott on the following dates on the following public social media forums:

(a)        posted: "Bruce Cahill Greg Cullen Shane Scott of Utah and self proclaimed fake "church priest and healer" (tax evader) & lastly Ron Franco: it's on!" [October 8, 2016, on Twitter and Facebook]

(b)        posted: "You stole my comp while I was traveling. You fired my employees for turning all of you in for Manuf class1drugs. You will all face justice." [October 8, 2016, on Twitter and Facebook]

(c)        posted photo of Cahill with cash in a car with the caption: "When ur own employee doesn't trust u he takes pics. #westcoastberniemadoff #brucecahill @UCIrvine @NewUniversity this is ur trustee!" [sic] [October 10, 2016 on Twitter] (Edalat has repeatedly tagged UCIrvine in his defamatory posts against Cahill in an apparent attempt to harm Cahill's reputation and position at the University of California Irvine where Cahill serves as a trustee);

(d)        stated Cahill was "trying to #slutshame" Olivia Karpinski "and turn his victim into a guilty party" (after previously posting about Karpinski's false claims of sexual assault against Cahill which are the subject of the defamation claim against Karpinski below) [October 13, 2016 on Twitter];

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

72

1    (e)       accused Cahill of tax evasion and using shell corporations to hide money;

2    [October 14, 2016 on Twitter] ;

3    (f)       referred to Cahill as the "#westcoastberniemadoff" on repeated occasions and

4

5    posted a photo of Cahill and Bernie Madoff side by side, stating "There is a slight resemblance

6    in faces and a huge resemblance in actions!" [October 8, 10, 14, 17, 2016 on Twitter];

7    (g)       posted within a string of posts referencing Cahill: "Any man that cheats on his

8    wife (in her own home) will cheat on his partner (in their own business)." [October 19, 2016 on

9

10   Twitter];

11   (h)       posted: "#brucecahill stole from my company, employees & partners.

12   @UCIrvine You should [check] your bank accounts @firstfoundation #yourtrusteeisafraud

13   [posted with a photo of plaintiff Cahill]" [October 19, 2016 on Twitter];

14   (i)       posted on the day of Cahill's deposition taken in this case: "Amazing how easy

15

16   some people lie. The truth will always catch up to you, no matter if you're King of the Hill or

17   not." (referencing Cahill's home) [October 27, 2016 on Twitter]

18   157. Edalat's statements quoted above are defamatory on their face and they were also

19   made with malicious intent as Edalat himself made clear to Cahill through emails and through

20   the postings themselves. Edalat emailed all the Plaintiffs on June 18, 2016 threatening: "Did

21   you really think u r going to get away with all of this? Stealing my company suing my family

22   and putting all of that bs out there against me? Calling me a fraud? Fuck u thieves and the real

23

24   frauds. Wait till u see everything . . ." and in his public post "See u in court and media old

25   friend and partner." [October 6, 2016 on Twitter].

26

27

28

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

158. As a result of Edalat's libelous statements, Cahill has suffered, humiliation, embarrassment, and injury to reputation in an amount to be proved at trial.

159. Edalat's statements quoted above were made by Edalat with oppression, fraud and malice and with the intent to injure Plaintiff Cahill and thus this Defendant should pay punitive or exemplary damages to Plaintiffs in an amount to be determined at trial.

## COUNT XIII

### By Plaintiffs Cullen, Scott, and Franco against Defendant Edalat for Defamation by Libel Under Cal. Civ. Code §§ 43, 44(a), 45

160. Plaintiffs adopt by reference each and every allegation stated in paragraphs 1 through 156 as if separately repleaded in full herein.

161. In retaliation for bringing claims against Edalat and the other defendants in this action, Edalat has pursued a campaign of defamation on social media against plaintiffs Cullen, Scott, and Franco (along with Cahill as set out above in Count XII above) by repeatedly posting knowingly false statements about these plaintiffs which expose them to contempt, ridicule, or obloquy, or which cause him to be shunned or avoided, or which has a tendency to injure him in his occupation.

