**FORD & DIULIO PC**
Kristopher P. Diulio (SBN 229399)
kdiulio@FordDiulio.com
Brendan M. Ford (SBN 224333)
bford@FordDiulio.com
Tyler E. Sanchez (SBN 299131)
tsanchez@FordDiulio.com
695 Town Center Drive, Suite 700
Costa Mesa, California 92626
Telephone: (714) 384-5540
Facsimile: (844) 437-7201

Attorneys for Counter-Claimant
PAUL PEJMAN EDALAT

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| BRUCE CAHILL, an individual, GREG CULLEN, an individual, SHANE SCOTT, an individual, RON FRANCO, an individual, and PHARMA PAK, INC. a California Corporation, | Case No. 8:16-cv-00686-AG-DFM |
| | **PAUL EDALAT'S THIRD-AMENDED COUNTER-CLAIM:** |
| Plaintiffs, | 1. **BREACH OF FIDUCIARY DUTY;** |
| v. | 2. **FRAUD;** |
| PAUL PEJMAN EDALAT, an individual, OLIVIA KARPINSKI, an individual, FARAH BARGHI, an individual, SENTAR PHARMACEUTICALS, INC., a Nevada corporation, BLUE TORCH VENTURES, INC., a Wyoming Corporation, LIWA, N.A., INC., a Wyoming Corporation, SENTUS LAND MANAGEMENT, LLC, a Wyoming Limited Liability Company, | 3. **FRAUD BY CONCEALMENT;**<br>4. **VIOLATION OF UNFAIR COMPETITION LAW;**<br>5. **INVOLUNTARY DISSOLUTION;**<br>6. **UNJUST ENRICHMENT; AND**<br>7. **AN ACCOUNTING** |
| Defendants. | **JURY TRIAL DEMANDED** |
| PAUL PEJMAN EDALAT, an individual, | |
| Counter-Claimant | |
| v. | |
| BRUCE CAHILL; GREG CULLEN; SHANE SCOTT; RON FRANCO; LIFE TECH GLOBAL, LLC; LESLIE | |

1   HAROLD   WOOD;   LUDWIG   JAN
2   WEIMANN;    ERTAN    AYIDNOL;
    PHARMA   PAK,   INC.;   and   DOES   1
3   through 50, inclusive,

4                    Counter-Defendants

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## THIRD AMENDED COUNTERCLAIM

1.     In this Counterclaim, Defendant and Counter-Complainant Paul Edalat ("Edalat") seeks to recover damages for breaches of fiduciary duty and fraudulent, unfair business practices committed by Counter-Defendants Bruce Cahill, Greg Cullen, Shane Scott, Ron Franco, Life Tech Global, LLC, Leslie Harold Wood, Ludwig Jan Weimann, and Ertan Aydinol (collectively "Counter-Defendants") in connection with the systematic corporate mismanagement of Pharma Pak, Inc. (Pharma Pak), misappropriation of corporate funds, unauthorized transfer of corporate property and monies, and improper squeezing out of Edalat in his role as founder and shareholder of Pharma Pak, Inc. ("Pharma Pak").  As set forth below, Counter-Defendants Cahill, Wood, Weimann, and Aydinol failed to properly manage and run Pharma Pak, instead repeatedly conspiring to take actions designed for their own personal gain and intentionally misleading Edalat in violation of corporate governance laws. Furthermore, Counter-Defendants Cahill, Cullen, Scott, Franco, and Life Tech Global undertook to improperly squeeze out Edalat by starting a competing business and stealing and/or selling Pharma Pak's assets and monies to the new business.  In so doing, Counter-Defendants breached fiduciary duties owed to Edalat, and thereby damaged Edalat.

2.     Edalat hereby alleges against Counter-Defendants as follows on information and belief, except as to the allegations pertaining to Edalat's own actions, which are based on personal knowledge:

## INTRODUCTION

3.     Paul Edalat founded Pharma Pak in or around January 2015.  The initial business of Pharma Pak was pharmaceutical repackaging.  Repackaging is a FDA regulated and approved practice of removing a preparation from its original package for repacking into another container, typically of a smaller size (for example, creating single-dose packages).

4.     Edalat and Pharma Pak jointly held patents for the creation of certain transdermal patches, which are medicated patches placed on the skin to deliver a specific dose of medication through the skin and into the bloodstream.  Additionally, Edalat has patents for sublingual delivery technology, which includes the administration of medication through tissues under the tongue.

5.     Edalat and Counter-Defendant Bruce Cahill ("Cahill") originally met through a trusted mutual friend, and had known each other socially for many years as of Fall 2014.  At that time, Cahill became aware that Edalat was in negotiations with third parties for the further development of a pharmaceutical manufacturing facility located at 17809 Gillette in Irvine, California. Cahill, seeing the potential value of pharmaceutical compounding operations, induced Edalat to partner with Cahill in this pharmaceutical venture.

6.     Specifically, Cahill stated to Edalat that he was retired and looking for a secondary project to keep him occupied.  Cahill further used his influence as a Board of Trustee member for various entities, including the University of California at Irvine, Rose-Hulman Institute of Technology, and the Oceana Institute, and references to his $38,900,000.00 "house on the hill" in Laguna Beach as proof of his success and established business prowess. Cahill represented to Edalat that he would employ his vast business experience and expertise in growing Pharma Pak's business. Cahill insisted on using his home to host company meetings and dinners with business partners as a means to impress upon others Cahill's so-called success, and to induce said partners to invest into Cahill's ventures. From mid-2014 when Cahill and Edalat began discussing business, Cahill attended meetings with Edalat. This continued until late 2015 when their relationship soured.

7.     Cahill further induced Edalat to allow him to become CEO and President of Pharma Pak by promising to leverage his multiple business contacts acquired over decades.  Specifically, Cahill stated to Edalat, in meetings around the time of Pharma

Pak's formation in early 2015, that he would fill Pharma Pak's Board of Directors with several respected persons from the pharmaceutical and technology industries.

8.    By way of example, Cahill stated at the time of Pharm Pak's formation in early 2015 that Dr. Elizabeth M. Hagerman, a former fellow Trustee of Rose-Hulman Institute of Technology with Cahill and a former Baxter Healthcare executive, would be interested in joining the Board for Pharma Pak.

9.    Cahill also stated on October 11, 2015 that he would bring on Associate Professor of Pharmaceutical Sciences at the University of California, Irvine, Mahtab Jafari to help grow the Pharma Pak business.

10.    Edalat relied on these promises in agreeing to sell Pharma Pak shares to Cahill, give Edalat's personal shares to Cahill and name him CEO and Director. Cahill, however, never fulfilled these promises because he failed to bring any such persons on for Pharma Pak's benefit.

11.    Though Edalat originally founded Pharma Pak, Cahill quickly took control, incorporating the company name using his personal legal counsel, Timothy Balog of Balog & Rasch LLP, on or around February 10, 2015.

12.    Beginning in or around February 2015, Cahill was urging Edalat to sell his personal shares in the newly formed Pharma Pak, purportedly in order to raise needed personal funds for ongoing bankruptcy litigation, of which Cahill was well aware.  To that end, in or around September 2015, Cahill, in his role as CEO, was actively soliciting further investors for the Pharma Pak venture.

13.    Cahill repeatedly stated to Edalat that Cahill himself did not have the liquidity to fund the Pharma Pak venture, and therefore outside investors were needed. This statement was nothing more than a falsehood designed to fraudulently induce Edalat into diluting himself out of Pharma Pak by reducing his shareholder status. Attached as Exhibit A is a true and correct copy of a January 29, 2016 email from Cahill to Gregory David Cullen wherein Cahill lays out his plan to dilute Edalat from Pharma Pak in order to give himself a majority shareholder position.

