1   Kristopher P. Diulio (SBN 229399)
    kdiulio@FordDiulio.com
2   Brendan M. Ford (SBN 224333)
    bford@FordDiulio.com
3   Tyler E. Sanchez (SBN 299131)
    tsanchez@FordDiulio.com
4   FORD & DIULIO PC
    695 Town Center Drive, Suite 700
5   Costa Mesa, California 92626
    Telephone: (714) 384-5540
6   Facsimile: (844) 437-7201

7   Attorneys for Defendants
    PAUL PEJMAN EDALAT; OLIVIA
8   KARPINSKI; FARAH BARGHI; BLUE
    TORCH VENTURES, INC.; and
9    LIWA, N.A., INC.

10

11                   **UNITED STATES DISTRICT COURT**

12                  **CENTRAL DISTRICT OF CALIFORNIA**

13                        **SOUTHERN DIVISION**

| | |
|---|---|
| BRUCE CAHILL, an individual, GREG CULLEN, an individual, SHANE SCOTT, an individual, RON FRANCO, an individual, and PHARMA PAK, INC. a California Corporation,<br><br>        Plaintiffs,<br><br>    v.<br><br>PAUL PEJMAN EDALAT, an individual, OLIVIA KARPINSKI, an individual, FARAH BARGHI, an individual, SENTAR PHARMACEUTICALS, INC., a Nevada corporation, BLUE TORCH VENTURES, INC., a Wyoming Corporation, LIWA, N.A., INC., a Wyoming Corporation, SENTUS LAND MANAGEMENT, LLC, a Wyoming Limited Liability Company,<br><br>        Defendants. | Case No. 8:16-cv-00686-AG-DFM<br><br>**PAUL EDALAT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Courtroom: 10D<br>Judge:  Hon. Andrew J. Guilford<br><br>**Hearing**:<br>January 23, 2017<br>10:00 a.m. |

1

# TABLE OF CONTENTS

2

**Page**

I.    INTRODUCTION ........................................................................................................ 3

II.   STATEMENT OF RELEVANT FACTS ................................................................... 4

III.  LEGAL STANDARD ............................................................................................... 6

IV.   THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM
      FOR FEDERAL SECURITIES VIOLATIONS ....................................................... 6

      A.    Plaintiffs Fail to Allege Actionable Representations or Omission ................... 8

      B.    Plaintiffs Fail to Establish A Credible Connection Between With
            Plaintiffs' Investment in Pharma Pak. ........................................................... 10

      C.    Plaintiffs Do Not and Cannot Allege "Loss Causation" ................................. 10

V.    THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM
      FOR VIOLATION OF SECTION 12(a)(2) ............................................................ 11

VI.   PLAINTIFFS CLAIM FOR RICO VIOLATIONS BASED ON WIRE
      FRAUD FAILS BECAUSE IT IS IMPROPERLY BASED ON CONDUCT
      ACTIONABLE AS SECURITIES FRAUD ............................................................ 12

VII.  THE COMPLAINT FAILS TO STATE A CLAIM AGAINST FOR RICO
      VIOLATIONS BASED ON WIRE FRAUD .......................................................... 13

VIII. THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM
      BASED ON DRUG TRAFFICKING, OBSTRUCTION OF JUSTICE OR
      MONEY LAUNDERING. ...................................................................................... 15

IX.   PLAINTIFFS' SECTION 1962(d) CONSPIRACY CLAIM AGAINST ALL
      DEFENDANTS LIKEWISE FAILS ...................................................................... 17

X.    THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF
      CALIFORNIA CORPORATIONS CODE .............................................................. 18

XI.   THE COMPLAINT FAILS TO STATE A CLAIM FOR FRAUD ......................... 19

XII.  PLAINTIFFS CULLEN AND FRANCO FAIL TO STATE A CLAIM FOR
      LIBEL .................................................................................................................... 21

XIII. CONCLUSION ...................................................................................................... 23

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

1

# TABLE OF AUTHORITIES

2

3 **Cases**

*Ackerman v. Northwestern Mut. Life Ins. Co.*
4   172 F.3d 467 (7th Cir. 1999) ................................................................. 9

5 *Admiralty Fund v. Jones*
    677 F.2d 1289 (9th Cir. 1982) ............................................................. 12

6 *Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ............................................................................. 6

7 *Bank of America Corp. v. Superior Court*
    198 Cal.App.4th 862 (2011) ............................................................... 22

8 *Bell Atlantic Corp. v. Twombly*

9   550 U.S. 544 (2007) ......................................................................... 3, 6

*Burrill v. Nair*
10   217 Cal.App.4th 357 (2013) ............................................................... 23

11 *Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*
    637 F.3d 1047 (9th Cir. 2011) ............................................................. 21

12 *De Falco v. Bernas*
    244 F.3d 286 (2nd Cir. 2001) ............................................................. 16

13 *Diaz v. Gates*
    420 F.3d 897 (9th Cir. 2005) ......................................................... 18, 19

14 *Doe v. Superior Court*
    237 Cal. App. 4th 239 (Cal. Ct. App. 2015) ....................................... 22

15 *Erica P. John Fund, Inc. v. Halliburton Co.*

16   563 U.S. 804 (2011) ............................................................................. 7

*Forsher v. Bugliosi*
17   26 Cal.3d 792 (1980) ......................................................................... 25

18 *Franklin v. Dynamic Details, Inc.*
    116 Cal.App.4th 375 (2004) ............................................................... 24

19 *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*
    100 F. Supp. 2d 1086 (C.D. Cal. 1999) .............................................. 21

20 *Gustafson v. Alloyd Co.*
    115 S.Ct. 1061 (1995) ......................................................................... 12

21 *Howard v. America Online, Inc.*
    208 F.3d 741 (9th Cir. 2000) ......................................................... 14, 19

22 *In re Connetics Corp. Sec. Litig.*
    542 F. Supp. 2d 996) (N.D. Cal. 2008) ............................................... 10

23 *In re Daou Systems, Inc.*
    411 F.3d 1006 (9th Cir. 2005) ............................................................. 11

24 *In re Fortune Systems Securities Litigation*

25   604 F. Supp. 150 (N.D.Cal. 1983) ...................................................... 13

*Lancaster Comm. Hosp. v. Antelope Valley Hosp. Dist.*
26   940 F.2d 397 (9th Cir.1991) ............................................................... 15

27 *Limandri v. Judkins*
    52 Cal.App.4th 326 (1997) ................................................................. 23

28 *Lloyd v. CVB Financial Corp.*
    811 F.3d 1200 (9th Cir. 2016) ......................................................... 7, 10

