Kristopher P. Diulio (SBN 229399)
kdiulio@FordDiulio.com
Brendan M. Ford (SBN 224333)
bford@FordDiulio.com
Tyler E. Sanchez (SBN 299131)
tsanchez@FordDiulio.com
FORD & DIULIO PC
695 Town Center Drive, Suite 700
Costa Mesa, California 92626
Telephone: (714) 384-5540
Facsimile: (844) 437-7201

Attorneys for Defendants
PAUL PEJMAN EDALAT; OLIVIA
KARPINSKI; FARAH BARGHI; BLUE
TORCH VENTURES, INC.; and
LIWA, N.A., INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| BRUCE CAHILL, an individual, GREG CULLEN, an individual, SHANE SCOTT, an individual, RON FRANCO, an individual, and PHARMA PAK, INC. a California Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>PAUL PEJMAN EDALAT, an individual, OLIVIA KARPINSKI, an individual, FARAH BARGHI, an individual, SENTAR PHARMACEUTICALS, INC., a Nevada corporation, BLUE TORCH VENTURES, INC., a Wyoming Corporation, LIWA, N.A., INC., a Wyoming Corporation, SENTUS LAND MANAGEMENT, LLC, a Wyoming Limited Liability Company,<br><br>Defendants. | Case No. 8:16-cv-00686-AG-DFM<br><br>**PAUL EDALAT'S REPLY IN SUPPORT OF EDALAT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Courtroom: 10D<br>Judge: Hon. Andrew J. Guilford<br><br>**Hearing**:<br>February 6, 2017<br>10:00 a.m. |

**EDALAT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiffs' Opposition to Edalat's Motion to Dismiss Plaintiffs' Second Amended Complaint ("Opposition") is plagued with the same deficiencies as the Second Amended Complaint ("SAC"). Instead of addressing the deficiencies identified in the Motion, the Plaintiffs in the Opposition simply copy voluminous sections of the SAC and make conclusory arguments. Further, the Opposition ignores the obvious inconsistencies of the facts that the SAC alleges. Because Plaintiffs have failed to address in the Opposition the fatal pleading issues raised by the Motion, the Court should dismiss the claims addressed in the Motion with prejudice.

### II. THE OPPOSITION FAILS TO ADDRESS THE FATAL DEFICIENCIES OF PLAINTIFFS' FEDERAL SECURITIES CLAIMS AND STATE FRAUD CLAIMS AGAINST EDALAT

Counts One through Four of the Second Amended Complaint allege violations of Section 10(b) of the Exchange Act and Rule 10b-5.  The Motion stated that the broad conclusory statements alleged in the SAC do not satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b), the Private Securities Litigation Reform Act ("Reform Act"), or the heightened pleading standard of *Twombly/Iqbal*. The Opposition spends many pages reciting voluminous excerpts from the SAC in response to Edalat's Motion. The Opposition, however, fails to explain how the excerpts satisfy the pleadings standards identified in the Motion. Rather, it simply regurgitates the deficient allegations of the SAC.

#### A. Plaintiffs Have Not Established a Connection Between Edalat's Alleged Statements or Omissions and Plaintiff's Investments

The Opposition does not address how the SAC sufficiently pleads the requisite facts to establish a causal connection between the alleged misrepresentation or omissions and Plaintiffs' investment in Pharma Pak. The Opposition states in a broad and conclusory statement that, "Each Plaintiff alleges that they purchased the Pharma

Pak securities relying on the materially false and misleading statements described." Plaintiffs' Opposition at p. 11:1-3. Even under the "broad interpretation" of "in connection with the purchase of securities", a conclusory statement does not satisfy the pleading requirements, where the statement is devoid of facts as to the reliance on misrepresentations or omissions in connection with the purchase of securities. Here, the Opposition does not address how the Plaintiffs relied on alleged misrepresentations regarding Global Holdings in connection with the purchase of stock in Pharma Pak. Additionally, the SAC and Opposition fail to address the timing of the alleged misrepresentations or omissions in relation to the purchase of stock in Pharma Pak. As such, the SAC does not meet the requirement that misrepresentations be alleged with particularity as to when the misrepresentations occurred and how that timing "coincided" with the purchase of securities.

### B. Plaintiffs Have Not Alleged That Edalat Owed a Duty To Disclose His Bankruptcy Proceedings

Plaintiffs' Opposition relies on *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp.2d 1045, 1066 (N.D. Cal. 2012) for the proposition that there is a a duty to disclose exists "when necessary 'to make . . . statements made, in light of the circumstances under which they were made, not misleading.'" (Opp. at 6.) Plaintiffs, however, overlook that "it is well established that the PSLRA does not impose a duty of completeness." *Juniper Networks*, 880 F.Supp.2d at 1066. To the contrary, the Supreme Court held that "§ 10(b) and Rule 10b-5 do not create an affirmative duty to disclose any and all material information." *Id.* (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 131 S.Ct. 1309, 1317 (2011)).

Here, there is no plausible duty that Edalat, as a mere shareholder who was never an officer or director of Pharma Pak, had to disclose to other investors in Pharma Pak that he had sought bankruptcy protection. The allegations in the complaint are even more curious, because even if a duty of disclosure did exist, that would be a duty of Pharma Pak, and its CEO and sole director Bruce Cahill, would owe to potential

investors. This is particularly so as to the allegations made by Plaintiff Cullen, Scott, and Franco – each of whom invested in Pharma Pak over a year after Plaintiff Cahill invested and assumed responsibilities as CEO and sole director.

