```
 1                    UNITED STATES DISTRICT COURT
                     CENTRAL DISTRICT OF CALIFORNIA
 2                    SOUTHERN DIVISION - SANTA ANA

 3

 4   BRUCE CAHILL, et al.,        ) Case No. SACV 16-686-AG (DFMx)
                                  )
 5        Plaintiffs,             ) Santa Ana, California
                                  ) Tuesday, February 14, 2017
 6             v.                 ) 10:46 A.M. to 11:00 A.M.
                                  )
 7   PAUL PEJMAN EDALAT, et al.,  )
                                  )
 8        Defendants.             )
                                  )
 9

10

11                      TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE DOUGLAS F. MCCORMACK,
12                   UNITED STATES MAGISTRATE JUDGE.

13

14   Appearances:              See Page 2

15   Deputy Clerk:             Nancy Boehme

16   Court Reporter:           Recorded; CourtSmart

17   Transcription Service:    JAMS Certified Transcription
                               16000 Ventura Boulevard #1010
18                             Encino, California  91436
                               (661) 609-4528
19

20

21

22

23

24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.
```

```
 1  APPEARANCES:
 2
 3  For the Plaintiffs:     Markham & Read
                            By:  JOHN JAMES MARKHAM, II, ESQ.
 4                          17802 Sky Park Circle, Suite 200
                            Irvine, California  92614
 5                          (617) 523-6239
                            jmarkham@markhamread.com
 6
 7
 8  For the Defendants:     Ford & Diulio LLP
                            By:  KRISTOPHER PRICE DIULIO, ESQ.
 9                          695 Town Center Drive, Suite 700
                            Costa Mesa, California  92626
10                          (714) 384-5540
                            kdiulio@forddiulio.com
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1     SANTA ANA, CALIFORNIA, TUESDAY, FEBRUARY 14, 2017, 10:46 A.M.
 2            (Call to Order of the Court.)
 3            THE CLERK:  Calling Case SACV 16-686, Bruce Cahill
 4   v. Paul Pejman Edalat, et al.
 5            Counsel, your appearances, please.
 6            JOHN J. MARKHAM, II:  Good morning.  John Markham
 7   for all the plaintiffs and all the counterclaim defendants,
 8   and they are the moving parties, Your Honor.
 9            THE COURT:  Good morning, Mr. Markham.
10            KRISTOPHER P. DIULIO:  Good morning, Your Honor.
11   Kristopher Diulio for the defendants.
12            THE COURT:  Good morning, Mr. Diulio.
13            MR. DIULIO:  Good morning, Your Honor.
14            THE COURT:  A lot of vowels.
15            MR. DIULIO:  Yes.
16            THE COURT:  I'll work on it.
17            All right.  So we have a motion brought by
18   Mr. Markham on behalf of his clients to compel -- is it
19   Edalat?  Am I saying that correctly? --
20            MR. DIULIO:   Yes, Your Honor.
21            THE COURT:  -- to appear for another deposition
22   session, compel him to answer the questions that he didn't
23   answer in his first deposition, order him to provide
24   handwriting exemplars.
25            And, Mr. Markham, is it take the second deposition
```

1  in front of a discovery referee?
2          MR. MARKHAM:  Yes, Your Honor.
3          THE COURT:  Okay.
4          So one of the unspoken joys of this job is the
5  chance to read deposition transcripts, and I get the good
6  ones.  They usually involve some allegations of bad or
7  objectionable behavior.
8          So with that backdrop, let me say this to you,
9  Mr. Diulio:  I'll observe that probably the first 100 and the
10 last 100 pages of the transcript were probably the worst
11 behavior I've seen by a party witness in 3 1/2 years.  Too
12 many instances of Mr. Edalat's failure to answer counsel's
13 questions for me to even count.  I stopped trying.  None of
14 them is justified.  I read it a few weeks ago.  I was pretty
15 mad about it a few weeks ago.  Time has passed.  So I'm not
16 probably as mad about it as I was -- angry, I should say --
17 angry.
