```
1                UNITED STATES DISTRICT COURT
2               CENTRAL DISTRICT OF CALIFORNIA
3        HONORABLE ANDREW J. GUILFORD, JUDGE PRESIDING
4  BRUCE CAHILL, ET AL.,           )
                                   )
5                                  )
                                   )
6                  Plaintiffs,     )
                                   )
7                                  )
                                   )
8          Vs.                     )   No. SACV16-0686-AG
                                   )
9                                  )
                                   )
10 PAUL PEJMAN EDALAT, ET AL.,     )
                                   )
11                                 )
                                   )
12                 Defendants.     )
                                   )
13 _____  )
14
15
16          REPORTER'S TRANSCRIPT OF PROCEEDINGS
17                    *MOTION HEARING*
18                SANTA ANA, CALIFORNIA
19                MONDAY, MAY 8, 2017
20
21
22         MIRIAM V. BAIRD, CSR 11893, CCRA
           OFFICIAL U.S. DISTRICT COURT REPORTER
23         411 WEST FOURTH STREET, SUITE 1-053
              SANTA ANA, CALIFORNIA 92701
24                 MVB11893@aol.com
25
```

```
 1                    A P P E A R A N C E S
 2

 3   IN BEHALF OF THE PLAINTIFFS,    JOHN JAMES MARKHAM III
     BRUCE CAHILL:                   MARKHAM & READ
 4                                   17082 SKY PARK CIRCLE
                                     SUITE 200
 5                                   IRVINE, CA 92614

 6

 7

 8

 9
     IN BEHALF OF THE DEFENDANTS,    MIR SAIED KASHANI
10   PAUL PEJMAN EDALAT:             SAIED KASHANI LAW OFFICES
                                     800 WEST FIRST STREET
11                                   SUITE 400
                                     LOS ANGELES, CA 90012
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1        SANTA ANA, CALIFORNIA; MONDAY, MAY 8, 2017; 10:45 A.M.
 2                              ---
 3
 4            THE CLERK:  Item five, SACV 16-686-AG, Bruce Cahill
 5   vs. Paul Pejman Edalat.
 6            MR. MARKHAM:  John Markham for all of the
 7   plaintiffs and counterclaim defendants.
 8            Good morning, Your Honor.  By the way, I'm already
 9   cutting my exhibit list based upon the comments that you
10   made.  A good test is if you're not going to talk about it in
11   closing, why are you wasting everybody's time with it.
12            THE COURT:  Sir, bless you.  Actually, I --
13            MR. MARKHAM:  It's more effective.  I know that.
14            THE COURT:  It's an interesting point.  I'll just
15   say, I guess, even on the record.  I tried cases for
16   30 years.  I don't think I ever had a case where I didn't bat
17   over 800; meaning, 80 percent of the exhibits on my exhibit
18   list were at least referenced.  It seems to be -- we had a
19   case, what do you think they were batting?
20            THE CLERK:  Five.
21            THE COURT:  They were batting five percent.  We had
22   five digits of exhibits, as in over 10,000.  600 got
23   introduced.  80 percent is a good rule to aim for.
24            All right.  You curried my favor.  You have it,
25   sir.  Now we move to Mr. Kashani.  How are you?  You've been
```

```
 1   before me in many times.  In your last trial here, what did
 2   you bat?  I don't remember.  We'll leave it at that.  You can
 3   plead the Fifth Amendment.
 4           MR. KASHANI:  I think it was pretty good.  I know I
 5   ran most of them on the screen.  It was technical, so a lot
 6   of them were diagrams.  I think we ran most of them on the
 7   screen.  I know we had to bring in another monitor to show
 8   them all.  We must have been using a lot of them--
 9           THE COURT:  Were you quick drying cement?
10           MR. KASHANI:  Exactly.
11           THE COURT:  Calcium aluminum sulfide or sulfate.
12           MR. KASHANI:  That was the issue in the Federal
13   Circuit.
14           THE COURT:  Here we are again.  All right.  You
15   have my tentative, sir.  Having received my blessing for your
16   enlightenment on exhibits, you probably don't like my
17   tentative.  Would you like to address it?
18           MR. KASHANI:  Your Honor, I'm grateful for the
19   additional time.  There are two issues --
20           THE COURT:  I was asking whether the plaintiff
21   wanted to address it.
