**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUL 8 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| BRUCE CAHILL; et al., <br><br> Appellees/Cross-Appellants, <br><br> v. <br><br> PAUL EDALAT; OLIVIA KARPINSKI, <br><br> Appellants/Cross-Appellees. | Nos. 17-56826, 17-56894, 18-55171 <br><br> D.C. No. 8:16-cv-00686-AG-DFM <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
Andrew Guilford, District Judge, Presiding

Argued and Submitted May 3, 2021
Pasadena, California

Before:  OWENS and LEE, Circuit Judges, and SIMON**, District Judge.

Pharma Pak Inc., a marijuana-related venture, faltered, leading to this legal

fracas in which the company's investors and employees sued each other on a wide

variety of claims.  Bruce Cahill, Ron Franco, and Greg Cullen brought claims of

---

\*      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\*      The Honorable Michael H. Simon, United States District Judge for the
District of Oregon, sitting by designation.

fraud and defamation against Paul Edalat and Olivia Karpinski.  In response, Edalat

and Karpinski asserted counterclaims against Cahill — Edalat for breach of fiduciary

duty, and Karpinski for sexual harassment and other employment-related claims.

Both sides won some and lost some at trial, and both sides now appeal various

aspects of the district court's trial and post-trial rulings.  As the parties are familiar

with the facts, we do not recount them here.  We have jurisdiction under 28 U.S.C.

§ 1291, and we affirm.

      1.      The district court did not err in instructing the jury on Edalat's breach

of fiduciary duty claim.  In our view, the jury instruction accurately reflects the legal

rules set out in California Corporations Code § 310(a), which governs corporate

transactions involving interested shareholders.  "Section 310(a) provides that a vote

on the matter is not void or voidable because the interested director is present at the

board meeting if one of three alternatives are satisfied." *Sammis v. Stafford*, 56 Cal.

Rptr. 2d 589, 592 (Ct. App. 1996).  The first two alternatives involve situations

where a disinterested majority vote is still possible, whether by barring the interested

shareholder from voting, or by not counting the interested shareholder's vote.  The

third alternative involves situations where a transaction is "based on a vote by the

interested director." *Id.* at 594.  Under those circumstances, the interested

shareholder bears the burden of proving that the transaction was just and reasonable.

Cal. Corp. Code § 310(a)(3).

Here, the jury instruction captures all three alternatives.  First, the instruction provides that "a sale or other transfer of the assets of a Pharma Pak Inc. must have been approved by a majority of the shareholders of Pharma Pak Inc."  Then, in the case of an interested transaction, the instruction says that one of three additional requirements, including the "just and reasonable" requirement, "must have also been met" on top of the baseline majority approval requirement.  Finally, the jury instruction states that if there was no "proper authorization" for the transaction, then there was a breach of fiduciary duty.  Cahill argues that the jury instruction directed the jury to find in favor of Edalat as long as there was no "authorization" for the asset transfer, without considering whether the transaction was just and reasonable. We read the phrase "authorization" to mean that one of the three alternatives listed immediately above in the instructions — including the "just and reasonable" requirement — was satisfied.  In other words, the jury could not have found a breach of fiduciary duty without first considering whether the transaction was just and reasonable.  We therefore reject Cahill's jury instruction challenge on cross-appeal.

      2.     The district did not err when it entered judgment on the fiduciary duty claim in favor of Edalat in his individual shareholder capacity instead of in favor of Pharma Pak as a corporation.  As a threshold matter, Cahill did not waive his objection to the entry of judgment in favor of Edalat in his direct shareholder capacity.  It was not clear from the pre-trial filings that Edalat intended to submit

3

only a direct, not a derivative, claim to the jury, and when it did become clear, Cahill timely filed an objection to the proposed judgment form.

Turning to the substance of the argument, Cahill asserts on cross-appeal that the fiduciary duty claim in this case could only have been brought as a derivative claim on behalf of the corporation, not as a direct claim on behalf of Edalat in his individual capacity.  In general, "an action is derivative if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance of distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent the dissipation of its assets." *Schuster v. Gardner*, 25 Cal. Rptr. 3d 468, 473 (Ct. App. 2005) (cleaned up).  In contrast, an action can be brought in an individual capacity "only where it appears that the injury resulted from the violation of some special duty owed the stockholder by the wrongdoer and having its origin in circumstances independent of the plaintiff's status as a shareholder." *Nelson v. Anderson*, 84 Cal. Rptr. 2d 753, 761 (Ct. App. 1999) (cleaned up).

In this case, the jury awarded Edalat $250,000 in damages on the fiduciary duty claim.  Based on the trial transcript, we are convinced that this award was only meant to compensate Edalat for his individual harms.  It would be one thing, for instance, if the $250,000 was solely meant to compensate Edalat for the devaluation of his Pharma Pak stock; in that case, Edalat would be in the same position as every

4

other Pharma Pak shareholder because all Pharma Pak stock would have been devalued as a result of the unauthorized asset transfer.[1] *See Everest Invs. 8 v. McNeil Partners*, 8 Cal. Rptr. 3d 31, 41-42 (Ct. App. 2003); *Sax v. World Wide Press, Inc.*, 809 F.2d 610, 614 (9th Cir. 1987).