162. Specifically, Edalat has made the following false written statements about these plaintiffs on the following dates on the following public social media forums:

(a)        posted: "Bruce Cahill Greg Cullen Shane Scott of Utah and self proclaimed fake "church priest and healer" (tax evader) & lastly Ron Franco: it's on!" [October 8, 2016, on Twitter and Facebook]

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

(b)     posted: "You stole my comp while I was traveling. You fired my employees for turning all of you in for Manuf class1drugs. You will all face justice." [October 8, 2016, on Twitter and Facebook]

163. Edalat's statements are defamatory on their face but they were also made with malicious intent as Edalat himself made clear to plaintiffs through emails and through the postings themselves. Edalat emailed all the plaintiffs on June 18, 2016 threatening: "Did you really think u r going to get away with all of this? Stealing my company suing my family and putting all of that bs out there against me? Calling me a fraud? Fuck u thieves and the real frauds. Wait till u see everything . . ." and in his public post "See u in court and media old friend and partner." [October 6, 2016 on Twitter].

164. As a result of Edalat's libelous statements, plaintiffs have suffered emotional distress, humiliation, embarrassment, and injury to reputation in an amount to be proved at trial.

165. The statements were made by Edalat with oppression, fraud and malice and with the intent to injure Plaintiffs and thus these Defendants should pay punitive or exemplary damages to Plaintiffs in an amount to be determined at trial.

### COUNT XIV

**By Plaintiff Cahill against Defendant Karpinski for Defamation by Libel
Under Cal. Civ. Code §§ 43, 44(a), 45**

166. Plaintiffs adopt by reference each and every allegation stated in paragraphs 1 through 133 as if separately repleaded in full herein.

167. In retaliation for bringing claims against Karpinski and the other defendants in this action, Karpinski has participated with Edalat in a malicious campaign of defamation on social media against plaintiff Cahill by repeatedly posting knowingly false statements about Cahill

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

1    which expose him to contempt, ridicule, or obloquy, or which cause him to be shunned or

2    avoided, or which has a tendency to injure him in his occupation.

3         168. Specifically, Karpinski has made the following false written statements about Cahill

4

5    on the following dates on her publicly accessible Instagram page (which has 15,000 followers):

6         (a)      stated that Cahill sexually assaulted her, that Cahill sexually harassed her, and that

7    Cahill wrongfully terminated her. As she published these libels:

8

9         As some of you know, I worked as an executive for a pharma company, Pharma
10   Pak, and fully dedicated myself to the company, even moving away from my home in
     LA to Orange County and turning down another job offer in LA to take the job. Laguna
11   Beach native, Trustee at UCI, and CEO of the Company, Bruce Cahill, induced me to
     take the job under false pretenses and promises. Not knowing that he had a history of
12   sexual harassment claims against him, I took the job and soon after I started, he made
     inappropriate advances towards me and would make constant derogatory statements
13   about women and young girls. I found myself in a predicament where I was in a
     constantly stressful and hostile environment and was sexually assaulted after being
14   given a promotion. Shortly after being given a promotion, I was wrongfully terminated
     after not participating in and reporting illegal activities occurring at the Company. To
15   thwart me from obtaining legal counsel, he maliciously sued me in an attempt to defame
     my name and reputation.
16

17        [Instagram on September 9, 2016]

18        (b)      made ongoing posts that Cahill sexually assaulted her and tagged UCIrvine in her

19   posts to intentionally and maliciously harm Cahill's reputation and position as a trustee at the

20   University:

21
          I will continue to fight my case against @ucirvine trustee @pharamceo [sic]
22   #brucecahill and hope with the support of @hillaryclinton that we can bring awareness
     to this serious issue. Never forget that you have a voice. My hope in standing up for
23   myself is that what happened to me will never happen to any other woman or person.
     #imwithher #hrc #stop #sexualassault #awareness #disgusting #assaultandbattery #abuse
24   #leanin #standup #feminist #notokay
25

26        [Instagram on October 11, 2016]