14. Pursuant to Cahill's plan, Cahill introduced Counter-Defendant Gregory David Cullen ("Cullen") to Edalat for investment into Pharma Pak. Cullen, through his non-profit foundation, purchased a quantity of Edalat's personal shares, and a quantity of Company-held shares for a total of 2.5% of Pharma Pak shares in or around October 2015. Cullen paid to Edalat $100,000 for Edalat's shares, and paid to Cahill a further $150,000 for the remaining shares.

15. Cahill also introduced Counter-Defendant Ronald Ventura Franco ("Franco") to Edalat and Pharma Pak. Franco purchased his shares directly from Pharma Pak in or around October 2015. Edalat is informed that Counter-Defendant Franco paid directly to Cahill monies for his 7.5% ownership of Pharma Pak shares.

16. Counter-Defendant Shane Scott ("Scott"), Scott's business partner Chris Campbell, and Scott's personal trust, EL-1 Trust, through their various entities and shell corporations, purchased a quantity of Edalat's personal shares in or around November 2015 for a total of 5% of Pharma Pak shares.

17. Additional individuals purchased or received shares of Pharma Pak, including non-party shareholder Amir Asvadi, who owns 5% of Pharma Pak, and John Crowther, who owns approximately 11% of Pharma Pak shares.

18. Edalat, the founding shareholder of Pharma Pak, currently owns 36.5% of its shares. Cahill, having purchased a quantity of the initial shares and receiving from Edalat an additional 20% as consideration for serving as Pharma Pak's CEO, owns approximately 37% of Pharma Pak.

19. At the time of these shareholders' collective initial investments, Cahill was said to have secured certain patent rights from Dr. Ludwig Jan Weimann ("Weimann"), the Chief Technical Officer of the Pharma Pak. As part of his employment, Weimann was to develop certain additional patents for Pharma Pak. It was the promise of these certain Pharma Pak patents that caused Edalat to continue funding Pharma Pak operations through capital calls, and induced Edalat to continue to bring business opportunities to Pharma Pak.

20.   By the end of 2015, under Cahill's stewardship as CEO, Pharma Pak began to focus on the business of manufacturing transdermal patches instead of repacking operations.

21.   In or around January 2016, Edalat, along with Asvadi, discovered that Cahill was misusing company funds and undertaking actions to defraud Pharma Pak, including stealing monies belonging to Pharma Pak for his own personal use.

22.   As detailed below, such fraudulent activities included Cahill paying himself a $240,000 annual salary to serve as CEO. That salary was severely excessive in light of Pharma Pak's minimal existing business, as well as Cahill's receipt of stock as consideration for serving as CEO.  Cahill was also paying Leslie Harold Wood ("Wood"), Pharma Pak's part-time bookkeeper and long-term employee of Cahill's, an annual salary of $90,000. That salary was also excessive in light of Wood's limited duties.

23.   Edalat discovered further abuses, including Cahill paying for personal expenses with company funds; forging a lease to make fraudulent payments to his family-owned business; and making large unauthorized cash withdrawals from the corporate bank account.

24.   Also discovered was the fact that Cahill had failed to obtain the pharmaceutical manufacturing license required by state and federal laws for Pharma Pak to use the 17809 Gillette facility in Irvine, California to manufacture pharmaceuticals or medical devices.  Despite the repeated efforts of Pharma Pak employees, Cahill failed to process the necessary applications and, therefore, was the direct cause of resulting loss of sales to Pharma Pak.

25.   After discovering these improper transactions and mismanagement, Edalat called for a shareholder meeting. Cahill refused to hold such a meeting or alleviate Edalat's concerns. When challenged over his misuse of Pharma Pak assets and mismanagement, CEO Cahill became hostile and dismissive to Edalat and any other shareholder who dared question Cahill's actions and inactions.

26.     While attempting to work with Cahill, Edalat learned in or around February 2016, that the Pharma Pak manufacturing facility contained illegal liquid tetrahydrocannabinol ("THC"), a Schedule 1 drug used to manufacture THC-laced transdermal patches.  Employee and Defendant Olivia Karpinski ("Karpinski"), along with other employees, discovered that Cahill had conspired with Dr. Weimann and Ertan Aydinol, Pharma Pak's Vice President of Manufacturing, to produce these unregistered medical devices at the Gillette Avenue facility, despite the lack of appropriate licensing rendering such production illegal. Karpinski notified Edalat of what she had learned and Edalat, after consulting with the FDA, FDA counsel, and FDA consultants, informed the Irvine Police Department.

27.     Upon learning from Weimann that the Irvine Police Department had removed the THC from the Pharma Pak facility, Cahill, Wood, Weimann, and private investigator Cameron Jackson ("Jackson") conspired to move Pharma Pak assets. By way of example, Cahill, along with Wood, transferred the funds from Pharma Pak's operational bank account to a secondary account on March 1, 2016. They later transferred the balance of these monies back to Pharma Pak's operational bank account on March 3, 2016.

28.     On March 3, 2016, Cahill, Wood, and Jackson, began terminating those Pharma Pak employees who had cooperated with Edalat and the Irvine Police Department. Cahill, Wood, and Jackson told these manufacturing employees that "[Edalat's] actions" had caused them to be fired, and that Pharma Pak was being shut down.

29.     Cahill further told Karpinski that a "majority shareholder's vote" had dissolved the corporation. No such vote had in fact taken place.

30.     Six days after that, on March 9, 2016, Counter-Defendant Life Tech Global, LLC ("Life Tech Global") was registered as a new entity in the State of Delaware.

31.   Exercising full control of the operations of Pharma Pak, Cahill had convinced Cullen, Scott and Franco (collectively, the "Controlling Shareholders") to conspire with him to improperly oust Edalat from the business, and to continue Pharma Pak's business via Life Tech Global.

32.   Pursuant to their plan to squeeze out Edalat from the business, the Controlling Shareholders, along with other executives and employees of Pharma Pak, joined Life Tech Global.  The Controlling Shareholders also transferred Pharma Pak's monies, equipment and assets to Life Tech Global without shareholder approval, including certain of the patents developed for Pharma Pak by Weimann.  In sum, the Controlling Shareholders unilaterally and without proper approval renewed the business of Pharma Pak in the form of Life Tech Global.  The only difference is that Edalat, Asvadi, and Crowther were no longer shareholders of the new entity.

33.   In undertaking these actions, all Counter-Defendants have breached the fiduciary duties they owed to Pharma Pak and Edalat, and caused damage to Edalat in an amount to be proven at trial.

## PARTIES

34.   Bruce Cahill is now, and at all relevant times has been, a citizen of the state of California, domiciled in Laguna Beach, California.  Cahill owns 37% of the shares of Pharma Pak, and serves as Pharma Pak's CEO and President and Director.  In this role, Cahill grossly mismanaged the business of Pharma Pak, improperly used Pharma Pak funds for his own benefit, conspired with Counter-Defendants to manufacture illegal drugs using Pharma Pak facilities and equipment, and conspired with the Controlling Shareholders to steal Pharma Pak's assets and improperly squeeze out Edalat by developing a competing business.

35.   Greg Cullen is now, and at all relevant times has been, a citizen of the state of California, domiciled in Playa Del Ray, California.  Cullen owns 2.5% of the shares of Pharma Pak.  As a Controlling Shareholder, Cullen owed a fiduciary duty to Edalat, which he breached by conspiring with the other Controlling Shareholders to

improperly eliminate Edalat and move Pharma Pak's business and assets over to Life Tech Global.

36.    Shane Scott is now, and all relevant times has been, a citizen of the state of Utah, domiciled in St. George, Utah.  Scott owns 5% of the shares of Pharma Pak.  As a Controlling Shareholder, Scott owed a fiduciary duty to Edalat, which he breached by conspiring with the other Controlling Shareholders to improperly oust Edalat and steal Pharma Pak's business and assets for use by Life Tech Global.