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*
  540 F.3d 1049 (9th Cir. 2008) ................................................................. 9
*Neilson v. Union Bank of Cal., N.A.*
  290 F. Supp. 2d 1101 (C.D. Cal. 2003) ................................................. 22
*Reese v. Malone*
  747 F.3d 557 (9th Cir. 2014) .................................................................. 7
*Religious Tech. Center v. Wollersheim*
  971 F.2d 364 (9th Cir. 1992) ................................................................ 19
*Ringler Associates v. Maryland Casualty Co.*
  80 Cal.App.4th 1165 (2000) ................................................................. 24
*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*
  806 F.2d 1393 (9th Cir. 1986) .............................................................. 15
*SEC v. Seaboard*
  677 F.2d 1289 (9th Cir. 1982) .............................................................. 20
*Sedima, S.P.R.L. v. Imrex Co.*
  473 U.S. 479 (1985) ....................................................................... 14, 17
*Silicon Graphics Sec. Litig.*
  183 F.3d 970 (9th Cir. 1999) .................................................................. 8
*Smith v. Maldonad*
  72 Cal. App. 4th 637 (1999) ................................................................. 25
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
  127 S. Ct. 2499 (2007) .................................................................... 8, 10
*United States v. Brooklier*
  685 F.2d 1208 (9th Cir. 1982) .............................................................. 16
*Vedovi v. Watson & Taylor*
  104 Cal.App. 80 (1930) ........................................................................ 24
*Vess v. Ciba-Geigy Corp.*
  317 F.3d 1097 (9th Cir. 2003) ......................................................... 21, 22
*Weller v. American Broadcasting Companies, Inc.*
  232 Cal.App.3d 991 (1991) ................................................................... 24
*Wong v. Jing*
  189 Cal.App.4th 1354 (2010) ............................................................... 23
*Yourish v. Cal. Amplifier*
  191 F.3d 983 (9th Cir. 1999) ............................................................... 7, 9
*Zucco Partners, LLC v. Digimarc Corp.*
  552 F.3d 981 (9th Cir. 2009) .................................................................. 8

**Statutes**
15 U.S.C. § 77l(a)(2) ............................................................................. 12
15 U.S.C. § 78j(B) ................................................................................ 11
15 U.S.C. § 78u-4(b)(1) ....................................................................... 8, 9
15 U.S.C. § 78u-4(b)(2) .......................................................................... 8
18 U.S.C. § 1503(a) ............................................................................... 18
18 U.S.C. § 1956 .................................................................................. 18
18 U.S.C. § 1961(5) .............................................................................. 16
18 U.S.C. § 1962(c) .............................................................................. 14
18 U.S.C. § 1962(d) ......................................................................... 14, 19
Cal. Civ. Code § 1709 ........................................................................... 21
Cal. Civ. Code § 1710 ........................................................................... 21
Cal. Civ. Code §45a .............................................................................. 25

**EDALAT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES**

Cal. Civ. Code §48a .................................................................................................... 25
Cal. Corp. Code § 25401 ............................................................................................ 20

**Other Authorities**
17 C.F.R. § 240.10b–5 ................................................................................................... 7
Securities Exchange Act §12(a)(2) ............................................................................. 12
Securities Exchange Act Section 10(b) .............................................................. 1, 6, 11

**Rules**
Fed. R. Civ. Proc. 9(b) .................................................................................................. 8

**EDALAT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES**

**TO ALL PARTIES, AND TO THEIR ATTORNEYS OF RECORD:**

   **NOTICE IS HEREBY GIVEN** that at 10:00 a.m. on January 23, 2017, or as soon thereafter as the matter may be heard, Defendant Paul Pejman Edalat ("Edalat"); will and hereby does move the Court for an order dismissing without leave to amend pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim the (1) First Cause of Action by Plaintiff Bruce Cahill (Violation of Section 10(b) of the Securities and Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 thereunder) against Defendant Barghi; (2) Fifth Cause of Action (Violation of Section 12(a)(2) of the 1933 Securities Act) against Edalat; (3) Sixth Cause of Action (Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968) against all Defendants; and (4) Thirteenth Cause of Action by Plaintiffs Cullen and Franco (Defamation by Libel) against Defendant Edalat, as set forth in the Second Amended Complaint on file herein.

   Under Local Rule 7-3, this Motion is made following several efforts by counsel for Defendants to resolve or narrow the issues raised by this Motion, through conferring with Plaintiffs' counsel. Counsel for Plaintiffs and counsel for Defendants first discussed this Motion in the context of Plaintiffs' First Amended Complaint. Because of that meet and confer, Plaintiffs voluntarily agreed to amend their complaint. After receiving the Second Amended Complaint, the parties continue to confer based on Defendants' belief that the Second Amended Complaint did not cure the pleading deficiencies in the First Amended Complaint. The parties thus reached an impasse requiring the filing of this motion.

   This Motion is based on this Notice of Motion and Motion, the attached

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

1    Memorandum of Points and Authorities, the Second Amended Complaint, the pleadings

2    on file in this matter, the arguments of counsel, and such other matters as may be

3    judicially noticed or come before the Court at or before the hearing on this Motion.

4    Dated:  January 6, 2017                     FORD & DIULIO PC

5

6                                                By:   /s/ Kristopher P. Diulio
7                                                      Kristopher P. Diulio

8                                                Attorneys for Defendants PAUL PEJMAN
                                                 EDALAT; OLIVIA KARPINSKI; FARAH
9                                                BARGHI; BLUE TORCH VENTURES, INC.; and
                                                 LIWA, N.A., INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EDALAT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

In their third attempt at a proper complaint, Plaintiffs Bruce Cahill, Greg Cullen, Shane Scott, Ron Franco, and Pharma Pak, Inc. (collectively "Plaintiffs") have again failed to allege with the requisite particularity the necessary elements to state a RICO claim or federal.  Not only do Plaintiffs' conclusory allegations come nowhere close to meeting the heightening pleading standards required under Federal Rule of Civil Procedure 9(b) or the Private Securities Litigation Reform Act, but Plaintiffs also fail to set forth facts sufficient to establish even a "plausible" ground for relief as required by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The crux of the fraud as allegd by Plaintiffs is that Defendants induced Plaintiffs to invest in Pharma Pak, and subsequently took actions to misappropriate Pharma Pak's assets in order to attempt to develop an entirely differnet company, Global Holdings d/b/a Sentar Pharmaceuticals.  In alleging a scheme of fraudulent inducement, however, Plaintiffs continually point to alleged misrepresentations purportedly made by certain of the Defendants regarding ***Global Holdings d/b/a Sentar Pharmaceuticals***, not Pharma Pak.  In claiming that Defendants undertook actions to harm Pharma Pak, Plaintiffs fail to reconcile how Plainiffs could have fallen victim to fraud ***by Defendants*** when, at all relevant times, Plaintiff Bruce Cahill acted as as the sole CEO or board member of Pharma Pak.  Simply put, Plaintiffs' alleged fraud is not plausbile on its face.