For the reasons above, Plaintiffs' state claims for fraud and deceit likewise fail because Plaintiffs have failed to plead the claims with sufficient particularity. Therefore, the Court should dismiss Plaintiffs' federal securities claims and state fraud claims.

### III. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST FOR RICO VIOLATIONS

#### A. Artful Pleading Cannot Avoid The Prohibition On Using Securities Fraud As A Predicate

Edalat's Motion revealed Plaintiffs' attempt to circumvent the Reform Act's prohibition on using securities fraud as a predicate act for a RICO claim. The attempt to use wire fraud to avoid that prohibition fails. (Motion at p. 12:7-25 – 13:1-4). The Opposition claims that the RICO claims are "not remotely connected to the sale of any Pharm Pak stock..." The SAC, however, states that, "Edalat… was simply making false promises… *in order to induce the plaintiffs to purchase stock of Pharma Pak*." SAC at ¶76(vi) (emphasis added). This explicitly concerns the purchase of stock that would be the basis of securities fraud. Thus, Plaintiffs' RICO bases this alleged predicate act improperly on alleged wire fraud related to alleged securities fraud. Further, the conduct identified in the Opposition underlying the wire fraud only damaged the Plaintiffs in regards to their investment in the company and purchase of Pharma Pak stock. Thus, the underlying wire fraud is an inappropriate attempt to include the alleged securities fraud as a predicate act for Plaintiff's RICO claims.

#### B. The "Drug Dealing" Allegations Are Not Predicate Acts

Plaintiffs argue that Edalat engaged in "dealing in a controlled substance." But that the SAC does not allege any such dealing. Instead, the SAC alleges that Edalat "planted" THC and marijuana at the Pharma Pak offices. Although Plaintiffs cite 21

4

U.S.C. § 841, that section makes it unlawful to either "manufacture, distribute, or dispense, or possesses with intent to manufacture, distribute, or dispense, a controlled substance," or to do the same with a "counterfeit substance." The allegations in the SAC (¶ 100) do not meet that definition.[1]

### C. There Is No Allegation That Any Juror Has Been Threatened

Plaintiffs claim that Edalat's text messages and emails to *parties* in this case should be considered the same threats to jurors. (Opp. 23.) That is simply a bridge too far under *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) because it is not plausible that any of Edalat's twitter followers would be empaneled as a juror. There is no allegation that any juror has seen any of the alleged text messages or emails. We are not even at the point where there are any jurors or even a potential panel of jurors. Federal law does not criminalize, nor make as a predicate act for RICO, sending a nasty email or message (or else the Court would be flooded with similar claims).[2]

### D. There Is No Connection Between The Use of Wires and The Alleged Fraud

Further, the Opposition fails to address sufficiently the SAC's failure to allege the use of wires in a fraudulent scheme to defraud with the requisite specificity. The Opposition states that by merely listing payroll transactions, the SAC fulfills the specificity in pleading requirement. The Opposition fails to assert that the SAC specifically details how those alleged wire payments constitute a scheme to defraud. That is because the Opposition cannot do so. The SAC relies on general and conclusory allegations to establish that Edalat allegedly paid Luis Navarro to work for another company while being paid fraudulently by Pharma Pak. This does not satisfy the specificity requirement. Thus, the Court should dismiss Plaintiff's RICO claims.

---

[1] Moreover, Ludwig Weimann testified at his deposition that Dr. Weimman—not Edalat or anyone acting on his behalf—brought liquid THC to Pharma Pak's offices for purposes of conducting research.

[2] Make no mistake that counsel for Edalat does not condone sending nasty messages—even when in litigation. The point remains that doing so, and threatening litigation, is not a criminal act.

## IV. FRANCO AND CULLEN HAVE NOT PROPERLY ALLEGED LIBEL

Plaintiffs Franco and Cullen rely on a tweet from Edalat in which he states "You stole my comp while I was traveling. You fired my employees for turning all of you in for Manuf class1drugs. You will all face justice." (Opp. at 24.) Although Edalat sent another tweet naming Franco and Cullen, Edalat did not name either in this tweet. Even more problematic for Plaintiffs is the fact that "'rhetorical hyperbole,' 'vigorous epithet[s],' 'lusty and imaginative expression[s] of . . . contempt,' and language used 'in a loose, figurative sense' have all been accorded constitutional protection." *Ferlauto v. Hamsher*, 74 Cal.App.4th 1394, 1401 (1999). Edalat's tweets are certainly lusty, imaginative expressions of contempt, full of loose, figurative language. As such, the Court should dismiss the libel claims of Franco and Cullen.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss, pursuant to Rule 9(b) and Rule 12(b)(6), without leave to amend, (1) Plaintiffs' securities fraud claims against; (2) Plaintiffs' RICO claim; (3) Plaintiffs' state law claim for violation of the California Corporations Code; (4) Plaintiffs' state law claims for fraud and deceit and fraud by concealment; and (5) Plaintiffs Franco and Cullen's state law claim for defamation by libel against Edalat.

Respectfully submitted,

Dated: January 23, 2017            FORD & DIULIO PC

By: /s/ Kristopher P. Diulio
       Kristopher P. Diulio

Attorneys for Defendants PAUL PEJMAN EDALAT; OLIVIA KARPINSKI; FARAH BARGHI; BLUE TORCH VENTURES, INC.; and LIWA, N.A., INC.

# CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2017, I electronically filed the foregoing **PAUL EDALAT'S IN SUPPORT OF EDALAT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

        /s/ *Kristopher P. Diulio*
        Kristopher P. Diulio