18         But one of the fictions of a deposition is that
19 it's like it was here in the courtroom -- right? -- and I
20 think -- again, it's a transcript.  I'm going by the
21 transcript.  It may have been very different in person, but
22 from what I could read from the transcript, if it had been
23 conducted here in the courtroom, we would have been
24 admonishing Mr. Edalat at about page 10, we'd have been
25 sanctioning him at about page 15, and about page 20 we would

1  have had real problems.
2           So we need to have a second day of deposition.  I
3  think you've acknowledged in your papers we need to have a
4  second day of deposition; is that correct?
5           MR. DIULIO:  Yes.  We readily agree.
6           THE COURT:  Okay.  And we're not going to have that
7  same kind of behavior.  We just can't.
8           So let me be clear now, and I will endeavor to do
9  so in the order that comes out of today too about what my
10 expectations are.  Mr. Edalat will answer Mr. Markham's
11 questions.  He will not opine about the relevance or
12 appropriateness of those questions.  He will not answer a
13 different question.  Everyone present is going to behave
14 professionally and with decorum, and there's not going to be
15 any outbursts or profanity by the witness or by anyone else.
16          It's not necessary for me, I guess, today to sort
17 of apportion blame, responsibility between Mr. Edalat and
18 you, Mr. Diulio, but you're the lawyer.  You've got to exert
19 some control over the guy, frankly.  My perception from the
20 deposition transcript is that he believes this is some sort
21 of cage match or gladiator match, and he needs to be
22 disabused of that notion because I would disabuse him of it
23 here and so -- so, Mr. Markham --
24          MR. MARKHAM:  Yes, Your Honor.
25          THE COURT:  -- you want a discovery referee.  I

1  think that suggestion is one way we could skin this cat.  I
2  can find someone.  I can appoint someone.  You've requested
3  that Mr. Edalat bear the cost of that.  I think that's
4  appropriate and reasonable.  One other alternative, which I
5  am hesitant to raise, but I will put it out there, is we
6  could do the deposition here in the courtroom on a day when
7  I'm available, and if there's any problems, I could come
8  rectify them.
9             So comments?
10            MR. MARKHAM:  Two.
11            THE COURT:  Yes.
12            MR. MARKHAM:  First of all, I like the idea of
13  doing it here.  First of all, this room has the solemnity, if
14  it's a day where this room is available, where we could do it
15  here when you're not otherwise in session, Your Honor, and if
16  we need you, you could come out and say yes or no --
17  whatever.  I think that would be better than a discovery
18  referee because, ultimately, if Mr. Edalat doesn't change his
19  way, we're going to be moving for very severe sanctions, not
20  in the form of cost for referees but in terms of what he
21  would be able to offer at trial by way of preclusionary
22  evidence rulings that since he wouldn't answer questions
23  about it, he can't talk about it at trial.
24            So the best way -- and I -- the reason I'm asking
25  for this, rather than just a court order, which normally

1   would do the trick, is I don't think it will.  I was there.
2   I watched -- the video was worse than the transcript.  And I
3   will tell you, Your Honor, this was not Mr. Diulio's fault.
4   This was something he went outside to try to correct.  This
5   is the fault of Paul Edalat.  I'm from Boston.  We will call
6   lawyers out when they're wrong.  This is apportioned
7   100 percent with Mr. Edalat.  But he needs to be in a place
8   like this, and he needs to be told that he has to answer the
9   questions.  I think if we did that, it would be more
10  economical.
11              I have two other points I'd like to raise, if I
12  may, very quickly.  The first one is that we had agreed by a
13  stipulation that was so ordered that there would be two
14  deposition sessions of Mr. Edalat, because there's a lot to
15  cover, as well as two depositions of the principal on the
16  other side, Mr. Cahill.  We took Mr. Cahill's deposition
17  first.  It went for about five hours.  There's another
18  deposition scheduled for Mr. Cahill, the principal on the
19  other side, with no problems.  Mr. Cahill answered all the
20  questions.
21              So I would like there to be -- this deposition
22  session with the reservation that if we don't get through in
23  five or six hours here that he be allowed to have another one
24  -- that he be ordered to have another one because this last
25  one was not, in effect, the first deposition we were promised

```
 1   of the two.  It just didn't go anywhere.