22           MR. KASHANI:  Oh.
23           MR. MARKHAM:  Your Honor, I have to say, in light
24   of the reason, I can't say that -- I mean, I would be happy
25   to have it the way we wanted it.  There is some pain being
```

```
 1   inflicted by these posts.  I made that argument --
 2              THE COURT:  I'm going to get to that.
 3              MR. MARKHAM:  If the Court wants us to be ready by
 4   the date in July, July 25th, that's certainly gives him
 5   enough time.  The one suggestion I would have, Your Honor,
 6   would be -- I hope I'm not opening the door to further delay
 7   of the trial, which I really would argue against.  If the
 8   Court is going to set the trial for July 25th, setting the
 9   pretrial conference for July 10th, if that doesn't
10   inconvenience the Court, would give Mr. Kashani more time to
11   do the voluminous paperwork involved in that.  And I don't
12   know whether the Court needs an entire month before the trial
13   for the pretrial conference.  And I note that when you
14   originally set the case for June 13th, the pretrial
15   conference was shorter before that than the amount the Court
16   has allowed now.  I don't know whether it impacts on the
17   Court's other scheduling.  That would seem to be an
18   accomodation that would take some of the pressure off.
19              With that --
20              THE COURT:  I also want you now to address this
21   issue of postings.  The Court is very concerned about that
22   and believes, perhaps, it needs to take corrective actions on
23   the issue of postings.  So talk to me about that.
24              MR. MARKHAM:  Very well, Your Honor --
25              THE COURT:  I must say also here's the problem with
```

1  July 10th.  I will be sitting by designation on the Ninth
2  Circuit in San Francisco.  That's why that -- there's that
3  variation.  I can't help it.  I don't think there's any way I
4  could back out now.  On July 10th, I will be in San Francisco
5  hearing Ninth Circuit Appeal cases.  So I am sorry that
6  moving it to July 10th will not work.
7           So tell me about the postings.  What are they
8  posting?  What do you propose I do other than get this to
9  trial and over with as soon as possible?
10          MR. MARKHAM:  Well, you know, the truth, the
11 announcement we hope from jury verdict that these assertions
12 that Mr. Cahill, who is a UCI very respected long time
13 trustee.  He is a venerated person.  To say on record that he
14 has committed sexual assault -- which is what the record
15 shows; we got it in the exhibits -- with Olivia Karpinski
16 being the designated author, and her picture being on it.  No
17 question it came from her.
18          After she did that, she went to the Irvine Police
19 to file a complaint.  The police asked her what happened.
20 This is in the record.  She said well, he tried to kiss me
21 once after we got a contract coming to the company when I was
22 working for the company.  The police officer said, it's very
23 suspect that you're coming in 11 months after this happened
24 and only after he sued you, but by the way, even if he did
25 kiss you, that is not sexual battery.  She still didn't take

```
 1   it down.
 2            So when he --
 3            THE COURT:  She still didn't take it down?
 4            MR. MARKHAM:  No.  They're still up.  They're
 5   increasing.  They're doing it through anonymous sources.  I
 6   don't know I'll be able to prove that at trial.  They have on
 7   the record, they have comparisons to Cahill with noted
 8   criminals of the past.  They have had -- that he sexually
 9   assaulted her.  They have put up identified by Edalat.  They
10   put my credit record up.  He posted my credit record.  My
11   wife has had to lock down my credit.  I don't need any new
12   credit cards.  I couldn't get one right now.  There is a
13   credit lock.  He did this, Your Honor, after telling these
14   people, if you go ahead with this, you don't know who you are
15   effing with.  He posted that.  He's brazen about it.  Just
16   like he was brazen in his deposition.
17            Now, all of this deserves a trial.  Our clients
18   deserve to get this over with.  I don't think that the Court
19   can consistent with the First Amendment, without getting into
20   a very complicated issue, order them taken down.  I -- I made
21   an argument earlier in the case when they first came up,
22   Your Honor, that these posts were not covered by the First
23   Amendment because their calculated stated reason was I want
24   you to stop this lawsuit.  Statements made to people
25   threatening to stop a lawsuit are obstruction of justice and
```

1  they are not covered by the First Amendment.
2  　　　　So we could make that argument, but what I've
3  counseled my client is the best way to do this is not to try
4  to get Judge Guilford out on a ledge that he wouldn't go on
5  before and seek a restraining order or to tell him to take
6  them down, but to get it over with.  So that if these are
7  all -- by the way, they're more.  One of the defendants was
8  accused of being a tax evader.  One of defendants was accused
9  of manipulating a church for the purposes of tax cheating.