But here, the trial transcript suggests that the only realistic basis for the $250,000 award was the amount of money that Cahill personally owed Edalat in his individual capacity.  Specifically, when Cahill bought stock in Pharma Pak, he bought the stock directly from Edalat, paying Edalat $500,000.  Half of that sum went directly to Edalat, while the other half went into the company to satisfy Edalat's capital call.  But due to the unauthorized asset transfer, Edalat never saw the benefit of the latter $250,000.  That loss is distinct from the loss suffered by the company as a whole, because it is more akin to the breach of a contractual obligation between Cahill and Edalat, as opposed to being merely incidental to the devaluation of the

---

[1] During closing arguments, Edalat's counsel asked the jury to award Edalat $6,320,000 in damages for the breach of fiduciary duty by Cahill.  That number was taken directly from the value of the assets transferred from Pharma Pak to Life Tech Global: Life Tech Global was (allegedly) worth $20 million, which meant the transferred Pharma Pak assets were worth $20 million, and because Edalat owned 31.6 percent of Pharma Pak, Edalat was thus entitled to 31.6 percent of $20 million, or $6,320,000.  If the jury did indeed award Edalat the lost value of his shares, then this claim would more closely resemble a derivative claim.  But ultimately, we see nothing in the record to suggest that the jury's $250,000 award was in fact tied to the supposedly lost value of Edalat's ownership share in Pharma Pak.  Indeed, the jury was not required to accept Edalat's proposed $6,320,000 valuation of his ownership share in Pharma Pak.

company as a whole.  For that reason, we hold that the district court did not err in entering judgment in favor of Edalat in his individual capacity.

3.      The district court did not abuse its discretion when it denied Edalat's post-trial motion for the imposition of a constructive trust over the assets of Life Tech Global for the benefit of Pharma Pak.  "A constructive trust is an involuntary equitable trust created by operation of law as a remedy to compel the transfer of property from the person wrongfully holding it to the rightful owner."  *Meister v. Mensinger*, 178 Cal. Rptr. 3d 604, 618-19 (Ct. App. 2014) (cleaned up).  "The propriety of granting equitable relief of imposition of a constructive trust rests within the sound discretion of the trial court."  *GHK Assocs. v. Mayer Grp., Inc.*, 274 Cal. Rptr. 168, 182 (Ct. App. 1990).  "It is up to the trial court to decide if such a trust is preferable to the other available remedies."  *Meister*, 178 Cal. Rptr. 3d. at 620.

Edalat's motion essentially boils down to the argument that, because the jury found in favor of Edalat in his individual shareholder capacity on the fiduciary duty counterclaim, then that exact same finding doubles as proof for the derivative claim on behalf of Pharma Pak, and the district court must impose the constructive trust remedy in favor of Pharma Pak.  But as mentioned above, the constructive trust remedy is discretionary, not mandatory.  And more importantly, the district court denied the constructive trust motion because it was not persuaded by Edalat's "view of what the jury found."  In other words, it was possible for the jury to find that the

6

unauthorized asset transfer harmed Edalat by depriving him of funds that Cahill personally owed him, while simultaneously declining to find that the asset transfer harmed the company as a whole. Thus, it does not necessarily follow that a jury finding in favor of Edalat on his individual shareholder claim *must* support the remedy of a constructive trust on the derivative claim in favor of the company. The district court could have explained its decision in more detail, but overall, we do not think the denial of the constructive trust motion was an abuse of discretion.

4. The district court did not abuse its discretion when it allowed Cullen and Franco to proceed in their individual capacities, instead of in their capacities as trustees for their respective trusts. Federal Rule of Civil Procedure 17 states that courts must allow parties a reasonable opportunity to substitute the real party in interest after an objection has been made. Here, Edalat attempted to argue at trial that Cullen and Franco purchased Pharma Pak stock in their trustee capacities, not their individual capacities. To the extent that that line of argument can be construed as an objection, the district court did not abuse its discretion in granting Cullen and Franco's request to instruct the jury to assume that Cullen and Franco had brought the claims in the correct capacities. Moreover, there is no indication that Edalat was prejudiced by the substitution, which was ultimately meant to correct a naming technicality. *See Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1128 (9th Cir. 2017). This is not a scenario, for instance, where entirely new parties were

allowed to join the case at the last minute; Cullen and Franco were involved in the litigation from the very start. We thus hold that the district court did not abuse its discretion in crafting a last-minute solution to the real-party-in-interest issue.

5.      The district court did not err when it declined to attach a public-figure jury instruction to Cahill's defamation claims against Edalat and Karpinski. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). Because Edalat is arguing that the district court made a legal error, we review the district court's decision de novo. *Peralta v. Dillard*, 744 F.3d 1076, 1082 (9th Cir. 2014) (en banc). We agree with the district court that Cahill, as a trustee for the University of California at Irvine Foundation, was not a public figure for purposes of the defamation analysis.