27

28

         SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

1
2
3
4
5
6

(c)        posted along with a photo of Cahill and Donald Trump: "#berniemadoff, whoops I mean #donaldtrump, wait, sorry I mean @ucirvine trustee #brucecahill a.k.a. @pharamceo….. You want to violate corporate law, sexually harass employees and make derogatory statements about women and young girls and then sue innocent and hardworking people?" [Instagram on October 19, 2016]

7
8
9
10
11
12
13
14
15
16
17

(d)        posted an L.A. Times article covering Cahill and the lawsuit and wrote underneath, on the day after Cahill sat for his deposition in this case: "Wow, what a great read @thedailypilot @latimes! Full link in bio. What makes it better is the same lie SOMEBODY told to the press that was published in this article was also made in a deposition yesterday UNDER OATH and was then proved wrong in an audio recording. Well, that's embarrassing and uh oh is right. There's nothing more pathetic than a 70 year old man LYING in a deposition. So what happens when a TRUSTee LIES? What else is he hiding and lying about? …… #berniemadoff #westcoatberniemadoff #lawsuit #lawyer #ucirvine …."  [Instagram on October 28, 2016]

18
19
20
21

169. As a result of Karpinski's false libelous statements referred to above, Cahill has suffered emotional distress, humiliation, embarrassment, and injury to reputation in an amount to be proved at trial.

22
23
24

170. The statements were made by Karpinski with oppression, fraud and malice and with the intent to injure Plaintiffs and thus this Defendant should pay punitive or exemplary damages to Plaintiffs in an amount to be determined at trial.

25

**PRAYER FOR RELIEF**

26

WHEREFORE, Plaintiffs, and each of them, demand relief as follows:

27
28

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

A.    For an award of damages from each individual defendant jointly and severally to each plaintiff in the amount each plaintiff proves at trial under Counts I, II, III, IV, and V;

B.    For damages trebled from each defendant charged therein to each plaintiff jointly and severally on the damage amounts under the RICO claim, Count VI;

C.    For reasonable attorneys' fees incurred by the individual plaintiffs to file and prosecute the RICO claim (Count VI);

D.    For damages according to proof against each charged defendant under the state securities and state fraud claims, Counts VII, VIII, IX, and X, and for attorneys fees;

E.    For a declaratory judgment (as sought by Count XI) that none of the plaintiffs owe any fiduciary or other duty to defendant Edalat by reason of his fraud and misconduct, that they owe him no assets or money, and that if they did owe him any fiduciary duty, that have fully discharged and honored that duty; and

F.    For damages for libel as claimed in Counts XII, XIII, and XIV and for punitive damages on these libel claims;

F.    For an award of all taxable costs allowable; and,

G.    For such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues so triable.

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.

1

2
Dated:  December 12, 2016                Respectfully submitted,

3
                                         MARKHAM & READ
4

5
                                    By: */s/ John J.E. Markham, II*
6                                        John J. E. Markham, II
                                         Attorney for Plaintiffs
7

8                        CERTIFICATE OF SERVICE

9
I hereby certify that on December 12, 2016, I electronically served via email the
foregoing SECOND AMENDED COMPLAINT from the email address of
10
jmarkham@markhamread.com to the following counsel of record:

11

12
Gouya Askari Ranekouhi
Counsel for Defendant Sentar Pharmaceuticals, Inc.
13
17809 Gillette Avenue
Irvine, CA 92614
14
gouya@sentarpharma.com; and
15
Kristopher P. Diulio (SBN 229399)
16
kdiulio@FordDiulio.com
Brendan M. Ford (SBN 224333)
17
bford@FordDiulio.com
Tyler E. Sanchez (SBN 299131)
18
tsanchez@FordDiulio.com
19
Counsel for all other Defendants
FORD & DIULIO PC
20
695 Town Center Drive, Suite 700Costa Mesa, California 92626
21
                                   _____*/s/ John J.E. Markham, II*_
22                                       John J.E. Markham, II
23

24

25

26

27

28

SECOND AMENDED COMPLAINT FOR DAMAGES AGAINST PAUL EDALAT, ET AL.