37.    Ron Franco is now, and at all relevant times has been, a citizen of the state of California, domiciled in Los Angeles, California.  Franco own 7.5% of the shares of Pharma Pak.  As a Controlling Shareholder, Franco owed a fiduciary duty to Edalat, which he breached by conspiring with the other Controlling Shareholders to improperly eliminate Edalat and take over the business of Pharma Pak under a new name.

38.    Leslie Harold Wood is now, and at all relevant times has been, a Citizen of the State of California, domiciled in San Diego, California.  In his part-time role as Pharma Pak's Chief Financial Officer, Wood created projections relied upon by investors, created and maintained the accounting records for Pharma Pak, signed all checks and approved all reimbursements.  Wood earned illegitimate wages, failed to maintain proper accounting records, and was directly involved in the conspiracy to defraud Pharma Pak and its investors by approving Cahill's misappropriation of company funds. As an Officer of Pharma Pak, Wood owed a fiduciary duty to the shareholders, including Edalat.

39.    Ludwig Jan Weimann is now, and at all relevant times has been, a Citizen of the State of California, domiciled in San Diego, California. Weimann brought onto Pharma Pak property illegal Schedule 1 drugs, authorized and actively participated in the production of illegal medical devices, earned illegitimate wages for such illegal production, and was directly involved in the conspiracy to defraud Pharma Pak by improperly transferring patents that rightfully belong to Pharma Pak.  Weimann was

also an Officer of Pharma Pak and owed a fiduciary duty to the shareholders, including Edalat.

40.     Ertan Aydinol is, based upon information and belief, a Citizen of the State of Colorado, domiciled in Boulder, Colorado. In his role as Vice President of Manufacturing, Aydinol embezzled cash from Pharma Pak, earned illegitimate wages for work that was never performed, and further conspired to defraud Pharma Pak by participating in the production of illegal medical devices. At the direction of and in the cooperation with Cahill, Aydinol took cash from Pharma Pak accounts that was meant to pay the manufacturer. Instead of paying the manufacturer, Aydinol kept the cash for himself. These wrong happened under either the explicit or implicit approval of Cahill. Aydinol was also an Officer of Pharma Pak and owed a fiduciary duty to the shareholders, including Edalat.

41.     Life Tech Global, LLC is and, at all relevant times has been, a corporation formed in the State of Delaware, and operating in the cities of Irvine and Oceansde, in the State of California. Life Tech Global, LLC is the corporation where all or most of all of Pharma Pak's assets, cash, and intellectual property currently exist, and is the vehicle through which Counter-Defendants are performing Pharma Pak's business without appropriate licensing.

## JURISDICTION AND VENUE

42.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1367(a) because the claims are substantially related to the claims brought by Counter-Defendants within the Court's original jurisdiction and form part of the same case or controversy.

43.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims set forth herein occurred within this District, and a substantial part of the property that is the subject of this action is situated here.

1

## GENERAL ALLEGATIONS

2    44.   Counter-Defendants Cahill, Wood, Weimann and Aydinol conspired
3    together in a scheme to sabotage the business of Pharma Pak for their own personal
4    gain. The improper and fraudulent actions taken by each Counter-Defendant in
5    furtherance of this scheme are as follows:

6    **Forged Lease And Improper Withdrawal of Pharma Pak Funds by Cahill**

7    45.   In furtherance of the scheme to defraud Pharma Pak, in or around January
8    2015 Cahill forged Edalat's signature on a lease between a "Scilabs Pharma, Inc." and
9    Kira Investments LLC – a Cahill controlled entity – for office space at a Kira
10   Investments owned property, located at 17802 Sky Park Circle in Irvine, California.
11   Cahill himself is the manager of Kira Investments and its agent for service of process.

12   46.   Edalat only became aware of the existence of this lease in or around
13   January 2016 during a Shareholder meeting.

14   47.   The forged lease is dated January 1, 2015. Kira Investments did not begin
15   taking payments from Pharma Pak until approximately August 2015. Kira Investments
16   took payments until February 2016. In total, under the direction of Cahill and Wood,
17   Kira Investments took over $31,000 in seven rent payments from Pharma Pak, in
18   addition to over $35,000 in unaccounted security deposits and payments. No
19   accounting exists for those monies removed by Cahill directly from the Pharma Pak
20   bank account to an entity that exists for the benefit of and is controlled by Cahill. This
21   self-dealing violated Cahill's duty of loyalty and fiduciary duty to Edalat and the other
22   Pharma Pak shareholder.

23   48.   To make matters worse, Cahill predicated his breach of his fiduciary duties
24   on a fraudulent and forged lease document. Edalat, knowing that he did not sign any
25   lease between Pharma Pak and Kira Investments, obtained a handwriting analysis from
26   a former law enforcement expert confirming that Edalat did not in fact sign the lease.

27   49.   Kira Investments is controlled and managed by Cahill. Cahill used Kira
28   Investments as vehicle through which Cahill funnels monies to his daughter, Kira

Cahill, who relies upon Cahill for financial support. Kira Investments provided a convenient way for Cahill to surreptitiously fund Kira Cahill's lifestyle by use of Pharma Pak funds.

50.   In addition to the fraudulent lease, Cahill and Wood paid other multiple personal expenses through the Pharma Pak bank account, including but not limited to Cahill's personal credit card payments and alleged reimbursements for expenses that were personal in nature and not for the benefit of Pharma Pak. In short, Cahill and Wood used Pharma Pak accounts as their own personal piggy bank. They did that without any regard to Pharma Pak's shareholders, including Edalat.

51.   Cahill and Wood also, without notice to shareholders or approval thereof, conducted multiple large cash withdrawals from the Pharma Pak corporate bank accounts.

52.   As the Chief Financial Controller and Secretary of Pharma Pak, Wood was aware of and complicit in Cahill's raiding of Pharma Pak funds.  As Wood and Cahill well knew, Cahill's misappropriation of company funds depleted the Pharma Pak bank account, thus preventing the purchase of the equipment and hiring of personnel needed obtain pharmaceutical and medical device licensing and pursue further legitimate production.

### Employment by Cahill of Improper and Unqualified Persons

53.   Throughout late 2014 and early 2015, Cahill represented to Edalat his ability to successfully manage and grow corporations.  Edalat relied on such statements in agreeing to name Cahill as CEO and Director of Pharma Pak and give Cahill a certain percentage of his Pharma Pak shares.  Such statements, however, were false as Cahill had no intention of committing to grow Pharma Pak.  Instead, Cahill caused further material damage to Pharma Pak and Edalat by deliberately hiring employees and contractors with questionable backgrounds without performing the necessary due diligence or providing the full disclosure to Shareholders.  Such unqualified include:

a. Dr. Ludwig Jan Weimann, Chief Technology Officer, hired on or about June 2015. A self-proclaimed expert in transdermal patch delivery systems, Weimann had formerly worked at an unlicensed transdermal patch research and manufacturing facility in San Diego, California, which was illegally producing Tetrahydrocannabinol "THC," Cannabinol "CBD," and other medical marijuana related patches, as well as unregistered medical devices. Weimann possessed a California medical marijuana card, and obtained samples of THC among other illicit substances through his pre-existing relationships in the marijuana industry.

b. Weimann was hired to produce for Pharma Pak a series of patents for, among other things, transdermal patches. Weimann, in a move calculated to secure his employment contract and full benefits, stated that he owned these patents, however, this was a fraudulent statement. In truth, the patents that Weimann proposed using for Pharma Pak are registered to MediPatch, Weimann's former employer.

c. It was the promise of these certain Pharma Pak patents that caused Edalat and other investors to continue funding Pharma Pak operations through capital calls.

d. Though Weimann did obtain certain patents for Pharma Pak (which, as set forth below, he later undertook to improperly reassign to Counter-Defendant Life Tech Global), the majority of his time was spent overseeing and participating in the illegal production of illicit medical marijuana patches containing THC and CBD in violation of state and federal law.