Plaintiffs' securities fraud claims fail for the additional reason that they do not and cannot adequately plead loss causation.  Plaintiffs make no effort to show how any alleged statement by either Ms. Barghi or Ms. Karpinski was connected to Plaintiffs' purchase of Pharma Pak stock, let alone how any such statements were connected to the alleged failure of Pharma Pak, and thus any ultimate injury they purportedly suffered

Plaintiffs likewise cannot state a claim for a RICO violation against against any Defendant.  The RICO claim is based on the same purported fraudulent conduct that Plaintiffs rely on in stating their claim for securities fraud, *i.e.,* a purported "schem[e] to

defraud and to obtain money and property from Plaintiffs by false pretenses, representations, and promises." (*See* Second Amended Complaint ("SAC") ¶ 1(ii).) Plaintiffs, however, are prohibited from using securities fraud as a predicate act to establish a RICO claim.  Plaintiffs attempt to skirt around this prohibition by introducing allegations of wire fraud.  A plaintiff, however, cannot assert a RICO claim based on predicate acts that sound in securities fraud simply by pleading wire fraud. For this reason alone, Plaintiffs' claim for RICO violations against all Defendants fails.[1]

Plaintiffs' latest—and third—attempt to allege proper claims against Defendants fails. Because it is clear that a further amendment will suffer from the same defects present in the first two complaints, it is appropriate for the Court at this time to dismiss the claims addressed herein with prejudice as to Defendants.

## II.    STATEMENT OF RELEVANT FACTS

Paul Edalat founded Pharma Pak, Inc. ("Pharma Pak") in our around January 2015. The initial business of Pharma Pak was pharmaceutical repackaging. Repackaging is an FDA regulated and approved practice of removing a preparation from its original package for repacking into another container, typically of a smaller size (for example, creating single-dose packages). Mr. Edalat was the founding shareholder of Pharma Pak.  Plaintiff Bruce Cahill purchased 20% of the initial shares and obtained an additional 20% (for a total of 40%) as consideration for serving as Pharma Pak's CEO.

Additional individuals purchased or received shares of Pharma Pak, including Amir Asvadi and Plaintiffs Greg Cullen, Shane Scott and Ron Franco. By the end of 2015, under Mr. Cahill's stewardship as CEO, Pharma Pak began to focus on the business of manufacturing transdermal patches instead of repackaging.

In January 2016, Messrs. Edalat and Asvadi discovered financial improprieties at Pharma Pak and misuse of funds by Mr. Cahill and people connected to him. This

---

[1] As set forth in the Motion below, Plaintiffs' attempt to allege a RICO violation against Edalat and Karpinski based on the additional predicate acts of drug trafficking, obstruction of justice, and money laundering likewise fails.

included Mr. Cahill paying himself a $240,000 annual salary to serve as CEO, which was excessive given Pharma Pak's existing business and Mr. Cahill's receipt of stock as consideration for serving as CEO. Mr. Cahill was also paying Leslie Wood, Pharma Pak's part-time bookkeeper, an annual salary of $90,000, which was also excessive in light of Ms. Wood's limited duties. Pharma Pak's shareholders never discussed or approved these excessive salaries. Messrs. Edalat and Asvadi also discovered that there were numerous unauthorized cash withdrawals, international wire transfers, cash transactions, and payments from Pharma Pak to entities controlled by Mr. Cahill.

After discovering these improper transactions, Mr. Edalat called for a shareholder meeting. Mr. Cahill refused to hold such a meeting or alleviate Mr. Edalat's concerns. While attempting to work with Mr. Cahill, Mr. Edalat learned on February 26, 2016 that the Pharma Pak manufacturing facility contained liquid tetrahydrocannabinol ("THC"), which is used to manufacture THC-laced transdermal patches. After consulting with advisors regarding the proper course of action, Mr. Edalat notified the Irvine Police Department (the "Police"). The Police opened an investigation, searched Pharma Pak's facility, and removed a large quantity of liquid THC.

Days later, on March 3, 2016, Mr. Cahill notified Pharma Pak shareholders that he was terminating all employees and dissolving the corporation. Six days later, on March 9, 2016, Life Tech Global, LLC ("Life Tech") was registered as a new entity. Mr. Cahill and other executives and employees of Pharma Pak joined Life Tech. Mr. Cahill also sold Pharma Pak's assets to Life Tech. In sum, Mr. Cahill renewed the business of Pharma Pak in the form of Life Tech. The only difference is that Messrs. Edalat and Asvadi were no longer shareholders of the new entity.

Plaintiffs filed this action against Mr. Edalat and others on April 12, 2016, alleging federal claims for violations of RICO and securities laws, as well as state claims for fraud and deceit. Plaintiffs filed a First Amended Complaint on May 16, 2016.   After recognizing the deficiencies in that Complaint, Plaintiffs voluntarily

**EDALAT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES**

withdrew the Complaint.  The Second Amended Complaint, at issue here, was filed on December 14, 2016. Trial is currently set for June 13, 2017.

### III.   LEGAL STANDARD

To survive a motion to dismiss, a complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Federal Rule of Civil Procedure Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557.   Rather, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although "[t]he plausibility standard is not akin to a 'probability requirement,' the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A plausible claim for relief thus requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556. When considering plausibility, courts must also consider an "obvious alternative explanation" for defendant's behavior.  *Ashcroft*, 556 U.S at 682 (quoting Twombly, 550 U.S. at 567).

### IV.   THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR FEDERAL SECURITIES VIOLATIONS

Counts One through Four of the Second Amended Complaint allege violations of Section 10(b) of the Exchange Act and Rule 10b-5.  Rule 10b-5, which implements the anti-fraud provisions of Section 10(b) of the Securities Exchange Act, makes it "unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange . . . [t]o make any untrue statement of a material fact or to omit to

1  state a material fact necessary in order to make the statements made, in the light of the
2  circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b–5.
3  To state a claim for securities fraud, a complaint must allege: "(1) a material
4  misrepresentation or omission by the defendant; (2) scienter; (3) a connection between
5  the misrepresentation or omission and the purchase or sale of a security; (4) reliance
6  upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."
7  *Lloyd v. CVB Financial Corp.*, 811 F.3d 1200, 1206 (9th Cir. 2016) (quoting *Erica P.*
8  *John Fund, Inc. v. Halliburton Co.,* 563 U.S. 804, 810 (2011)).

9       Along with Federal Rule of Civil Proceudre 9(b), the Private Securities Litigation
10  Reform Act (the "Reform Act")—designed to limit frivolous securities lawsuits – sets
11  forth the pleadings requirements for a claim for securities fraud.  Specifically, the
12  Reform Act requires that a plaintiff plead with particularity each statement alleged to
13  have been misleading and the reason or reasons why such statements are misleading.
14  15 U.S.C. § 78u-4(b)(1).  Rule 9(b) likewise requires a plaintiff to plead the specific
15  circumstances of any alleged misrepresentation, including the time, place and nature of
16  the statements made and "what is false or misleading about a statement, and why it is
17  false." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999); *see also Reese v.*
18  *Malone*, 747 F.3d 557, 568 (9th Cir. 2014).  The complaint must also "state with
19  particularity facts giving rise to a strong inference that the defendant acted with the
20  required state of mind." 15 U.S.C. § 78u-4(b)(2); *Zucco Partners, LLC v. Digimarc*
21  *Corp.*, 552 F.3d 981, 991 (9th Cir. 2009).  Incorporating the particularity requirement of
22  Rule 9(b), the Reform Act further requires that where a complaint's allegations are
23  based on information and belief, plaintiff must state with particularity "all facts on
24  which that belief is formed." 15 U.S.C. § 78u-4(b)(1); *see also* Fed. R. Civ. Proc.
25  9(b) ("[i]n alleging fraud or mistake, a party must state **with particularity** the
26  circumstances constituting fraud or mistake.") (emphasis added).  In other words, the
27  complaint must set forth "a list of all relevant circumstances in great detail." *In re*
28  *Silicon Graphics Sec. Litig.*, 183 F.3d 970, 984 (9th Cir. 1999).