 2              The second thing I would ask for is during the
 3   deposition I asked for a handwriting -- asked him to sign --
 4              THE COURT:  I'm -- you know, we'll -- I think
 5   that's -- I think the handwriting exemplar request is
 6   appropriate and warranted.  I think the only issue is sort of
 7   the logistics of it.  You know, if we're going to do it here,
 8   we can officiate over that.  If a referee is going to take
 9   the -- or going to oversee the deposition, he or she can
10   officiate over that.  I don't have any -- that can be done
11   one way or the other.
12              MR. MARKHAM:  All right.
13              THE COURT:  Mr. Diulio?
14              MR. DIULIO:  Yes, Your Honor.  I -- obviously, we
15   agree that Mr. Edalat should sit for his deposition and
16   answer questions.  I think holding it here, if the Court is
17   amenable to that, is something that I would, you know,
18   request.  I think having it before the Court, as opposed to a
19   referee, will instill the proper decorum necessary to get
20   through this.
21              THE COURT:  Well, the referee -- I'm going to pick
22   a good referee.  I'd pick somebody very -- sort of much more,
23   you know, intimidating, at least side by side, than me.  I'm
24   a real nice guy.
25              MR. DIULIO:  You are, Your Honor, but I'll posit
```

 1  that the courtroom, in and of itself, will -- and being at
 2  the courthouse, I think, will comport all of the parties to
 3  behave themselves.
 4          THE COURT:  Look, I am very grateful for the fact
 5  that you have to walk through this marble lobby and up this
 6  gleaming elevator and out this marble, you know, vestibule
 7  and through these heavy, wooden doors because they give me a
 8  aura of respectability that I probably don't otherwise
 9  deserve.  I certainly understand that.  Everyone is very nice
10  to me, and they laugh at my jokes, and I do appreciate that
11  part of it.  As someone who has worked in this building for
12  many years, I suddenly became about 10 feet taller
13  3 1/2 years ago.
14          I'm comfortable doing it.  I mean, I'll be honest
15  with you.  Ninety-five percent of the time -- 98 percent of
16  the time I threaten to have a deposition here at the
17  courthouse, everyone runs the other direction and I never
18  hear from them again, but since you're both saying it, and I
19  think that Mr. Markham has, I think, exculpated you and
20  pointed the finger at Mr. Edalat, I'm willing to do it.
21          What I would probably do, frankly, as much as I
22  would enjoy sitting the entire day with you folks, is
23  probably, you know, convene -- get started, and then excuse
24  myself and basically give you my phone number.  I would not
25  be more than 70 feet away and would be called, if needed, to

1  deal with any issues, but I think we could at least get the
2  ball rolling and go from there.
3           MR. DIULIO:  And I think that would be appropriate,
4  Your Honor.
5           THE COURT:  Okay.
6           MR. DIULIO:  I don't think you need to sit there
7  for five to six hours.
8           THE COURT:  What's the timeframe that you're all
9  looking at?
10          MR. DIULIO:  I believe we've currently scheduled
11 the date for the first week of March for the second session
12 but I -- you know, we will work around the Court's calendar.
13          MR. MARKHAM:  Earlier or up to that point would be
14 great for us.
15          THE COURT:  Okay.
16          MR. MARKHAM:  We want -- we just want questions
17 answered.
18          THE COURT:  Okay.  Fair enough.
19          All right.  So let's do this:  I'll do a very short
20 -- I've told you what my expectations are.  I will -- I don't
21 need to write them if I can just repeat them at the outset of
22 the deposition session.  Why don't you -- after the hearing
23 today, why don't you confer with Ms. Boehme about available
24 dates during the week of March 3rd through 7th.  Am I getting
25 the right dates?

```
 1              MR. MARKHAM:  It's March 1st.
 2              MR. DIULIO:  Right.  March 1st.
 3              MR. MARKHAM:  Which is a --
 4              THE COURT:  A Wednesday?
 5              (Court confers with clerk.)
 6              MR. MARKHAM:  March 2nd wouldn't kill us; right?
 7              MR. DIULIO:  No.  It would not.
 8              THE COURT:  Okay.  Why don't we do -- why don't we
 9   plan on Thursday, March 2nd.