10 One of the defendants it was alluded that we know what you do
11 over in Thailand when you go over there.
12 　　　　There are all of these aspersions.  They're there.
13 He was questioned about them.  He didn't deny them in his
14 deposition.  After we had to have his deposition taken in
15 front of a magistrate, at the magistrate's request, because
16 the magistrate said that this was the worst deposition he's
17 ever read.  The first time we tried to depose him.  So,
18 Your Honor, we believe that the only way for our people to
19 get the remedy that they deserve like any litigant that comes
20 into this court is to get this over with.
21 　　　　Now, of course, due process is due process.  If it
22 turns out that we don't make our case; that this is all
23 blatantly false, then we don't.  Because the evidence of it
24 is so sketchy and shaky and it's been denied and so damaging,
25 the remedy is truth.  You know, everybody else who comes into

```
 1   this courtroom today is worried about the questions you're
 2   going to ask them and what you thought of that maybe they
 3   haven't thought of.  Their mind is on that.  Their --
 4   parties' minds are on that.  You're the person they have to
 5   worry about.  When my clients come into this courtroom,
 6   they're worried that some scurrilous thing is going to go up
 7   against them just because they've been here, and I said
 8   something and it gets posted.
 9             That's not what should happen here.  We are between
10   an arguable First Amendment violation and an argument that
11   this is not covered by the First Amendment.  Rather than
12   getting into that, I would just like to get this over with,
13   as would my clients.  It was set for June 13th.  It was set
14   for June 13th.  We planned the case for June 13th.
15   Mr. Edalat has gone through several lawyers.  He's now come
16   up with a lawyer who has a special problem.  It's hard to
17   argue against that problem, but we don't need 90 days for it.
18             What I would like to do, Your Honor, is to have a
19   firm date to get this trial over with so we can plan so that
20   when it is anticipated that there will be no sexual assault
21   proven, no tax cheating proven, none of that proven, we can
22   go out and say a jury has concluded as follows.  He can write
23   to the University Trustees of the University of Irvine where
24   he sits on the board and on several special committees and
25   for all of the charity work that he does out of his house.
```

```
 1    That all of this has been vindicated.  That's what we want.
 2    The best way to get it is to go to trial.
 3             Thank you for listening, Your Honor.
 4             THE COURT:  Mr. Kashani, what why do we have to
 5    complicate it with these scurrilous postings?  Are we trying
 6    this case on the Internet?
 7             MR. KASHANI:  Your Honor, I have -- these postings,
 8    I think with one exception, all predated me.  I can assure
 9    you I had nothing to do with any of them.  I can also assure
10    you that I have had the sternest possible words with my
11    client regarding all of this.  It's not something I'm fond
12    of.  I've never done.  Your Honor knows I tried a very long
13    case in here twice, which had a lot of public contracting
14    involved.  Where, frankly, postings might have had an effect
15    on pending contracts.  My clients posted absolutely nothing,
16    said absolutely nothing.  Even -- in fact, the only press
17    releases were from the other side.  So, you know, we --
18    that's not something I do or like to do.
19             I -- I think cases should be tried here.  I think I
20    pointed out some of the evidence in our opposition to their
21    ex parte -- opposition -- in reply to the motion that
22    indicates that I am reviewing the evidence and testimony and
23    contradictions in the testimony and not scurrilous statements
24    in the postings outside.  That's what I want to focus on.
25             I think that they have brought to the Court's
```

1  attention in an ex parte one Huffington Post article that
2  postdates -- I'm not sure it postdates my involvement.  I
3  think they mentioned it.  I'm not sure -- I don't recall the
4  date of the Huffington Post article.  I think on the ex
5  parte, which the Court -- their ex parte denied.  We showed
6  there is an author there.  I don't know how reliable he is.
7  Contrary to their assertion, it's not just Mr. Edalat in
8  disguise.  He did tweet it, which he should not have done.
9  He did.  He tweeted the article, which he should not have
10 done.
11         Without getting into privilege issues, I can tell
12 you that anything like that is contrary to -- let's just say
13 the general instructions I give my clients in every case.
14 You know, I think the last case was pretty high profile in
15 terms of the effect on contracting in the state, a lot of
16 money involved.  Your Honor can check the record.  I have had
17 other cases in the federal courts.  There have been times
18 when I have declined to comment when the U.S. Attorney has
19 commented.  I have not responded even at times.