First, we are not persuaded that a trustee of the University of California at Irvine Foundation — which is distinct from the university itself — occupies a position "of such persuasive power and influence" that he should be deemed an all-purpose public figure. *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 265 (9th Cir. 2013) (citation omitted). We also reject the argument that Cahill has "actual or apparent substantial responsibility" over government affairs. *See Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966). Similarly, Edalat did not provide any evidence to suggest that Cahill should be treated as a limited-purpose public figure. *See Makaeff*, 715 F.3d at 266. The mere fact that Edalat himself tagged UC Irvine in some of the defamatory online posts is not sufficient to establish that Cahill himself voluntarily

8

injected himself into any public controversy.  Nor does the content of the posts have anything to do with Cahill's trustee position or his work with the foundation.  Thus, we affirm the district court's decision to not provide a public-figure instruction.

6.      The district court did not abuse its discretion when it provided the jury with a general verdict form instead of Edalat's proposed special verdict form.  "As a general rule, the court has complete discretion over whether to have the jury return a special verdict or a general verdict." *Floyd v. Laws*, 929 F.2d 1390, 1395 (9th Cir. 1991).  In this case, the district court explained that a general verdict form would be easier for the jury to understand in light of the number of claims and parties involved in the case.  The district court also considered Edalat's argument that a general verdict form might make it difficult to calculate attorney fees at the post-trial stage, but the parties agreed that the only claims for which attorney fees were available would be resolved by the court in a bench trial.  Although one of Karpinski's jury claims did ultimately give rise to a discretionary fee award, the district court's denial of attorney fees was unrelated to the use of a general verdict, as explained in more detail below.

7.      The district court did not err when it denied Edalat's post-trial motion challenging the defamation verdict in favor of Cullen and Franco.  The relevant jury instruction correctly stated that the statements in question could only be defamatory if they were "reasonably understood" to be "about that plaintiff."  And here, the

relevant Twitter posts were published on the same day and appear right next to one another on Edalat's Twitter page, which was screenshotted and presented to the jury in an exhibit.  One of the posts does not reference Cullen or Franco by name, but the post right next to it does.

Edalat challenges the authenticity of this exhibit on appeal but failed to object to the exhibit at trial, so that argument is waived.  *See Marbled Murrelet v. Babbitt*, 83 F.3d 1060, 1066 (9th Cir. 1996).  Accepting that what the jury saw was an accurate depiction of Edalat's Twitter page, then the question is whether the *only* reasonable conclusion from the record is that the defamatory post did not refer to either Cullen or Franco.  *See Lam v. City of Los Banos*, 976 F.3d 986, 995 (9th Cir. 2020).  We hold that it was not unreasonable for the jury to rely on context clues to conclude that the defamatory Twitter post referred to Cullen and Franco.  We thus affirm the district court's denial of Edalat's post-trial motion on this issue.

8.     The district court did not abuse its discretion when it denied Edalat's motion for a new trial based on undisclosed evidence.  In seeking a new trial based on Cahill's withheld loan application, Edalat was required to "prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct," and "establish that the conduct complained of prevented him from fully and fairly presenting his case or defense."  *Wharf v. Burlington N. R. Co.*, 60 F.3d 631, 637 (9th Cir. 1995) (citation omitted).  "A new trial is warranted only

10

if counsel's misconduct affected the verdict." *Mateyko v. Felix*, 924 F.2d 824, 828 (9th Cir. 1990). We agree with the district court that Edalat has failed to meet his high burden of showing that "not having access to Cahill's loan application" prevented him from "fully and fairly" presenting his case.

Assuming for the sake of argument that Cahill affirmatively misrepresented the relevance of the loan application, Edalat has failed to show that the evidence would have affected the verdict. Cahill argues that the loan application would have undermined Cahill's fraud and defamation claims by proving that Cahill believed Pharma Pak had value and that Cahill was indeed a criminal who committed bank fraud. Both arguments are highly speculative and are insufficient to show that the fraud and defamation verdicts would have come out the other way if the loan application evidence had been introduced. So the district court did not abuse its discretion in denying Edalat's motion for a new trial.

9.      Finally, the district court did not abuse its discretion when it denied Karpinski's motion for attorney fees. The general verdict makes it hard to tell exactly which claim or claims Karpinski prevailed on, but the district court acknowledged that Karpinski could be entitled to the discretionary award of attorney fees under the California Fair Employment and Housing Act ("FEHA") and conducted the fee analysis based on the assumption that Karpinski prevailed on her FEHA claim. The district court then declined to award fees given the convoluted

11

nature of the case.  Courts are allowed to deny attorney fees under FEHA when the fee request is greatly inflated compared to the scope of success, *Chavez v. City of Los Angeles*, 224 P.3d 41, 54 (Cal. 2010), and in this case, Karpinski seeks over $169,000 in fees despite recovering only $10,000 in damages.  Although it would have been preferable for the district court to have explained the denial in more detail, we do not think the denial rises to the level of abuse of discretion.

   **AFFIRMED.**