e. Mark John Erfurt, Information Technology Consultant, was engaged by Cahill at the formation of Pharma Pak in February 2015. Erfurt

has a criminal history for hacking and gaining unauthorized access into the computer systems of a Cahill competitor in 2003. Furthermore, Erfurt had been convicted of obstructing an FBI investigation in order to protect Cahill and one of his companies, Centaur Corporation, and sentenced to five months imprisonment as well as five months house arrest and three years probation. This conviction had not been disclosed to Edalat or the other shareholders and employees of the Company. Despite his criminal history, Erfurt was given full access to employee computers, employee passwords, and confidential Company information.

f.  Erfurt was also paid an exaggerated compensation. As of February 2016, Erfurt was paid by Pharma Pak in excess of $26,000 through his company Tec-in-a-Sec, which holds no business license in Irvine, California, for the simple task of managing of a pre-existing computer network with fewer than seven full-time users.

g.  Furthermore, under the direction of Cahill, Erfurt has destroyed vital company records, including electronic mail belonging to Edalat and Karpinski, and stolen non-Pharma Pak servers and computer systems from the 17809 Gillette Facility. Erfurt has also removed and potentially destroyed the pre-existing video surveillance system present in the 17809 Gillette Avenue facility.

h.  Ertan Aydinol, Vice President of Manufacturing, was hired by Cahill on or about December 2015. Aydinol formerly worked with Weimann at the unlicensed patch facility in San Diego, and at the time of his hire was spending a majority of his time traveling between the United States and Turkey, where his father purportedly owns a manufacturing facility. Unbeknownst to Edalat and the other

shareholders and employees, but known to Cahill, Aydinol had previously been investigated by the FBI.

i.  Aydinol, despite not having performed any work for Pharma Pak, was awarded a base salary of $165,600 annually, plus full benefits and full commission. Aydinol had stated to Cahill that he had been making "over $10,000 a month" at his former employer; however, Cahill never did his due diligence, and Aydinol's actual previous salary was a fraction thereof. Most recently, Aydinol has been arrested for DUI and possession related charges for amphetamines in Boulder, Colorado, where it is believed he currently resides.

j.  As of February 2016, Aydinol was paid bonuses and advances for purported manufacturing in excess of $38,000, not including additional cash removed from the Pharma Pak bank account and paid to Aydinol under the guise of manufacturing payment. Despite these hefty payments, the only manufacturing done by Aydinol involved unlicensed medical patches containing illicit drugs. Aydinol made promises to deliver machines and received cash payments from Pharma Pak for that purposes. Aydinol received tens of thousands in deposit payments from Pharma Pak for machines, but Aydinol kept those funds for the benefit of himself and Life Tech Global. Aydinol is and was an officer of Pharma Pak, who owed a fiduciary duty to Pharma Pak and its shareholders. Yet, with the express or implicit approval of Cahill, Aydinol defrauded Pharma Pak, and breached his duties of loyalty and fiduciary duties, for the benefits of himself and Life Tech Global, at the expense of Pharma Pak and its shareholders.

**Exorbitant Salaries Paid to Cahill and Wood Without Approval**

54.   Cahill's improper use of company funds included an excessively high salary paid to himself and to his friend and long-time employee, Counter-Defendant Wood.

55.   Cahill represented to Edalat that Cahill would not receive a salary. In lieu of salary, it was agreed between Cahill and Edalat that Cahill would receive 20% of Edalat's Pharma Pak shares.  Contrary to his express agreement, starting in August 2015, Cahill paid to himself, without Shareholder approval or an appropriate employment contract, a salary of $20,000 per month.  Such a salary was excessive in light of the 20% of Pharma Pak shares he received as consideration for serving as CEO.  It was agreed and understood that Cahill received shares in Pharma Pak as consideration for serving as CEO and that he would not receive a salary. It was deceptive and fraudulent for Cahill to later pay himself a salary.

56.   Wood was hired as controller for Pharma Pak by Cahill at an unknown date. Wood is a long-time employee of Cahill's and, by his own admission, controls the accounting for approximately 10 of Cahill's entities and shell corporations.  In his role, Wood controls and maintains the books and records, including accounting, signs all checks, orders supplies for these operations, and oversees the movement of money between Cahill's various bank accounts.

57.   Wood, just a part-time employee of Pharma Pak, was given an initial $1,800 per month salary by Pharma Pak. Without shareholder knowledge, approval, or proof of an employment contract, Cahill raised Wood's salary to an annual salary of $90,000.   This salary was excessive and improper in light of Wood's limited responsibilities.

58.   These excessive salaries were paid out at a time when Pharma Pak was not profitable and had a small number of employees, in clear violation of Cahill and Wood's fiduciary duties to place the interests of Pharma Pak before their own.

59.   Said salaries were also in violation of Cahill's expressed agreement, as set forth in Minutes of the First Director's Meeting, to "proceed in a conservative and prudent manner" and that "no salaries be paid" initially given Pharma Pak's vulnerable position as a starting company.

60.   Cahill intentionally overpaid Wood for the limited services he provided in order to ensure that she support and approve Cahill's improper use of corporate funds.

61.   Indeed, without shareholder approval, and unbeknownst to Edalat and the other shareholders, Cahill and Wood filed a Statement of Information with the California of State on April 1, 2015, removing Edalat as Secretary, and placing Wood as both Secretary of Pharma Pak, and Chief Financial Officer.

62.   Unbeknownst to Edalat, Cahill further utilized this document to remove Edalat's name from the corporate bank account. Given Cahill's long-standing relationship with First Foundation Bank in Newport Beach, California, as both a retail banking customer, and a Trustee at the University of California, Irvine, Cahill was able to use this relationship to improperly remove Edalat's name from the Pharma Pak corporate bank accounts without notice to, or approval of, the Pharma Pak Board of Directors or Edalat himself.

63.   Without anyone's name on the bank accounts other than Cahill, Cahill and Wood were able to transfer Pharma Pak funds as Cahill wished.

**Failure to Obtain Necessary Licensing for Manufacturing Facility By Cahill**

64.   Pharma Pak employees were, as early as February 2015, actively seeking information on, and gathering documentation for, the renewal of the necessary pharmaceutical wholesale licensing for the Pharma Pak facility located at 17809 Gillette.  This facility would serve as the site for the manufacturing of certain pharmaceuticals and medical devices but, in order to do so, required appropriate licensing in the state of California.  At the time of Karpinski's hire in June 2015, repeated requests for Cahill's input and signature on the necessary paperwork had already been made.  Cahill, however, refused.  Cahill's refusal to complete the

paperwork necessary to obtain the requisite licensing resulted in a delay in manufacturing, and thus a loss of sales.

65.    Cahill also deliberately conspired with Wood to defraud Olen Corporation, the lessor of the 17809 Gillette Avenue manufacturing facility, by failing to pay rent and refusing to notify Olen, or the other shareholders, of lease termination.  This was done in a deliberate attempt to saddle Edalat with the impending debt on the 17809 Gillette property since, as Cahill well knew, Edalat is the personal guarantor on the lease. As a result of Cahill's and Wood's actions, Edalat was harmed by being forced to incur debt, attorneys' fees, and payments to the Olen Corporation for obligations that were the responsibility of Pharma Pak, Cahill, and Wood.

**Fraudulent Misuse of Corporate Funds for Personal Enjoyment By Cahill**

66.    Counter-Defendant Cahill also fraudulently used Pharma Pak monies to fund personal vacations.

67.    On or about June 1, 2015, at a Pharma Pak meeting in Las Vegas, Cahill brought with him a Dr. Stefanie Bernritter Kleine or, "Dr. K", whom Cahill stated held three PhD's from the University of California, Los Angeles, the University of Chicago, and Pepperdine University.  It was later discovered that Kleine holds no such credentials.  On February 18, 2016, Cahill sent an email to Edalat in which Cahill stated that "Dr. K" was a neurological expert, and actively working with the National Football League conducting concussion research, and further that "Dr. K" was a well-respected researcher for children's brain issues.