Additionally, the Reform Act alters the normal construction of inferences under Rule 12(b)(6).  In *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 127 S. Ct. 2499 (2007), the Supreme Court held that a court is required to "engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged."  *Id.* at 2510.  To qualify as "strong," an inference of scienter must be "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id*. at 2511.

Viewed by these standards, Plaintiffs' factually devoid and conclusory securities fraud allegations against Defendant Barghi are insufficient and should be dismissed as a matter of law.

### A. Plaintiffs Fail to Allege Actionable Representations or Omission

As noted above, the Reform Act requires a plaintiff to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding a statement or omission is made on information and belief, all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1)(B).  By requiring specificity, this Section "prevents a plaintiff from skirting dismissal by filing a complaint laden with vague allegations of deception unaccompanied by a particularized explanation stating why the defendant's alleged statements or omissions are deceitful." *Metzler Inv. GMBH v. Corinthian Colleges, Inc*., 540 F.3d 1049, 1061 (9th Cir. 2008).

Additionally, Rule 9(b) requires a plaintiff to plead the specific circumstances of the alleged fraud, including the time, place and nature of the statements made and "what is false or misleading about a statement, and why it is false." *Yourish,* 191 F.3d at 993. "By requiring the plaintiff to allege the who, what, where, and when of the alleged fraud, the rule requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Ackerman v. Northwestern Mut. Life Ins. Co*., 172 F.3d 467, 469 (7th Cir. 1999).

Plaintiffs here fail to set forth a single, specific misrepresentation allegedly made by Ms. Barghi in connection with Plaintiffs' investments in Pharma Park, let alone to whom any such representation was made, when it was made, why it was false or misleading, or why any such representation was material to Plaintiffs. Instead, Plaintiffs point to two documents related to Global Holdings d/b/a Sentar Pharmaceuticals as support their vague and conclusory allegation that "Barghi, at all times … made the false and fraudulent statements referred to herein … and made them with the intent to benefit her as well as [Global Holdings d/b/a Scilabs Pharmaceuticals]." (SAC ¶ 29(h).)

Plaintiffs assert that "Edalat and Barghi, sometime in early 2015, created a Private Placement Memorandum very similar to the 2014 PPM ... This 2015 PPM contained the same false fraudulent statements [about Global Holdings d/b/a Sentar Pharmaceuticals, not Pharma Pak] as stated in the 2014 PPM…." (SAC ¶ 29(l).) Again, not only is this allegation vague as to when and how this Global Holdings document was used; if it was shown to Plaintiffs; when it was shown to Plaintiffs; or by whom it was shown to Plaintiffs, but it is also unclear as to Ms. Barghi's role in the creation of the document or connection to any purported statements therein. Nor do Plaintiffs show how alleged statements about the profitability and operations of one company, Global Holdings, form the basis of an alleged fraudulent scheme related to investment in another, Pharma Pak.

Similarly, to the extent Plaintiffs' securities fraud claims against Edalat are based on purported omissions (for example, Edalat's prior bankruptcy filings), Plaintiffs fail to set forth the fundamental basis for imposing a duty of disclosure on Edalat. "[I]n order for there to be liability under 10b-5 for omissions or nondisclosure, . . . a duty to speak must exist." *In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1009) (N.D. Cal. 2008) (internal quotations omitted). A legal duty exists where a defendant must "state a material fact necessary in order to make the statements made . . . not misleading.'" *Id.*, quoting *Tellabs*, 127 S.Ct. at 2507. Essentially, the duty arises only

1  where a disclosed statement would be misleading in the absence of additional facts.

2  **B. Plaintiffs Fail to Establish A Credible Connection Between With**

3  **Plaintiffs' Investment in Pharma Pak.**

4  Plaintiffs are also required to allege a connection between a material

5  misrepresentation or omission and their investment in Pharma Pak.  *Lloyd*, 811 F.3d at

6  1206.  This they cannot and do not do.  Instead, Plaintiffs argue that ***Defendant Edalat***

7  used the "Global Holdings documents" to encourage Plaintiffs to invest in Pharma Pak.

8  Specifically, Plaintiffs allege that "Edalat told [Plaintiffs] that the resources, marketing

9  avenues, government contacts in the Middle East, patents, and other assets of [Global

10  Holdings d/b/a Scilabs Pharmaceuticals (later d/b/a Sentar Pharmaceuticals)] would be

11  made available to Pharma Pak as it grew" and also made a promise to Plaintiffs "of a

12  later opportunity to own part of Global Holdings d/b/a Sentar Pharmaceuticals" and

13  these were "reasons why [Plaintiffs] purchased Pharma Pak stock." (SAC ¶¶ 29(m),

14  (q).) This argument concedes that the alleged misrepresentations or omission concerned

15  Global Holdings, not "in connection with the purchase or sale of security" in Pharma

16  Pak by Plaintiffs.  15 U.S.C. § 78j(B).

17  **C. Plaintiffs Do Not and Cannot Allege "Loss Causation"**

18  Plaintiffs additionally fail to make the necessary allegation of "loss causation"

19  in order to support their securities fraud claim.  In order to state a claim under the

20  federal securities laws, and in particular Section 10(b), a plaintiff must establish "loss

21  causation"—*i.e.*, "that the misrepresentations or omissions caused the harm."  *In re*

22  *Daou Systems, Inc*., 411 F.3d 1006, 1025 (9th Cir. 2005).  As stated by the Ninth

23  Circuit, "[t]o prove loss causation, plaintiff must demonstrate a causal connection

24  between the deceptive acts that form the basis for the claim of securities fraud and the

25  injury suffered by the plaintiff . . . ***Plaintiff must prove that . . . the misrepresentation***

26  ***is one substantial cause of the investment's decline in value***. . . ."  *Id*. (emphasis

27  added).