10              (Court confers with clerk.)
11              THE COURT:  Okay.  Thursday, March 2nd.  If we need
12   to kick you all out for the duty calendar, we'll do that, or
13   if -- I think more, probably, appropriately we can do the
14   duty calendar next door.  You know, one other possibility,
15   which I may foist on you folks, is I may find some other room
16   in the courthouse for you to take the deposition in and
17   simply preside there.  I'll bring the robe.
18              MR. MARKHAM:  Even if we had to change the week,
19   Your Honor -- because I know that the duty weeks can be
20   hectic.  I was an --
21              THE COURT:  Oh, they're not hectic here.
22              MR. MARKHAM:  Oh, they're not?  I thought there
23   were warrants coming in all the time and all that good stuff.
24              THE COURT:  I wish there were.  You could stop by
25   the Eighth Floor and ask them why that doesn't happen.
```

```
 1              MR. MARKHAM:  Okay.  Well, I was an AUSA in Boston
 2   and San Diego, and we bothered the magistrates all the time
 3   so --
 4              THE COURT:  It's a much smaller courthouse with a
 5   much smaller volume so --
 6              MR. MARKHAM:  I would rather it be in the
 7   courtroom, even if we had to change the week, because I
 8   really think that this room, with you presiding and saying --
 9              THE COURT:  Okay.
10              MR. MARKHAM:  -- "These are the rules, Mr. Edalat,"
11   will go a long way.
12              THE COURT:  We can certainly do that.  I have no --
13   we can start on Thursday the 2nd in the courtroom, and if we
14   need to find some other place for the duty court -- for the
15   duty calendar or if we need to take a short adjournment,
16   we'll do that.  We won't need -- we won't be able -- we won't
17   inconvenience you too much.
18              MR. MARKHAM:  Great.  That's great.
19              THE COURT:  Okay.  Thursday, March 2nd.
20              So I'm going to -- we'll have a short minute order
21   granting the motion, ordering the deposition to go forward on
22   March 2, 2018 [sic], at 9:00 a.m.?
23              MR. MARKHAM:  Great.
24              MR. DIULIO:  That is appropriate.
25              THE COURT:  Nine a.m.  And I will order Mr. Edalat
```

```
 1  to provide handwriting exemplars during that hearing.
 2             MR. MARKHAM:  I have one other question about the
 3  electronics.
 4             THE COURT:  Yes.  Please.
 5             MR. MARKHAM:  We have been videotaping the major
 6  depositions.  Does that trouble the Court if we bring --
 7             THE COURT:  It does not.
 8             MR. MARKHAM:  Okay.
 9             THE COURT:  You can videotape.  Yeah.  Just make
10  arrangements with Ms. Boehme to have your equipment and what
11  you need here at 8:30 or so to make those arrangements, and
12  we'll have to get the reporter -- the video recorder set up,
13  you know, in such a way that it's not obtrusive, and you're
14  more than willing to -- you're more than able to set up at
15  counsel table.  You know, you're even, probably, able to go
16  ahead and project things onto the screen, if you'd like,
17  rather than hand pieces of paper up.  However you'd like to
18  do it.
19             MR. MARKHAM:  I've just gotten used to that so --
20             THE COURT:  All right.
21             MR. MARKHAM:  -- I think I can do it.
22             THE COURT:  Okay.
23             Ms. Boehme, any questions from your end?
24             THE CLERK:  No, Your Honor.
25             THE COURT:  Okay.
```

```
 1              Mr. Diulio?
 2              MR. DIULIO:  No, Your Honor.  Thank you.
 3              THE COURT:  All right.  We'll see you on March 2nd.
 4   I'll look forward to it.
 5              THE CLERK:  Court is now adjourned.
 6         (Proceedings adjourned at 11:00 a.m.)
 7   ///
 8   ///
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1
2
3
4                            CERTIFICATE
5      I certify that the foregoing is a correct transcript
6  from the electronic sound recording of the proceedings in the
7  above-entitled matter.
8
9  /s/ Julie Messa                  April 11, 2017
   Julie Messa, CET**D-403          Date
10 Transcriber
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25