20         So that's the way I see it.  I wish I could
21 guarantee nothing going forward.  I wish I could.  I have
22 made it very clear to my clients the dire consequences of
23 anything going forward.  That's all I can do here as the
24 attorney here in the case.
25         THE COURT:  All right.

```
 1              MR. KASHANI:  In terms of the scheduling,
 2   Your Honor --
 3              THE COURT:  Before we get to that.  I want to
 4   conclude on these postings.  Postings that the plaintiff is
 5   using to ask for appropriately an earlier trial date.  On the
 6   issue of postings, if I find them inappropriate or I find
 7   them a threat to influencing a jury, because they are public
 8   postings -- I want to make sure you're listening,
 9   Mr. Kashani.
10              MR. KASHANI:  I'm taking down what you're saying,
11   Your Honor.  I'm writing it down word for word.
12              THE COURT:  Okay.  If I find them to be an
13   inappropriate interference or if I find them to be trying
14   this case outside of this courtroom, I reserve the right to
15   make powerful statements to the jury during voir dire and
16   after jury selection as to those comments.  As in voir dire,
17   ladies and gentlemen of the jury, unfounded scurrilous
18   comments have been made by defendant against the plaintiffs.
19   Have any of you heard of such scurrilous comments?  That's a
20   possibility, depending on the nature of the comments and how
21   things develop.
22              So I am aware of the First Amendment, but I'm also
23   aware of my requirement to provide a fair trial.  That
24   requirement might best be met with informing the jury about
25   this in the selection process or later.  So that is my
```

```
 1   response to the posting issue.
 2            Now, let's move to the scheduling issue, which you
 3   further wanted to address.
 4            MR. KASHANI:  First of all, on the postings I took
 5   it down word for word so I can tell my clients word for word.
 6            THE COURT:  Good.
 7            MR. KASHANI:  So they understand that.  I will make
 8   them to understand the dire consequences if this activity
 9   reoccurs.
10            Regarding the scheduling, well -- I mean, I did ask
11   for more time.  That's obviously within the Court's
12   discretion.  I am grateful for the extension the Court did
13   give.  Regarding the question of the pretrial conference, the
14   original schedule was the pretrial conference was, I believe,
15   two or three weeks, was it, before the trial date, I believe.
16   May 23rd to June 13th.  That would be three weeks.  Now we
17   have it somewhat earlier than that.
18            I understand the Court's schedule.  Is there some
19   way to accommodate a later pretrial conference, because as
20   Mr. Markham points out, the sheer amount of paperwork, the
21   number of pleadings, which I would like to reduce, frankly.
22   I think there are too many claims made in this case.  I'll
23   say right now I think there are a lot of counterclaims that
24   don't belong here.  If there were a procedural way to move
25   them somewhere else or move them later in time, I will do
```

```
 1   that.
 2            THE COURT:  Ms. Bredahl, we're talking about a
 3   pretrial conference in this case.  The case is set for
 4   July 25th.  We have set the pretrial conference for
 5   June 26th.  You are proposing that it be set for sometime in
 6   mid-July?
 7            THE CLERK:  We're dark.
 8            THE COURT:  Is that what you're proposing?
 9            MR. KASHANI:  Yes.  Alternatively, -- I know this
10   is going to sound really bad -- if the Court is out all of
11   July, if the trial could be moved very slightly just a few
12   days so the pretrial conference could come after the Court's
13   session on the Ninth Circuit.
14            THE COURT:  I am afraid looking at my calendar I
15   have to keep it on the 26th.  It's the best we can do.
16            MR. KASHANI:  Is the 18th possible?  I don't mean
17   to bargain.
18            THE COURT:  Are you saying July 18th?
19            MR. KASHANI:  July 18th.
20            THE COURT:  Not possible.  Okay.
21            There we have it.  There's nothing further.  The
22   tentative will be the ruling of the Court.
23            MR. KASHANI:  Thank you, Your Honor.
24            MR. MARKHAM:  Thank you, Your Honor.
25            (Proceedings concluded at 11:02 a.m.)
```

```
 1                         CERTIFICATE

 2    I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

 3    TRANSCRIPT OF THE STENOGRAPHICALLY RECORDED PROCEEDINGS IN

 4    THE ABOVE MATTER.

 5    FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE

 6    REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE

 7    REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

 8

 9    /s/ Miriam V. Baird              06/22/2017

10    MIRIAM V. BAIRD                  DATE
      OFFICIAL REPORTER
11

12
...
25
```