68.    Despite Cahill's statements that Kleine would be acting in an advisory capacity to Pharma Pak, at no time was "Dr." Kleine involved in furthering Pharma Pak business.  She was brought along by Cahill for personal reasons.  As a cover up, Cahill referred to Kleine as his "assistant" in the presence of potential Company partners, even allowing her to attend confidential meetings and discussing with her confidential Company information. Cahill, in an unauthorized use of Company funds,

paid for her travel and meals, and allowed Kleine to charge spa services to a Company funded suite at the Wynn Encore Hotel in Las Vegas, Nevada.

69.   Cahill's dishonesty and gross abuse of authority in conducting of Pharma Pak's business affairs caused financial damage to Pharma Pak and Edalat.

**Failure By Cahill and Wood to Exercise Care and Diligence in Management of Pharma Pak**

70.   In addition to mismanaging Pharma Pak's operations for his own benefit, Cahill, as Director and CEO, along with Wood, as Chief Financial Officer and Secretary, failed to observe proper corporate governance procedures and protocols, nor did they comply with Pharma Pak's own bylaws.  By way of example, Cahill failed to conduct appropriate and timely shareholder meetings, failed to keep updated and complete copies of accounting books and records, failed to circulate copies of relevant documents, and neglected to keep shareholders informed of their rights pertaining to inspection of such records.  Wood likewise failed to maintain updated and complete books and records of business and financial transactions, nor did he maintain proper minutes of any shareholder or director meetings and actions.  In essence, Cahill operated and controlled the operations of Pharma Pak without any shareholder accountability and in direct violation of the rules of corporate governance and Pharma Pak's bylaws.

71.   To that end, Cullen repeatedly stated to Edalat and other shareholders that Cullen would step in as interim "Chief Financial Officer" in order to sort out the mismanaged financial affairs of Pharma Pak.  Furthermore, recognizing the mismanagement by Cahill, Cullen agreed with shareholder Amir Asvadi that the Company and fellow shareholders would not be held liable for any misdeeds by Cahill. Specifically, Cullen's email sent an email on February 11, 2016 in which he stated that **"*No shareholder should have to defend a CEO for wrong doing. I agree*"**.

72.   Counter-Defendant Cullen noted the sloppy recordkeeping practices of Cahill and Wood. In or around November 2015, Cullen joined Pharma Pak as interim

CFO to "clean up" Pharma Pak's mismanaged books and records. Cullen himself acknowledged that the books and records managed by Cahill and Wood were not in proper order. Here, again, Cahill and Wood breached their fiduciary duties by mismanaging yet another aspect of Pharma Pak.

73.   In response to a request by Cahill for a complete copy of Pharma Pak records, in or around February 2016, Wood presented to Edalat and shareholders falsified accounting records. There were many irregularities in the records provided by Cahill. For example, the records provided by Cahill did not show all of Edalat's loans to Pharma Pak or capital call contributions. Even more egregious, the records did not list the cash payments Cahill and others had taken from Pharma Pak accounts. When asked for the complete records by Edalat, Wood refused, instead providing a Microsoft Excel spread sheet workbook of expenses, despite the fact that on June 3, 2015 the Company paid over $2,000 for QuickBooks Enterprise edition.

### Development of Illicit Drugs at Pharma Pak Facility By Cahill, Weimann and Aydinol

74.   Cahill's improper management of Pharma Pak and deliberate undertaking to abuse Pharma Pak for his personal gain continued with the production of illegal drugs at a Pharma Pak facility.

75.   In or around December 2015, Cahill had ordered the "clandestine" production by Pharma Pak employees of illicit Cannabidol "CBD" and Tetrahydrocannabinol "THC," Schedule 1 drugs, the production of which requires certain federal and state licensing, at Weimann and Aydinol's former employer in San Diego.

76.   In a December 5, 2015 email, Cahill stated, "It also looks like will can [*sic*] clandestinely use the MediPatch facility next week when Dr. Williams is traveling".

77.   In a follow up email on December 18, 2015, Cahill confirmed that the supply of material used was below both Federal and the supplier's own standards. In any event, Pharma Pak earned cash from the sale of these products that were never

accounted for by Cahill, Wood, and the other Counter-Defendants running Pharma Pak. Instead, it seems that the Counter-Defendants pocketed the profits from these sales, to the detriment of Edalat and any other shareholder who was not involved in the scheme.

78.   Cahill paid to Aydinol a sum in excess of $19,000 for this illicit production, in cash withdrawn from the Pharma Pak bank account on or about December 7, 2015. Indeed, Aydinol sent to Karpinski on December 11, 2015 at 4:52 PM a photograph with the message *"This is how I do business with Bruce ...:) LOL"*. This photograph depicts the interior of Cahill's late model Jaguar, with Cahill holding stacks of $100 dollar bills in his hands, and stacks of $100 dollar bills placed on the center console. A true and correct copy of this photograph, along with the accompanying text message, are attached hereto as Exhibit B.

79.   In or around February 2016, Cahill attempted to induce Karpinski into selling the medical marijuana patches containing illicit THC and CBD by offering her cash in exchange for delivery of these illegal products. Karpinski refused to participate.

80.   In or around February 2016, Karpinski and other employees discovered that Cahill had conspired with Weimann and Aydinol to produce illegal CBD and THC medical patches at the Gillette Avenue facility, despite the lack of appropriate federal and state licensing.  This was in flagrant disregard of both federal and state laws regulating the production of Schedule 1 drugs.

81.   After learning of these illegal activities, Karpinski notified Edalat that Cahill was overseeing the production of illicit medical devices by Weimann and Aydinol at Pharma Pak's manufacturing facility.  After consulting with the FDA, FDA counsel, and FDA consultants, among others, Edalat informed the Irvine Police Department of these activities.  There is currently an open investigation with the Irvine Police Department, Case number 16-3257, which has since been referred to the Orange County District Attorney.

**Fraudulent Ousting of Edalat and Improper Transfer of Pharma Pak Assets to Life Tech Global, LLC By Controlling Shareholders**

82.   Cahill's mismanagement and abuse of Pharma Pak doesn't end there.  In exercising joint control over Pharm Pak, Counter-Defendants Cahill, Cullen, Scott and Franco (the "Controlling Shareholders") further conspired to defraud Edalat by improperly ousting him as a shareholder of Pharma Pak and taking Pharma Pak's monies and property to a competing business, in direct violation of their fiduciary duties owed to Edalat.

83.   On or about March 3, 2016, upon learning that the Irvine Police Department had removed the THC from the 17809 Gillette facility building, Cahill unilaterally fired certain Pharma Pak employees in direct retaliation for reporting the illegal activities of Cahill and Weimann and their further cooperation with the Irvine Police department.

84.   Cahill, Wood, and private investigator Cameron Jackson ("Jackson") told these manufacturing employees that "[Edalat's] actions" had caused them to be fired, and that Pharma Pak was being shut down. Cahill authorized Jackson to intimidate, and threaten Pharma Pak employees. Certain employees were harassed and threatened with legal action by Cahill, including: Olivia Karpinski, Luis Navarro, Jesse Suarez, Luz Navarro, Alonso Navarro, Alex Rosales, and Martin Garcia. These employees were specifically targeted due to their cooperation with Edalat and local authorities. Cahill caused Pharma Pak to pay Jackson directly for his improper actions that were taken for the sole benefit of Cahill and his co-conspirators.

85.   On March 3, 2016, Cahill, Wood, and Jackson told Defendant Karpinski that a "majority shareholder's vote" had dissolved the corporation.  No such vote had taken place. Nor did Cahill have authority to simply sell or transfer the assets of Pharma Pak.  To that end, Edalat's counsel, Thomas Poletti of Manatt, Phelps, and Phillips, warned Cahill in a letter dated March 4, 2016 not to proceed with this course

of action. Attorney Poletti's letter further requested access to applicable Books and Records for the Company, which were never provided.