28  Here, Plaintiffs have failed to plead that they sustained any economic loss within

**EDALAT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES**

1   the meaning of the securities laws.  Indeed, though they allege that Pharma Pak stock

2   was purchased by Plaintiffs and that Defendant Edalat used the Global Holdings

3   documents to encourage Plaintiffs to purchase Pharma Pak stock by purportedly

4   promising Plaintiffs access to Global Holdings, Plaintiffs do not link their stock

5   purchase to any alleged representation or omission by Ms. Barghi, and do not link that

6   alleged misrepresentation or omission to any ultimate injury suffered by Plaintiffs, *i.e.*,

7   any alleged loss of the value of their investment due to poor performance by Pharma

8   Pak.  For this reason, and for each of the foregoing reasons set forth above, Plaintiffs'

9   Counts One through Four for securities fraud against Ms. Barghi should be dismissed.

10   **V.    THE SECOND AMENDED COMPLAINT FAILS TO STATE A**

11   **CLAIM FOR VIOLATION OF SECTION 12(a)(2)**

12          Count Five attempts to state a claim against Defendants Edalat, Barghi and

13   Karpinski for violation of §12(a)(2) of the 1933 Securities Act.  15 U.S.C. § 77l(a)(2).

14   Section 12(a)(2) imposes liability on any person who "offers or sells a security" by

15   means of a prospectus or oral communication containing an untrue statement of material

16   fact or a material omission of a fact needed to make the statement not misleading.  By

17   its own terms, Section 12(a)(2) applies to public offerings only, and does not create

18   liabilty for private offerings of securities.  *See Gustafson v. Alloyd Co*., 115 S.Ct. 1061,

19   1071 (1995) ("the intent of Congress and the design of the statute require that § 12(2)

20   liability be limited to public offerings.").  The offering to Plaintiffs Cahill, Cullen, Scott

21   and Franco to purchase stock in Pharma Pak was a private offering to which section

22   12(2) is inapplicable.  Plaintiffs' Section 12(a)(2) claim, therefore, should be dismissed

23   as to each Defendant without leave to amend.[2]

24   _____

[2] Plaintiffs' Section 12(a)(2) claim should be dismissed against Defendants Barghi and Karpinski for

25   the additional reason that only sellers of securities are liable for violations of Section 12.  15 U.S.C. §
77l(a)(2).  The term "seller" for purposes of section 12 includes "participants" whose acts are "both

26   necessary to and a substantial factor in the sale transaction."  *Admiralty Fund v. Jones,* 677 F.2d 1289,
1294 (9th Cir. 1982).  A defendant is a substantial factor in the sale transaction when "the injury to the

27   plaintiff flowed directly and proximately from the actions of the defendant."  *Id.*  Mere participation is
insufficient; conduct indicating culpability is required.  *In re Fortune Systems Securities Litigation,*

28   604 F. Supp. 150, 151, 161 (N.D.Cal. 1983).  As set forth above in Sections IV and V, Plaintiffs have

Continued on the next page

1
2
3

**VI.   PLAINTIFFS CLAIM FOR RICO VIOLATIONS BASED ON WIRE FRAUD FAILS BECAUSE IT IS IMPROPERLY BASED ON CONDUCT ACTIONABLE AS SECURITIES FRAUD**

4
5
6
7
8
9

Though Plaintiffs Cahill, Cullen, Scott and Franco insist that the central predicate act underlying their RICO claim (Count Six) is wire fraud, their RICO claim is based upon the very same allegedly fraudulent conduct underlying their causes of action for securities fraud (Counts One-Five), namely a purported "schem[e] to defraud and to obtain money and property from Plaintiffs by false pretenses, representations, and promises…." (SAC ¶ 1(i).)

10
11
12
13
14
15
16

Plaintiffs, however, are prohibited from using securities fraud as an underlying predicate act. Section 107 of the Reform Act amended RICO to prohibit the use of securities fraud as a predicate act.  The amended section of RICO now reads: "any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore . . . except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of Section 1962."  18 U.S.C § 1964(c) (emphasis added).

17
18
19
20
21
22
23
24
25

"The legislative history of subsection (c) reveals that Congress intended not only to eliminate securities fraud as a predicate offense in a civil RICO action, but also to prevent plaintiffs from attempting to plead other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud." Hollinger Int'l, Inc. v. Hollinger Inc., No. 04 C 698, 2004 WL 2278545, at *5 (N.D.Ill. Oct. 8, 2004) (citing H.R. Conf. Rep. No. 104-369, at 47 (1995); see also Swartz v. KPMG, LLP, 401 F. Supp. 2d 1146, 1151 (W.D. Wash. 2004) ("The rule that a plaintiff cannot assert a RICO claim based on predicate acts that sound in securities fraud is applicable even if, as is the case here, the

26
27
28

Continued from the previous page

not and cannot show that any actions allegedly taken by Defendants Barghi and Karpinski caused Plaintiffs to invest in Pharma Pak, let alone that any such actions directly caused injury to them.

**EDALAT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES**

1  claim is pled as a matter of mail fraud or wire fraud."); Sedima, 473 U.S. at 500 ("[t]he

2  "extraordinary" uses to which civil RICO has been put appear to be primarily the result

3  of the breadth of the predicate offenses, in particular the inclusion of wire [and] mail . . .

4  fraud. . . .").

5      The appropriate inquiry is not whether plaintiffs have a valid securities fraud

6  claim, which Plaintiffs do not have here, but "whether all of the allegations occurred 'in

7  connection' with the sale of securities." Sell v. Zions First Nation Bank, No. CV 05

8  0084 PHX SRB, 2006 U.S. Dist. LEXIS 6558, at*33-34 (D. Ariz. Feb. 9, 2006); accord

9  Payton v. Flynn, No. 06 C 465, 2006 WL 3087075, at *6 (N.D.Ill. Oct. 26, 2006).

10  Here, the allegations underlying Plaintiffs Cahill, Cullen, Scott and Franco's wire fraud

11  RICO claim concern their investment in Pharma Pak, and thus are the same as those

12  underlying their securities fraud claims.  Therefore Plaintiffs Cahill, Cullen, Scott and

13  Franco's wire fraud RICO claim should be barred by Section 1964 (c).

14  **VII.  THE COMPLAINT FAILS TO STATE A CLAIM AGAINST FOR**

15  **RICO VIOLATIONS BASED ON WIRE FRAUD**

16      In Count Six of their Second Amended Complaint, Plaintiffs allege that all

17  Defendants violated provisions of the Civil RICO statute, specifically 18 U.S.C.

18  §§ 1962(c) and 1962(d).  A civil RICO claim requires allegations of the conduct of an

19  enterprise through a pattern of racketeering activity that proximately caused injury to

20  the plaintiff.  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  In order to

21  properly plead a RICO claim, a plaintiff must allege: "(1) conduct (2) of an enterprise

22  (3) through a pattern of (4) racketeering activity."  *Howard v. America Online, Inc.*, 208

23  F.3d 741, 746 (9th Cir. 2000). "Racketeering activity," the fourth element, is any act or

24  criminal offense indictable under the several provisions of Title 18 of the United States

25  Code, including the predicate act alleged by Plaintiffs here, namely "wire fraud in

26  violation of 18 U.S.C. §1343."  (SAC ¶ 43(f).)

27      To establish wire fraud as a predicate activity, Plaintiffs must establish three

28  elements: (1) the formation of a scheme to defraud; (2) the use of the mails or wires in

1    further of that scheme; and (3) the specific intent to defraud.  *See Schreiber Distrib. Co.*

2    *v. Serv-Well Furniture Co*., 806 F.2d 1393, 1399 (9th Cir. 1986).  Moreover, Plaintiffs

3    are required to prove each element of each claim as to *each* defendant in a RICO action.

4    *See Lancaster Comm. Hosp. v. Antelope Valley Hosp. Dist*., 940 F.2d 397, 405 (9th

5    Cir.1991) (plaintiff must state, time, place and manner of each act of RICO fraud, plus

6    the role of each defendant in each scheme), *cert. denied*, 502 U.S. 1094 (1992).