86.   After improperly shutting down Pharma Pak and firing certain employees, Controlling Shareholders Cahill, Cullen, Scott and Franco undertook the fraudulent transfer of Pharma Pak assets, customer contacts, intellectual property and monies to a newly formed company, Life Tech Global.

87.   Controlling Shareholders had conspired to form this entity even prior to the firing of Pharma Pak employees on March 3, 2016.

88.   Controlling Shareholders registered Life Tech Global on March 9, 2016 in the State of Delaware, despite the fact that no Controlling Shareholder nor anyone else involved has any ties with that State, because that State does not require entities organized under its laws to be identified publically.

89.   Controlling Shareholders registered the domain name of LifeTechGlobal.net on March 10, 2016.

90.   Immediately upon finding out that law enforcement had been engaged, and subsequently removed evidence of Schedule 1 drugs from the Pharma Pak facility, Controlling Shareholders moved Pharma Pak monies, assets and equipment to two new locations: 2929 Oceanside Blvd in Oceanside, California and 17802 Sky Park Circle in Irvine, California.  Such assets include, by way of example:

    a.  Machinery for which Aydinol was paid more than $60,000 by Pharma Pak to produce.  Delivery of this machinery was accepted by Life Tech Global.

    b.  Machinery for which a company named KNB Mfg. & Automation LLC was paid more than $80,000 by Pharma Pak.  This machinery was then removed from Pharma Pak by Life Tech Global.

    c.  Karpinski's sales account with Erron Present.

    d.  Karpinski's sales account with RX Green

    e.  Karpinski's sales account with Present Naturals.

f.  Computers and other equipment were removed from Pharma Pak.

g.  Over $20,000 worth of production materials were removed from Pharma Pak.

h.  Over $200,000 in equipment and raw materials were removed from Pharma Pak.

91.  Controlling Shareholders have moved Pharma Pak's patents, cash and other assets to this new entity by fraudulent means and without shareholder approval.

92.  Using Pharma Pak's equipment and intellectual property, Controlling Shareholders are now actively producing illegal Schedule 1 drugs and unregistered medical devices at these location as no licensing, business or otherwise, exists for the corporations performing business at the new locations.

93.  Controlling Shareholders have now conspired to move equipment and assets across state lines to Oregon, in order to further defraud Edalat and Pharma Pak. This decision to move the equipment may have been caused by Edalat and Asvadi's request for a shareholder's meeting for the purpose of demanding the return of the equipment and other assets of Pharma Pak back to 17809 Gillette facility. To date, Cahill has failed to set the date of the meeting of the shareholders despite numerous requests.

94.  Controlling Shareholders, along with Counter-Defendant Weimann, are also defrauding Edalat and other shareholders by improperly reassigning certain patents and trademarks belonging to Pharma Pak, utilizing patents belonging to Edalat and Pharma Pak to transact business that would have otherwise belonged to Pharma Pak, and selling these items to third parties brought to Pharma Pak by Karpinski and Edalat. Pharma Pak's shareholders should be receiving the profits and royalties from these sales. Pharma Pak's patents were reassigned to Life Tech Global. Customer accounts developed by Karpinski and others for Pharma Pak were transferred to Life Tech Global. Other intellectual property owned by Pharma Pak was taken to Life Tech Global.

95.    Life Tech Global's website makes clear Controlling Shareholders' intent to continue the business of Pharma Pak under a new name and without Edalat, stating:

    a. "Life Tech Global a 24,000 square foot manufacturing facility in Irvine, CA, delivering products that positively influence the standard of care for our providers and their patients, while enhancing outcome for our partners and stakeholders. ***Pharma Pak*** [emphasis added] can ship most products to all 50 states."

96.    Further evidence of Counter-Defendants' intent to defraud is a statement published on Life Tech Global's website, stating, "Medical devices and pharmaceutical [sic] are produced in a GMP and CFR compliant, FDA licensed manufacturing facility."

97.    This statement is fraudulent. No licensing exists under the Life Tech Global name, not even a business license.

98.    Cahill is, and during the times relevant to the claim was, the only director of Pharma Pak. Cahill's misconducts is at the very heart of this case, which includes the fraudulent scheme to raid Pharma Pak's assets and opportunities in order to benefit Life Tech, and harm Pharma Pak's shareholders and Paul Edalat. Cahill's express approval of these actions and personal liability excuses any requirement to make a demand on the board of Pharma Pak.

99.    Demand is excused because Cahill, as the sole board member, is not disinterested. As discussed above, Cahill faces personal liability for his frauds and breaches of fiduciary duty.

## FIRST CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY

**(Against Counter-Defendants Cahill, Wood, Weimann, Aydinol, Cullen, Scott and Franco)**

100.    Edalat realleges and incorporates by reference each and every allegation set forth in the paragraphs above, as though fully set forth herein.

101.  As a director or officer of Pharma Pak, Counter-Defendants Cahill, Wood, Weimann and Aydinol each owed a fiduciary duty of care, loyalty and good faith to Pharma Pak's shareholders, including Edalat.   Likewise, as shareholders jointly exercising control over the operations of Pharma Pak, Counter-Defendants Cullen, Scott and Franco owed a fiduciary duty of care, loyalty and good faith to Edalat in his role as minority shareholder. Counter-Defendants' fiduciary duties included an obligation to exercise good business judgment, to act prudently in the operation of Pharma Pak's business, to discharge their actions in good faith, to act in the best interests of Pharma Pak and its shareholders, to put the interests of Pharma Pak before their own, and to not abuse their control over Pharma Pak's activities to benefit themselves or harm minority shareholders, including Edalat.

102. Counter-Defendants Cahill, Wood, Weimann and Aydinol, by reason of their positions as officers or directors of Pharma Pak and their ability to control the business and corporate affairs of Pharma Pak, owed Pharma Pak and its shareholders fiduciary obligations of trust, loyalty and good faith, and were required to use their utmost ability to control and manage Pharma Pak in a fair, just, honest equitable manner. The Counter-Defendants were and are required to act in furtherance of the best interest of Pharma Pak and its shareholders to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

103. Each officer or director of Pharma Pak owed to Pharma Pak and its shareholders the fiduciary duty to exercise good faith in the administration of the affairs of Pharma Pak and in the use and preservation of its property, assets, and highest obligations of fair dealing.

104. The Counter-Defendants, because of their positions of control and authority as directors or officers, were able to and did directly or indirectly exercise control over the wrongful acts described in this complaint.

105. Counter-Defendants Cahill, Wood, Weimann and Aydinol breached their fiduciary duty of care by, among other things, routinely mismanaging Pharma Pak,

failing to comply with the rules of corporate governance, hiring unqualified employees, paying and/or accepting exorbitant salaries, failing to maintain the necessary licensing for use of the manufacturing facility, failing to conduct appropriate and timely shareholder meetings, and failing to keep updated and complete copies of business and financial records.

106.  Counter-Defendants Cahill, Wood, Weimann and Aydinol breached their duties of loyalty and good faith by, among other things, intentionally granting and/or accepting exorbitant unapproved compensation, paying personal expenses through Pharma Pak funds without approval, making unauthorized cash withdrawals from the Pharma Pak corporate bank accounts, withdrawing unapproved amounts in excess of $35,000.00 from Pharma Pak corporate bank accounts based on a forged lease agreement with Kira Investments, participating in the manufacturing of illicit drugs using Pharma Pak's facilities and equipment, and granting or accepting large payments for the production of illegal patches.