7         Plaintiffs here fail to plead with *specificity* any use of the wire.  Instead, Plaintiffs

8    rely on two general, conclusory allegations, namely that (1) "Edalat and Barghi

9    fraudulently induc[ed] Pharma Pak, from in or around March, 2015 through February of

10   2016, to hire and waste substantial sums of money paying salaries for employees that

11   Defendants told Pharma Pak personnel would be working for Pharma Pak when, in

12   truth, they were working for another company, although being paid by Pharma Pak"

13   (SAC ¶76(i)), and (2) "[a]fter Pharma Pak commenced its operations by using the

14   money paid by some of the individuals who purchased its stock or loaned it money,

15   Edalat, Karpinksi and Barghi, acting for herself and together with Edalat acting for

16   Global Holdings d/b/a Sentar Pharmaceuticals, fraudulently schemed to and did

17   misappropriate Pharma Pak's assets to assist in their attempt to develop Global

18   Holdings d/b/a Sentar Pharmaceuticals and to secure investments from other individuals

19   into Global Holdings d/b/a Sentar Pharmaceuticals." (SAC ¶ 77.)   These general

20   allegations not only fail to show any specific use of wires by Ms. Barghi, but they also

21   fail to set forth the specific role of Ms. Barghi in any purported scheme.

22        Nor do Plaintiffs' vague allegations suffice to establish a pattern of racketeering

23   activity.  As set forth above, an essential element of a RICO claim is an allegation that

24   the defendant engaged in a pattern of racketeering activity. This requirement "… must

25   be established as to each individual defendant." *De Falco v. Bernas,* 244 F.3d 286, 305

26   (2nd Cir. 2001).  A pattern of racketeering activity is defined as "at least two predicate

27   acts of racketeering activity within a ten-year period." 18 U.S.C. § 1961(5); *see also*

28   *United States v. Brooklier*, 685 F.2d 1208, 1222 (9th Cir. 1982) ("[t]he pattern may be

established by showing two or more acts that constitute offenses, conspiracies, or attempts of the requisite type, as long as the defendant committed two of the acts and both of them were connected by common scheme, plan or motive.")   Without identifying even one use of wires as part of any alleged scheme, Plaintiffs have unquestionably failed to establish a "pattern" of any such activity.

## VIII. THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM BASED ON DRUG TRAFFICKING, OBSTRUCTION OF JUSTICE OR MONEY LAUNDERING.

In addition to wire fraud, Plaintiffs seek to establish RICO violations against Defendants Edalat based upon the additional alleged predicate acts of (1) drug trafficking in violation of 21 U.S.C. 841; (2) obstruction of justice in violation of 18 U.S.C. §1503; and (3) money laundering by Defendant Edalat in violation of 18 U.S.C. §1957 in furtherance of bankruptcy fraud in violation of 18 U.S.C. §152.  None of these alleged acts suffice to support a RICO claim.

In no more than seven lines, Plaintiffs make the conclusory allegation that Defendants Edalat and Karpinski had "been trafficking in illegal controlled substances in violation of 21 U.S.C. 841 and California state law" and they "planted … THC and marijuana … in the offices of the chief scientist of Pharma Pak and then called the local Irvine Police Department in order to cause his arrest."  (SAC ¶ 100.)  Offering not a single fact in support of this allegation, Plaintiffs have in no way shown that either Defendant Edalat or Defendant Karpinski engaged in trafficking.  What is more, despite making cursory mention of the alleged planting of drugs, Plaintiffs rely on alleged "trafficking" in violation of 21 U.S.C. 841 as the predicate act. This allegation, however, cannot support a RICO claim as a matter of law. A RICO plaintiff must allege injury to his business or property.  *Sedima*, 473 U.S. at 496 (plainiff has standing only if injury to business or property is caused by conduct violating section 1962.)  Though Plaintiffs state without any factual support or detail that the alleged planting of drugs was done to "further injure Pharma Pak" (SAC ¶ 100), Plaintiffs cannot and do not

allege any purported injury to their property or business as a result of any alleged trafficking.

Plaintiffs' allegation of obstruction of justice as an additional predicate act fares no better. According to Plaintiffs, Defendants Edalat and Karpinski have made "false and damaging statements" in an effort "to obstruct and impede the due administration in this case by threatening and attempting to intimidate plaintiffs" in violation of Section 1503(a). (SAC ¶ 103.) Section 1503(a) imposes criminal liability on anyone who:

> corruptly, or by threats or force, or by any threatening letter or
> communication, endeavors to influence, intimidate, or impede
> any grand or petit juror, or officer in or of any court of the
> United States, or officer who may be serving at any examination
> or other proceeding before any United States magistrate judge or
> other committing magistrate, in the discharge of his duty, or
> injures any such grand or petit juror in his person or property on
> account of any verdict or indictment assented to by him, or on
> account of his being or having been such juror, or injures any
> such officer, magistrate judge, or other committing magistrate in
> his person or property on account of the performance of his
> official duties, or corruptly or by threats or force, or by any
> threatening letter or communication, influences, obstructs, or
> impedes, or endeavors to influence, obstruct, or impede, the due
> administration of justice. 18 U.S.C. § 1503(a).

In other words, Section 1503(a) imposes liability for actions taken against an **_officer of the court or a juror_**. Plaintiffs make no allegation of any such acts, arguing instead that Defendants Edalat and Karpinski tooks actions against Plaintiffs themselves (none of whom is an officer of court or juror). Plaintiffs, therefore, have failed to plead obstruction of justice as a predicate act.[3]

The final predicate act upon which Plaintiffs rely is money laundering under 18 U.S.C. § 1956 and 1957. Specifically, Plaintiffs allege that Defendant Edalat "direct[ed]

---

[3] The allegation of obstruction of justice further fails to support a RICO claim because Plaintiffs make no showing of any purported injury to their property or business as a result of any alleged obstruction of justice, nor can they. *Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005) ("Without a harm to a specific business or property interest … there is no injury to business or property within the meaning of RICO.")

1   that payments for Pharma Pak stock and for the promise of stock in Global Holdings

2   d/b/a Sentar Pharmaceuticals be made to various entities rather than being paid to him"

3   in order to "conceal these assets from the bankruptcy trustee in Edalat's bankruptcy."

4   (SAC ¶ 99.)  Section 1956 criminalizes the laundering of the proceeds of a "specified

5   unlawful activity." 18 U.S.C. § 1956.  Specifically, liability attaches to "[w]ho[m]ever,

6   knowing that the property involved in a financial transaction represents the proceeds of

7   some form of unlawful activity, conducts or attempts to conduct such a financial

8   transaction which in fact involves the proceeds of specified unlawful activity-- (B)(i)

9   knowing that the transaction is designed in whole or in part … (i) to conceal or disguise

10  the nature, the location, the source, the ownership, or the control of the proceeds of

11  specific unlawful activity. . . ." 18 U.S.C. § 1956(a)(1)(B)(i).