107.  Counter-Defendants Cahill, Cullen, Scott and Franco (the "Controlling Shareholders") breached the duty of loyalty and duty of care owed by them to minority shareholder Edalat in their roles as shareholders jointly exercising control over Pharma Pak by conspiring to improperly oust Edalat from Pharma Pak's business, improperly "shutting down" the Pharma Pak company only to operate Pharma Pak's business under a new competing business, and undertaking the unauthorized transfer of equipment, monies and intellectual property from Pharma Pak to various locations operated by their new business, Life Tech Global.

108.  The testimony of non-Counter-Defendant shareholder John Crowther confirms these breaches.  Specifically, Crowther testified that:

    a.  There was no meeting of shareholders called by Cahill or Wood;

    b.  they [Cahill and Controlling Shareholders] did not tell Crowther that they were moving the equipment to Oceanside;

c. they [Cahill and Counter-Defendants] did not seek approvals concerning the salaries and other expenses paid out of the Pharma Pak accounts;

d. [Cahill and Controlling Shareholders] have not provided any financial information since moving Pharma Pak assets to Oceanside and further have not explained the unauthorized movement of these assets;

e. Cahill did not tell Crowther about the forged lease for 17802 Sky Park Circle and the fact that the payments were going to Cahill and his own corporation.

109. All of these actions by Cahill, Wood, Weimann, Aydinol, Cullen, Scott and Franco are a breach of the fiduciary duties owed by them to Pharma Pak and its shareholders, including Edalat.

110. Pharma Pak, and Counter-Complainant Edalat, as a shareholder of Pharma Pak, have been damaged by the Counter-Defendants' breach of fiduciary duties in an amount to be proven at trial.

## SECOND CAUSE OF ACTION FOR FRAUD IN VIOLATION OF CALIFORNIA CIVIL CODE SECTION 1709

### (Against Counter-Defendant Cahill)

111. Edalat realleges and incorporates by reference each and every allegation set forth in the paragraphs above, as though fully set forth herein.

112. Counter-Defendant Cahill repeatedly made intentionally false representations to Edalat as set forth above in order to induce Edalat to grant Cahill control of Edalat's company, his patents and his contacts. The false representations made by Cahill included affirmative false statements that were either knowingly false or made with no reasonable grounds for believing them to be true, as well as promises made without any intention of performing them.

113. Such false representations include:

a. Falsely promising to leverage his multiple business contacts acquired over decades to grow Pharma Pak's business, including a promise to fill Pharma Pak's Board of Directors with several respected persons from the Pharmaceutical and Technology industries;

b. Falsely representing that Dr. Stefanie Bernritter Kleine was acting on behalf of Pharma Pak, and therefore entitled to participate in company meetings and travel on company funds;

c. Falsely representing that he would exercise sound business judgment in managing Pharma Pak, and place the interests of Pharma Pak before his own;

d. Falsely representing that outside investors were needed to fund the Pharma Pak venture in order to induce Edalat into reducing his shareholder status in Pharma Pak;

114. Cahill intended that Edalat rely on his false representations in granting Cahill control of his company, Pharma Pak.

115. Edalat did indeed rely on these false representations in deciding to give Cahill 20 percent of his personal shares in Pharma Pak, and in continuing to support Cahill in his position as CEO and Director of Pharma Pak.

116. Edalat has been damaged as a direct and proximate result of Cahill's fraudulent conduct in an amount to be proven at the time of trial, but no less than $100,000,000.00.

## THIRD CAUSE OF ACTION FOR FRAUD BY CONCEALMENT IN VIOLATION OF CALIFORNIA CIVIL CODE SECTION 1573

### (Against Counter-Defendant Cahill)

117. Edalat realleges and incorporates by reference each and every allegation set forth in the paragraphs above, as though fully set forth herein.

118. Counter-Defendant Cahill intentionally concealed and suppressed material facts related to his management of Pharma Pak, which he had a duty to disclose to Edalat and other shareholders in his role as CEO and Director.

119. Such acts of fraudulent concealment include:

    a. Concealing his fraudulent use of company funds to make payments to his family-owned company based on a forged lease;

    b. Concealing his improper payment of excessive salaries to himself and other employees, including Wood;

    c. Concealing the use of Pharma Pak's facilities and assets to produce illicit drugs;

    d. Concealing his use of company funds to make personal payments;

    e. Concealing his intention to oust Edalat from his company and operate Pharma Pak's business under a new company; and

    f. Concealing his related actions to fraudulently transfer Pharma Pak assets, monies, customer contacts and intellectual property to his new company, Life Tech Global.

120. Cahill intentionally concealed and suppressed the facts alleged above with the intent to defraud Edalat and induce him into continuing to grant Cahill total control of Pharma Pak as CEO and Director based on false and misleading information.

121. Edalat was unaware of the facts concealed by Cahill, and would not have permitted Cahill to be named CEO and Director or to continue in his role as CEO and Director if he had known of Cahill's fraudulent acts and intention to defraud Pharma Pak and Edalat.

122. Edalat has been damaged as a direct and proximate result of Cahill's fraudulent conduct in an amount to be proven at the time of trial, but no less than $100,000,000.00.

**FOURTH CAUSE OF ACTION FOR UNLAWFUL BUSINESS PRACTICE IN**

**VIOLATION OF BUSINESS & PROFESSIONS CODE SECTION 17200**

**(Against Counter-Defendants Cahill, Cullen, Scott, Franco, Life Tech Global, LLC)**

123. Edalat realleges and incorporates by reference each and every allegation set forth in the paragraphs above, as though fully set forth herein.

124. The actions of Life Tech Global and the Controlling Shareholders Cahill, Cullen, Scott and Franco as detailed above constitute acts of unfair competition in violation of California Business & Professions Code § 17200.

125. The Controlling Shareholders, along with Life Tech Global, have engaged in unfair and/or fraudulent business practices within the meaning of Business & Professions Code § 17200 by, among other acts:

    a.  stealing and making unauthorized use of Pharma Pak's assets;

    b.  stealing and making unauthorized use of Pharma Pak's equipment;

    c.  stealing and making unauthorized use of Pharma Pak's costumer lists;

    d.  stealing and making unauthorized use of Pharma Pak's monies;

    e.  stealing and making unauthorized use of Pharma Pak's intellectual property; and

    f.  improperly engaging in Pharma Pak's business under the name of Life Tech Global.

126. Moreover, Life Tech Global's business practice of producing medical devices and pharmaceuticals at unlicensed manufacturing sites is in direction violation of certain federal and state laws, and thus constitutes an unlawful business practice within the meaning of Business & Professions Code § 17200.

127. Edalat has suffered injury in fact as a result of the Controlling Shareholders' unfair, fraudulent and unlawful business practices. These include, among other things, the loss of any and all monies he invested in Pharma Pak in an amount to

be proven at trial, but no less than $400,000, as well as the loss of any and all additional monies improperly earned by Life Tech Global by use of patents, customers and other assets which rightfully belong to Pharma Pak.

128.  Pursuant to Business & Professions Code § 17203, Edalat seeks an order of this Court enjoining Life Tech Global and the Controlling Shareholders from continuing to operate Pharma Pak's business under the name of Life Tech Global and from engaging in any business using Pharma Pak's assets, monies, equipment or other intellectual property.

## FIFTH CAUSE OF ACTION FOR INVOLUNTARY DISSOLUTION OF PHARMA PAK

**(Against Counter-Defendants Cahill, Cullen, Scott, Franco, Life Tech Global, LLC)**

129.  Edalat realleges and incorporates by reference each and every allegation set forth in the paragraphs above, as though fully set forth herein.

130.  Since the incorporation of Pharma Pak, Cahill has engaged in persistent fraud and gross abuse in his management of Pharma Pak to the detriment of Pharma Pak and its investors, including Edalat.

131.  Cahill, along with the Controlling Shareholders, has now undertaken to cease Pharma Pak's business operations, and continue such operations under the name of Life Tech Global, using Pharma Pak's assets, monies, equipment and intellectual property.