12         Plaintiffs' argument appears to be that Defendant Edalat engaged in money

13  laundering by allegedly taking steps to conceal from the bankruptcy court the monies he

14  was purportedly paid by Plaintiffs.  Not only do Plaintiffs fail to offer any factual detail

15  to support any alleged improper monetary transactions engaged in by Defendant

16  Edalat, but they also do not allege any direct injury to their own business or property as

17  a result thereof.  Nor can they.  Whether or not Defendant Edalat took steps to hide

18  monies from the bankruptcy court should not and would not result in any harm to

19  Plaintiffs.  Plaintiffs, therefore, cannot base a RICO claim against Defendant Edalat on

20  alleged money laudering. *Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005) ("Without a harm

21  to a specific business or property interest … there is no injury to business or property

22  within the meaning of RICO.")

## IX.    PLAINTIFFS' SECTION 1962(d) CONSPIRACY CLAIM AGAINST ALL DEFENDANTS LIKEWISE FAILS

25         To the extent that Plaintiffs intend to state a claim for a RICO violation pursuant

26  to Section 1962(d), this claim likewise fails.  Under that Section, it is unlawful for any

27  person to conspire to do any of the acts in Section 1962 (a)-(c).  18 U.S.C. § 1962(d). A

28  claim thereunder thus requires that Plaintiffs first demonstrate violations of 1962(c).  A

1   plaintiff "cannot state a claim that a conspiracy to violate RICO existed if they do not

2   adequately plead a substantive violation of RICO." *Howard v. America Online, Inc.*,

3   208 F.3d 741, 751 (9th Cir. 2000) ("the district court held that the failure to adequately

4   plead a substantive violation of RICO precludes a claim for conspiracy. We agree.");

5   s*ee also Religious Tech. Center v. Wollersheim,* 971 F.2d 364 (9th Cir. 1992)

6   (dismissing conspiracy to commit RICO claim as to one group of defendants because

7   plaintiffs had failed to adequately plead a substantive violation of RICO against that

8   group of defendants).   As shown above, absent a sufficiently pled predicate act,

9   Plaintiffs have failed to properly plead substantive RICO offenses against all

10  Defendants. Absent allegations to support a RICO claim, no liability can be premised

11  under a conspiracy theory.[4]

12  ## X.   THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION

13  ## OF CALIFORNIA CORPORATIONS CODE

14       Plaintiffs allege, in Count Eight of their Second Amended Complaint, violation of

15  Section 25504.1 of the California Corporations Code by materially assisting Defendant

16  Edalat in his own violation of Section 25401.[5]  (*See* SAC ¶¶ 118-131.) Section 25401—

17  California's statutory equivalent of a Rule 10b-5 action—provides that "[i]t is unlawful

18  for any person to offer or sell a security in this state or buy or offer to buy a security in

19  this state by means of any written or oral communication which includes an untrue

20

---

21  [4] Because Plaintiffs' securities fraud and RICO claims are the sole federal claims being asserted
    against the Defendants in this action, in the event they are dismissed by the Court without leave to
22  amend, this raises a question as to whether the Court has subject matter jurisdiction with respect to the
    remaining state law claims brought against Defendants. The issue of whether or not this Court should
23  exercise its discretion and invoke supplemental jurisdiction over any state law claims brought against
    Defendants seems somewhat premature given that this Court has not yet ruled on the challenges to the
24  federal claims asserted against them.  Accordingly, in the event that the Court does not also dismiss
    Plaintiffs' state law claims, Defendants reserve their right to challenge subject matter jurisdiction over
25  Plaintiffs' state law claims.
    [5] Though Plaintiffs list Defendants Karpinski and Barghi in the heading of their claim for violation of
26  Cal. Corp. Code §§ 25401, 25501, 25504 (Count Seven), Plaintiffs make no specific allegations
    against those Defendants related thereto.  Defendants therefore conclude that Plaintiffs do not in fact
27  intend to assert any such claims against Defendants Karpinski or Barghi. Nor would any such claim
    survive, given that neither Karpinski nor Barghi are alleged to have sold securities to Plaintiffs. *See,*
28  *e.g., SEC v. Seaboard*, 677 F.2d 1289, 1296 (9th Cir. 1982) (construing section 25501 to limit section
    25504 liability to the "literal seller" with whom the purchaser has privity).

1  statement of a material fact or omits to state a material fact necessary in order to make

2  the statements made, in the light of the circumstances under which they were made, not

3  misleading." Cal. Corp. Code § 25401. Section 25504.1 states that "[a]ny person who

4  materially assists in any violation of Section … 25401 … with intent to deceive or

5  defraud, is jointly and severally liable with any other person liable under this chapter for

6  such violation." Cal. Corp. Code § 25504.1.

7      This claim is predicated on the same alleged fraudulent conduct that provides the

8  basis for Plaintiffs' securities fraud claim, is also subject to the heightened pleading

9  requirements of Rule 9(b). *See, e.g., Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103-04

10 (9th Cir. 2003) (where a state law claim "is said to be 'grounded in fraud' or to 'sound in

11 fraud,' [] the pleading of that claim as a whole must satisfy the particularity requirement

12 of Rule 9(b).").   Thus, it is subject to dismissal on the same grounds as discussed

13 above—*i.e.*, for Plaintiffs' failure to plead any specific misrepresentation or omission in

14 connection with the sale of Pharma Pak stock to Plaintiffs, or loss causation.

15      **XI.   THE COMPLAINT FAILS TO STATE A CLAIM FOR FRAUD**

16      Similarly, in Count Nine of the Second Amended Complaint, Plaintiffs attempt to

17 state claims for fraud and deceit under Sections 1709 and 1572 of the California Civil

18 Code. Section 1709 provides that "[o]ne who willfully deceives another with intent to

19 induce him to alter his position to his injury or risk, is liable for any damage which he

20 thereby suffers." Cal. Civ. Code § 1709.[6]  Section 1572 provides "[a]ctual fraud . . .

21 consists in any of the following acts, committed by a party to the contract, or with his

22 connivance, with intent to deceive another party thereto, or to induce him to enter into

23 the contract….," with the covered acts including intentional mispresentation, false

24 promise, concealment, and "any other act fitted to deceive." Cal. Civ. Code § 1572.

25 These claims for fraud or deceit must meet Rule 9(b)'s particularity requirements. *Glen*

26 *Holly Entertainment, Inc. v. Tektronix, Inc.,* 100 F. Supp. 2d 1086, 1093 (C.D. Cal.

27

28 [6] Section 1710 specifies four types of deceit, including (a) intentional misrepresentation; (b) negligent misrepresentation; (c) concealment; and (d) false promise. Cal. Civ. Code § 1710.

19

**EDALAT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES**

1  1999); *Vess,* 317 F.3d at 1103–04.  Thus, Rule 9(b) requires a plaintiff to "identify the

2  'who, what, when, where and how of the misconduct charged,' as well as 'what is false

3  or misleading about [the purportedly fraudulent conduct], and why it is false.'" *Cafasso,*

4  *ex rel. United States v. Gen. Dynamics C4 Sys., Inc*., 637 F.3d 1047, 1055 (9th Cir.

5  2011) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir.

6  2010)).