132.  The Controlling Shareholders, however, have failed to undertake a proper dissolution of Pharma Pak, instead engaging in dishonest acts designed to squeeze out Edalat, including improperly stealing Pharma Pak's assets.

133.  Such actions are a gross abuse of authority and unfair toward Edalat in his role as minority shareholder, and constitute misuse of Pharma Pak's property.

134. Involuntary dissolution of Pharma Pak is therefore necessary and appropriate to protect the rights and interests of Edalat pursuant to California Corporations Code Sections 1800(b)(4), 1800(b)(5) or 1904.

## SIXTH CAUSE OF ACTION FOR AN ACCOUNTING

### (Against Counter-Defendants Cahill, Wood, Cullen, Pharma Pak and Life Tech Global, LLC)

135. Edalat realleges and incorporates by reference each and every allegation set forth in the paragraphs above, as though fully set forth herein.

136. Cahill, Wood and Life Tech Global owe a fiduciary duty to all shareholders, including Edalat. Cahill and Wood have breached their fiduciary duties by failing to provide an accounting of all expenses and income generated by Pharma Pak since its inception, as well as expenses and income generated by Counter-Defendants' new corporation Life Tech Global.

137. As alleged above, a dispute exists between Edalat, Cahill and Wood regarding Cahill's misappropriation of Pharma Pak funds for personal use and other improper uses of Pharma Pak funds in the form of exorbitant salaries and payments for the production of illicit drugs.

138. A dispute further exists between Edalat and the Controlling Shareholders regarding the Controlling Shareholders' improper transfer of assets and monies from Pharma Pak to Life Tech Global, and Life Tech Global's subsequent use thereof.

139. As a shareholder of Pharma Pak, Edalat is entitled to a proper and audited accounting of all monies and income generated and expenses incurred by Pharma Pak since its inception.

140. Edalat is further entitled to a proper and audited accounting of all monies and income generated and expenses incurred by Life Tech Global in its use of the equipment, assets, intellectual property and monies improperly taken from Pharma Pak.

141. Edalat, along with shareholder Asvadi, have previously demanded shareholder meetings and access to the books and records kept by Counter-Defendants Cahill and Wood.  Cahill has thus far refused to hold these meetings in accordance with Corporate bylaws, nor has he granted access to the books and financial records as required by the Corporate bylaws.

142. Accordingly, Edalat demands an accounting regarding the amount of all monies generated and expenses incurred by Pharma Pak and Life Tech Global.

## **PRAYER FOR RELIEF**

WHEREFORE, Counter-Complainant Edalat prays for judgment against Counter-Defendants as follows:

A.   For an award of general damages according to proof;

B.   For an award of special damages according to proof;

C.   For an award of punitive damages according to proof;

D.   For an order pursuant to Business & Professions Code § 17203 enjoining Counter-Defendants Life Tech Global, Inc., Cahill, Cullen, Franco and Scott from continuing to practice Pharma Pak's business under the name of Life Tech Global, Inc.;

E.   For an order pursuant to Business & Professions Code § 17203 enjoining Counter-Defendants Life Tech Global, Inc., Cahill, Cullen, Franco and Scott from using any assets, equipment, monies, customer lists, or intellectual property rightfully belonging to Pharma Pak in the exercise of any business practice;

F.   For an order pursuant to Business & Professions Code § 17203 that Counter-Defendants Life Tech Global, Inc., Cahill, Cullen, Franco and Scott return to Pharma Pak any and all assets, equipment, monies, customer lists and intellectual property which rightfully belong to Pharma Pak;

G.   For an order dissolving Pharma Pak and distributing its assets in a fair and

1      appropriate manner as provided by law;

2  H.    For an accounting of all monies generated and expenses incurred by

3      Pharma Pak since it's inception;

4  I.    For an accounting of all monies generated and expenses incurred by Life

5      Tech Global, LLC since its inception;

6  J.    All costs incurred by Counter-Complainant in this matter;

7  K.    Reasonable fees and disbursements of Counter-Complainant's attorneys,

8      accountants, experts, or investigators, to the extent available; and

9  L.    Such other relief as the Court deems just and proper.

10

11      Respectfully submitted,

12  Dated: December 14, 2016    FORD & DIULIO PC

13

14      By: _/s/ Kristopher P. Diulio_____

15      Kristopher P. Diulio

16      Attorneys for Counter-Complainant
    PAUL PEJMAN EDALAT

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

EXHIBIT A
EMAIL FROM BRUCE CAHILL TO GREG CULLEN AND JOHN CROWTHER
REGARDING DISTRIBUTION OF STOCK.
DATED JANUARY 29, 2016



**Paul Edalat <paul@sentarpharma.com>**

___

## FW: New stock ownership of PharmaPak

**Bruce Cahill** <brucec@centaursales.com>                      Fri, Jan 29, 2016 at 12:28 PM
To: "Greg Cullen (greg@harvardinvestmentgroup.com)" <greg@harvardinvestmentgroup.com>, "Paul Edalat
(paul@sentarpharma.com)" <paul@sentarpharma.com>

John,Greg,

This is how Paul originally wanted to sell his stock, however, it would have all gone to him
individually not the company.

Then we agreed to have Ron and Greg's payment come to PharmaPak. Then Paul wanted Greg's
payment to go to him Personally, and the company issue 2.5% of company stock to Greg.

___

**From:** TimBalog@aol.com [mailto:TimBalog@aol.com]
**Sent:** Thursday, October 15, 2015 9:14 AM
**To:** Bruce Cahill
**Subject:** Re: New stock ownership of PharmaPak

Hi Bruce -

I will also need the full name of the trustee of the trust AND the date for both the Ernest Family Trust and the
Asvaldi Family Trust.

For Greg Cullen's part of the deal, if the Corporation is selling part of the stock and you, Dave, and John are
being diluted, then Paul should not be receiving that portion of the purchase price.  Please call me to discuss
when you have a chance.

Thanks, Tim Balog

Balog & Rasch, LLP

1601 Dove Street, Suite 184

Newport Beach, CA 92660

949-851-2500

Sentar Material New Stock Ownership of PharmaPak    Case 8:16-cv-00686-AG-DFM    Document 147    Filed 12/19/16    Page 39 of 43    Page ID #:3445    105f0e&vi...

2 of 2

In a message dated 10/14/2015 6:12:37 P.M. Pacific Daylight Time, brucec@centaursales.com writes:

Tim,

The new ownership pf PharmaPak will be as follows:

| Amount Paid to Paul Edalat | Stock | Entity | Address |
|---|---|---|---|
| $500,000 | 5% | Ernest Family Trust | 584 South State Street, Suite 900,   Orem,  Utah,  84058 |
| $500,000 | 5% | Asvaldi Family Trust | 25261   Rockridge Road,  Laguna Hills,  California  92653 |
| $750,000 | 7.5% | Ron Franco | PO Box 5287 Culver City, California, 90231 |
| $250,000 | 5% | Greg Cullen | 6641 Esplanade,  Playa Del Rey,  California, 90293 |
| | 27.775% | Paul Edalat | |
| | 39% | Bruce Cahill | |
| | 10.725% | John Crowther/Dave Crowther | |
| Total | 100% | | |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

EXHIBIT B
ERTAN AYDINOL TEXT MESSAGE TO OLIVIA KARPINSKI IN RE CASH
TRANSACTION WITH BRUCE CAHILL
DATED DECEMBER 11, 2015

‹ **Messages**       **Ertan**       **Details**

the day <u>tomorrow</u> to get some deliverables out and complete our packaging compliance and onset for Dr. Weimann and our FDA consultant <u>tomorrow</u> and Sunday.

This is how I do business with Bruce...:) LOL

Haha what happened?

Delivered





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2016, I electronically filed the foregoing **THIRD AMENDED COUNTERCLAIM BY PAUL EDALAT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

/s/ *Kristopher P. Diulio*
Kristopher P. Diulio