7      Plaintiffs' claims for fraud and deceit are predicated on the same alleged

8  fraudulent conduct that provides the basis for Plaintiffs' securities fraud claims against,

9  and should be dismissed for the same reasons.  the fraud and deceit claim fails on the

10  same grounds as discussed above—*i.e*., for Plaintiffs' failure to plead the elements of a

11  fraud with particularity.

12      In Count Ten, Plaintiffs attempt to state a claim for fraud by concealment. The

13  tort of fraud by concealment requires that a plaintiff show:  (1) concealment of a

14  material fact by the defendant;  (2) the defendant had a duty to disclose that fact to the

15  plaintiff;  (3) the defendant concealed the fact with an intent to induce reliance by the

16  plaintiff;  (4) the plaintiff was unaware of the fact and would not have acted as he or she

17  did with knowledge of the concealed fact;  and (5) the plaintiff suffered injury.[7]  *See*

18  *Doe v. Superior Court*, 237 Cal. App. 4th 239, 244 (Cal. Ct. App. 2015); *Bank of*

19  *America Corp. v. Superior Court*, 198 Cal.App.4th 862, 870 (2011). As with Plaintiffs'

20  other fraud claims, Plaintiffs must plead fraud by concealment in accordance with the

21  particularity requirements of Rule 9(b). *Vess*, 317 F.3d at 1103–04 (holding that

22  regardless of the title given to a particular claim, allegations grounded in fraud are

23  subject to Rule 9(b)'s pleading requirements).  A requirement Plaintiffs yet again fail to

24  meet.

25
26  [7]  The elements for "constructive fraud" pursuant to Section 1573 are similar to those of fraudulent concealment: "To state a cause of action for constructive fraud, a plaintiff must allege (1) a fiduciary or confidential relationship; (2) an act, omission or concealment involving a breach of that duty; (3) reliance; and (4) resulting damage." *See Neilson v. Union Bank of Cal., N.A.,* 290 F. Supp. 2d 1101, 1142 (C.D. Cal. 2003).  Thus, any alleged claim for constructive fraud fails for the same reasons Plaintiffs' fraud by concealment claim fails.

**EDALAT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES**

"A duty to disclose may arise from the relationship between seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual agreement. All of these relationships are created by transactions between parties from which a duty to disclose facts material to the transaction arises under certain circumstances." *Limandri v. Judkins*, 52 Cal.App.4th 326, 336-337 (1997).  Without an allegation of a duty, Plaintiffs cannot state a claim for fraud by concealment.

## XII.   PLAINTIFFS CULLEN AND FRANCO FAIL TO STATE A CLAIM FOR LIBEL

In Count 13, Plaintiffs Cullen and Franco attempt to state claims against Defendant Edalat for defamation by libel. "Defamation requires the intentional publication of a false statement of fact that has a natural tendency to injure the plaintiff's reputation or that causes special damage." *Burrill v. Nair*, 217 Cal.App.4th 357, 383 (2013).  "The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *Wong v. Jing*, 189 Cal.App.4th 1354, 1369 (2010).  Libel is defamation that is written. (*Id.*) Libel is not actionable unless the plaintiff suffers special damage or the statement is defamatory on its face, and thus libel per se. *Burrill,* 217 Cal.App.4th at 382.

Moreover, only false statements of fact are actionable as defamation, while statements of opinion are constitutionally protected.  That is, "satirical, hyperbolic, imaginative, or figurative statements are protected because 'the context and tenor of the statements negate the impression that the author seriously is maintaining an assertion of actual fact.'" *Franklin v. Dynamic Details, Inc.*, 116 Cal.App.4th 375, 384 (2004), *citing Weller v. American Broadcasting Companies, Inc.*, 232 Cal.App.3d 991, 1000-1001 (1991).

Here, Plaintiffs Cullen and Franco seek to establish liability based on just two specific statements allegedly made by Defendant Edalat on social media forums:

"Bruce Cahill Greg Cullen Shane Scott of Utah and self proclaimed fake "church priest and healer" (tax evader) & lastly Ron Franco: it's on!" [October 8, 2016, on Twitter and Facebook]

"You stole my comp while I was traveling. You fired my employees for turning all of you in for Manuf class1drugs. You will all face justice." [October 8, 2016, on Twitter and Facebook]

Plaintiffs, however, offer no explanation as to how the first statement contains any defamatory language with respect to Plaintiffs Cullen or Franco. Because it does not. Likewise, Plaintiffs fail to allege at whom the second statement–which does not purport to identify a single plaintiff–is directed. *Ringler Associates v. Maryland Casualty Co.*, 80 Cal.App.4th 1165, 1179 (2000) (finding that if the statements do not mention the plaintiff by name, it must be proven that they were published or spoken concerning him or her); *Vedovi v. Watson & Taylor*, 104 Cal.App. 80, 83 (1930) ("[d]efamatory words to be actionable must refer to some ascertained or ascertainable person, and that person must be plaintiff"). Nor do Plaintiffs offer any factual support for their bare assertion that the statements are false. *Smith v. Maldonado,* 72 Cal. App. 4th 637, 645 (1999) (holding that the truth of the offensive statements or communication is a complete defense against civil liability, regardless of bad faith or malicious purpose.)

Finally, Plaintiffs fail to show that either of the two statements are libelous per se. Statements are libelous per se if "defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact." Cal. Civ. Code §45a. Clearly, statements which do not identify Plaintifs by name or allege any facts whatsoever regarding plaintiffs are not libelous per se. If the allegedly defamatory statements are not libelous per se, Plaintiffs are required to plead special damages, defined as "all damages which plaintiff alleges and proves that he has suffered in respect to his property, business, trade, profession or occupation, including such amounts of money as the plaintiff alleges and proves he has expended as a result of the

alleged libel." Cal. Civ. Code §48a. Here, Plaintiffs allege in conclusory terms that they "suffered emotional distress, humiliation, embarrassment, and injury to reputation in an amount to be proved at trial." Such allegation is insufficient. *See e.g., Forsher v. Bugliosi*, 26 Cal.3d 792, 807 (1980) (finding that plaintiff did not establish special damages where he failed to plead injury to property, business, trade, profession or occupation.)

For these reasons, Plaintiffs Cullen and Franco's defamation claim is fatally defective and must be dismissed.

## XIII. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss, pursuant to Rule 9(b) and Rule 12(b)(6), without leave to amend, (1) Plaintiffs' securities fraud claims against; (2) Plaintiffs' RICO claim; (3) Plaintiffs' state law claim for violation of the California Corporations Code; (4) Plaintiffs' state law claims for fraud and deceit and fraud by concealment; and (5) Plaintiffs Franco and Cullen's state law claim for defamation by libel against Edalat.

Respectfully submitted,

Dated:  January 6, 2017      FORD & DIULIO PC


By:   /s/ Kristopher P. Diulio
      Kristopher P. Diulio

Attorneys for Defendants PAUL PEJMAN EDALAT; OLIVIA KARPINSKI; FARAH BARGHI; BLUE TORCH VENTURES, INC.; and LIWA, N.A., INC.

**EDALAT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 6, 2017, I electronically filed the foregoing **PAUL EDALAT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

        /s/ *Kristopher P. Diulio*
        Kristopher P. Diulio